**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile:  702-843-6010

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (*pro hac vice forthcoming*)
seth@gutridesafier.com
MARIE A. MCCRARY (*pro hac vice forthcoming*)
marie@gutridesafier.com
HAYLEY REYNOLDS (*pro hac vice forthcoming*)
hayley@gutridesafier.com
KALI BACKER (*pro hac vice forthcoming*)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR NEVADA

| | |
|---|---|
| EVERETT BLOOM, on behalf of himself, and those similarly situated,<br><br>    Plaintiff,<br><br>                    v.<br><br>ZUFFA, LLC,<br><br>    Defendant. | CASE NO. _____<br><br>JURY TRIAL DEMANDED |

Class Action Complaint

Plaintiff Everett Bloom ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Zuffa, LLC. Plaintiff's allegations against Zuffa, LLC are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## **INTRODUCTION**

1.      This is a class action suit brought against Defendant Zuffa, LLC ("Zuffa") for knowingly disclosing its UFC Fight Pass users' personally identifiable information to Facebook without obtaining user consent. Unbeknownst to UFC Fight Pass users, each time they use the UFC Fight Pass to watch a video, Zuffa knowingly discloses their personally identifiable information—including the user's Facebook ID and a record of every video viewed by the user—to an unrelated third party. In addition to demonstrating a disregard for its users' privacy rights protected by the California Constitution, Zuffa's actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which prohibits companies from disclosing their customers' video viewing records to third parties without express written consent and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*.

2.      Zuffa operates the wildly popular Ultimate Fighting Championship ("UFC") mixed martial arts enterprise. Fans of the UFC can watch UFC video content by subscribing to Zuffa's online UFC Fight Pass. Zuffa does not disclose to consumers that it shares their personally identifiable information, including their Facebook IDs and information about videos requested or obtained, with Facebook, nor does Zuffa obtain users' informed, written consent to do so.

3.      Facebook created software code, which it offered to its customers such as Zuffa, which is designed to track consumers' behavior on the customer websites. When Zuffa integrated the Facebook code into its website, the code causes certain information about the consumers' interactions with the website to be sent to Facebook. The information is valuable to Facebook because Facebook uses the information to profile consumers and target advertisements to them. Facebook's customers, like Zuffa, can also use the information (and the tools provided by

Class Action Complaint

Facebook that incorporate the user information) to track consumers' behavior and send them targeted ads.

4.      Facebook sets defaults on the categories of information the software code sends to Facebook, including the URLs of the websites a consumer views and the consumer's unique Facebook ID that Facebook assigns to him or her.[1] Third parties can use Facebook IDs to identify particular consumers' names and to obtain other sensitive information, without consumers' knowledge or consent. Facebook further states that Facebook IDs "[a]llow someone with the ID to see your profile."

5.      Unbeknownst to consumers, Zuffa designed its UFC Fight Pass webpages to include Facebook's software code that causes the user's browser to communicate with Facebook when the user loads one of the webpages. Although consumers watching videos using the UFC Fight Pass intend to and reasonably expect that they are communicating with Zuffa, this code enables Facebook's computer network to collect and track information about the consumer's behavior on the site. Thus, when a consumer logs into the UFC Fight Pass and clicks on a video, Zuffa discloses to Facebook, through the code, the consumer's Facebook ID, the URL of the website hosting the video, which includes the name of the video the consumer requests or obtains, and the fact that the website viewed contains video content simultaneously.

6.      Zuffa does not inform consumers that it shares consumers' sensitive information with Facebook, let alone obtains their consent.

7.      In doing so, Zuffa violates the VPPA in a number of ways. First, it fails to obtain consumers' informed, written consent prior to disclosing their personally identifiable information to Facebook. The VPPA requires that informed consent must be obtained in a form distinct and separate from any form setting forth other legal or financial obligations of the consumers. Zuffa fails to do this. Second, because Zuffa does not get consumers' informed, written consent, it also does not allow consumers to elect between giving consent at the time of the disclosure or in advance of a set period of time, not to exceed two years or until consent is withdrawn in violation

---

[1] https://www.facebook.com/business/help/402791146561655?id=1205376682832142 (last accessed 2/9/22).

of the VPPA. Finally, Zuffa does not provide consumers with an opportunity, in a clear and conspicuous manner, to withdraw consent on a case-by-case basis or to withdraw from any disclosures, at the consumers' election.

