**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile: 702-843-6010

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (admitted pro hac vice)
seth@gutridesafier.com
MARIE A. MCCRARY (admitted pro hac vice)
marie@gutridesafier.com
HAYLEY REYNOLDS (admitted pro hac vice)
hayley@gutridesafier.com
KALI BACKER (admitted pro hac vice)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS, Esq. (Nevada Bar No. 5549)
jcw@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

**WILSON SONSINI GOODRICH & ROSATI**
**Professional Corporation**
VICTOR JIH (admitted *pro hac vice*)
vjih@wsgr.com
SUSAN K. LEADER (admitted *pro hac vice*)
sleader@wsgr.com
ALI RABBANI (admitted *pro hac vice*)
arabbani@wsgr.com
STEPHANIE V. BALITZER (admitted *pro hac vice*)
sbalitzer@wsgr.com
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

*Attorneys for Defendant Zuffa, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

EVERETT BLOOM, on behalf of himself, and those similarly situated,

        Plaintiff,

   v.

ZUFFA, LLC,

        Defendant.

Case No. 2:22-cv-00412-RFB-BNW

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

1.    **PURPOSE AND DEFINITIONS**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. As used in this Order, the term "Party" refers to both Plaintiff Everett Bloom and Defendant Zuffa, LLC (collectively, the "Parties").

2.    **COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to meet and confer in good faith throughout the matter, including with respect to the proportionality of discovery, identifying appropriate limits to discovery, making reasonable efforts to ensure discovery of relevant information, and communicating regarding discovery issues.

3.    **ESI LIAISONS**

Within 14 days after entry of this Order, the Parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. The Parties may subsequently substitute such designated persons or identify additional persons knowledgeable about ESI. Such persons will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. These liaisons will be available as needed to confer about ESI and to help resolve disputes without Court intervention.

4.    **PRESERVATION**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

(a)    The Parties agree that they are not obligated to preserve ESI created or received before March 4, 2018 and after March 4, 2022 in this matter;

(b)    Within 30 days of entry of this Order, the Parties will meet and confer regarding (i) the types of ESI they believe should be preserved, and (ii) the number and identity of custodians, including the general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "Senior Marketing Manager," "Lead Product Manager," and "Director – Customer

Service." The Parties shall meet and confer in order to add, remove, or modify custodians as reasonably necessary;

(c)      The Parties will meet and confer and use best efforts to agree on data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), in which case the Parties will not be obligated to preserve, collect, search, review, or produce ESI from these sources;

(d)      Among the sources of data the Parties agree are not reasonably accessible, the Parties agree not to preserve the following: backup systems and/or tapes used for disaster recovery; systems no longer in use that cannot be accessed; voicemail systems; instant messaging; SMS or text messaging, including but not limited to text messaging via WhatsApp and other similar applications; automatically saved versions of documents; random access memory (RAM) or temporary files; temporary internet files, history, cache, and other online access data; data in metadata fields that are updated automatically, such as last-opened dates; server, system, or network logs; mobile devices, personal digital assistants, and tablets; and personal, noncompany-owned electronic storage devices and servers; and

(e)      As additional data sources are identified as a result of investigation and/or discovery, the Parties may identify additional data sources that are not reasonably accessible or otherwise may or may not need to be searched or preserved. The Parties will meet and confer and use best efforts to agree about whether to preserve such ESI as any additional data sources are identified.

**5.      SEARCH**

The Parties agree to meet and confer and use their reasonable best efforts to reach agreement regarding the methodology to be used to search for ESI in response to Fed. R. Civ. P. 34 requests, before such methodology is used, in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

The Parties do not currently intend to use technology assisted review ("TAR"). To the extent a Party later decides to use TAR, they will disclose to the other party relevant details around deployment of the tool or tools it intends to use.

Nothing in this Order shall be construed as precluding a producing party from performing a privilege review to determine if certain documents should be withheld.

The Parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

### 6. PRODUCTION FORMATS

With the exception of spreadsheets, multi-media files, and other file types that cannot be converted to image files, the Parties shall produce ESI as Bates-stamped single-page 1-bit TIFF images with a DAT load file that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is not reasonably legible, the producing party shall provide a higher quality replacement file.

(a)     *Production Media*. The Parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native files. The Production Media shall identify: (a) the producing party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

(b)     *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (*e.g.*, ABC000001.TIFF). The Bates number must appear on the face of the image and not obliterate, conceal, or interfere with any information from the source document. Native files shall be produced using a name that will bear the production number and any confidentiality designation (*e.g.*, ABC000002_Confidential.xls).

(c)     *Parent-Child Relationships*. Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

(d)     *Redactions*. If the Parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s). If documents that the Parties have agreed to produce in native format need to be redacted, the Parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained.

(e)     *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

(f)     *Metadata Fields*. The Parties shall provide the system generated and metadata fields (the "Production Fields") substantially similar to those set forth in **Exhibit A**.  The Parties are not obligated to manually populate any Production Fields if such fields cannot be extracted from a document.

(g)     *Native Format*. The producing party shall produce spreadsheets (*e.g.*, Excel), multi-media files, and any other file types not readily convertible to TIFF format (*e.g.* three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Exhibit A. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating,

"File Provided Natively" (or substantially similar). Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the Parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The Parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

(h)    *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (*e.g.*, ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions.

