**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS (Nev. Bar No. 5549)
jcw@cwlawlv.com
710 South 7th Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

**PAUL HASTINGS LLP**
SUSAN K. LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI R. RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
STEPHANIE V. BALITZER (*admitted pro hac vice*)
stephaniebalitzer@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

*Attorneys for Defendant,* Zuffa, LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EVERETT BLOOM, JACK GRAHAM, AND DAVE LINDHOLM, on behalf of themselves, and those similarly situated,

Plaintiffs,

v.

ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC.

Defendants.

Case No.: 2:22-cv-00412-RFB-BNW

**DEFENDANT ZUFFA, LLC'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFF EVERETT BLOOM TO PRODUCE ADDITIONAL DOCUMENTS AND INTERROGATORY RESPONSES**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Zuffa, LLC ("Zuffa") hereby does move the Court, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and Local Rule 26-6, to compel Plaintiff Everett Bloom to produce additional documents in response to Zuffa's First Set of Requests for Production of Documents ("Requests for Production") and supplement his responses to Zuffa's First Set of Interrogatories ("Interrogatories"). Counsel for Zuffa has met and conferred extensively with Plaintiff's counsel prior to bringing this motion.

Specifically, Zuffa moves to compel Plaintiff to provide complete responses to Interrogatories 1-8, and to produce documents pursuant to Requests for Production 6-15, 17, 22-25, 34, 36, and 39-40. The sought-after information and documents relate to Plaintiff's use of the UFC Fight Pass website, Facebook, and his browser and device settings. All of this information is relevant to Plaintiff's claims and Zuffa's defenses regarding whether there was any disclosure of Plaintiff's personally identifiable information ("PII") as alleged in his Complaint.

Under Local Rule 26-6(c) and Local Rule IA 1-3(f), Zuffa's counsel, Ali R. Rabbani, certifies that he has conferred with counsel for Plaintiff, Anthony J. Patek by email, letter, and telephone over the last few months. *See* Declaration of Ali Rabbani in Support of Zuffa's Motion to Compel ("Rabbani Decl."). On February 15, 2023, counsel conferred telephonically regarding these issues. *See id.* at ¶ 4. That same day, counsel for Zuffa also sent a letter to Plaintiff's counsel regarding the deficiencies in Plaintiff's written discovery responses. *See id.* at ¶ 5, Ex. D. The parties also exchanged emails regarding these discovery issues between February 15 and March 8. *See id.* at ¶¶ 4-7. The parties met and conferred telephonically for a second time on March 8. *See id.* at ¶ 7. Plaintiff's counsel sent a follow-up letter on March 9. *See id.* at ¶ 9, Ex. E. And after not receiving any supplemental discovery responses, Zuffa responded on April 7 with a follow-up letter demanding that Plaintiff produce documents and information by April 14. *See id.* at ¶ 9. Plaintiff never responded or provided a supplemental production. *See id.* In an effort to avoid burden to the Court, Zuffa engaged in subsequent discussions with Plaintiff's counsel between June 16, 2023 and June 23, 2023, during which Zuffa reemphasized that Plaintiff's refusal to

produce any data from his Facebook account was improper, especially in light of Plaintiff's motion to compel related information from Facebook. *See id.* at ¶¶ 10-11. Zuffa noted that Plaintiff's refusal to provide this key information was prejudicing Zuffa's ability to litigate this matter. Ultimately, none of the issues originally raised in Zuffa's February 15 letter were resolved, which necessitated the filing of this motion. *See id.* at ¶ 11.

This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities below, the Rabbani Declaration, all pleadings, records, and papers on file in this action, and such other further evidence and arguments as may be presented at the time of the hearing on this matter.

Dated: June 23, 2023

PAUL HASTINGS LLP

By: *_/s/ Susan K. Leader_*
Susan K. Leader
Ali R. Rabbani
Stephanie V. Balitzer

*Attorneys for Defendant Zuffa, LLC*

## TABLE OF CONTENTS


**Page**

I. BACKGROUND .......... 3

II. LEGAL STANDARD .......... 5

III. ARGUMENT .......... 6

- A. Plaintiff Should Be Ordered to Produce Additional Documents and Other Information Relating to His Facebook Account Activity and Settings. .......... 6
- B. The Court Should Order Plaintiff to Produce Information Relating to His Web Browser and Device Settings. .......... 12

IV. CONCLUSION .......... 17

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Aevoe Corp. v. AE Tech Co.*,
2013 U.S. Dist. LEXIS 121813 (D. Nev. Aug. 27, 2013) .......... 9

*In re Application of O'Keeffe*,
No. 214CV01518RFBCWH, 2016 WL 2771697 (D. Nev. Apr. 4, 2016) .......... 9

*Blankenship v. Hearst Corp.*,
519 F.2d 418 (9th Cir. 1975) .......... 9

*Caballero v. Bodega Latina Corp.*,
No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931 (D. Nev. July 25, 2017) .......... 6

*Cardoza v. Bloomin' Brands, Inc.*,
141 F. Supp. 3d. 1137 (D. Nev. 2015) .......... 5

*Daisy Tr. v. JP Morgan Chase Bank., N.A.*,
No. 2:13–cv–00966–RCJ–VCF, 2017 WL 3037427 (D. Nev. July 18, 2017) .......... 8

