# EXHIBIT D

February 15, 2023 Letter from Defendant *Zuffa, LLC* to Plaintiff *Everett Bloom*

WILSON
SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation
1900 Avenue of the Stars
Floor 28
Los Angeles, California 90067
O: 424.446.6900

STEPHANIE V. BALITZER
Internet: SBALITZER@wsgr.com
Direct dial: 424.446.6912

February 15, 2023

Anthony J. Patek
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111

**Re: *Bloom v. Zuffa, LLC*, Case No. 2:22-cv-00412-RFB-BNW, Plaintiff's Responses to Zuffa's First Sets of Requests for Production and Interrogatories**

Dear Counsel:

We write pursuant to Local Rule IA 1-3(f) regarding Plaintiff's responses to Zuffa's First Set of Requests for Production and First Set of Interrogatories. As discussed below, Plaintiff's responses are deficient and violate Rules 33 and 34 of the Federal Rules of Civil Procedure. Unless Plaintiff agrees to supplement his responses and produce all non-privileged and responsive documents by March 15, 2023, we will seek recourse from the Court.

**Plaintiff's Responses to Interrogatories**

Interrogatory No. 1

This interrogatory seeks information about the devices that Plaintiff used to access UFC Fight Pass. Plaintiff's response fails to identify the operating systems and model numbers for some of Plaintiff's devices and current locations for all of Plaintiff's devices.

This information is relevant because the specific device that Plaintiff used to access UFC Fight Pass may impact whether there was any disclosure of information as alleged in Plaintiff's complaint. Given that Plaintiff contends that he watched videos through UFC Fight Pass "on his laptop computer and other devices" (Compl. ¶ 34), it is indefensible for

Plaintiff to refuse to provide basic information about those devices. There is no burden because Plaintiff has only identified four devices. Privacy is not a valid reason to withhold information as the parties already have a protective order.

Interrogatory No. 2

Interrogatory No. 2 asks whether Plaintiff used any of the devices identified in Interrogatory No. 1 to watch videos on the Fight Pass website. There are two problems with Plaintiff's response. First, the response is improperly qualified with "to the best of his memory." But any answer must be based on all information in Plaintiff's possession, custody or control (including, for example, the browsing history on his devices), whether or not Plaintiff recalls that information. Second, the answer is reworded in terms of the "UFC Fight pass platform." The interrogatory, however, seeks information regarding the UFC Fight Pass *website* (i.e., ufcfightpass.com). Therefore, Plaintiff must amend his response to identify whether any of the devices identified in Interrogatory No. 1 (including the specific browser used) were used to access videos on the UFC Fight Pass website during the proposed class period.

Interrogatory No. 3

This interrogatory seeks information about Plaintiff's use of Meta websites on the devices identified in response to Interrogatory No. 1. Plaintiff has not provided any response.

What devices Plaintiff used to visit Meta websites, such as facebook.com and instagram.com, is relevant to whether there was any disclosure of information to Facebook as alleged in Plaintiff's complaint. There is no burden because this interrogatory only requires Plaintiff to ascertain whether he accessed Meta websites on four devices (and the corresponding web browsers on those devices). Plaintiff is in the best position to provide this information, and this is the least burdensome approach assuming Plaintiff would prefer to avoid physical inspections of his devices. Plaintiff has not explained how providing this information to Zuffa infringes on his privacy rights. Finally, interrogatories with multiple subparts are permissible where, as here, those subparts pertain to the same subject matter (here, use of Meta websites on Plaintiff's devices).

Interrogatory No. 4

This interrogatory asks Plaintiff to provide information regarding the cookie settings on his devices. Plaintiff has responded that he "has no memory of changing any privacy settings relating to cookies relating to the UFC Fight Pass platform," or "asking or permitting anyone else to change any such privacy setting."

