# EXHIBIT E

March 9, 2023 Letter from Plaintiff *Everett Bloom* to Defendant *Zuffa, LLC*

GUTRIDE SAFIER LLP Attorneys at Law

March 9, 2023

**VIA EMAIL**

J. Colby Williams
jcw@cwlawlv.com
CAMPBELL & WILLIAMS
710 South 7th Street
Las Vegas, NV 89101

Victor Jih
vjih@wsgr.com
Susan K. Leader
sleader@wsgr.com
Ali Rabbani
arabbani@wsgr.com
Stephanie V. Balitzer
sbalitzer@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071-2027

**Re: *Bloom v. Zuffa, LLC*, Case No. 2:22-cv-00412-RFB-BNW, in the United States District Court, District of Nevada**

Dear Ali and Stephanie:

I write to respond to your last deficiency letter, particularly in view of our meet and confer yesterday. After going back and reviewing your February 2023 letter, the parties' productions to-date, and Mr. Bloom's responses, I do not believe that Plaintiff's interrogatory responses or production are as deficient as you made them out to be. While we are still trying to obtain and produce additional documents responsive to certain of your requests, it is not necessary to produce all documents you requested, nor to supplement most of Plaintiff's interrogatory responses. I discuss the various deficiencies you alleged below.

**Interrogatories**

Rog 1: Plaintiff responded with identification of four devices. Defendant complains that Mr. Bloom failed to identify the exact model number and operating system for each device. But the requested data are irrelevant; the pixels (and/or cookies) Zuffa implemented work identically across essentially all models of each individual identified computer and smartphone. To the extent the pixels Zuffa uses might not operate on a given platform (e.g., FireTV), they are presumably inoperative for all models of those devices. If Zuffa has information indicating otherwise (e.g., that some models of MacBook Pro block pixel and/or cookie tracking, while others do not), please identify the issue and evidence thereof. Otherwise, we do not see how the model number or operating system are relevant.

Rog 2: Again, Plaintiff responded by identifying that he has used all four of his devices to view UFC content. Zuffa's own records corroborate Bloom's response. See ZUFFA 0000008-31 [redacted]"). The fact that Mr. Bloom responded he used these devices to view the "UFC Fight Pass platform" is not a deficiency, as the platform includes the fightpass.com web site. Nor

is his responding "to the best of his memory" a deficiency. To the extent that Mr. Blook is stating that he has used all four devices to view UFC videos, there is no chance that he failed to identify any of those devices. And since Zuffa's own records corroborate his response, it is clear he is not lying. As such, there is no need to refer to his browsing history.

Rog 3: In this interrogatory, Defendant sought information regarding which devices Plaintiff used to access four Meta-owned web sites/platforms: Facebook, Instagram, Messenger, and WhatsApp. But Plaintiff alleges data sharing only through Facebook. As such, the other three web sites are irrelevant. Plaintiff offered to meet and confer to identify an appropriate scope of response. Plaintiff will supplement this response to clarify which devices he used to visit the Facebook web site, but sees no reason why the other three web sites are relevant.

Rog 4: This interrogatory asked Plaintiff to identify ***changes*** to Cookie settings, not "information regarding the cookie settings on his devices" as your February 15, 2023 letter misstates. Plaintiff has responded to the interrogatory as written. That he responded to the best of his memory is not improper. Nor does it necessarily mean he did not examine his current settings. Even if his current settings are at the default, that would not preclude the possibility that someone had changed them in the past without Mr. Bloom's knowledge. Plaintiff disagrees with Defendant's assertion that this response requires supplementation.

Rog 5. Again, this interrogatory asks Plaintiff to identify "***changes*** to device settings" relating to advertising, cross-site tracking, and tracking Pixels. Mr. Bloom has truthfully responded that, to the best of his memory, he has not made any changes, nor authorized anyone else to do so. This response implies all devices and browsers are using default settings. Contrary to Defendant's assertion that Plaintiff avoided responding with respect to pixels and the Fight Pass web site, this response is sufficient because Facebook pixel settings are within those "relating to tracking of his activity on the UFC Fight Pass platform," which includes the fightpass.com web site. This response is adequate and does not require supplementation.

Rog 6: Facebook & Instagram username and ID. Plaintiff has already responded with his usernames. He will supplement with his Facebook UserID, which, for purposes of facilitating the mediation, is [redacted]. Bloom is not claiming any privacy violations associated with any professional account. So even if there were disclosures associated with his non-professional accounts, that would be irrelevant to his claims in this lawsuit.

Rog 7: Dates of Facebook & Instagram account creation and deactivation/deletion. Plaintiff stated that he would meet and confer to identify what response, if any, was appropriate. Defendant's only offered basis for seeking this information appears to be an attempt to investigate whether Mr. Bloom had no Facebook or Instagram account at some point during the proposed Class period. But Mr. Bloom identified usernames for his Facebook and Instagram accounts, both of which are publicly visible. Clearly, he has not deleted either account. Furthermore, his Facebook account has a public post dated December 2017, which establishes it was created prior to the start of the proposed class period in 2018. Given that he had a Facebook account at all relevant times, it does not matter whether his Instagram account existed for the entire period. Plaintiff can supplement his response with this information to clarify that the accounts existed at all relevant times, but Defendant could have obtained this information easily without any interrogatory.

