**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS (Nev. Bar No. 5549)
jcw@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

**PAUL HASTINGS LLP**
SUSAN K. LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI R. RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
STEPHANIE V. BALITZER (*admitted pro hac vice*)
stephaniebalitzer@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EVERETT BLOOM, JACK GRAHAM, AND DAVE LINDHOLM, on behalf of themselves, and those similarly situated,

Plaintiffs,

v.

ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC.

Defendants.

Case No.: 2:22-cv-00412-RFB-BNW

**DEFENDANTS ENDEAVOR STREAMING, LLC AND ENDEAVOR GROUP HOLDINGS, INC.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. RELEVANT FACTUAL ALLEGATIONS ..... 2

A. Zuffa and the Endeavor Defendants ..... 2

B. Zuffa's Use of the Facebook Pixel on the UFC Fight Pass Website ..... 3

C. Plaintiffs' Claims ..... 4

III. LEGAL STANDARD… ..... 4

IV. PLAINTIFFS FAIL TO PLEAD PERSONAL JURISDICTION OVER THE ENDEAVOR DEFENDANTS ..... 5

V. PLAINTIFFS' VPPA CLAIM AGAINST THE ENDEAVOR DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..... 8

A. The Endeavor Defendants Are Not "Video Tape Service Providers." ..... 8

B. Plaintiffs Are Not "Consumers" of the Endeavor Defendants. ..... 11

C. The Endeavor Defendants Did Not Disclose Plaintiffs' PII. ..... 13

VI. PLAINTIFF'S STATE LAW CLAIMS AGAINST THE ENDEAVOR DEFENDANTS SHOULD ALSO BE DISMISSED ..... 15

A. The FAC Fails to State a Claim Under California Civil Code § 1799.3 ..... 15

B. The FAC Fails to State a Claim for Invasion of Privacy. ..... 15

C. The FAC Fails to State a UCL Claim. ..... 18

VII. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 11, 15, 16

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ........ 19

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ........ 14

*Carroll v. J.M. Smucker Co.*,
No. C 22-08952 WHA, 2023 WL 4053796 (N.D. Cal. June 15, 2023) ........ 13

*Carter v. Scripps Networks, LLC*,
No. 22-CV-2031 (PKC), 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023) ........ 19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 11, 12, 13

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ........ 26

*Daniels–Hall v. National Education Association*,
629 F.3d 992 (9th Cir. 2010) ........ 8

*Doe v. CVS Pharmacy, Inc.*,
982 F.3d 1204 (9th Cir. 2020) ........ 28, 29

*Eidmann v. Walgreen Co.*,
522 F. Supp. 3d 634 (N.D. Cal. 2021) ........ 27

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) ........ 18, 19

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........ 26

*Freeman v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*,
116 Nev. 550 (2000) ........ *passim*

*Gauvin v. Trombatore*,
682 F. Supp. 1067 (N.D. Cal. 1988) ........ 20

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........ 22, 23

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .................... 24

*Hall v. SeaWorld Ent., Inc.*,
747 F. App'x 449 (9th Cir. 2018) (unpublished) .................... 26

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................... 25, 26, 27

*Herron v. Best Buy Co. Inc.*,
924 F. Supp. 2d 1161 (E.D. Cal. 2013) .................... 27

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .................... 23

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .................... 26, 28

*Hunt v. Auto-Owners Ins. Co.*,
No. 2:15-CV-JCM NJK, 2015 WL 3626579 (D. Nev. June 10, 2015) .................... 12

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .................... 11

*Jefferson v. Healthline Media, Inc.*,
No. 3:22-cv-05059-JD, 2023 WL 3668522 (N.D. Cal. May 24, 2023) .................... 19, 25

*Ji v. Naver Corp.*,
No. 21-cv-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .................... 23

*Joal, LLC v. Trailboss Enters., Inc.*,
No. 2:19-CV-1523 JCM (BNW), 2020 WL 8335671 (D. Nev. Mar. 23, 2020) .................... 12, 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................... 25

*Logic Works, LLC v. Spinnaker Int'l LLC*,
No. 217CV2184JCMNJK, 2018 WL 3232833 (D. Nev. May 23, 2018) .................... 14

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................... 24

*M.K. by & through Kirksey v. Google LLC*,
No. 21-cv-08465-VKD, 2023 WL 2671381 (N.D. Cal. Mar. 27, 2023) .................... 14, 24

*Mallory v. Norfolk S. Ry. Co.*,
No. 21-1168, 2023 WL 4187749 (U.S. June 27, 2023) .................... 12

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) .................... 8

*Martin v. Meredith Corp.*,
No. 22cv4776 (DLC), 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) .................................... 21

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) .......................................................................................... 12

*Mina De Oro, LLC v. Goettsche*,
No. 2:20-cv-00994-GMN-VCF, 2022 WL 943365 (D. Nev. Mar. 28, 2022) ........................ 13

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) .................................................................................... 19, 21

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ............................................................................................ 11

*In re Natera Prenatal Testing Litig.*,
No. 22-cv-00985-JST, 2023 WL 3370737 (N.D. Cal. Mar. 28, 2023) .................................. 26

*In re Nickelodeon Consumer Priv. Litig.*,
No. 2443 (SRC), 2014 WL 3012873 (D.N.J. July 2, 2014) ................................................. 16

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) ................................................................................... 18, 19

*Pioneer Elecs. (USA), Inc. v. Super. Ct.*,
40 Cal. 4th 360 (2007) ....................................................................................................... 23

*Ross v. Abbott Vascular Inc.*,
No. 19-cv-03794-JST, 2020 WL 4934487 (N.D. Cal. Apr. 6, 2020) .................................... 14

*In re Sagent Tech., Inc., Derivative Litig.*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003) .............................................................................. 20

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ....................................................................................... 11, 12

*Shin v. Campbell Soup Co.*,
No. CV 17–1082–DMG, 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ................................ 24

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007) ........................................................................................................... 11

*Stark v. Patreon, Inc.*,
2023 WL 2090979 (N.D. Cal. Feb. 17, 2023) ..................................................................... 26

*Stark v. Patreon, Inc.*,
No. 22-cv-03131-JCS, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022) .................................. 25

*Viega GmbH v. Eighth Judicial Dist. Court*,
328 P.3d 1152 (Nev. 2014) (en banc) ................................................................................. 13

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 15

*Walsh v. LG Chem Ltd.*, 834 F. App'x 310 (9th Cir. 2020) .......... 12

*Westron v. Zoom Video Commc'ns, Inc.*, No. 22-cv-03147-YGR, 2023 WL 3149262 (N.D. Cal. Feb. 15, 2023) .......... 23

*Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015 (9th Cir. 2017) .......... 13

*In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016 (N.D. Cal. 2014) .......... 22, 23