## PARTIES

8.      Plaintiff Everett Bloom is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Mission Viejo, California.

9.      Defendant Zuffa, LLC ("Defendant" or "Zuffa") is a limited liability corporation existing under the laws of Nevada, with its principal place of business in Las Vegas, Nevada.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. Section 1332(d)(2)(A) because: (i) there are 100 or more class members, and (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs.

11.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the federal claim under the Video Privacy Protection Act.

12.      This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

13.      The Court has personal jurisdiction over Defendant because Defendant's principal place of business is in Las Vegas, Nevada and it conducts substantial business within the state of Nevada.

14.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of Nevada. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of Nevada. Defendant engaged, and continues to engage, in substantial and continuous business practices in the State of Nevada.

15.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of

Nevada, including within this District.

16.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

**SUBSTANTIVE ALLEGATIONS**

17.     Zuffa owns and operates the website ufcfightpass.com ("Fight Pass Website). Through the Fight Pass Website, Zuffa offers consumers a subscription to certain video content called the UFC Fight Pass. The UFC Fight Pass gives consumers access to videos of preliminary fights for pay-per-view events, past fights, original series and shows, and other UFC video content.

18.     Consumers who wish to sign up for a subscription to the UFC Fight Pass can do so by visiting the Fight Pass Website. To sign up for a UFC Fight Pass subscription, Zuffa presents consumers with a webpage that requires the consumer to select his or her desired UFC Fight Pass Plan on the Fight Pass Website in the following form:



19.     Zuffa offers two subscription options; one is a monthly plan of $9.99 a month and the other is an annual plan of $95.99 per year. Once consumers select their desired subscription plan, the website prompts consumers to provide their payment information as follows:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17          20.     After the consumer completes the subscription sign-up process, the user can then

18 access the UFC Fight Pass video content when they log in.

19          21.     At no point in time – during the subscription process or thereafter – does Zuffa

20 inform consumers that it discloses to Facebook their personal information, including their unique

21 Facebook ID and URLs with the titles of the videos they request or obtain, every time the

22 consumer watches a video through the UFC Fight Pass.

23          22.     At no point in time – during the subscription process or thereafter – does Zuffa

24 obtain consumers' informed, written consent to the disclosure of their personally identifiable

25 information to Facebook in a form distinct and separate from other forms setting forth other legal

26 or financial obligations of the consumer, such as its privacy policy or terms of use.

27          23.     At no point in time – during the subscription process or thereafter – does Zuffa

28 give consumers the right to elect between giving consent at the time of the disclosure or in

advance of a set period of time, not to exceed two years or until consent is withdrawn. Nor does

Class Action Complaint

Zuffa give consumers an opportunity, in a clear and conspicuous manner, for the consumer to withdraw from disclosures to Facebook on a case-by-case basis or to withdraw from ongoing Facebook disclosures at the consumer's election.  As such, Zuffa does not comply with its statutory obligations.

**Zuffa's Disclosure of Users' Video Watching History**

24.     Unbeknownst to consumers, Zuffa designed its UFC Fight Pass webpages to include Facebook JavaScript software code that causes the user's browser to communicate with Facebook when the user loads one of the UFC Fight Pass webpages. Although consumers watching videos on the UFC Fight Pass intend to and reasonably expect that they are communicating with Zuffa, this code enables Facebook's computer network to collect and track information about the consumer's behavior on the site. Thus, when a consumer logs into UFC Fight Pass and clicks on a video, Zuffa discloses simultaneously to Facebook, among other things: (1) the consumer's identity (through a Facebook ID); (2) the complete URL that the user visited, which includes the names of videos obtained or requested; and (3) the fact that UFC Fight Pass and the particular webpage viewed by the consumer hosts video content. Through the JavaScript code, Zuffa knowingly discloses to Facebook the videos that each consumer with a Facebook account obtains or requests on the UFC Fight Pass.

25.     A Facebook ID is a unique identifier that Facebook assigns to every person who signs up for a Facebook account. With it, third parties can identify particular consumers and to obtain other sensitive information on their Facebook profiles, without consumers' knowledge or consent. A Facebook profile can also show other detailed information about a person, such as photos of the person, his or her city and state of residence, employer, job title, email address, birth date, gender, relationship status, family members, education history, and job history.