(i)    *Physical/Hard Copy Documents*. Nothing herein shall relieve the Parties of any obligations they may have to search for responsive documents in hard copy form. The Parties shall produce documents that exist solely in physical hard-copy format following this ESI Stipulation. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The documents should be logically unitized using reasonable best efforts. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(j)    *Databases and Other Structured Data*. To the extent a response to discovery requires production of ESI contained in a database, the Parties shall meet and confer regarding the production format and scope of data contained in the enterprise database or database management system (*e.g.*, Oracle, SQL server, DB2), including the types of information stored in the database(s), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving party will need any information in native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden. To avoid doubt,

information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.

(k)     *Duplicates*. The producing party may use software to identify duplicate documents that are in files of individual or multiple custodians. To the extent there are duplicate documents, the producing party need only produce a single copy of a responsive document.  The requesting party may reasonably request a duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the CUSTODIAN field should list each custodian, separated by a semicolon.

(l)     *Email Threading*. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

**7.    PHASING**

The Parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases, by prioritizing selected sources and/or custodians.

**8.    DOCUMENTS PROTECTED FROM DISCOVERY**

(a)     Pursuant to Fed. R. Evid. 502(d) and (e), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

(b)    The producing party shall also provide a privilege log containing the categories, or fields, of information identified in Exhibit B hereto, to the extent available, unless otherwise agreed in writing or pursuant to a Court order.

(c)    Communications involving a party's counsel (including all attorneys, staff or other personnel) that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

(d)    Nothing in this ESI Stipulation shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

## 9.    MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**ORDER**

**IT IS SO ORDERED**

**DATED:** 3:50 pm, July 26, 2022

**BRENDA WEKSLER**
**UNITED STATES MAGISTRATE JUDGE**

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: July 22, 2022

By: /s/Anthony J. Patek
**GUTRIDE SAFIER LLP**
Seth Safier (admitted pro hac vice)
Marie A. McCrary (admitted pro hac vice)
Hayley Reynolds (admitted pro hac vice)
Kali Backer (admitted pro hac vice)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiff

By: /s/Ali Rabbani
**WILSON SONSINI GOODRICH &**
**ROSATI**
**Professional Corporation**
VICTOR JIH (admitted *pro hac vice*)
vjih@wsgr.com
SUSAN K. LEADER (admitted *pro hac vice*)
sleader@wsgr.com
ALI RABBANI (admitted *pro hac vice*)
arabbani@wsgr.com
STEPHANIE V. BALITZER (admitted *pro hac vice*)
sbalitzer@wsgr.com
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

**CAMPBELL & WILLIAMS**
J. Colby Williams, Esq. (Nevada Bar No. 5549)
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

Attorneys for Defendant Zuffa, LLC

**Exhibit A**
**Production Fields**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| BEGBATES | Bates number assigned to the first page of the document. |
| ENDBATES | Bates number assigned to the last page of the document. |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (i.e., should be the same as BEGDOC of the parent document, or PARENTDOC). |
| ENDATTACH | Bates number assigned to the last page of the last child document in a document family (i.e., should be the same as ENDDOC of the last child document). |
| ATTACHCOUNT | Number of attachments to an email. |
| FAMILY RANGE | Beginning page of parent document and ending page of attachment range. |
| NATIVEFILE | Relative file path of the native file on the production media. |
| CUSTODIAN | Includes the Individual (Custodian) from whom the document or file originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| FROM | Sender of the email. |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. |
| CC | All cc: members or recipients, delimited by ";" when field has multiple values. |
| BCC | All bcc: members or recipients, delimited by ";" when field has multiple values. |
| SUBJECT | Subject line of the email. |
| DATE/TIME SENT | Date and time that an email was sent (MM/DD/YYYY hh:mm:ss AM/PM). |
| ATTACHMENTS | List of filenames of all attachments, delimited by";" when field has multiple values. |
| FOLDERLOC | Original path of the produced document. |
| FILENAME | Filename of electronic document. |
| FILEEXT | File extension of electronic document. |
| TITLE | Document title (if entered). |
| AUTHOR | Any value populated in the author field of the document properties. |
| DATECREATED | Date that a document was created. |
| DATEMOD | Date that an electronic document was last modified (MM/DD/YYYY). |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| FILESIZE | Original file size in bytes. |
| MDHASH | MD5 hash value computed from native file (a/k/a file fingerprint). |

**Exhibit B**
**Privilege Log Fields**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| PrivLog # | Generic field for tracking purposes (i.e. 1, 2, 3). |
| Begin Bates | Beginning Bates number of document. |
| End Bates | Ending Bates number of document. |
| Document Type | General type of record (i.e., Outlook, PDF, PowerPoint Presentation). |
| Family Relationship | Parent, Child, or Standalone. |
| Date | The date of the parent document (for emails, this is date sent; for non-emails, this is date last modified). |
| Author | Author or sender of document (for emails, this is the From field; for non-emails, this is the person who created the file). |
| To | Derived from the To field. |
| CC | Derived from the CC field. |
| BCC | Derived from the BCC field. |
| Privilege Claimed | Type of privilege claimed (i.e., Attorney-Client or Attorney Client - Work Product, etc.). |
| Description | Description of Privilege Claim. |
| Treatment | How the document was treated with regards to production (i.e., Withheld or Redacted). |