*F.D.I.C. v. Halpern*,
271 F.R.D. 191 (D. Nev. 2010) .......... 6

*Fosbre v. Las Vegas Sands Corp.*,
No. 2:10-cv-00765-APG-GWF, 2016 WL 54202 (D. Nev. Jan. 5, 2016) .......... 11

*In re Hulu Priv. Litig.*,
2014 WL 2758598 .......... *passim*

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) .......... 7, 8, 15

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*,
256 F.R.D. 678 (C.D. Cal. 2009) .......... 12

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007) .......... 7

*Shuffle Master, Inc. v. Progressive Games, Inc.*,
170 F.R.D. 166 (D. Nev. 1996) .......... 4

*Sinanyan v. Luxury Suites Int'l, LLC*,
No. 2:15-cv-225-GMN-VCF, 2016 WL 1171504 (D. Nev. Mar. 24, 2016) .......... 9

*Sprint Nextel Corp. v. Ace Wholesale, Inc.*,
No. 2:14-cv-2119-RFB-VCF, 2015 WL 3649623 (D. Nev. June 10, 2015) ............................ 5

*Sweeney v. UNLV Rsch. Found.*,
No. 2:09–cv–01167–JCM–GWF, 2010 WL 1756875 (D. Nev. Apr. 30, 2010) ...................... 9

*Teller v. Dogge*,
2013 WL 1501445 (D. Nev. Apr. 10, 2013) ........................................................................ 9

**Other Authorities**

1 Fed. R. Civ. P., Rules and Commentary Rule 33 ........................................................ 16, 17

8B Fed. Prac. & Proc. Civ. § 2206 (3d ed.) ............................................................................ 6

Fed. R. Civ. P.
33(b)(3) ........................................................................................................................ 6
34(b)(2) ........................................................................................................................ 6
37(a)(1) ........................................................................................................................ 6
37(a)(2)(B) .................................................................................................................. 4

LR 26–6(c) ................................................................................................................................ 4

Meta Platforms, Inc., Facebook Help Center,
https://m.facebook.com/help/2207256696182627?helpref=faq_content&_rdr
(last visited June 23, 2023) ................................................................................................ 10

Meta Platforms, Inc., Facebook Help Center,
https://m.facebook.com/help/289066827791446?_rdr (last visited June 23,
2023) .................................................................................................................................. 11

Meta Platforms, Inc., *Facebook Profiles*, Facebook Help Center,
https://m.facebook.com/help/211813265517027/?_rdr (last visited June 23,
2023) .................................................................................................................................... 8

Meta Platforms, Inc., *Your Username*, Facebook Help Center,
https://m.facebook.com/help/1740158369563165/?helpref=hc_fnav&_rdr (last
visited June 23, 2023) ....................................................................................................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff Everett Bloom filed this putative nationwide class action alleging that Defendant Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC) ("Zuffa")[1] violated the Video Privacy Protection Act ("VPPA"), the California Constitution, and related California statutes by purportedly disclosing his Facebook ID and the URLs of video pages he accessed on the UFC Fight Pass website to Meta Platforms, Inc. ("Meta" or "Facebook").[2] While Zuffa adamantly denies these allegations, determining whether Plaintiff's information was ever disclosed to Meta depends on records in his sole possession. Yet Plaintiff has refused to produce documents and other information directly relevant to this inquiry based on nothing more than boilerplate objections. To date, Plaintiff has produced ***only 16 documents*** and has made clear that he will not produce any additional documents in response to the overwhelming majority of Zuffa's First Set of Requests for Production ("Requests for Production" or "RFP"). Plaintiff has also refused to answer many of Zuffa's First Set of Interrogatories ("Interrogatories"), and where he did respond, he provided incomplete and unresponsive answers. Accordingly, Zuffa moves to compel Plaintiff to produce additional documents and information responsive to Zuffa's discovery in advance of Plaintiff's deposition and Zuffa's deadline to oppose class certification.

Specifically, Zuffa seeks two categories of information that go to the heart of this case:

1. Records of Plaintiff's Facebook account activity and settings; and
2. Documents and other information regarding the web browsers and devices Plaintiff used to access his Facebook accounts and videos on the UFC Fight Pass website.

Zuffa seeks this information because Plaintiff's claims—and class certification arguments—turn on whether Zuffa disclosed his personally identifiable information ("PII") to Meta, including the

[1] Mr. Bloom recently filed an amended complaint adding two new defendants (Endeavor Streaming, LLC and Endeavor Group Holdings, LLC) and two new proposed class representatives. Since this motion relates to Zuffa's discovery dispute with Mr. Bloom only, references herein to "Plaintiff" are to Mr. Bloom.

[2] Meta, formerly known as Facebook, Inc., owns Facebook, Instagram, and WhatsApp, among other products and services.

Facebook "c_user" cookie (which allegedly contains Plaintiff's unique Facebook ID). But determining whether this information was actually disclosed to Meta requires evidence of Plaintiff's Facebook, web browser, and device settings.