First of all, this information is relevant because it pertains to whether Plaintiff's devices blocked, deleted, or modified the cookies allegedly at issue in his complaint. Plaintiff's response is deficient for several reasons. The response should not be based solely on Plaintiff's memory; Plaintiff must rely on all information in his possession, custody, and control (including, for example, the current settings on the devices and browsers identified in response to Interrogatory No. 1). Plaintiff's response is also improperly limited to "privacy settings relating to cookies *relating to the UFC Fight Pass platform*"; but this is insufficient because Zuffa's request is not limited to the UFC Fight Pass platform. Settings that affect Facebook's cookies, for instance, would also be relevant. Moreover, this interrogatory is not burdensome because Plaintiff has only identified four devices and Plaintiff is in the best position to provide this information. Zuffa can seek a physical inspection of these devices, but it is simpler for Plaintiff to provide this information in the first instance. The subparts of this interrogatory are also proper because they address the common subject of the cookie settings on Plaintiff's devices. Finally, Plaintiff has not explained how providing this information to Zuffa infringes on his privacy rights.

Interrogatory No. 5

This interrogatory asks Plaintiff to provide information regarding the advertisement/tracking settings on his devices. Plaintiff responds that he has "no specific memory of changing any devices setting relating to tracking of his activity on the UFC Fight Pass platform."

Again, this information is relevant because it pertains to whether Plaintiff's devices blocked, deleted, or modified the technology allegedly at issue in his complaint. Plaintiff's response is deficient. Plaintiff's response should not be based on memory but rather all information in his possession, custody, and control (including, for example, his current

device settings). Plaintiff also improperly limits his response to "device[] setting[s] relating to tracking of his activity *on the UFC Fight Pass platform*"; but this is insufficient because Zuffa's request is not limited to the UFC Fight Pass platform. For example, settings that impact the Facebook Pixel on Plaintiff's devices would also be relevant. Moreover, this interrogatory is not burdensome because Plaintiff has only identified four devices and Plaintiff is in the best position to provide this information. Zuffa can seek a physical inspection of these devices, but it is simpler for Plaintiff to collect this information in the first instance. The subparts of this interrogatory are also proper because they address the common subject of Plaintiff's devices' privacy settings. Finally, Plaintiff has not explained how providing this information to Zuffa infringes on his privacy rights.

Interrogatory No. 6

Interrogatory No. 6 requests the usernames and user IDs for all of Plaintiff's Meta accounts. In response, Plaintiff provided only the usernames for two of his accounts (one for Instagram and one for Facebook), but stated that he would not provide any "accounts used for non-personal purposes" because they are "irrelevant to this case."

This information is clearly relevant to Plaintiff's allegation that his Facebook ID was disclosed to Facebook, and that third parties can use his Facebook ID to identify certain information about him. Even "accounts used for non-personal purposes" would be relevant to whether there was any disclosure of Plaintiff's personally identifiable information as alleged in Plaintiff's complaint. Plaintiff must therefore identify the username and user ID for *all* Meta accounts that Plaintiff used during the proposed class period. It is unclear how there is a burden associated with this request, given the small number of accounts at issue and the fact that Plaintiff is in the best position to provide such information. Finally, it is not clear what privacy interest Plaintiff has in his usernames and user IDs.

Interrogatory No. 7

Interrogatory No. 7 seeks information regarding the creation, deactivation, or deletion dates of Plaintiff's Meta accounts. Plaintiff has refused to answer this interrogatory on the grounds that it "is irrelevant to his claims."

This information is clearly relevant to Plaintiff's allegation that Zuffa disclosed his Facebook ID. Whether or not there was a disclosure of Plaintiff's Facebook ID depends on whether Plaintiff had any active Facebook accounts during the relevant time period. The burden involved is also unclear, as Plaintiff has only identified two Meta accounts. Plaintiff also has not explained how providing this information infringes upon his privacy rights. Accordingly, Plaintiff must provide the requested dates for each of his Meta accounts.

Interrogatory No. 8

Zuffa's Interrogatory No. 8 seeks information regarding Plaintiff's Meta account settings. Plaintiff responded that he "has no memory of changing any privacy setting on any Meta-owned account relating to cookies and the UFC Fight Pass platform on the devices identified in response to Interrogatory No. 1."