Rog 8: CHANGES to Meta account settings. Again, Mr. Bloom's response indicates no ***changes*** to the account settings, which is what the interrogatory sought. That it is to the best of Plaintiff's memory does not make the response inadequate. Limitation of this response to any "Meta-owned account relating to cookies and the UFC Fight Pass" is responsive to the interrogatory as written. The phrase "any privacy setting . . . relating to . . . the UFC Fight Pass platform" would include pixels. Zuffa is not entitled to the current settings in response to this

interrogatory because this interrogatory did not ask for his current settings; it asks him to identify any changes he made to the settings. He responded that he did not make any changes. To the extent the interrogatory seeks "any account settings" beyond those identified, it is vague and ambiguous; Plaintiff does not know which, if any, settings may affect the alleged data transfers beyond those directly relating to Fight Pass, has thus responded to the best of his ability.

Rog 9: Facts and Evidence Supporting Damages Claims. In response to this interrogatory, Plaintiff reiterated the facts identified in his initial disclosures and the Complaint, including the $9.99 subscription fee and his assertion that he would have paid less or not purchased the subscription if he had been aware of the privacy violations by Zuffa. To the extent Defendant asserts that Mr. Bloom has "no non-expert opinion evidence on this issue," it is misrepresenting his actual response to this interrogatory.

**<u>RFPs</u>**

With respect to RFPs, Defendant's characterization of Plaintiff's responses is inaccurate. Plaintiff did not refuse to produce documents to all but 11 of Defendant's 52 RFPs. Plaintiff concedes that his responses did not make clear that he would produce responsive, non-privileged documents for many of the RFPs, but he has produced documents responsive to many of the RFPs you raised in your letter.

With respect to RFPs Nos. 11-17, 24, 25, 34, 36, 39, 40, 41, Plaintiff has subpoenaed Meta for production of records pertaining to his account. Plaintiff has also produced Meta records confirming the existence of Mr. Bloom's Facebook account and the sharing of data with Facebook by UFC. See PLAINTIFF 0019-0031. Plaintiff's counsel is also making a good faith effort to obtain further Meta documentation from Plaintiff. To the extent Defendant asserts that Mr. Bloom may have set his account to avoid disclosure of UFC-related data to Facebook, Plaintiff notes that PLAINTIFF 026, which identifies "20+" events in which data was shared between UFC and Facebook, rebuts that possibility. Plaintiffs will produce further documents as they become available (e.g., Facebook documents corroborating UFC-related off-Facebook activity tracked by Facebook as a result of Zuffa's implementation of the Facebook pixel(s)).

RFP Nos. 6-10 and 18 seek documents sufficient to identify Plaintiff's electronic devices used to access FightPass.com and Facebook.com, as well as other Meta websites. These requests are superfluous given Plaintiff's responses to Interrogatories Nos. 1-2. Defendant asserts it has a right to this information because certain devices can disable cookies and other tracking functionalities. But Mr. Bloom has identified the devices he uses (two computers, an iPhone, and an Amazon Firestick on his TV). Zuffa's own records corroborate that Mr. Bloom has used a [redacted] Also, the evidence noted above (PLAINTIFF 0026) indicating that Zuffa is tracking and sharing off-Facebook activity shows that Mr. Bloom has not implemented any privacy measures that effectively blocked Zuffa from tracking and disclosing his activities. As such, it is not reasonable to assume that Mr. Bloom is using any devices that block the alleged tracking activity, or that he has lied regarding which devices he used in response to Interrogatories Nos. 1-2.

With respect to RFPs Nos. 3, 4, 37, and 38, Plaintiff has produced documents corroborating his subscription to UFC's fight pass. See PLAINTIFF 0019-0031. Although Plaintiff has produced these documents, he notes that they are superfluous, given that Zuffa's records confirm the existence of Mr. Bloom's UFC account. See ZUFFA 0000008-31. There is no justification for requiring further documentation of facts already established.

With respect to RFPs Nos. 19, 20, 28, 30, 31, 32, 33, and 43, Defendant seeks documents related to various allegations in the Complaint, including allegations about Zuffa's sharing of data

with Facebook, representations relied upon, and the amount of monetary relief due to Plaintiff. Plaintiff is still in the process of collecting and producing documents supporting these allegations, many of which are within Defendant's custody and control. To the extent Plaintiff obtains evidence relating to these allegations from third parties (e.g., Facebook), he will produce those documents in a timely manner as he receives them. Similarly, to the extent documentation supporting these allegations will come from experts, he will produce responsive, non-privileged documents at the appropriate time according to the case schedule set by the Court. Defendant suggests that Plaintiff is required to produce documents to show his attorneys conducted a proper Rule 11 investigation. Plaintiff is not required to produce attorney work product, which includes the pre-filing investigation.

Very truly yours,

Anthony J Patek
Gutride Safier LLP

Attorneys for Plaintiff