*In re Zynga Privacy Litigation*, 750 F.3d 1098 (9th Cir. 2014) .......... 23


**Statutes**

18 U.S.C. § 2710(a)(1) .......... 17

18 U.S.C. § 2710(a)(4) .......... 15

18 U.S.C. § 2710(b)(1) .......... 14, 19

18 U.S.C. § 2710(b)(2) .......... 14

California Civil Code § 1799.3 .......... *passim*

California Constitution, and California's Unfair Competition Law .......... 8

Video Privacy Protection Act .......... *passim*


**Other Authorities**

California Constitution .......... *passim*

Fed. R. Civ. P. Rule 8 .......... 7, 20

Fed. R. Civ. P. Rule 9(b) .......... 25

Fed. R. Civ. P. 12(b)(2) .......... 11

Fed. R. Civ. P. 12(b)(6) .......... 11, 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' First Amended Class Action Complaint ("FAC") is a meritless attempt to stretch the Video Privacy Protection Act ("VPPA"), California Constitution, and other state privacy laws far beyond their intended purpose. But even accepting Plaintiffs' allegations as true, their claims against Endeavor Group Holdings, Inc. and Endeavor Streaming, LLC (together, the "Endeavor Defendants") should be dismissed because—even after a year of extensive discovery—Plaintiffs are only able to muster vague and conclusory allegations that fail to satisfy even the basic elements of their claims.

***First***, as a threshold matter, Plaintiffs have not adequately alleged that this Court can exercise personal jurisdiction over the Endeavor Defendants. Neither Defendant is at home in Nevada. And Plaintiffs have not adequately alleged that the Endeavor Defendants directed any activities at forum residents or that Plaintiffs' causes of action directly arise out of the Endeavor Defendants' forum contacts. In short, Plaintiffs cannot hale these out-of-state Defendants into this Court based on (at most) the UFC Fight Pass website, which was available to subscribers nationwide.

***Second***, Plaintiffs fail to plausibly allege that the Endeavor Defendants are "video tape service providers" under the VPPA. The FAC's conclusory allegation that the Endeavor Defendants "sell[] and deliver[] audiovisual materials . . . through UFC Fight Pass" (FAC ¶ 91) fails to meet even the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure. However, this bare allegation is contradicted by numerous other allegations throughout the FAC, which suggest that Endeavor Group Holdings is merely an "umbrella organization" with indirect ownership of Zuffa, LLC ("Zuffa" or "UFC"), and Endeavor Streaming provides "technology support services" to Zuffa. FAC ¶¶ 13, 24. These allegations do not transform the Endeavor Defendants into video tape service providers under the VPPA.

***Third***, Plaintiffs fail to plausibly allege that they are "consumers" of the Endeavor Defendants under the VPPA. In fact, the FAC is completely devoid of any allegations that Plaintiffs are "renter[s], purchaser[s], or subscriber[s]" of any "goods or services" from the

Endeavor Defendants. To the contrary, the FAC clearly suggests that Plaintiffs subscribed to UFC Fight Pass from Zuffa.

***Fourth***, Plaintiffs fail to plausibly allege any facts demonstrating that the Endeavor Defendants "disclosed" Plaintiffs' personally identifiable information ("PII"). Instead, the FAC relies solely on conclusory allegations and impermissible group pleading, which are wholly insufficient to state a claim.

***Fifth***, Plaintiffs' state law claims under California Civil Code § 1799.3, the California Constitution, and California's Unfair Competition Law ("UCL") fail for the same reasons as their VPPA claim, as well as numerous other reasons.

For these reasons, as discussed in more detail below, the Court should dismiss Plaintiffs' claims against the Endeavor Defendants with prejudice.

## II. RELEVANT FACTUAL ALLEGATIONS[1]

### A. Zuffa and the Endeavor Defendants

According to the FAC, Zuffa "owns and operates" the "wildly popular" Ultimate Fighting Championship mixed martial arts enterprise, including UFC Fight Pass—a subscription-based platform that gives UFC fans access to live events and other video content. FAC ¶¶ 2, 23, 28.

Endeavor Group Holdings is a publicly-traded holding company with a portfolio of dozens of subsidiary entities, including Zuffa and Endeavor Streaming. *Id.* ¶¶ 2, 13. According to its April 2021 Prospectus, Endeavor Group Holdings is "a premium intellectual property, content, events, and experiences company." Endeavor Group Holdings, Inc., Prospectus (April 28, 2021), at 1.[2] Among other things, it owns premium sports properties, owns and manages hundreds of live

[1] For purposes of this Motion only, the Endeavor Defendants accept Plaintiffs' allegations in the FAC as true.

[2] The Court may take judicial notice of the Prospectus because the FAC specifically cites to and relies upon it. FAC ¶ 12 n.2 (citing https://www.sec.gov/Archives/edgar/data/1766363/000119312521144936/d156166d424b4.htm); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion"); *see also Daniels–Hall v. National Education Association*, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities).

events and experiences, produces and distributes media content, and represents top sports and entertainment talent as well as blue chip corporate clients. *Id.* at 1-4, 18.

According to the Complaint, Endeavor Streaming provides backend video streaming infrastructure for entertainment and sports companies, including UFC Fight Pass. FAC ¶¶ 12, 13, 26. In particular, Endeavor Streaming "writes the code that shows the videos on the Fight Pass website" and provides Zuffa with "technology support services." FAC ¶¶ 2, 12, 18, 24, 25, 36.

**B. The UFC Fight Pass Website and Subscribers**

The UFC Fight Pass website (www.ufcfightpass.com) gives subscribers access to video content such as preliminary fights for UFC pay-per-view events, past UFC fights, original series and shows, and other UFC-related videos. FAC ¶¶ 2, 23, 28.

According to the FAC, consumers purchase their UFC Fight Pass subscriptions from Zuffa—***not*** the Endeavor Defendants. *Id.* ¶ 24 ("Zuffa signs up customers"). To sign up for a UFC Fight Pass subscription, "***Zuffa*** presents consumers with a webpage that requires the consumer to select his or her desired UFC Fight Pass Plan[.]" *Id.* ¶ 29 (emphasis added). Consumers then choose from a monthly plan of $9.99 per month or an annual plan of $95.99 per year and provide their payment information through the UFC Fight Pass website. *Id.* ¶ 30.

According to Plaintiffs, "consumers watching videos using the UFC Fight Pass intend to and reasonably expect that they are communicating ***with Zuffa***." *Id.* ¶ 5 (emphasis added). Similarly, Plaintiffs allege that Zuffa "owns and operates" the UFC Fight Pass website. *Id.* ¶ 23. Zuffa also "handle[s] marketing efforts," "controls advertising decisions," and manages "customer communications" for the UFC Fight Pass website. *Id.* ¶¶ 2, 24. The FAC also suggests that Plaintiffs' "legal or financial obligations" arise from their agreements with Zuffa, such as Zuffa's Privacy Policy. *Id.* ¶¶ 57, 64, 71, 75, 76, 122.