26.     When a consumer's information is sent to Facebook via the JavaScript code, Facebook utilizes the Facebook ID to obtain the identity of the consumer, and stores the information pertaining to his or her use of the Fight Pass Website on Facebook's servers associated with the Facebook ID. Facebook then uses that information to enable advertisers to

target ads to the consumer. Facebook summarizes how it receives information about consumers' activity off Facebook as follows:

**Here's How Activity is Shared with Facebook**

Jane buys a pair of shoes from an online clothing and shoe store.

The store shares Jane's activity with us using our business tools.

We receive Jane's off-Facebook activity and we save it with her Facebook account. The activity is saved as "visited the Clothes and Shoes website" and "made a purchase".

Jane sees an ad on Facebook for a 10% off coupon on her next shoe or clothing purchase from the online store.

(https://www.facebook.com/off_facebook_activity (last accessed 2/8/22).)

27.     Facebook provides comprehensive documentation to its advertising customers describing how to integrate the JavaScript code into their websites. Advertisers obtain the code by telling Facebook which website events they want to track (i.e., purchases, additions to cart, and/or product views) and Facebook returns corresponding Facebook code for the advertiser to incorporate into its website.

28.     Generally, when a consumer with a Facebook account obtains or requests videos from the Fight Pass Website, the webpage containing the video loads and the Facebook JavaScript code on that page causes the user's browser to send to Facebook: (1) the URL of the webpage hosting the video, including the name of the video; (2) information disclosing that the URL hosts video content; and (3) the user's Facebook ID. This is done through a "GET Request," which is a message sent from the user's web browser to Facebook's server.

29.     By way of example, when a consumer uses the Fight Pass Website to browse to a video of the fight between Silvana Gomez Juarez and Vanessa Demopoulos, the Facebook JavaScript code executes a GET request to Facebook's tracking URL "https://www.facebook.com/tr", and sends to it various querystring parameters and cookie values simultaneously, including the following:

| Querystring | Description | Example from the Juarez-Demopoulos |
|---|---|---|

| Parameter / Cookie Value | | Video |
|---|---|---|
| c_user | the unique Facebook ID of the user | *<<varies depending on who views the video>>* |
| dl | the URL that the user has visited | https://ufcfightpass.com/video/286731/silvana-gomez-juarez-vs-vanessa-demopoulos-ufc-270?playlistId=9119 |
| ts | the Unix timestamp corresponding to the exact time the user viewed the video | *<<varies depending on when the user views the video>>* |
| cd[Meta] | metadata corresponding to the type of content that the user has viewed | {"title":"Video - UFC Fight Pass"} |

**Both Facebook and Zuffa benefit from the sharing of data**

30.     Zuffa and Facebook both profit from the data derived from Zuffa's use of the Facebook JavaScript code. The code allows Facebook to amass an incredible amount of data on users by tracking, among other things, the webpages that they visit, including the webpages that host video content, and how long a user views each webpage. The more Facebook learns about user, the more it can develop a picture about who the user is, and the more it can target ads to the user.

31.     The data is also valuable to Zuffa. Facebook explains that the JavaScript code and Facebook's advertising system "allow you to show targeted ads to people who have already visited your site" and "[y]ou can choose to get really granular here."[2]

32.     Targeted advertising plays an important role in generating profits for Zuffa.  There are a variety of ways in which Zuffa can use the data. For example, because the UFC Fight Pass does not include pay-per-view main event fights, people who have the UFC Fight Pass have to pay additional fees to watch those fights. With the information obtained with the Facebook JavaScript code, Zuffa can send targeted Facebook ads to its users in an effort to convince them to buy pay-per-view events related to prior events they have viewed.

---

[2] https://www.facebook.com/business/m/one-sheeters/facebook-pixel-events#:~:text=Autologged%20Events,measurement%2C%20optimization%2C%20and%20insights.

33.     Facebook further tells its advertising customers that when its JavaScript code is integrated into the website, it "will log when someone takes an action on your website. Examples of actions include adding an item to their shopping cart or making a purchase." The code "receives these actions, or events" which the customer (Zuffa) can view on its Events Manager page. On that page, Facebook's customers can "see the actions that your customers take" and can "reach those customers again through future Facebook ads."[3]

34.     Facebook designs the Facebook JavaScript code such that the webpages that a user views are sent to Facebook. It explains: "page views on your website are automatically logged and collected for Facebook Analytics unless you disable automatic event logging."[4] The event is helpful to Facebook for "targeting, measurement, optimization, and insights."