For example, Facebook allows users to choose whether it can receive information from other websites by enabling or disabling the "Off-Facebook Activity" setting. Moreover, Facebook only temporarily places the c_user cookie on a user's web browser when that user logs into the Facebook website, and the lifetime of the cookie depends on whether the user activates the "keep me logged in" setting. Thus, to determine whether Plaintiff's activity on the UFC Fight Pass website caused the transmission of Facebook cookies to Meta, Plaintiff must show that he did not disable "Off-Facebook Activity," and that he accessed a video on the UFC Fight Pass website while logged into Facebook or shortly thereafter if he activated "keep me logged in."[3]

In addition, many web browsers block cookies by default, while others give users the option to block and clear cookies. Web browsers also allow users to install third-party extensions that block cookies. Similarly, some devices limit the number of days that cookies can be stored and give users the option to opt out of third-party tracking. In fact, ***Plaintiff himself admits that "certain browsers and add-on software may block third-party cookies" and speculates that "perhaps 30% of total tracking was lost due to cookie blockers."*** Pl.'s Mot. for Class Cert. at 14-15.[4] Therefore, Plaintiff will also need to show that his web browser and device settings did not block or clear the Facebook cookies at issue.

---

[3] Even though Plaintiff refuses to produce his own Facebook records, he has filed a Motion to Compel against Meta in the Northern District of California seeking *Meta's* records relating to his Off-Facebook Activity. *See In re Subpoena to Meta Platform, Inc.*, Case No. 3:23-mc-80127-LJC, ECF No. 1. But, as discussed below, Plaintiff's third party discovery does not absolve him of his obligations to produce information relevant to the parties' claims and defenses.

[4] On June 9, 2023, Plaintiff's counsel e-mailed some (but not all) of Zuffa's counsel of record copies of Plaintiff's Motion for Class Certification and the corresponding Motion to Seal. *See* ECF No. 55 (Plaintiffs' Proof of Service). However, since Plaintiff's Motions do not appear on the docket in this action, Zuffa refers herein to the copy of Plaintiff's Motion for Class Certification that it received by e-mail. To the extent Plaintiffs' Motions were not properly filed with the Court, Zuffa reserves the right to challenge them on those grounds.

There can be no dispute that this information is highly relevant. ***Plaintiff acknowledges in his Motion for Class Certification that "Zuffa will argue that individualized questions exist as to whether 'personally-identifiable information' was disclosed due to discrepancies in subscribers' browsers, devices, privacy settings, and the possible use of cookie-blocking add-on software."*** Pl.'s Mot. for Class Cert. at 14. Yet, despite recognizing that this information is critical to Zuffa's defenses, Plaintiff has refused to produce any documents or other information that could potentially support Zuffa's arguments against class certification or the merits of Plaintiff's claims.

The reason for Plaintiff's evasive discovery tactics is clear: courts have ruled that these types of individualized issues preclude class certification under the VPPA. *See, e.g.*, *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 2758598, at *22 (N.D. Cal. June 17, 2014) (denying class certification where "substantial issues about remaining logged into Facebook and clearing and blocking cookies mean that the court cannot conclude on this record that the common issues predominate over the individual ones"). But Plaintiff's boilerplate objections do not (and cannot) justify his refusal to provide the very information that could support the existence of individualized issues here. Moreover, the burden on Plaintiff to produce this information is minimal. Such information is easily accessible to Plaintiff and his counsel on the Facebook website and by reviewing the settings on Plaintiff's devices and web browsers, and Plaintiff has already admitted to using only four devices, three web browsers, and two Facebook accounts.

For these reasons, as discussed in greater detail below, the Court should order Plaintiff to produce additional documents and information in response to Zuffa's Requests for Production and Interrogatories in advance of Plaintiff's deposition and Zuffa's deadline to oppose class certification.

## I. BACKGROUND

On December 5, 2022, Zuffa served its Requests for Production, seeking, among other things, documents relating to (a) Plaintiff's Facebook accounts, (b) the devices and browsers Plaintiff used to access video web pages on the Fight Pass website, (c) Plaintiff's Fight Pass

subscription, (d) any efforts Plaintiff has made to opt out of Meta Pixel tracking, Facebook's targeted advertising, or Zuffa advertising, and (d) the allegations in his complaint.[5] *See generally* Rabbani Decl. at ¶ 2. On January 25, 2023, Plaintiff provided his initial responses and objections to those Requests for Production, asserting a host of boilerplate objections. *Id.* ¶ 3, Ex. A. In fact, he only agreed to produce documents in response to 11 of Zuffa's 55 document requests. *Id.*

Zuffa also served its Interrogatories on December 5, 2022, which sought similar information. *See id*. On January 25, 2023, Plaintiff provided his initial responses and objections to those Interrogatories, again asserting a host of boilerplate objections, and only partially responded to the substance of Zuffa's interrogatories. *Id*., Ex B.

Zuffa met and conferred extensively with opposing counsel regarding Plaintiff's deficient responses. *See* Fed. R. Civ. P. 37(a)(2)(B); LR 26–6(c); *Shuffle Master, Inc. v. Progressive Games, Inc.,* 170 F.R.D. 166, 171-172 (D. Nev. 1996). On February 15, 2023, Zuffa sent a letter and met and conferred with Plaintiff's counsel by phone regarding the deficiencies in Plaintiff's responses to Zuffa's Interrogatories and Requests for Production. *Id.* at ¶ 3, 4, 5. During that conversation and subsequent emails, Plaintiff's counsel represented that they were "working on getting additional documents from the plaintiff to address the concerns Zuffa raised, particularly with regard to Facebook history and settings." *Id.* at ¶ 4.

On February 17, 2023, Plaintiff produced its first (and only) set of documents—a total of 16 documents consisting of 36 pages. That production included (a) Plaintiff's engagement agreement with his counsel, (b) a subpoena to Facebook and related correspondence with Facebook's counsel, (c) documents reflecting his Fight Pass subscription payments or cancellations, and (d) a single screenshot from an unspecified Facebook account. *Id.* at ¶ 6.