There are several issues with this response. For one, this response is improperly limited to privacy settings "relating to cookies and the UFC Fight Pass platform" on Plaintiff's devices. But Zuffa seeks information regarding *any* account settings relating to cookies, advertising, tracking, or Off-Facebook Activity, without limitation to cookies or the UFC Fight Pass platform. Second, this response is improperly qualified with to the best of his "memory," but Plaintiff must provide all information in his possession, custody, or control. At a minimum, Zuffa is entitled to Plaintiff's current settings. Additionally, there is no burden because Plaintiff only has a handful of Meta accounts and is in the best position to provide this information. Finally, the subparts of this interrogatory plainly address the same subject matter: Plaintiff's Facebook settings.

Interrogatory No. 9

Interrogatory No. 9 requests the facts and evidence showing the extent Plaintiff claims to have been injured by the conduct alleged in the complaint and the dollar amount of any such damages. Plaintiff's response refers to an undisclosed price premium and statutory damages.

Plaintiff's response confirms that he has no non-expert opinion evidence on this issue. Otherwise, Plaintiff should provide complete information related to the purported injury he suffered.

**Plaintiff's Responses to RFPs**

Plaintiff agreed to provide responsive documents for only 11 of Zuffa's 52 Requests for Production. *Cf. Burlington N. & Santa Fe R.R. Co. v. United States Dist. Court for the Dist. of Mont.,* 408 F.3d 1142, 1148 (9th Cir. 2005) (Excessive evasion or resistance to reasonable discovery requests pose significant problems). To date, Plaintiff has also failed to produce any documents or provide a reasonable timeline for production. As discussed below, Plaintiff's objections fail to justify his refusals to produce documents.

Boilerplate Objections

First, Plaintiff asserts boilerplate burden objections to nearly every request. *See* Resp. to RFP Nos. 2-34, 36, 38-45, 48, 49, 51. But given (a) the relevance of Plaintiff's devices, browsers, Facebook accounts, and the privacy settings for each of them, (b) the discrete set of documents being sought, and (c) the statutory damages sought in this case, the requested discovery is plainly proportional to the needs of this case. FRCP 26(b)(1); *see also Caballero v. Bodega Latina Corp.*, 2017 WL 3174931 at *2 (D. Nev. July 25, 2017). Plaintiff's burden objections are therefore without merit and he must make good faith efforts to search his documents and produce any relevant and responsive documents.

Second, Plaintiff contends that a host of Zuffa's requests infringe upon his privacy rights. *See* Resp. to RFP Nos. 6, 7, 9-14, 18, 21-25. But Plaintiff provides little more than boilerplate privacy objections to Zuffa's requests—without detail or citation to relevant authorities. *Sinanyan v. Luxury Suites Int'l, LLC*, 2016 U.S. Dist. LEXIS 38693, *8 (D. Nev. March 23, 2016) (rejecting privacy interest as reason for withholding discovery where the objecting party fails to state why or how the document is confidential nor cite any relevant federal discovery authority which upholds such an assertion of confidentiality and that discovery or review of such document is precluded."); *Aevoe Corp. v. AE Tech Co.*, 2013 U.S. Dist. LEXIS 121813, *6 (D. Nev. Aug. 27, 2013) (remote potential for disclosure of confidential documents does not justify withholding of discovery altogether). Further, Plaintiff cannot block discovery on matters he put into

controversy. *In re O'Keeffe*, 2016 U.S. Dist. LEXIS 53572, *13 (D. Nev. April 4, 2016) (no privacy or confidentiality privilege where discovery concerns "matters that a party places in controversy"). To the extent any of Plaintiff's documents are indeed private, they will be adequately protected by the parties' protective order or redactions. *See Sweeney v. UNLV Rsch. Found.*, 2010 WL 1756875, at *4 (D. Nev. Apr. 30, 2010).

RFPs Nos. 11-17, 24, 25, 34, 36, 39, 40, 41: Documents and Communications Relating to Plaintiff's Meta Accounts

These RFPs seek documents regarding Plaintiff's Meta accounts, their respective privacy settings, and his use of those accounts. Plaintiff has refused to produce any documents in response to these requests (outright or by directing Zuffa to its complaint or interrogatory responses).