**C. Zuffa's Use of the Facebook Pixel on the UFC Fight Pass Website**

Zuffa advertises UFC Fight Pass through Facebook. FAC ¶¶ 3, 11. To understand the performance of its Facebook ads, Zuffa used a common digital marketing tool called the Facebook Pixel on the UFC Fight Pass website. *Id.* Zuffa used the Facebook Pixel to keep track of the number of times UFC Fight Pass subscriptions were purchased on its website. *See id.* ¶¶ 38, 39,

49. Zuffa also used the Facebook Pixel to help advertise to audiences of potential future UFC Fight Pass subscribers. *See id.* ¶¶ 3, 24, 38, 43, 44.

The Facebook Pixel is a snippet of JavaScript code that can be added directly to a website's code.[3] *Id.* ¶ 35. Here, Zuffa copied the Facebook code into a user-friendly coding interface called Google Tag Manager ("GTM"). *Id.* Once installed, the Facebook Pixel could be used to track certain website visitor actions, which Facebook calls "events." *Id.* ¶ 39. As noted above, Zuffa used Facebook Pixel events to understand when website visitors purchased UFC Fight Pass subscriptions. *Id.* ¶¶ 3, 49. In addition, the Facebook Pixel includes a default "page view" event. *Id.* ¶ 50. The action underlying the page view event is a visit to a webpage. *Id.*

### D. Plaintiffs' Claims

Plaintiffs' FAC piggybacks onto a recent wave of class action lawsuits alleging that virtually any website that uses the Facebook Pixel and hosts video content must violate the VPPA and other privacy laws. Plaintiffs' theory is that by using the Facebook Pixel on the UFC Fight Pass website, Defendants "knowingly disclose" Fight Pass subscribers' PII to Facebook in the form of Facebook's "c_user" cookie (which allegedly contains Facebook IDs) and video titles embedded in UFC Fight Pass URLs.

Based on these allegations, Plaintiffs assert four separate causes of action under the VPPA, California Civil Code § 1799.3, the California Constitution, and the UCL, and seeks unspecified compensatory, statutory, punitive, and treble damages, as well as injunctive relief.

## III. LEGAL STANDARD

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007); *see also* Fed. R. Civ. P. 12(b)(2). If jurisdiction is established, a complaint must be dismissed where the plaintiff fails to allege sufficient facts to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Mere "labels and

---

[3] Although Plaintiffs allege that Endeavor Streaming "writes the code that shows the videos on the UFC Fight Pass website" (*id.* ¶¶ 2, 12, 18, 24, 36), the FAC makes clear that Facebook (***not*** Endeavor Streaming) created the Pixel code (*id.* ¶¶ 3, 50), and Zuffa (***not*** Endeavor Streaming) manages the Pixel code on the UFC Fight Pass website (*id.* ¶¶ 11, 24).

conclusions" are insufficient to state a claim for relief, nor will a "formulaic recitation of the elements" suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (requiring courts to "discount[]" allegations that "do nothing more than state a legal conclusion" when ruling on a motion to dismiss). Instead, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## IV. PLAINTIFFS FAIL TO PLEAD PERSONAL JURISDICTION OVER THE ENDEAVOR DEFENDANTS

As a threshold matter, Plaintiffs have not (and cannot) demonstrate that the Court has personal jurisdiction over the Endeavor Defendants.

The Fourteenth Amendment's Due Process Clause mandates that to exercise personal jurisdiction, the defendants' contacts with the forum must be so continuous as to not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the minimum contacts test, jurisdiction can be either general or specific. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into the court in the forum state to answer for any of its activities anywhere in the world." *Id.* at 801. The paradigmatic grounds for general jurisdiction are the domicile for individuals and the place of incorporation or principal place of business for corporations. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in extraordinary cases, where contacts are "so constant and pervasive 'as to render [a defendant] essentially at home in the forum State,'" may a court exercise general jurisdiction in a forum other than those identified above. *Id.* at 122 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, on the other hand, limits courts to adjudicating only those cases "aris[ing] out of or relat[ing] to the defendant's contacts with the forum." *Martinez v. Aero*

*Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (citation omitted). Specific jurisdiction cannot be exercised unless forum contacts are the "but for" causes of Plaintiffs' alleged injuries. *See Walsh v. LG Chem Ltd.*, 834 F. App'x 310, 312 (9th Cir. 2020).[4]

General jurisdiction clearly does not exist here. Plaintiffs allege that Endeavor Streaming's principal place of business is in New York, and Endeavor Group Holding's principal place of business is in California. FAC ¶¶ 12-13. Moreover, both of the Endeavor Defendants are incorporated in Delaware. *Id.* While Plaintiffs allege that the Endeavor Defendants "conduct[] substantial business within the state of Nevada," they do not contend that "business" is continuous and systematic. *Id.* And, unless a statute *expressly* states that being licensed to do business in a state constitutes consent to jurisdiction (which is not the case in Nevada), a company is not subject to general jurisdiction by doing so. *Compare id.* ¶ 19 *with Joal, LLC v. Trailboss Enters., Inc.*, No. 2:19-CV-1523 JCM (BNW), 2020 WL 8335671, at *4 (D. Nev. Mar. 23, 2020); *Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); *cf. Mallory v. Norfolk S. Ry. Co.*, No. 21-1168, 2023 WL 4187749, at *2 (U.S. June 27, 2023); *Freeman v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 116 Nev. 550, 558 (2000) ("the appointment of an agent to receive service of legal process pursuant to NRS 680A.250 does not in itself subject a non-resident insurance company to the personal jurisdiction of Nevada Courts"); *Hunt v. Auto-Owners Ins. Co.*, No. 2:15-CV-JCM NJK, 2015 WL 3626579, at *1 (D. Nev. June 10, 2015) (where neither registration nor appointment of agent for service of process was sufficient to establish jurisdiction).

Likewise, Plaintiffs cannot establish general jurisdiction over the Endeavor Defendants simply because Zuffa is based in Nevada. *See Daimler,* 571 U.S. at 137 (holding that multiple California-based facilities owned by the defendant's indirect subsidiary were insufficient to establish general jurisdiction); *see also* FAC ¶ 17. Corporate entities are presumed separate so that the actions of a subsidiary company are generally not attributable to its parent corporation, absent

[4] The burden falls on Plaintiffs to establish one of these bases for exercising personal jurisdiction, and they may not simply rest on "bare allegations of [their] complaint." *Schwarzenegger*, 374 F.3d at 800 (alteration added).

certain exceptions that not alleged here. *Viega GmbH v. Eighth Judicial Dist. Court,* 328 P.3d 1152, 1157 (Nev. 2014) (en banc); 1 W. FLETCHER, CYCLOPEDIA OF THE LAW OF CORPORATIONS § 30, p. 30 (Supp. 2012-2013).

Similarly, specific jurisdiction does not exist here because Plaintiffs have not shown that their claims arise out of the Endeavor Defendants' contacts with Nevada. ***First***, Plaintiffs do not allege a single fact that shows their claims flow from Endeavor Group Holdings' activity in this forum. Instead, they contend that "Endeavor Group has multiple subsidiaries that are incorporated in Nevada, including Zuffa," and that Zuffa features content on its platform "filmed in Nevada." FAC ¶ 19. Likewise, Plaintiffs have not alleged substantial control over Zuffa or that Zuffa is acting on behalf of Endeavor Group Holdings, such that Endeavor Group Holdings could be subject to specific jurisdiction based on Zuffa's conduct. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024 (9th Cir. 2017).