35.     Thus, Zuffa could have stopped sending Facebook information about the webpages that hosted videos that users view on the UFC Fight Pass by disabling the automatic logging of the page views. But Zuffa chose not to. Instead, it knowingly sent Facebook information about videos users request or obtain because it is profitable for it to do so.

**PLANTIFF'S EXPERIENCE**

36.     Plaintiff Everett Bloom has paid for a monthly subscription to the UFC Fight Pass since at least December 2021.

37.     After Plaintiff subscribed to the UFC Fight Pass, he watched multiple videos of fights and other content offered through the UFC Fight Pass on his laptop computer and other devices. Plaintiff had a Facebook account before he subscribed to the UFC Fight Pass. Consequently, Plaintiff's personally identifiable video information, including his Facebook ID and the URLs with the name of video content he watched and/or obtained were disclosed to Facebook as described above.

---

[3] https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last accessed 2/9/22).
[4] https://www.facebook.com/business/m/one-sheeters/facebook-pixel-events#:~:text=Autologged%20Events,measurement%2C%20optimization%2C%20and%20insights. (last accessed 2/9/22).

38.     Although Plaintiff was not aware of it at the time, after he logged into his UFC Fight Pass, the web pages on the UFC Fight Pass contained Facebook JavaScript code, which caused his browser to load and execute the code. Although it was not disclosed to Plaintiff, every time he clicked on a link to a page that hosted video content with the UFC Fight Pass, the Facebook JavaScript code: (i) caused his browser to establish a connection with Facebook's computer network; and (ii) sent to Facebook Plaintiff's Facebook ID and the URL of the webpage hosting the video content, which included the name of the video he obtained or received. Thus, every time Plaintiff requested or obtained videos within the UFC Fight Pass, his private information was sent to Facebook's computer network, where it was stored, analyzed, and/or processed.

39.     Plaintiff recently logged into his Facebook account and looked at his "Off-Facebook Activity." It revealed that "ufcfightpass.com" is sharing his information with Facebook.

40.     A person can identify Plaintiff with his Facebook ID by simply typing into a web browser www.facebook.com/[id-number], replacing "[id-number] with Plaintiff's Facebook ID number. Doing so reveals his Facebook profile page and name.

41.     Plaintiff did not provide consent to Defendant to share his personally identifiable video information with Facebook. Plaintiff also did not provide consent to Zuffa to share with Facebook his Facebook ID and URLs with the name of the videos he received or obtained through the UFC Fight Pass. When Plaintiff clicked on links to video content within the UFC Fight Pass, he did not know that Zuffa would share with Facebook information sufficient to show what videos he personally received or obtained on the UFC Fight Pass.

42.     At no time during the checkout process did Zuffa obtain Plaintiff's informed, written consent in a form that was separate and distinct from other forms setting forth Plaintiff's other legal and financial obligations to Zuffa, such as the privacy policy and terms of use. Zuffa also never disclosed to Plaintiff during the checkout process that it would share with Facebook information sufficient to show what videos he personally received or obtained on the UFC Fight Pass.

43.     Zuffa's privacy policy does not mention the Facebook JavaScript code or the fact that Zuffa discloses to Facebook the UFC Fight Pass users' identities and every video the users

request or obtain on the Fight Pass Website. While Zuffa's privacy policy states that it provides certain users' information to third parties including "social media companies (such as Facebook)," it does not state that it shares with Facebook every video a user requests or obtains. In fact, Zuffa tells users that "we do not provide them with your name, financial information, or any sensitive information" but instead "use online identifiers such as email, cookie addresses, and device identifiers". Zuffa does not disclose that it shares the Facebook ID, which is not an email, cookie address or device identifier and can be directly correlated with the user's name and other identifying information. Zuffa's use of the Facebook JavaScript code as alleged herein also violates Zuffa's privacy policy by disclosing consumers' sensitive information, including consumers' Facebook IDs, and information about the videos consumers request or obtain.

44.     Zuffa also does not allow users to opt out of the disclosure to Facebook of their video watching history. Zuffa's privacy policy tells users that they may "opt out of targeted advertising" by using four different links. However, none of those links applies to the Facebook JavaScript code. Thus, even if a user clicks on the links and follows the instructions to purportedly opt out, the user will not opt out of Zuffa's use of the Facebook code. The Facebook code will remain active and continue to share users' Facebook ID and the videos they obtain or request with Facebook.