On March 8, 2023, the parties again met and conferred by phone, and the next day Plaintiff's counsel followed up with a response letter. *See id.* at ¶¶ 7-8. Although that letter stated

---

that Plaintiff intended to supplement its discovery responses, Zuffa only ever received a single Facebook ID and nothing more.

On April 7, 2023, Zuffa sent an additional letter requesting that Plaintiff produce the requested documents and information by April 14, 2023. *Id.* at ¶ 9; *see also Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d. 1137, 1145 (D. Nev. 2015) (parties and their counsel should strive to be cooperative during discovery and should only seek judicial intervention "in extraordinary situations that implicate truly significant interests"). Plaintiff did not respond.

On April 25, 2023, Plaintiff filed a motion to compel against Meta in the Northern District of California seeking, among other things, Meta's records relating to Plaintiff's Off-Facebook Activity on the UFC Fight Pass website. *Id.* at ¶ 10.

Plaintiff's counsel has taken the position that the discovery at issue in this Motion is "irrelevant" in light of Plaintiff's subpoena to Meta. However, it recently came to light that the earliest date for which Meta has potentially responsive records is June 19, 2021. *Id.* While Meta has yet to produce any documents in response to Plaintiff's subpoena, the fact that Meta only has records for a fraction of the proposed class period undermines any argument that Plaintiff does not need to produce his own Facebook records.

In June 2023, the parties again met and conferred by email and phone to discuss these issues. *Id.* at ¶ 11. However, Plaintiff continues to refuse to produce the documents Zuffa seeks here.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows discovery of any non-privileged information that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action[.]" Fed. R. Civ. P. 26(b)(1); *see also Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 2:14-cv-2119-RFB-VCF, 2015 WL 3649623, at *3-4 (D. Nev. June 10, 2015). Relevancy is defined broadly—it means any evidence that appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P.

26(b)(1). Next, whether the information is proportional to the needs of the case depends on (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*; *see also Caballero v. Bodega Latina Corp.*, No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931, at *2 (D. Nev. July 25, 2017).

Interrogatories must be answered separately, fully, and in writing. Fed. R. Civ. P. 33(b)(3). The responding party must conduct a search for relevant information and must answer interrogatories after a diligent search. *See F.D.I.C. v. Halpern*, 271 F.R.D. 191, 193-94 (D. Nev. 2010). Thus, a responding party "cannot limit its interrogatory answers to matters within its own knowledge and ignore information immediately available to it or under its control." *Id.* at 193.

"Any document or thing that is relevant to the claim or defense of any party may be inspected pursuant to Rule 34 unless it is privileged, or it has been prepared in anticipation of litigation or for trial, or it reveals facts known and opinions held by experts, or there are special reasons why inspection would cause annoyance, embarrassment, oppression, or an undue expense burden." 8B Fed. Prac. & Proc. Civ. § 2206 (3d ed.). If a party intends to withhold documents, it should specify the materials withheld on the basis of an objection. *See* Fed. R. Civ. P. 34(b)(2). Where—as here—a party fails to adequately respond to an interrogatory (under Rule 33) or a document request (under Rule 34), Federal Rule of Civil Procedure 37(a) permits a party, "[o]n notice to other parties and all affected persons" to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

## III. ARGUMENT

### A. Plaintiff Should Be Ordered to Produce Additional Documents and Other Information Relating to His Facebook Account Activity and Settings.

Zuffa moves to compel Plaintiff to produce additional documents and other information relating to his Facebook account activity and settings in response to Interrogatory Nos. 6, 7, and 8

and RFP Nos. 11-15, 17, 22-25, 34, 36, and 39-40.[6] These requests seek highly relevant information and documents. Indeed, Plaintiff's Facebook activity and account settings could demonstrate that Plaintiff's data could not have been transmitted to Meta, as he contends.[7] *See generally In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1094 (N.D. Cal. 2015). Yet, although this information is within Plaintiff's sole possession and readily available, Plaintiff has refused to produce such information to Zuffa based on nothing more than boilerplate objections. Further, Plaintiff has argued that he does not need to supply information regarding *his own* Facebook accounts because "Plaintiff's counsel is making a good faith effort to obtain further Meta documentation." Rabbani Decl., ¶ 8, Ex. E. But, as discussed above, Meta has yet to produce any records in response to Plaintiff's subpoena, and Meta's counsel has noted that Meta does not have the requested records for the vast majority of the proposed class period. Moreover, the information that Zuffa seeks is in Plaintiff's possession, custody, or control, and Plaintiff cannot delegate his discovery obligations to third parties. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (explaining that there is no reason to burden a third party when the information sought is the possession of a party). Accordingly, Plaintiff should be ordered to produce all responsive documents and other information in response to Zuffa's Interrogatories and Requests for Production.

1. <u>Interrogatory No. 6 and RFP Nos. 11 and 25</u>

Interrogatory No. 6 and RFP No. 11 ask Plaintiff to identify the username and Facebook ID for all of his Facebook accounts, and RFP No. 25 seeks documents sufficient to show the

---

[6] In accordance with LR 26-6(b), the full text of the discovery Zuffa originally sought and Plaintiff's responses are set forth in the attached Appendix.