Plaintiff's Facebook use and settings are plainly relevant, as there could be no disclosure of Plaintiff's Facebook ID as alleged in Plaintiff's complaint if, for example, Plaintiff changed certain settings or if he did not log into his Facebook accounts. Plaintiff has only identified two Meta accounts and thus it is not unduly burdensome to produce this information. Plaintiff also fails to elucidate the privacy interest implicated by his settings and the devices he used to access Meta accounts, particularly when the parties already have a protective order in place, and when he contends that some of this information is publicly available.

Plaintiff should provide a full and complete export of the requested information from his Facebook accounts. This does not require Plaintiff to "create" any documents.

RFP Nos. 6-10, 18: Documents and Communications Regarding Plaintiff's Devices

These RFPs seek documents and communications regarding the devices and browsers Plaintiff used to access video web pages on the Fight Pass website, and their respective data privacy settings, data privacy software, and ad settings. Plaintiff has refused to produce any documents in response to these requests (outright or by directing Zuffa to interrogatory responses).

This information is relevant to Plaintiff's allegations that code on the Fight Pass website "causes" users' browsers to "communicate with Facebook when the user loads one of the webpages." Certain browser and device settings and software can disable the transmission of cookies or tracking functionality such that there would be no disclosure of Plaintiff's Facebook ID as alleged in the complaint. None of these requests are unduly burdensome, as Plaintiff contends. With only four devices, Plaintiff could readily produce documents, such as print-outs showing his settings or software. Next, Plaintiff has provided no authority for why such information infringes on his privacy rights. These requests do not require Plaintiff to "create new documents" or analysis; Plaintiff can produce the settings (which currently exist on his devices) without "creating" anything. There is good cause for an inspection not only because the information is relevant but because Plaintiff refuses to produce any documents on these issues and contends he has no memory.

Plaintiff should produce the requested documents.

<u>Requests for Production Nos. 3, 4, 37, 38: Documents and Communications Regarding Plaintiff's Fight Pass Subscription</u>

These RFPs seek documents and communications relating to Plaintiff's Fight Pass subscription. Plaintiff refuses to provide a response to these requests.

Plainly, however, documents and communications relating to the Plaintiff's Fight Pass subscription, his use of the service, and his agreement to Fight Pass terms go to the core of Plaintiff's complaint and are central to Zuffa's defenses. At the very least, Plaintiff must make a good faith effort to search his documents. Speculation regarding "private discussions" that *might have* occurred is not sufficient to justify Plaintiff's refusal to respond.

Plaintiff should produce the requested documents, and run searches of his communications for "Fight Pass" and other relevant terms.

Requests for Production Nos. 19, 20, 28, 30, 31, 32, 33, 43: Documents and Communications Relating to Plaintiff's Allegations

These RFPs seek documents related to the allegations in Plaintiff's complaint. Plaintiff has not agreed to produce any documents in response to these requests primarily because they are purportedly "premature contention request[s] . . . better-suited for resolution at the end of discovery."

Zuffa disagrees. These are not contention requests because Plaintiff already makes these contentions in his complaint. In any case, contention discovery requests are appropriate and consistent with Rule 11 requirements that there be a legal and factual basis for claims included in pleadings. *See O'Connor v. Boeing North America*, 185 F.R.D. 272, 281 (C.D. Cal. 1999); *see also JP Morgan Chase Bank, N.A. v. Winget*, 2010 U.S. Dist. LEXIS 155081, at *4 (E.D. Mich. May 21, 2010) ("there is no substantive, meritorious reason for not allowing "contention" requests for production"). Plaintiff is obligated to conduct reasonable, good faith searches for responsive documents related to the issues relevant to his claims or Zuffa's defenses.

* * *

We remain hopeful that Plaintiff will produce the documents and information that are probative as to the issues in this case, and look forward to discussing these concerns with you this afternoon.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Stephanie Balitzer*

Stephanie Balitzer

cc: Victor Jih, Susan Leader, Ali Rabbani, Kelly Yin