***Second***, Plaintiffs contend that Endeavor Streaming should be haled into the District of Nevada merely because it "writes the code for the Fight Pass website," "addresses technological problems that arise on the Fight Pass Website," and "attends conferences in Las Vegas". FAC ¶ 18. But "[t]he Complaint does not explain how [the website's design] was an act expressly aimed at Nevada, rather than an act generally aimed at anyone with access to the internet." *Mina De Oro, LLC v. Goettsche*, No. 2:20-cv-00994-GMN-VCF, 2022 WL 943365, at *3 (D. Nev. Mar. 28, 2022); *see also Carroll v. J.M. Smucker Co.*, No. C 22-08952 WHA, 2023 WL 4053796, at *4 (N.D. Cal. June 15, 2023) (specific jurisdiction could not be exercised over an out-of-state defendant that purportedly installed the Facebook Pixel, as any website feature "appears to have offered an identical experience regardless of the forum of access").

Further, Plaintiffs have not sufficiently alleged that their claims arise out of Endeavor Streaming's forum-related activities. They do not contend that Endeavor Streaming created the Facebook Pixel code on the UFC Fight Pass website, nor do they plausibly allege that Endeavor Streaming disclosed any PII to Meta. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Simply put, the allegations that Endeavor Streaming wrote certain backend code for the UFC Fight Pass website and "addressed technological problems" are too far removed

from the purported wrongdoing to establish but-for causation. *See Ross v. Abbott Vascular Inc.*, No. 19-cv-03794-JST, 2020 WL 4934487, at *7 (N.D. Cal. Apr. 6, 2020) ("[C]ontacts based solely on uploading information to company-wide . . . servers housed in the United States are too attenuated to establish minimum contacts or comport with due process."). Similarly, the mere existence of a contract or correspondence between Endeavor Streaming and Zuffa is not sufficient grounds to show that Endeavor Streaming purposefully and expressly aimed any allegedly wrongful conduct into Nevada. *Logic Works, LLC v. Spinnaker Int'l LLC*, No. 217CV2184JCMNJK, 2018 WL 3232833, at *5 (D. Nev. May 23, 2018). Lastly, the allegation that Endeavor Streaming attended events in Las Vegas is "wholly irrelevant to the specific jurisdiction inquiry." *Joal*, 2020 WL 8335671, at *7.

Accordingly, the Court should dismiss the Endeavor Defendants for lack of personal jurisdiction.

## V. PLAINTIFFS' VPPA CLAIM AGAINST THE ENDEAVOR DEFENDANTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider . . . ." 18 U.S.C. § 2710(b)(1). To plead a claim under the VPPA, Plaintiffs must allege that (1) the Endeavor Defendants are video tape service providers, (2) Plaintiffs are consumers of the Endeavor Defendants, (3) the Endeavor Defendants knowingly disclosed Plaintiffs' personally identifiable information, and (4) the disclosure was not authorized by 18 U.S.C. § 2710(b)(2). *M.K. by & through Kirksey v. Google LLC*, No. 21-cv-08465-VKD, 2023 WL 2671381, at *3 (N.D. Cal. Mar. 27, 2023) (citing *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015)). Here, the FAC fails to establish at least the first three elements of a VPPA claim against the Endeavor Defendants.

### A. The Endeavor Defendants Are Not "Video Tape Service Providers."

Under the VPPA, the term "video tape service provider" means "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of

prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4).[5] For a defendant to be engaged in the business of delivering video content, "the defendant's product must not only be substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). Developers of "other products or services that might be peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider." *Id.* at 1221-22. Here, the FAC fails to plausibly allege that either Endeavor Group Holdings or Endeavor Streaming is a video tape service provider.

***First***, Plaintiffs' conclusory allegation that Endeavor Group Holdings is a video tape service provider because it "sell[s] and deliver[s] audiovisual materials . . . through its UFC Fight Pass" (FAC ¶ 91) is not sufficient to state a claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice."). Although Plaintiffs allege that Endeavor Group Holdings "runs" UFC Fight Pass "through" Zuffa (*id.* ¶ 2), the FAC is devoid of any well-pled facts to substantiate that allegation. *See, e.g.*, *id.* ¶ 19 ("Upon information and belief, Endeavor Group . . . assist[ed] [in] the development [of] the Fight Pass platform"), ¶ 23 ("Endeavor Group oversees and operates the Fight Pass enterprise"), ¶ 24 ("Endeavor Group directs Zuffa to handle marketing efforts related to Fight Pass").

To the contrary, the FAC contains numerous allegations that Zuffa—***not*** Endeavor Group Holdings (or Endeavor Streaming)—operates the UFC Fight Pass website. According to the FAC, Zuffa "owns and operates" the UFC Fight Pass website, manages "the marketing and customer communications," "signs up customers, designs web site disclosures and print, and controls advertising decisions (including retargeting of ads to Fight Pass subscribers using subscriber data from the Facebook code)," "presents consumers with a webpage that requires the consumer to select his or her desired UFC Fight Pass Plan on the Fight Pass Website[,]" publishes the UFC Fight Pass Terms of Use and Privacy Policy, and "directs the marketing and advertising activities

[5] The VPPA also provides that a video tape service provider is "any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure." 18 U.S.C. § 2710(a)(4). These provisions do not apply here because Plaintiffs do not allege that the Endeavor Defendants received disclosures of such information from another video tape service provider.

that utilize the Facebook pixel, and manages the events that trigger the Facebook pixel." *Id.* ¶¶ 2, 5, 11, 23, 24, 29, 75. Likewise, the FAC indicates that Endeavor Group Holdings does not even have "the ability to make changes to the code on the Fight Pass website." *Id.* ¶ 36. Taken together, these allegations undermine any reasonable inference that Endeavor Group Holdings had any involvement in the delivery of video content on the UFC Fight Pass website. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted).

Instead, the FAC alleges that Endeavor Group Holdings is an "umbrella organization" that "owns" Zuffa along with a host of other subsidiaries. FAC ¶¶ 2, 11, 13, 19, 23. But mere indirect ownership of Zuffa—which itself "owns and operates" the UFC Fight Pass website (*id.* ¶ 23)—does not make Endeavor Group Holdings a video tape service provider for purposes of the VPPA. *See, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, No. 2443 (SRC), 2014 WL 3012873, at *8 (D.N.J. July 2, 2014) (holding that "Google's ownership of YouTube does not bring Google within the [VPPA's] ambit" where the "specific video materials or services" had been requested from another entity).