45.     Finally, the privacy policy identifies a number of "categories of personal information collected" which include "online identifiers" and "browsing history." However, the privacy policy does not disclose that Zuffa shares such information with Facebook or that fact that it specifically shares users' Facebook IDs and the names of videos users watch on UFC Fight Pass.

46.     Had Plaintiff known that Zuffa would share his personally identifiable information along with the UFC Fight Pass videos he received or obtained with Facebook, Plaintiff would not have subscribed to the UFC Fight Pass or, at a minimum, paid less for the UFC Fight Pass.

47.     As a result of Zuffa's misrepresentations and omissions, the UFC Fight Pass has no value, or, at a minimum, a much lower value to Plaintiff.

48.     Plaintiff and members of the Class have been economically damaged by their purchase of Fight Pass because their personally identifiable information is being disclosed without their consent; therefore, the UFC Fight Pass is worth less than what Plaintiff and members of the Class paid for it.

## CLASS ALLEGATIONS

49.     Plaintiff brings this class action lawsuit on behalf of himself and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following groups of similarly situated persons, defined as follows:

The Nationwide Class:

All natural persons in the United States who subscribed to the UFC Fight Pass for personal use and had their Facebook ID and URL(s) of video content they received or obtained through the UFC Fight Pass sent to Facebook between March 4, 2020 and the present.

The California Class:

All natural persons in California who subscribed to the UFC Fight Pass for personal use and had their Facebook ID and URL(s) of video content they received or obtained through the UFC Fight Pass sent to Facebook between March 4, 2018 and the present.

50.     This action has been brought and may properly be maintained as a class action against Zuffa because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable. Class members can be easily identified through Defendant's records.

51.     Numerosity: Plaintiff does not know the exact size the two Classes, but he estimates that they are each composed of more than 100 persons. The persons in the Classes are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

52.     Common Questions Predominate: This action involves common questions of law and fact to the potential Classes because each Class member's claims derive from the same

unlawful practices of Zuffa. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Classes to recover. The questions of law and fact common to the Nationwide Class include:

    a.  Whether Zuffa embedded the Fight Pass Website with Facebook JavaScript code;

    b.  What information Zuffa disclosed to Facebook concerning Nationwide Class members' video viewing history;

    c.  Whether information Zuffa disclosed to Facebook concerning Nationwide Class members and their video viewing history constitutes personally identifiable information under the VPPA;

    d.  Whether Zuffa's disclosure of Nationwide Class members' personally identifiable information to Facebook was knowing under the VPPA;

    e.  Whether Nationwide Class members consented to Zuffa's disclosure of their personally identifiable information to Facebook in the manner required by 18 U.S.C. § 2710(b)(2)(B);

    f.  Whether the Nationwide Class is entitled to damages as a result of Zuffa's conduct;

    g.  Whether Nationwide Class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

    h.  Whether Class members are entitled to payment of actual and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

53.    Similarly, questions of law and fact common to the California Class include:

    a.  Whether Zuffa embedded the Fight Pass Website with Facebook JavaScript code;

    b.  What information Zuffa disclosed to Facebook concerning California Class members' video viewing history;

    c.  Whether Zuffa disclosed "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by" Zuffa to "any person other than the individual who is the subject of the record" as provided under Cal. Civ. Code § 1799.3, *et seq*;

d.   Whether California Class members consented in writing to Zuffa's disclosure as provided under Cal. Civ. Code § 1799.3, *et seq*;

e.   Whether Zuffa invaded California Class members' privacy interests;

f.   Whether Zuffa violated the federal and California laws alleged herein;

g.   Whether Zuffa's conduct was unlawful as provided in Cal. Bus. & Prof. Code § 17200, *et seq;*

h.   Whether Zuffa's conduct was unfair as provided in Cal. Bus. & Prof. Code § 17200, *et seq;*

i.   Whether Zuffa's conduct was fraudulent as provided in Cal. Bus. & Prof. Code § 17200, *et seq;*

j.   Whether California Class members are entitled to damages as a result of Zuffa's conduct;

k.   Whether California Class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

l.   Whether California Class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

54.   Typicality: Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Zuffa in violation of law as complained of herein. Further, the damages of each member of the Classes were caused directly by Zuffa's wrongful conduct in violation of the law as alleged herein.