[7] Plaintiff contends that his Facebook ID was disclosed to Meta by virtue of a Facebook "c_user" cookie when he navigates to the Fight Pass website. ECF No. 47 ¶ 35 (alleging Defendants "disclose simultaneously to Facebook . . . (1) the consumer's identity (through a Facebook ID); (2) the complete URL that the user visited").

Facebook profiles for each of those accounts.[8] According to Facebook, a username is the "website address for your profile or page," and a "User ID is a string of numbers that doesn't personally identify you."[9] This information is plainly relevant because Plaintiff's use of Facebook is central to his claim that Zuffa allegedly caused the transmission of his Facebook ID to Meta, and that third parties can purportedly utilize this information to identify sensitive information about him. *See, e.g.*, First Amended Complaint, ECF No. 47 ¶ 35 (alleging that Zuffa disclosed Plaintiff's Facebook ID to Meta), ¶ 37 (alleging that Facebook IDs permit third parties to "identify particular consumers and to obtain other sensitive information on their Facebook profiles"). Although Plaintiff has already identified the username and Facebook ID for his personal Facebook account in response to Interrogatory No. 6, he has refused to identify this information for his other "non-personal" accounts. According to Plaintiff, "accounts used for non-personal purposes" are "irrelevant to this case" because he is "not claiming any privacy violations associated with any professional account." Rabbani Decl., ¶ 8, Ex. E. But even though Plaintiff's claims are not based on his non-personal Facebook accounts, *all* of Plaintiff's Facebook accounts are potentially relevant to Zuffa's defenses and therefore within the scope of discovery. For example, if Plaintiff was logged into a non-personal Facebook account when he accessed videos on the UFC Fight Pass website, his personal Facebook ID could not have been disclosed at that time. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1093-94 (explaining that a c_user cookie is associated with a currently logged-in user's Facebook user ID). Thus, Plaintiff should be ordered to identify the username and Facebook ID for all of his Facebook accounts.

Plaintiff has also improperly refused to produce any documents sufficient to show his Facebook accounts and profiles in response to RFP Nos. 11 and 25. But Plaintiff's boilerplate relevance, burden, and privacy objections are without merit. *See Daisy Tr. v. JP Morgan Chase*

---

[8] Zuffa has narrowed these requests to seek only information about Plaintiff's Facebook accounts and profiles, while reserving the right to seek information about Plaintiff's other Meta accounts at a later time.

[9] *See How Usernames and user IDs are used on Facebook Profiles*, Facebook Help Center, https://m.facebook.com/help/211813265517027/?_rdr (last visited June 23, 2023).

*Bank., N.A.*, No. 2:13–cv–00966–RCJ–VCF, 2017 WL 3037427, at *2 (D. Nev. July 18, 2017) ("Boilerplate, generalized objections are inadequate and tantamount to making no objection at all."). As noted, these requests are highly relevant to both Plaintiff's claims and Zuffa's defenses. There is also no burden on Plaintiff given the small number of Facebook accounts at issue and the fact that this information is within his sole possession. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (parties resisting discovery carry the heavy burden of showing why discovery should be denied); *Teller v. Dogge*, 2013 WL 1501445, at *1 (D. Nev. Apr. 10, 2013) ("The party opposing discovery has the burden of showing that the discovery is irrelevant, overly broad, or unduly burdensome."). Finally, it is not clear what privacy interest Plaintiff has in his Facebook usernames, and Plaintiff also has not explained how providing this information infringes upon his privacy rights. *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-cv-225-GMN-VCF, 2016 WL 1171504, at *3 (D. Nev. Mar. 24, 2016) (rejecting privacy interest as reason for withholding discovery "particularly where the objecting party fails to state why or how the document is confidential nor cite any relevant federal discovery authority which upholds such an assertion of confidentiality and that discovery or review of such a document is precluded"); *Aevoe Corp. v. AE Tech Co.*, 2013 U.S. Dist. LEXIS 121813, *6 (D. Nev. Aug. 27, 2013) ("The relatively remote potential for inadvertent disclosure of confidential documents does not justify the withholding of discovery altogether."). Not only has Plaintiff failed to provide any detail or authority to support his privacy claims, but ultimately he cannot block discovery on matters he put into dispute. *In re Application of O'Keeffe*, No. 214CV01518RFBCWH, 2016 WL 2771697, at *5 (D. Nev. Apr. 4, 2016) (no privacy or confidentiality privilege where discovery concerns "matters that a party places in controversy"). To the extent any of Plaintiff's documents are indeed private, they will be adequately protected by the parties' protective order or redactions. *See Sweeney v. UNLV Rsch. Found.*, No. 2:09–cv–01167–JCM–GWF, 2010 WL 1756875, at *4 (D. Nev. Apr. 30, 2010).

Accordingly, Plaintiff's objections should be overruled and he should be ordered to produce documents responsive to Requests for Production Nos. 11 and 25.

2. Interrogatory No. 7

Interrogatory No. 7 asks Plaintiff to identify the dates he created, deactivated, or deleted his Facebook accounts. Although Plaintiff confirmed that he has not deleted his personal Facebook account, he has refused to identify the date he created that account and whether it has ever been deactivated because he "believe[s] this information is irrelevant to his claims." *See* Rabbani Decl. at ¶ 3, Ex. B; ¶ 8, Ex. E (asserting that because Bloom has "publicly visible" accounts *today*, Plaintiff does not need to provide the specific dates that all of his accounts were created, deactivated, or deleted). But this information is directly relevant to the core question in this case: whether (if ever) Zuffa disclosed Plaintiff's purported PII to Meta. Therefore, Zuffa is entitled to know when Plaintiff created his Facebook accounts, and whether Plaintiff has ever deactivated those accounts during the proposed class period. After all, Zuffa could not have disclosed Plaintiff's Facebook ID if his Facebook account was deactivated at the time. Thus, Plaintiff should be ordered to identify the dates he created, deactivated, or deleted all of his Facebook accounts.