***Second***, Plaintiffs similarly fail to allege that Endeavor Streaming is a video tape service provider. The conclusory allegation that Endeavor Streaming "sell[s] and deliver[s] audiovisual materials . . . through UFC Fight Pass" (FAC ¶ 91) is deficient for the same reasons above. *Iqbal*, 556 U.S. at 678. In fact, the FAC does not allege that Endeavor Streaming sold or delivered any video content. Rather, Plaintiffs merely allege that Endeavor Streaming "writes the code for the Fight Pass Website" and "addresses technological problems that arise on the Fight Pass Website." FAC ¶¶ 2, 12, 13, 18, 24, 25, 36. But providing "infrastructure" and "technology support" to Zuffa does not transform Endeavor Streaming into a video tape service provider under the VPPA.[6]

[6] Plaintiffs' reference to three Endeavor Streaming tweets from August 2018 also does not move the needle. *Id.* ¶¶ 46-48. Simply using Twitter hashtags about over-the-top streaming (i.e., #OTT) cannot justify imposing VPPA liability.

Because the FAC does not plausibly allege that Endeavor Group Holdings or Endeavor Streaming engaged in the business of delivering video content through UFC Fight Pass, Plaintiffs' VPPA claim against both Endeavor Defendants should be dismissed.

**B. Plaintiffs Are Not "Consumers" of the Endeavor Defendants.**

Even if Plaintiffs could plausibly allege that the Endeavor Defendants are video tape service providers (as discussed, they cannot), their VPPA claim fails for the independent reason that Plaintiffs do not allege they are "consumers" of the Endeavor Defendants. Under the VPPA, a "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(1). Here, Plaintiffs have wholly failed to allege that they rented, purchased, or subscribed to ***any*** goods or services from either of the Endeavor Defendants.

Plaintiffs do not allege that they are "renters" or "purchasers" of any goods or services from the Endeavor Defendants. Rather, Plaintiffs only allege that they are consumers under the VPPA because they "subscribed to the UFC Fight Pass." FAC ¶ 92. But the FAC is crystal clear that Plaintiffs allegedly subscribed to UFC Fight Pass directly from Zuffa. According to the FAC:

- "***Zuffa*** signs up customers"—not the Endeavor Defendants (*id.* ¶ 24 (emphasis added));
- "To sign up for a UFC Fight Pass subscription, ***Zuffa*** presents consumers with a webpage that requires the consumer to select his or her desired UFC Fight Pass Plan on the [UFC] Fight Pass Website" (*id.* ¶ 29 (emphasis added));
- The UFC Fight Pass website then prompts users to choose from "two subscription options"—a $9.99 monthly plan and a $95.99 annual plan (*id.* ¶ 30);
- "Once consumers select their desired subscription plan, the [UFC] Fight Pass Website prompts consumers to provide their payment information" (*id.* ¶ 30); and
- "After the consumer completes the subscription sign-up process, the user can then access the UFC Fight Pass video content when they log in." *Id.* ¶ 31.

As Plaintiffs allege, Zuffa "owns and operates" the UFC Fight Pass website. *Id.* ¶ 23. Therefore, according to their own allegations, Plaintiffs subscribed to UFC Fight Pass from Zuffa.

Numerous other allegations in the FAC also support that Plaintiffs were in privity with Zuffa and not the Endeavor Defendants. According to the FAC, ***"consumers watching videos***

***using the UFC Fight Pass intend to and reasonably expect that they are communicating with Zuffa*[.]"** *Id.* ¶ 5 (emphasis added). Likewise, Plaintiffs allege that Zuffa is the party that communicated with them since it managed "marketing," "customer communications," and "advertising" for UFC Fight Pass. *Id.* ¶¶ 11, 24. And, critically, Plaintiffs acknowledge that they entered into "legal and financial obligations" with Zuffa through, among other things, "Zuffa's Privacy Policy." *Id.* ¶ 24 (Zuffa "designs web site disclosures"), ¶ 33 (referring to the UFC Fight Pass Terms of Use and Privacy Policy), ¶¶ 57, 64, 71 (noting the Terms of Use and Privacy Policy set forth Plaintiffs' "legal and financial obligations"), ¶¶ 75-77 (discussing "Zuffa's privacy policy").

Even setting these allegations aside, Plaintiffs do not plausibly allege that they are subscribers of any goods or services from the Endeavor Defendants. To be a subscriber under the VPPA, a plaintiff must show that they have undertaken an "ongoing commitment or relationship" with the video tape service provider that "owns and operates" the service. *See*, *e.g.*, *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) (affirming dismissal of VPPA claim where there was "no ongoing commitment or relationship between the user and the entity which owns and operates" the Cartoon Network app); *Perry v. Cable News Network, Inc*., 854 F.3d 1336, 1342 (11th Cir. 2017) (affirming dismissal of VPPA claim where the plaintiff "has not demonstrated an ongoing commitment or relationship with" the entity that owns and operates the CNN app). But Plaintiffs here have not alleged any "ongoing commitment or relationship" with the Endeavor Defendants, nor do they allege that the Endeavor Defendants own or operate the UFC Fight Pass website. FAC ¶¶ 2, 23 (Zuffa "owns and operates" the UFC Fight Pass website).

Courts have consistently dismissed VPPA claims where, as here, a plaintiff fails to plausibly allege that he or she is a "subscriber of goods or services" from a defendant. *See, e.g.*, *Ellis*, 803 F.3d at 1257 (affirming dismissal of VPPA claim where the plaintiff "did not sign up for or establish an account with Cartoon Network, did not provide any personal information to Cartoon Network, did not make any payments to Cartoon Network for use of the CN app, did not become a registered user of Cartoon Network or the CN app, did not receive a Cartoon Network ID, did not establish a Cartoon Network profile, did not sign up for any periodic services or

transmissions, and did not make any commitment or establish any relationship that would allow him to have access to exclusive or restricted content"); *Perry*, 854 F.3d at 1344 (same); *Jefferson v. Healthline Media, Inc.*, No. 3:22-cv-05059-JD, 2023 WL 3668522, at *3 (N.D. Cal. May 24, 2023) (dismissing VPPA claim where the court could not "discern or infer from the complaint whether [the plaintiff] receives any kind of publication, let alone any good or service" from the defendant); *Carter v. Scripps Networks, LLC*, No. 22-CV-2031 (PKC), 2023 WL 3061858, at *6 (S.D.N.Y. Apr. 24, 2023) (dismissing VPPA claim where the plaintiffs did not "plausibly allege that they were subscribers of hgtv.com video services," despite subscribing to hgtv.com newsletters); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) (dismissing VPPA claim where the plaintiff "did not pay AMC for the content on its free website, nor did she 'sign up,' register for an account, establish a user ID or profile, download an app or program, or take any action to associate herself with AMC."). The outcome here should be no different.

Since the FAC does not plausibly allege that Plaintiffs are "consumers" of Endeavor Group Holdings or Endeavor Streaming, Plaintiffs' VPPA claim against both Endeavor Defendants should be dismissed.

**C. The Endeavor Defendants Did Not Disclose Plaintiffs' PII.**

Lastly, Plaintiffs' VPPA claim fails for the independent reason that the FAC does not plausibly allege the Endeavor Defendants "disclose[d]"—let alone "knowingly disclose[d]"—Plaintiffs' PII. 18 U.S.C. § 2710(b)(1); *see also Mollett*, 795 F.3d at 1066 (to plead a VPPA claim, a plaintiff must allege "the defendant disclosed 'personally identifiable information concerning any customer' to 'any person'").