55.   Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all Class members because it is in his best interest to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which he complains. Plaintiff also has no interest that is in conflict with, or antagonistic to, the interests of Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the Classes. By prevailing on his own claims, Plaintiff will

establish Zuffa's liability to all Class members. Plaintiff and his counsel have the necessary

financial resources to adequately and vigorously litigate this class action, and Plaintiff and

counsel are aware of their fiduciary responsibilities to Class members and are determined to

diligently discharge those duties by vigorously seeking the maximum possible recovery for Class

members.

56.    Superiority: There is no plain, speedy, or adequate remedy other than by

maintenance of this class action. The prosecution of individual remedies by members of the class

will tend to establish inconsistent standards of conduct for Zuffa and result in the impairment of

Class members' rights and the disposition of their interests through actions to which they were

not parties. Class action treatment will permit a large number of similarly situated persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of effort and expense that numerous individual actions would engender.

Furthermore, as the damages suffered by each individual member of the class may be relatively

small, the expenses and burden of individual litigation would make it difficult or impossible for

individual members of the class to redress the wrongs done to them, while an important public

interest will be served by addressing the matter as a class action.

57.    Plaintiff is unaware of any difficulties that are likely to be encountered in the

management of this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**
**PLAINTIFF'S FIRST CAUSE OF ACTION**
**Violation of the Video Privacy Protection Act (the "VPPA"), 18 U.S.C. § 2710**
**(On Behalf of Plaintiff and the Nationwide Class)**

58.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

as if set forth herein.

59.    The VPPA prohibits a "video tape service provider" from knowingly disclosing to

any person "personally identifiable information concerning any consumer" without the "in-

formed, written consent (including through an electronic means using the Internet) of the con-

sumer." 18 U.S.C § 2710. Defendant violated the VPPA by knowingly disclosing such

"personally identifiable information" to Facebook.

60. Defendant is a "video tape service provider" as defined in 18 U.S.C. §2710(a)(4) because it is "engaged in the business, in or affecting interstate or foreign commerce," of selling and delivering audiovisual materials including, UFC fights and other original content, through its UFC Fight Pass, to Plaintiff and the Nationwide Class members.

61. Plaintiff and Nationwide Class members are "consumers" as defined in 18 U.S.C. §2710(a)(1) because they subscribed to the UFC Fight Pass from Defendant. Plaintiff subscribed to the UFC Fight Pass and watched video content Defendant provided through the UFC Fight Pass.

62. Defendant knowingly disclosed personally identifiable information concerning Plaintiff and Nationwide Class members to Facebook, including their Facebook ID's and the name of the videos requested and/or obtained, each time Plaintiff and the Nationwide Class members requested or obtained video content from the UFC Fight Pass.

63. This information constitutes personally identifiable information under 18 U.S.C. §2710(a)(3) because it identified each Plaintiff and Nationwide Class member to Facebook as an individual who requested or obtained the named video content from Defendant. Further, an ordinary person could identify another person with their Facebook ID.

64. Zuffa's transmissions of Plaintiff's personally identifiable information to Facebook constitutes "knowing[] disclosures" of Plaintiff's "personally identifiable information" to a person as proscribed by the VPPA. 18 U.S.C. § 2710(a)(1).

65. Zuffa knew that these disclosures identified Plaintiff and Nationwide Class members to Facebook as individuals having requested or obtained specific videos from Zuffa because, *inter alia*, Zuffa chose, programmed, and intended for Facebook to receive in simultaneous communications (1) users' Facebook IDs, (2) the URLs of the websites that users visited which included the names of videos requested and/or obtained, and (3) the fact that the website viewed contained video content. Zuffa understood that Facebook could then, to advance Zuffa's business purposes and otherwise, serve targeted ads to individuals based on the videos they requested and/or obtained, which necessarily required Facebook to know which customers requested and/or obtained which videos. Zuffa knew its disclosures to Facebook identified Plaintiff and Nation-

wide Class members to Facebook as individuals having requested or obtained specific video materials from Zuffa.

66.     Plaintiff and Nationwide Class members did not provide to Defendant and Defendant did not otherwise obtain their informed written consent, in a form distinct and separate from any form setting forth their other legal or financial obligations, to disclose the video content Plaintiff and Nationwide Class member received or obtained through the UFC Fight Pass.