3. Interrogatory No. 8 and RFP Nos. 12-14, 22-24, and 39-40

RFP Nos. 12-14, 22-24, and 39-40 seek information and documents regarding Plaintiff's Facebook account activity and settings. For one, Zuffa seeks records of Plaintiff's privacy settings. One such preference called "Off-Facebook Activity" allows Facebook users to prevent Facebook from collecting information from their interactions with other websites.[10] Relatedly, the "Off-Facebook Activity" report shows a summary of information Facebook received on other apps and websites. *Id.* Zuffa also seeks username and log-in settings that would reveal whether Plaintiff has changed his username(s) over time,[11] and whether he activated the "keep me logged in" setting. Further, Zuffa has requested Plaintiff's "Activity Log"—which is a readily-downloadable report

---

[10] *See Review your Off-Facebook activity,* Facebook Help Center, https://m.facebook.com/help/2207256696182627?helpref=faq_content&_rdr (last visited June 23, 2023).

[11] *Your Username*, Facebook Help Center, https://m.facebook.com/help/1740158369563165/?helpref=hc_fnav&_rdr (last visited June 23, 2023).

of the device(s) and time(s) a Facebook user logged into their account, among other activity information.[12] Finally, Zuffa's requests sought information regarding any efforts Plaintiff made to opt out of Facebook tracking and targeted advertising.

This information is highly relevant. As noted above, to determine whether Plaintiff's activity on the Fight Pass website potentially caused the transmission of Facebook cookies to Meta, Plaintiff must show (among other things) that (1) he did not disable the "Off-Facebook Activity" setting during the time frame that he accessed a video on the UFC Fight Pass website, and (2) he accessed a video on the UFC Fight Pass website either while logged into Facebook on the same web browser or shortly thereafter if he active the "keep me logged in" setting. *See In re Hulu Priv. Litig.*, 2014 WL 2758598, at *5 ("according to Hulu's expert . . ., the c_user cookie would be cleared if the 'keep me logged in' box were not checked," among other reasons). But despite the clear relevance of these requests and minimal burden, Plaintiff has refused to produce any documents relating to his Facebook account activity and settings in response to RFP Nos. 12-14, 22-24, and 39-40. Once again, Plaintiff's objections should be overruled, and he should be ordered to produce all documents responsive to these requests. *See Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (the party opposing discovery bears the burden of showing "that discovery is irrelevant, overly broad, or unduly burdensome").

Plaintiff's response to Interrogatory No. 8 fairs no better. Although information about Plaintiff's Facebook settings could potentially moot Plaintiff's claims, he objects that the request is irrelevant and unduly burdensome. He argues that Zuffa should rely on the testimony he provides from memory at his deposition. And the response Plaintiff *does* provide is inadequate: he claims that he has "no memory of changing any privacy setting on any Meta-owned account relating to cookies and the UFC Fight Pass platform" and "no memory of asking or permitting

---

[12] *Find your Facebook activity log*, Facebook Help Center, https://m.facebook.com/help/289066827791446?_rdr (last visited June 23, 2023).

anyone else to change any such privacy setting." Rabbani Decl., ¶ 3 Ex. B. This response is deficient for several reasons. *First*, Plaintiff's response is improperly limited to privacy settings "relating to cookies and the UFC Fight Pass Platform" on Plaintiff's devices. But Zuffa seeks information regarding *any* Facebook privacy settings that could impact the transmission of his purported PII to Meta. For instance, Plaintiff's response does not make clear whether Plaintiff has the "Off-Facebook Activity" setting enabled or disabled. In fact, Plaintiff's counsel later admitted that "Plaintiff does not know which, if any, settings may affect the alleged data transfers beyond those directly relating to Fight Pass," which underscores the insufficiency of Plaintiff's response. *Id.* at ¶ 8, Ex. E. *Second*, Plaintiff's response is improperly based on his "memory" alone. Plaintiff has an affirmative duty to check the settings for his Facebook accounts—which are readily available to him and his counsel—in responding to Zuffa's requests. *See, e.g.*, *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009) ("A party has an obligation to conduct a reasonable inquiry into the factual basis of its discovery responses.").

4. <u>RFP Nos. 34 and 36</u>

RFP Nos. 34 and 36 seek the terms of any agreement Plaintiff entered into with Facebook. These documents are probative of Plaintiff's contractual relationship with Facebook (which is at the heart of this case) and are directly related to Zuffa's defense that Plaintiff consented to the alleged disclosures at issue. *See* Answer, ECF No. 19 at 13. Plaintiff has not produced any responsive documents to date, and contends that this information is equally available to Zuffa (even though Zuffa does not know what Facebook agreements Plaintiff consented to, or opted out from).