Although Plaintiffs allege in conclusory fashion that "Defendants" purportedly disclosed PII to Facebook (FAC ¶¶ 35, 95), the FAC lacks any allegations that suggest the Endeavor Defendants themselves made these supposed disclosures. Rather, nearly all of Plaintiffs' allegations regarding the purported disclosure of PII refer collectively to "Defendants"—lumping the Endeavor Defendants together with Zuffa. Such impermissible "group pleading" is wholly insufficient to state a claim. *See, e.g.*, *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d

1079, 1094 (N.D. Cal. 2003) (a "complaint fails to state a claim" where "plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act"); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together multiple defendants in one broad allegation fails to satisfy notice requirement of Federal Rule of Civil Procedure 8(a)(2)). The remainder of Plaintiffs' allegations regarding the purported disclosure of PII tellingly refer to Zuffa alone. *See* FAC ¶ 75 ("Zuffa discloses to Facebook the UFC Fight Pass users' identities and every video the users request or obtain"); *id.* at 9 ("Zuffa's Disclosure of User's Video Watching History.").

Even setting these conclusory allegations aside, the FAC does not plausibly allege that the Endeavor Defendants disclosed Plaintiffs' PII for many of the same reasons discussed above. The FAC is clear that Zuffa "owns and operates" the UFC Fight Pass website, Zuffa "directs the marketing and advertising activities that utilize the Facebook pixel," Zuffa "manages the events that trigger the Facebook pixel," and Zuffa "controls advertising decisions (including retargeting of ads to Fight Pass subscribers using subscriber data from the Facebook code)." *Id.* ¶¶ 11, 23, 24.

Nor do Plaintiffs explain how the Endeavor Defendants—an "umbrella organization" that indirectly owns Zuffa and a company that provides "technology support services" to Zuffa (*id.* ¶¶ 13, 24)—could plausibly be held responsible for disclosing Plaintiffs' PII. Indeed, the FAC concedes that Endeavor Group Holdings does not even have access to the code for the UFC Fight Pass website. *Id.* ¶ 36. And despite Plaintiffs' allegations that Endeavor Streaming "writes the code that shows videos on the Fight Pass Website" and made "technical decisions about how that code interacts with Facebook pixels" (*id.* ¶ 2, 12, 18, 24), the FAC is clear that Facebook—not Endeavor Streaming—"designs the Facebook JavaScript code" at issue here. *Id.* ¶ 50. Thus, the only alleged cause of disclosure in the FAC was the use of Facebook code, allegedly managed by Zuffa, on a website "owned and operated" by Zuffa. These allegations, coupled with Plaintiffs' impermissible and conclusory group pleading, make clear that Plaintiffs have not and cannot plausibly allege that the Endeavor Defendants disclosed Plaintiffs' PII.

## VI. PLAINTIFF'S STATE LAW CLAIMS AGAINST THE ENDEAVOR DEFENDANTS SHOULD ALSO BE DISMISSED[7]

### A. The FAC Fails to State a Claim Under California Civil Code § 1799.3.

Plaintiff Bloom's claim against the Endeavor Defendants under California Civil Code § 1799.3 fails for the same reasons as Plaintiffs' VPPA claim.[8] *See Mollett*, 795 F.3d at 1067 ("For the same reasons that Plaintiffs fail to plead a violation of the VPPA, Plaintiffs also fail to plead a violation of California Civil Code § 1799.3."). In fact, § 1799.3 is even narrower than the VPPA, as it provides that "[n]o person providing ***video recording sales or rental services*** shall disclose any personal information or the contents of any record, including sales or rental information . . . to any person, other than the individual who is the subject of the record, without the written consent of that individual." Cal. Civ. Code § 1799.3(a) (emphasis added). The term "sales or rental services" indicates that the statute applies only to entities providing video materials to customers ***"in exchange for money."*** *Martin v. Meredith Corp.*, No. 22cv4776 (DLC), 2023 WL 2118074, at *4 (S.D.N.Y. Feb. 17, 2023) (emphasis added).

For the same reasons discussed above, Plaintiff Bloom fails to plausibly allege that either of the Endeavor Defendants "provid[es] video recording sales or rental services." Cal. Civ. Code § 1799.3. Likewise, Plaintiff does not allege that he exchanged money with either of the Endeavor Defendants for his UFC Fight Pass subscription. Thus, Plaintiff Bloom's § 1799.3 claim against the Endeavor Defendants should be dismissed. *Martin*, 2023 WL 2118074, at *4 (dismissing § 1799.3 claim where "there is no indication in the complaint that the defendants are engaged in the business of 'sales' or 'rental' of video materials").

### B. The FAC Fails to State a Claim for Invasion of Privacy.

To state a claim for invasion of privacy under the California Constitution, Plaintiff Bloom must plausibly allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of

---

[7] Because the FAC's state law claims are asserted only on behalf of Plaintiff Bloom, this section refers to him specifically and not the other Plaintiffs.

[8] California's Civil Code § 1799.3 serves as a state law analog to the VPPA.

privacy." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal. 2019) (citation omitted). "These elements are not a categorical test, but rather serve as threshold components of a valid claim to be used to weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification by the defendant." *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1037 (N.D. Cal. 2014) (internal formatting omitted). "The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *Id.* at 1038. Here, the FAC falls far short of meeting this "high bar" for multiple reasons.

***First***, the FAC fails to sufficiently allege a legally protected privacy interest. Plaintiff Bloom alleges that "Defendants" have intruded upon his legally protected privacy interests with respect to (1) the VPPA and § 1799.3, and (2) "the California Constitution, which guarantees Californians the right to privacy." FAC ¶ 108. But to the extent Plaintiff Bloom's invasion of privacy claim is premised on the VPPA and § 1799.3, it fails for the same reasons discussed above. And to the extent Plaintiff Bloom's claim is premised on the California Constitution itself, the FAC fails to allege any other legally protected privacy interest in the purported PII at issue here.