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**Violation of Cal. Civ. Code § 1799.3**
**(On Behalf of Plaintiff and the California Class)**

67.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

68.     Cal. Civ. Code § 1799.3(a) prohibits a "person providing video recording sales or rental services" from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person other than the individual who is the subject of the record, without the written consent of that individual."

69.     Zuffa is a "person providing video recording sales or rental services" under Cal. Civ. Code § 1799.3(a) because it is engaged in the business of providing video rental services.

70.     Zuffa voluntarily subjected itself to California law by enrolling consumers who it knew had billing addresses in California into its subscription for the UFC Fight Pass, providing California consumers content, and disclosing California consumers' data to Facebook.

71.     Zuffa willfully disclosed information that identified Plaintiff and the California Class members to Facebook as individuals having requested or obtained video materials from the Fight Pass Website, including their Facebook IDs and the names of the videos they obtained. The information that Zuffa shared with Facebook constitutes: (1) personal information of Plaintiff and the California Class, and/or (2) the contents of a record concerning Plaintiff and the California Class that Zuffa prepared or maintained.

72.     Plaintiff and the California Class did not consent, in writing or otherwise, to Zuffa's disclosure of their personally identifiable information and video history to Facebook.

Zuffa's disclosure of this information to Facebook violated Cal. Civ. Code § 1799.3(a).

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**Invasion of Privacy Under California's Constitution**
**(On Behalf of Plaintiff and the California Class)**

73.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

74.     California's constitution in Article 1, section 1 creates a right to privacy, and further creates a right of action against private entities such as Zuffa that violate those privacy rights.

75.     The principal purpose of this constitutional right is to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Zuffa.

76.     To plead a California constitutional privacy claim, a plaintiff must show an invasion of (i) a legally protected privacy interest; (ii) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (iii) conduct by the defendant constituting a serious invasion of privacy.

77.     Zuffa has intruded upon the following legally protected privacy interests of Plaintiff and the California Class members: (i) the VPPA as alleged above; (ii) Cal. Civ. Code § 1799.3 as alleged above; and (ii) the California Constitution, which guarantees Californians the right to privacy.

78.     Plaintiff and California Class members had a reasonable expectation of privacy. They directed their electronic devices to access the Fight Pass Website. When they watched videos on the Fight Pass Website, they did not reasonably expect that Zuffa would disclose their personally identifiable information and video history to a third-party (i.e., Facebook) without their prior informed consent.

79.     Zuffa's actions constituted a serious invasion of privacy in that it invaded a zone of privacy protected by the California Constitution (i.e., one's personal communications) and violated laws protecting against the wrongful disclosure of such information. These acts constitute an egregious breach of social norms that is highly offensive.

80.     Zuffa's intentional intrusion into Plaintiff's and the California Class members' privacy was also highly offensive to a reasonable person in that Zuffa violated civil laws designed to protect individual privacy and disclosed Plaintiff's and the California Class members' personally identifiable information.

81.     Plaintiff and the California Class members have been damaged by Zuffa's invasion of their privacy and are entitled to just compensation and injunctive relief.

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**Violation of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

82.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

83.     Zuffa is a "person" under Cal. Bus. & Prof. Code § 17201.

84.     Zuffa created and implemented a scheme to disclose Plaintiff's and California Class members' personally identifiable information and video history through a pervasive pattern of false and misleading omissions. Zuffa concealed and failed to disclose to the California Class members the following facts: (i) that the UFC Fight Pass website contains Facebook JavaScript code that enables Facebook and Zuffa to track California Class members' behavior; (ii) that Zuffa would share the California Class members' personally identifiable information as defined under the VPPA with Facebook through the Facebook JavaScript code; (iii) that the California Class members had a statutory right to opt out from ongoing disclosures or on a case-by-case basis; and (iv) that both Zuffa and Facebook would use the information shared with Facebook target ads to the California Class Members.

85.     These omissions were misleading and deceptive.

86.     Zuffa's conduct was unfair and unconscionable, particularly because Zuffa disclosed information that Plaintiff and the California Class members reasonably believed to be private. Unbeknownst to Plaintiff and the California Class members and without their consent, Zuffa shared their personally identifiable information and video history with Facebook without their

informed written consent. Upon information and belief, Facebook, in turn, shares Plaintiff's and the California Class members' data with other third parties.