**B. The Court Should Order Plaintiff to Produce Information Relating to His Web Browser and Device Settings.**

Zuffa also moves to compel Plaintiff to produce additional documents and other information regarding the devices and browsers Plaintiff used to access video web pages on the

Fight Pass website, and their respective data privacy settings, data privacy software, and ad settings in response to Interrogatories Nos. 1, 2, 3, 4, and 5 and RFP Nos. 6, 7, 8, 9, 10, and 15. This information is plainly relevant. Simply put, if Plaintiff installed certain software or implemented certain settings on his browsers or devices, then he might have blocked the transmission of Facebook cookies. *See In re Hulu Priv. Litig.*, 2014 WL 2758598, at *8 ("Browsers allow users to block and clear cookies (including by setting privacy settings to clear cookies automatically) and to install plugin browser enhancements to configure the browser in many ways, including blocking traffic to a specific web domain."). Thus, Plaintiff's claims hinge on whether he utilized any of these tools.

In fact, Plaintiff himself acknowledges in his Motion for Class Certification that "Zuffa will argue that individualized questions exist as to whether 'personally-identifiable information' was disclosed due to discrepancies in subscribers' browsers, devices, privacy settings, and the possible use of cookie-blocking add-on software." Pl.'s Mot. for Class Cert. at 14. Still, without any specific showing of burden, Plaintiff refuses to produce complete, reliable information regarding the browsers and devices he used to access videos on the Fight Pass website. Plaintiff should be ordered to produce all responsive documents and other information in response to these Interrogatories and Requests for Production.

1. <u>Interrogatory Nos. 1 and 2</u>

Interrogatories 1 and 2 ask Plaintiff to produce information regarding the devices he used to access the Fight Pass website and then identify whether he used those same devices to access videos on the Fight Pass website. This information is relevant because Plaintiff claims that he accessed Fight Pass videos on a web browser that purportedly transmitted information via cookie(s) to Facebook. *See* ECF No. 47 ¶ 53 (alleging that "[a]fter Plaintiff Bloom subscribed to the UFC Fight Pass, he watched multiple videos of fights and other content offered through the UFC Fight Pass on his laptop computer and other devices, including through Chrome"). And

because certain devices and operating systems block web trackers, this information is also directly relevant to whether any disclosures took place.

Nonetheless, Plaintiff provided incomplete responses to these requests. In response to Interrogatory 1, Plaintiff listed browsers and devices that he used to access UFC Fight Pass. He did not provide any information about the operating systems of those devices. Although Zuffa provided information to Plaintiff's counsel about how different operating systems could limit the functionality of third party cookies, Plaintiff stood on his objections. Rabbani Decl. ¶ 9, Ex. F. And in response to Interrogatory 2**,** which asked whether Plaintiff used those devices to visit or load video pages on the Fight Pass website, Plaintiff answered that "to the best of his memory" he accessed video content on the "UFC Fight Pass platform." Plaintiff has not disputed that this response includes more than just the Fight Pass website (and therefore lacks sufficient specificity). *See id.* ¶ 8, Ex. E. Plaintiff should consult his device history to establish whether he actually accessed the Fight Pass website's video content from those devices.

2. Interrogatory No. 3 and RFP Nos. 15 and 17

Interrogatory 3 asked whether Plaintiff used the same devices to access Facebook.com as he used to access the Fight Pass website, while RFP Nos. 15 and 17 requested documents sufficient to identify the devices and browsers Plaintiff used to access Facebook. This information is relevant to whether there was any disclosure of information to Facebook as alleged in Plaintiff's complaint. Specifically, if Plaintiff did not use the same devices and browsers to log into Facebook (at around the same time) as he viewed videos on the Fight Pass website, then there could be no disclosure of PII via a Facebook cookie. *See In re Hulu Priv. Litig.*, 2014 WL 2758598, at *5 (explaining that a cookie could be sent "for Hulu users who watched a video on hulu.com having used the same computer and web browser to log into Facebook in the previous four weeks using default settings").

Although Plaintiff committed to supplementing his response "to clarify which devices he used to visit the Facebook web site," he never did so. Rabbani Decl. ¶ 8, Ex. E. Plaintiff should

be compelled to provide information sufficient to show whether he used Facebook on the same devices that he used to access Fight Pass videos.

3. Interrogatory Nos. 4 and 5 and RFP Nos. 6, 7, 8, 9, and 10

Interrogatory Nos. 4 and 5 and RFP Nos. 6, 7, 8, 9, and 10 ask Plaintiff to produce documents and information regarding Plaintiff's privacy settings and software on the devices and browsers he used to access the Fight Pass website, as well as related documents and communications. These requests go to the heart of Plaintiff's claims and Zuffa's potential defenses. Specifically, this information is relevant to Plaintiff's allegations that code on the Fight Pass website "causes" users' browsers to "communicate with Facebook when the user loads one of the webpages." See ECF No. 47 ¶ 5. That is because certain browsers, devices, as well as customizable settings and software for those devices and browsers can disable the transmission of cookies or tracking functionality such that there would be no disclosure of Plaintiff's Facebook ID as alleged in the complaint. Indeed, ***Plaintiff himself admits that "certain browsers and add-on software may block third-party cookies" and speculates that "perhaps 30% of total tracking was lost due to cookie blockers."*** Pl.'s Mot. for Class Cert. at 14-15. Such information was also essential in the *Hulu* court's resolution of class certification. *See In re Hulu Priv. Litig.*, 2014 WL 2758598, at *14 ("[C]lass members are those who actually had their PII transmitted to Facebook. That inquiry turns on whether the c_user cookie was sent to Facebook, which depends on a number of variables (including whether the user remained logged into Facebook, cleared cookies, or used ad-blocking software)."). Therefore, there can be no dispute that this information is highly relevant to the parties' claims and defenses—as well as class certification.