There are two classes of legally protected privacy interests under the California Constitution: informational privacy and autonomy privacy. *In re Yahoo Mail Litig.*, 7 F.Supp.3d at 1039. Here, the FAC alleges an informational privacy interest. FAC ¶¶ 109-111. But, in the context of informational privacy, the California Constitution protects only the "dissemination or misuse of ***sensitive*** and ***confidential*** information." *In re Yahoo Mail Litig.*, 7 F.Supp.3d at 1041 (emphasis in original). Neither Plaintiff Bloom's Facebook ID nor the UFC Fight Pass URLs meet this standard. First, the FAC concedes that Plaintiff Bloom's Facebook ID and Facebook profile are publicly available, and therefore cannot be considered sensitive and confidential. FAC ¶¶ 4, 37. Second, the FAC fails to allege that the URLs of video web pages he accessed on the UFC Fight Pass website were in any way "sensitive and confidential information" that, if disclosed, could cause "unjustified embarrassment or indignity." *See Pioneer Elecs. (USA), Inc. v. Super. Ct.*, 40 Cal. 4th 360, 370 (2007). Rather, Plaintiff Bloom merely alleges that he "watched multiple videos of fights and other content," without any indication of how or why the URLs for those video

web pages (even if they included video titles) were sensitive and confidential. FAC ¶ 53. This barebones allegation fails to establish a legally protected privacy interest. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal. 2019) (granting motion to dismiss with prejudice where the plaintiffs' allegations were "far too conclusory and speculative" such that allowing the pleading "to survive a Rule 12(b)(6) motion to dismiss would obliterate the 'high bar' set for establishing an invasion of privacy claim"); *see also Westron v. Zoom Video Commc'ns, Inc.*, No. 22-cv-03147-YGR, 2023 WL 3149262, at *2 (N.D. Cal. Feb. 15, 2023) (dismissing invasion of privacy claim because "[i]t is not enough to say that a defendant had the ability to invade someone's privacy; a plaintiff needs to demonstrate that a defendant invaded their interests and that those interests were sensitive"); *Ji v. Naver Corp.*, No. 21-cv-05143-HSG, 2022 WL 4624898, at *11 (N.D. Cal. Sept. 30, 2022) (dismissing invasion of privacy claim where the plaintiffs alleged the defendant "tracks videos watched, created, liked, and/or commented on by users"); *In re Yahoo Mail Litig.*, 7 F.Supp.3d at 1041 ("The problem for Plaintiffs in the instant case, however, is that to the extent Plaintiffs intend to allege that they have a privacy interest in the specific content of their emails, their allegations are fatally conclusory.").[9]

***Second***, the FAC fails to allege a serious invasion of privacy. Actionable invasions of privacy must be "sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37 (1994). Here, however, Plaintiff Bloom does not plausibly allege any conduct that meets this high standard. Instead, he merely alleges in conclusory fashion that "Defendants' actions constituted a serious invasion of privacy" that "invaded a zone of privacy protected by the California Constitution" and "violated laws protecting against the wrongful disclosure of such information." FAC ¶ 110. Not only is this boilerplate allegation insufficient to state a claim, but courts have consistently held that disclosure of a user's browser

[9] *Cf. In re Zynga Privacy Litigation*, 750 F.3d 1098, 1102-03, 1108-09 (9th Cir. 2014) (affirming dismissal of Electronic Communications Privacy Act claim and holding that a user did not have a reasonable expectation of privacy in referer headers that "displayed the user's Facebook ID and the address of the Facebook webpage the user was viewing" before clicking on a link to play a game).

history to third parties does not amount to a serious invasion of privacy. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claim with prejudice where disclosure of "LinkedIn ID and the URL of the LinkedIn profile page that the user viewed (which in the aggregate discloses a user's browsing history among LinkedIn profiles)" did not amount to a serious invasion); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (collection and disclosure of users' browsing histories was not highly offensive).

***Third***, the FAC fails to plausibly allege any specific conduct ***by the Endeavor Defendants*** constituting a serious invasion of privacy. For the same reasons discussed above, the FAC's allegations regarding the Endeavor Defendants are premised on conclusory allegations and impermissible group pleading. *See, e.g.*, *M.K. by & through Kirksey*, 2023 WL 2671381, at *7 (dismissing invasion of privacy claim under the California Constitution where the complaint did not allege any facts "describing the purported sharing of [the plaintiff's] data, what data was shared, and with whom it was shared"); *see also supra* Section V.C (discussing group pleading).

Accordingly, Plaintiff Bloom's invasion of privacy claim under the California Constitution should be dismissed.

**C. The FAC Fails to State a UCL Claim.**

Plaintiff Bloom's UCL claim, which is brought under the unlawful, fraudulent, and unfair prongs, fails in its entirety for the reasons discussed below.

***Unlawful Prong.*** To plead a UCL claim based on the "unlawful" prong, a plaintiff must allege facts sufficient to show a violation of the law other than the UCL. In other words, a plaintiff must allege facts sufficient to support a violation of the underlying law on which it bases its UCL claim. *Shin v. Campbell Soup Co.*, No. CV 17–1082–DMG (JCx), 2017 WL 3534991, at *4 (C.D. Cal. Aug. 9, 2017). Here, the FAC's claim under the "unlawful" prong of the UCL is completely derivative of its claims under the VPPA, California Civil Code § 1799.3, and California Constitution. FAC ¶ 122. Therefore, Plaintiff Bloom's UCL claim under the "unlawful" prong should be dismissed for the same reasons each of his underlying claims fail. *See Jefferson*, 2023 WL 3668522, at *3 ("Dismissal is also warranted for the UCL [claim], which [the plaintiff]

effectively tethers to her VPPA claim"); *Stark v. Patreon, Inc.*, No. 22-cv-03131-JCS, 2022 WL 7652166, at *9 (N.D. Cal. Oct. 13, 2022) (same).[10]

***Fraudulent Prong.*** Claims based on the "fraudulent" prong of the UCL are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "a party must state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009); Fed. R. Civ. P. 9(b). The Ninth Circuit has held that in order to meet this standard, a complaint "must identify 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124. Moreover, the circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* Here, Plaintiff Bloom's fraudulent omission claim (FAC ¶¶ 115, 116, 118-121) falls far short of this heightened pleading requirement.

To plausibly allege a fraudulent omission claim under the UCL, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1084 (N.D. Cal. 2022) (citation omitted). A defendant only has a duty to disclose when (1) the omission is material, (2) the defect at issue is central to the product's function, and (3) at least one of the following four factors is met: (i) the defendant is the plaintiff's fiduciary; (ii) the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (iii) the defendant actively conceals a material fact from the plaintiff; or (iv) the defendant makes partial representations that are misleading because some other material fact has been disclosed." *Id*. at 1085 (applying *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018)). This test applies in all fraudulent omission cases, not only those alleging a "product defect." *See, e.g.*, *In re Natera Prenatal Testing Litig.*, No. 22-cv-00985-JST, 2023 WL 3370737, at *7 (N.D. Cal. Mar. 28, 2023); *see also Hall v. SeaWorld Ent., Inc.*, 747 F. App'x 449, 451 (9th Cir. 2018) (unpublished). For a

[10] The FAC also vaguely alleges that Defendants violated the "unlawful" prong of the UCL because "Zuffa violated its own privacy policy." FAC ¶ 122. However, since this allegation pertains only to Zuffa, and not the Endeavor Defendants, it is not relevant to this Motion.

fact to be material, "a plaintiff must show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (citation omitted).