87.     Zuffa's conduct was fraudulent and deceptive because the omissions at issue were likely to, and in fact did, deceive reasonable consumers, including Plaintiff and the California Class members. Reasonable consumers, including the California Class members, would have found it material to their purchasing decisions that Zuffa would disclose their private information without their consent. Knowledge of these facts would have been a substantial factor in the California Class members' decisions to engage in the financial transactions described herein.

88.     Zuffa owed the California Class members a duty to disclose these facts because they were exclusively known and/or accessible to Zuffa, who had superior knowledge of its activities with respect to the private information of Plaintiff and California Class members; because Zuffa had a statutory obligation to disclose such facts; because Zuffa concealed the facts; and because Zuffa intended for consumers to rely on the omissions in question.

89.     As set forth above, in engaging in financial transactions with Zuffa by purchasing the UFC Fight Pass, Plaintiff and the California Class members relied on Zuffa's omissions. Reasonable consumers would have expected Zuffa to comply with its statutory obligations and disclose the fact that it shares personally identifiable information and video history in a form separate from its other forms, as is required under the VPPA. Plaintiff and the California Class members relied on the omissions because Zuffa failed to make statutorily required disclosures and obtain their informed written consent.

90.     Further, a reasonable consumer would deem Zuffa's disclosure of the Facebook IDs and information disclosing videos requested and/or obtained to Facebook important in determining whether to purchase the UFC Fight Pass from Zuffa because it infringes upon his or her personal privacy and contravenes his or her reasonable expectation that Zuffa would not disclose such information without permission. A reasonable consumer also would value the UFC Fight Pass less if he or she knew that Zuffa would disclose his or her personally identifiable information and video history to Facebook.

91.     Zuffa has engaged, and continues to engage, in unlawful practices as described herein, in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), by, without limitation, violating the following statutes: VPPA, 18 U.S.C. § 2710; and Cal. Civ. Code § 1799.3. Zuffa's conduct was also unlawful because it intruded upon Plaintiff's and the California Class members' seclusion and violated the California Constitution by invading Class members' privacy, as described above, and because it violated its own privacy policy, as described above.

92.     Zuffa engaged in conduct that is unfair and unconscionable because its activities with respect to Plaintiff and Subclass members' private information offends public policy, is immoral unethical, oppressive, outrageous, unscrupulous, and substantially injurious, and has caused substantial harm that greatly outweighs any possible utility from the conduct.

93.     Zuffa's conduct actually and proximately caused Plaintiff and the California Class members to lose money or property. Had Plaintiff and those similarly situated been adequately informed and not deceived by Zuffa, they would have acted differently by, without limitation: (i) declining to purchase the UFC Fight Pass, or (ii) paying less for the UFC Fight Pass.

94.     Plaintiff seeks, on behalf of himself and those similarly situated, equitable relief, including restitution for the premium and/or the full price that he and others paid as result of Zuffa's conduct. Plaintiff and the California Class members lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct.

95.     Plaintiff also seeks equitable relief, including restitution, with respect to his UCL unlawfulness claims for violations of the VPPA and his UCL "fraudulent" claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the California Class members may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law. For example, Plaintiff and the California Class members

may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea*, because the UCL imposes no such *mens rea* requirement and liability exists even if Zuffa acted in good faith.

96.     Plaintiff seeks, on behalf of himself and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

97.     Plaintiff seeks, on behalf of himself and those similarly situated, an injunction to prohibit Zuffa from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Zuffa, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Zuffa will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Zuffa to which they were not entitled. Plaintiff, those similarly situated and/or other California consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, respectfully requests that the Court enter judgement against Defendant as follows:

A.     Certification of the proposed Nationwide Class and California Class, including appointment of Plaintiff's counsel as class counsel;

B.     An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.     An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.     An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.     An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.      An award of treble damages, except for those causes of action where treble damages are not legally available;

G.      An award of restitution in an amount to be determined at trial;

H.      An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.      For reasonable attorneys' fees and the costs of suit incurred; and

J.      For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: March 4, 2022

MARKMAN LAW

*/s/David Markman*
David Markman (Nevada Bar No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile:  702-843-6010

**GUTRIDE SAFIER LLP**
Seth A. Safier (*pro hac vice forthcoming*)
 seth@gutridesafier.com
Marie A. McCrary (*pro hac vice forthcoming*)
 marie@gutridesafier.com
Hayley Reynolds (*pro hac vice forthcoming*)
 hayley@gutridesafier.com
KALI BACKER (*pro hac vice forthcoming*)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiffs

Class Action Complaint