Specifically, Interrogatory 4 asked Plaintiff to identify any changes to device or web browsers or their settings that would block, modify, or delete cookies. As discussed in the *Hulu* case, users can activate certain web-privacy measures that limit the active lifespan of the cookies that lie at the heart of Plaintiff's contentions. *Id.* at *9 ("Hulu users could take standard web-privacy measures to limit the active lifespan of cookies including (1) using their browsers in

'incognito' mode, where no existing cookies from any websites can be accessed, and all cookies set during browsing sessions are deleted when the browser is closed (leading to the resetting of the datr cookie), and (2) deleting cookies either manually or by browser configuration, which has the same effect as browsing incognito."). Here, Plaintiff responded that he "has no memory of changing any privacy settings relating to cookies relating to the UFC Fight Pass platform on the devices identified," and "has no memory of asking or permitting anyone else to change any such privacy setting." Rabbani Decl. ¶ 3, Ex. B. This response is flawed because Plaintiff should actually consult his settings, rather than relying on his memory (especially since he admits he cannot rule out the possibility that someone changed these settings without his knowledge). *Id.,* ¶ 8, Ex. E. Further, Plaintiff's response does not respond to the question asked. He limits his response to "any privacy setting relating to cookies relating to the UFC Fight Pass platform," which is narrower than Zuffa's request. *Id.,* ¶ 3. Moreover, it is simply not clear what Plaintiff means by "privacy" setting or cookies "relating to the UFC Fight Pass platform." *Id.*; *cf.* 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 33 ("Courts expect parties to give real answers to the questions asked.").

Plaintiff's response to Interrogatory 5 is similarly problematic. That interrogatory asks Plaintiff to identify and describe any action to change device settings that relate to advertisement personalization, advertisement retargeting, cross-site tracking, or tracking pixels. The importance of this information is indisputable. *See, e.g.*, *In re Hulu Priv. Litig.*, 2014 WL 2758598, at *8 ("Browsers allow users to block and clear cookies (including by setting privacy settings to clear cookies automatically) and to install plugin browser enhancements to configure the browser in many ways, including blocking traffic to a specific web domain".). This time, Plaintiff responded even more vaguely that he has "no *specific memory* of changing any devices setting relating to tracking of his activity on the UFC Fight Pass platform on the devices identified," and "has no *specific memory* of asking or permitting anyone else to change any such device setting" (emphasis added). Rabbani Decl. at ¶ 8. Again, Plaintiff should not just rely on whether he has a "specific

memory," but should instead provide the requested information regarding his device settings. And, Plaintiff's response is narrower than Zuffa's request, as it is simply not clear what Plaintiff means by "tracking of his activity on the UFC Fight Pass platform." *See* 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 33 ("The answering party must construe the question fairly and not in a hypertechnical manner designed to justify not providing information that any reasonable reader would know was being sought.").

Finally, Plaintiff did not produce any documents in response to Requests for Production 6, 7, 9, or 10. These requests seek (a) documents related to any privacy, software, or ad settings on the devices and browsers Plaintiff used to access the Fight Pass website during the relevant time period, and (b) documents related to the specific web browsers Plaintiff used to access the Fight Pass website. These documents are relevant for the same reasons above. Though Plaintiff lodged objections to these document requests on the general grounds that they are ambiguous, burdensome, infringing on his privacy rights, and because they are "publicly available or not in his possession," he provides no specific reasoning to support those objections, and thus, those objections should be overruled.

## IV. CONCLUSION

For the reasons discussed above, Zuffa respectfully requests that the Court order Plaintiff to fully produce the documents and information in response to Zuffa's Requests for Production and Interrogatories.

Dated: June 23, 2023

PAUL HASTINGS LLP

By: /s/ Susan K. Leader
Susan K. Leader
Ali R. Rabbani
Stephanie V. Balitzer

*Attorneys for Defendant Zuffa, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on June 23, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

***/s/ Susan K. Leader***
Susan K. Leader

**INDEX**


| TAB | Document | Exhibit | Page |
|---|---|---|---|
| 1 | Declaration of Ali Rabbani in Support of Defendant Zuffa, LLC's Motion to Compel | Exhibit A –Plaintiff *Everett Bloom's* Responses and Objections to Defendant *Zuffa, LLC's* First Set of Requests for Production | 2 |
| | | Exhibit B – Plaintiff *Everett Bloom's* Responses and Objections to Defendant *Zuffa LLC's* First Set of Interrogatories | 43 |
| | | Exhibit C - March 1, 2023 Email from Plaintiff *Everett Bloom* to Defendant *Zuffa, LLC* | 58 |
| | | Exhibit D - February 15, 2023 Letter from Defendant *Zuffa, LLC* to Plaintiff *Everett Bloom* | 68 |
| | | Exhibit E - February 17, 2023 Production by Plaintiff *Everett Bloom* and Cover Email | 78 |
| | | Exhibit F - March 9, 2023 Letter from Plaintiff *Everett Bloom* to Defendant *Zuffa, LLC* | 83 |
| 2 | [Proposed] Order Granting Defendant Zuffa, LLC's Motion to Compel Plaintiff Everett Bloom To Produce Additional Documents And Interrogatory Responses | | N/A |