Here, Plaintiff Bloom does not (and cannot) allege any omission contrary to a representation actually made by the Endeavor Defendants since the FAC does not allege that the Endeavor Defendants made ***any*** representations to Plaintiffs. Rather, as discussed above, the FAC alleges that Zuffa was responsible for marketing and customer communications for the UFC Fight Pass website. FAC ¶¶ 2, 11, 23, 24. Indeed, the only affirmative representations identified in the FAC were those allegedly made in Zuffa's Privacy Policy. *Id.* ¶¶ 75-77. Moreover, even if the FAC had identified a representation purportedly made by the Endeavor Defendants, Plaintiff Bloom's claim would still fail because he does not allege actual reliance on any such representations when signing up for his UFC Fight Pass subscription. *See id.* ¶¶ 52-59. For example, nowhere in the FAC does Plaintiff Bloom allege that he reviewed the UFC Fight Pass Terms of Use or Privacy Policy before signing up for his subscription. *See, e.g.*, *Hammerling*, 615 F. Supp. 3d at 1084 n.7 (noting that the plaintiffs could not establish an omission contrary to a representation actually made because "they do not allege that they ever read the Policy before (or after) purchasing their Android smartphones") (citation omitted); *Stark v. Patreon, Inc.*, 2023 WL 2090979, at *16 (N.D. Cal. Feb. 17, 2023) (same); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("An essential element for a fraudulent omission claim [under the UCL] is actual reliance.").

The FAC also fails to plausibly allege facts sufficient to establish that the Endeavor Defendants had any duty to disclose. *Id.* ¶ 119. As an initial matter, Plaintiffs do not (and cannot) allege that the purported use of the Facebook Pixel is "central to the function" of the UFC Fight Pass website. In determining this issue, "[t]he question is not whether a defect 'affects' the product, rather the question is: does the alleged defect prevent the product from 'performing a critical or integral function,' or render the product 'incapable of use' for all users?" *Hammerling*, 615 F. Supp. 3d at 1086 (citing *Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 513-14 (9th Cir.

2021)). Here, the answer to that question is clearly "no." Thus, the FAC does not and cannot establish that the Endeavor Defendants had any duty to disclose.

Even if the FAC could establish a "central defect" on the UFC Fight Pass website, the FAC's bare assertion that the Endeavor Defendants had a duty to disclose because they purportedly had "exclusive knowledge" of material facts also fails because it is clearly contradicted by numerous other allegations in the FAC. For example, Plaintiffs allege that Zuffa—not the Endeavor Defendants—"owns and operates" the UFC Fight Pass website, "directs the marketing and advertising activities that utilize the Facebook pixel," "manages the events that trigger the Facebook pixel," and "controls the advertising decisions (including retargeting of ads to Fight Pass subscribers using subscriber data from the Facebook code)." *Id.* ¶¶ 2, 11, 23, 24, 75, 76.

The FAC's conclusory allegation that the Endeavor Defendants had a duty to disclose because "Defendants concealed the facts" is also insufficient. *Id.* ¶ 119. "Mere nondisclosure does not constitute active concealment." *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) (citations omitted). Rather, to state a claim for active concealment, the FAC must allege specific "affirmative acts" on the part of the Endeavor Defendants in "hiding, concealing or covering up" the relevant information. *Id.* ("generalized allegations with respect to . . . active concealment will not do") (internal quotations and citation omitted). Here, Plaintiff Bloom does not allege any facts—let alone particularized facts—sufficient to support a claim that the Endeavor Defendants took affirmative acts to conceal the use of the Facebook Pixel.

Accordingly, Plaintiff Bloom's claim under the fraudulent prong of the UCL should be dismissed.

***Unfair Prong.*** Courts have held that a claim under the "unfair" prong of the UCL cannot survive where it overlaps entirely with defective claims under the "unlawful" and "fraudulent" prongs. *See, e.g.*, *Hammerling*, 615 F. Supp. 3d at 1094; *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (citing *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017)). Here, the FAC's claim under the unfair prong of the UCL is based entirely on the same conduct as his other UCL claims. FAC ¶¶ 117, 123. Accordingly, it should be dismissed.

Even evaluating the unfair prong claim independently, it is clear that the FAC fails to plausibly allege a claim. The UCL does not define the term "unfair," and the proper definition is "currently in flux" among California courts. *Hodsdon*, 891 F.3d at 866 (quoting *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)). However, although the precise test has not been definitively established, the Ninth Circuit has summarized the various standards as follows: "Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law'; (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'; or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (internal citations omitted).

The FAC fails to state a claim under any of these tests. First, to the extent Plaintiff Bloom's unfair prong UCL claim is "tethered to any constitutional, statutory or regulatory provision" (*see* FAC ¶ 123), it fails for the same reasons as the other claims discussed above. Second, although the FAC makes a single, conclusory allegation that "Defendants engaged in conduct that is unfair and unconscionable because it . . . is immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious" (*id.*), it alleges no facts that would support that claim. For example, Plaintiff Bloom does not allege how or why the purported disclosure of his Facebook ID or URLs containing the titles of video web pages he accessed on the UFC Fight Pass website would actually meet this standard, particularly given that the FAC alleges his Facebook ID and Facebook profile are publicly accessible (*id.* ¶¶ 4, 37) and only vaguely alleges that he "watched multiple videos of fights and other content" (*id.* ¶ 53). Where, as here, "[t]he conclusory recitation of one of the UCL's legal standards does not clarify what conduct [the plaintiff] claim[s] is unfair, or on what allegations in the complaint [they] rely for this claim," "[t]he claim is not adequately pled to give proper notice of [the] claim and the grounds on which it lies" and must be dismissed. *Doe*, 982 F.3d at 1215. Third, as to the balancing test, the FAC once again makes a lone, conclusory allegation that "Defendants' engaged in conduct" that "has caused substantial harm that greatly

outweighs any possible utility from the conduct." FAC ¶ 123. For the same reasons, this legal conclusion is wholly insufficient to state a claim, and contradicts the numerous allegations in the complaint demonstrating the business justifications for using the Facebook Pixel. *See, e.g.*, *id.* ¶¶ 3, 24, 39, 42-51 (alleging that Defendants "benefit from the sharing of data" through the Facebook Pixel). Lastly, as with Plaintiffs' other claims, the FAC fails to plausibly allege any specific conduct ***by the Endeavor Defendants*** constituting an unfair business practice. Rather, the FAC's allegations regarding the Endeavor Defendants are once again premised entirely on conclusory allegations and impermissible group pleading. *See supra* Section V.C (discussing group pleading).

Therefore, Plaintiff Bloom's claim under the unfair prong of the UCL should be dismissed.

## VII. CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against the Endeavor Defendants with prejudice.

Dated: June 28, 2023

**PAUL HASTINGS LLP**

By: /s/ ***Susan K. Leader***

SUSAN K. LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI R. RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
STEPHANIE V. BALITZER (*admitted pro hac vice*)
stephaniebalitzer@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS (Nev. Bar No. 5549)
jcw@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 28, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Susan K. Leader
SUSAN K. LEADER

## INDEX

| EXHIBIT NO. | DOCUMENT | NO. OF PAGES | PAGE RANGE |
|---|---|---|---|
| N/A | [Proposed] Order Granting Defendants Endeavor Streaming, LLC And Endeavor Group Holdings, Inc.'s Motion To Dismiss The First Amended Class Action Complaint | 2 | N/A |