**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile: 702-843-6010

**GUTRIDE SAFIER LLP**
Seth A. Safier (*pro hac vice*)
seth@gutridesafier.com
Marie A. McCrary (*pro hac vice*)
marie@gutridesafier.com
Anthony Patek (*pro hac vice*)
anthony@gutridesafier.com
Kali Backer (*pro hac vice*)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EVERETT BLOOM, JACK GRAHAM, AND DAVE LINDHOLM on behalf of themselves, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC.<br><br>Defendants. | No.: 2:22-CV-00412-RFB-BNW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY**<br><br>Date: September 26, 2023<br>Time: 10:00 a.m.<br>Location: Las Vegas Courtroom 3B<br><br>Mag. Judge Brenda Weksler |

## TABLE OF CONTENTS

I. INTRODUCTION 1

II. BACKGROUND 1

A. Plaintiff's Allegations and Claims 1

B. Plaintiff's Subpoena to Meta Platforms 2

III. ARGUMENT 4

A. Defendant's Requests Related to Activity Logs, Off-Facebook Activity Are Overly broad and Disproportional to the Needs of the Case. (RFP Nos. 23, 24) 4

B. Plaintiff Has Sufficiently Responded to the Remaining Requests 5

1. Plaintiff Has Produced Account Identification Information, and Will Supplement it Further (Rog. No. 6, RFP Nos. 11, and 25) 5

2. Plaintiff Has Agreed to Produce Facebook Account Data Information (Interrogatory No. 7) 6

3. Plaintiff Has Confirmed There Are No Responsive Documents To Request Nos. 34 and 36 6

4. Plaintiff Has Confirmed There Are No Responsive "Login" Documents for the Relevant Time Period (Request No. 14) 7

5. Plaintiff Has Produced Documentation of His Current Privacy Settings to Confirm He Did Not Block Cookies, Ads, or Tracking (Request Nos. 39, 40) 8

6. Plaintiff Has Produced Information Sufficient to Identify the Devices Used 9

7. Bloom Does Not Possess Documents that Show the Browsers Used to View UFC Fight Pass During the Class Period 10

IV. CONCLUSION 10

## TABLE OF AUTHORITIES

**Cases**

*Cappello v. Walmart Inc.*, 2019 U.S. Dist. LEXIS 237326 (N.D. Cal. April 5, 2019) .................. 7

*Davenport v. State Farm Mut. Auto. Ins. Co.*, 2012 U.S. Dist. LEXIS 20944 at *3 (M.D. Fla. Feb. 21, 2012) ........................................................................................................... 4

*Downs v. River City Group, LLC*, 2014 U.S. Dist. LEXIS 152247 (D. Nev. Oct. 27, 2014)......... 6

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ........................................................... 7

*Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (Cal. Ct. App. 2012) ..................... 7

*Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566 (C.D. Cal. 2012)....................................... 4

*Mollett v. Netflix, Inc.*, 795 F.3d 1062 (9th Cir. 2015) .................................................................. 7

*Tompkins v. Detroit Metropolitan Airport*, 278 F.R.D. 387 (E.D. Mich. 2012)............................ 4

**Statutes**

18 U.S.C. 2710(b)(2)(B) ............................................................................................................. 6

Cal. Civ. Code §1799.3 ................................................................................................................. 7

## I. INTRODUCTION

The vast majority of Defendant Zuffa, LLC's motion to compel discovery seeks to compel discovery that Plaintiff has already produced, has agreed to produce, does not exist, or is plainly irrelevant. Specifically, with respect to Interrogatory Nos. 3, 6, 7, 8, and Request for Production No. 12, Plaintiff has agreed to supplement his responses. With regard to Request for Production Nos. 13, 14, 23, 34, 39, and 40, Plaintiff has conducted a search and these documents do not exist.

The remainder of the motion seeks to compel discovery that is grossly overbroad and disproportional to the needs of the case. For example, Request No. 24 seeks documents to show "Plaintiff's Activity Log for plaintiff's Facebook, Instagram, WhatsApp, and any other Meta or Facebook-related account(s) from March 4, 2018 to the present." An "activity log" includes the history of an user's *entire Facebook activity*, including posts, photos, videos, text and status updates, activity the user is tagged in, likes, reactions, comments, groups, and events created and attended. Defendant does not and cannot explain why discovery affords it a *carte blanche* into the non-public sections of Plaintiff's social media content or activity that has nothing to do with facts at issue in this case. The only relevant documents here are those that show the interaction *between Meta and Defendant*, which Plaintiff has already produced. Patek Decl., ¶ 6.

As such, the motion to compel should be denied as it seeks documents and information that have already been produced and the remaining requests are not narrowly tailored and proportional to the needs of the case.

## II. BACKGROUND

### A. Plaintiff's Allegations and Claims

Plaintiff Bloom has sued Zuffa for violation of the VPPA and California privacy statutes and torts.[1] The VPPA requires Zuffa to obtain its users consent to disclosure of their video rental information in a form entirely separate from other agreements such as terms of use and purchase

---

[1] Co-Plaintiffs Jack Graham and David Lindholm, both of whom reside outside of California, also sued Zuffa for violation of the VPPA, but not California law.

agreements, and to provide them with the opportunity to opt out of those disclosures. Zuffa discloses subscribers' video rental requests to Meta Platforms, Inc. (d/b/a Facebook) without subscribers' consent. Zuffa runs the Fight Pass streaming platform, which provides pre-recorded mixed martial arts video content through the ufcfightpass.com website. Unbeknownst to subscribers, Zuffa embedded the Fight Pass Website with code from Meta that sent to Meta the subscribers' Facebook ID, a URL with the name of the video watched.

Much of the discovery sought here relates to Plaintiff's Facebook activity and what his privacy settings were for Facebook. However, when determining whether these requests are proportional to the needs of the case, the bar for measuring relevance is what information Defendant sent to Facebook. Plaintiff's use of Facebook generally (or even specifically) is not determinative of Defendant's VPPA violation. Thus, the need for wide access to Plaintiff's Facebook use and activity is limited, and therefore the requests are not proportional under Rule .

**B. Plaintiff's Subpoena to Meta Platforms**

In December 2022, Plaintiff served a subpoena on Meta Platforms, Inc. ("Meta"), d/b/a Facebook, seeking production of data received by Meta from Zuffa's registered Meta Pixel. Patek Decl., ¶ 2. The Meta Pixel is software provided by Meta to its business customers to enable them to track customer activity and target ads. *Id*. The Meta Pixel, in conjunction with Facebook's c_user cookie, enable the transfer of data that identifies UFC Fight Pass website visitors by their Facebook User ID. *Id.* Each of Meta's business customers registers its own version of the Meta Pixel, thereby associating that pixel data with the business customer's account and website. *Id.* Although Zuffa could use a "coded" text string to identify the web pages its customers are visiting (e.g., a number indexed to a particular video), it instead uses the title of the video the user is visiting, thereby intentionally introducing the video its user rented into the data transmitted to Facebook. *Id.*

The data log Plaintiff seeks should include both the Facebook User IDs and video titles transmitted to Meta by Zuffa's pixel. Patek Decl., ¶ 3. Because this log contains data received by Meta, it should prove whether the alleged PII was transmitted to Meta irrespective of any individualized settings on the UFC Fight Pass user's computer. *Id.* Meta originally refused to

produce this information. *Id.* But after Plaintiff moved to compel Meta's production of documents in response to Plaintiff's subpoena, Facebook eventually agreed to search for and produce pixel data it received on six dates for three Meta Pixels registered to Zuffa, cross-referenced with the Facebook User IDs for Bloom and the other plaintiffs in this action. *Id.* Meta also offered to produce an anonymized sample of the data it received if the searches by Plaintiffs' User IDs did not produce any "hits" on those dates. *Id.* (N.B., Zuffa objected to this agreement. *Id.*)

Plaintiff believed the data received from Meta should moot Zuffa's need to obtain information from Plaintiff regarding device and Facebook settings that Zuffa contends would have blocked the alleged transfer of information. Patek Decl., ¶ 4. However, on June 8, 2023, Meta informed Plaintiff that its data retention only goes back two years, to June 19, 2021. *Id.* Thus, though Meta's information should be highly probative evidence that Zuffa caused transmission of Facebook User IDs and URLs containing video titles from June 19, 2021, to June 3, 2022, those records will not be direct evidence that these PII disclosures occurred prior to June 19, 2021. *Id.* It will still, however, be indirect evidence that those disclosures occurred, since Zuffa's pixels worked identically at all times during the Class Period; whatever data Zuffa transmitted prior to June 19, 2021 would be identical to that it transmitted after that date. *Id.*

Nonetheless, in view of Meta's purportedly limited records, Plaintiff has reconsidered its position and is supplementing his responses to Zuffa discovery with documentation corroborating his interrogatory responses. Patek Decl., ¶ 5. Bloom has also requested an Off-Facebook Activity report, and will produce the portion relevant to the UFC Fight Pass Website, to the extent Facebook supplies a responsive document. *Id.* (N.B., Because the Off-Facebook Activity Report is limited in time, it is unlikely to provide any information about data transmitted by Zuffa to Meta during the Class Period, and may not list any activity at all due to changes in Bloom's video viewing habits after 2020). *Id.* This production should moot Zuffa's motion with respect to RFP No. 22.

## III. ARGUMENT

### A. Defendant's Requests Related to Activity Logs, Off-Facebook Activity Are Overly broad and Disproportional to the Needs of the Case. (RFP Nos. 23, 24)

Defendant's Requests for Production Nos. 23-24 seek "all documents and communications relating to Plaintiff's Off-Facebook Activity from UFC Fight Pass" and documents sufficient "to show Plaintiff's Activity Log" for Plaintiff's Facebook and Instagram accounts respectively. Zuffa contends it is entitled to Plaintiff's Activity Log *in full*, which necessarily includes his entire Off-Facebook Activity. This information is not only burdensome in itself to produce, it is also hugely broad. Patek Decl., ¶ 6. As described above, an "Activity Log" includes the entire history of a user's Facebook activity, including posts, photos, videos, text and status updates, activity the user is tagged in, likes, reactions, comments, groups, and events created and attended. Similarly, "Off-Facebook Activity" is a summary of activity that *all* businesses and organizations share with Facebook about a user's interactions, such as visiting their apps or websites.

Courts have found that although some social network content may be discoverable, the Federal Rules do not grant a requesting party "'a generalized right to rummage at will through information that [the responding party] has limited from public view,'" but instead require "'a threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence.'" *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570-71 (C.D. Cal. 2012) (quoting *Tompkins v. Detroit Metropolitan Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012)); *see also Davenport v. State Farm Mut. Auto. Ins. Co.*, 2012 U.S. Dist. LEXIS 20944 at *3 (M.D. Fla. Feb. 21, 2012) ("A request for discovery [of social network content] must still be tailored ... so that it 'appears reasonably calculated to lead to the discovery of admissible evidence.'") (quoting Fed. R. Civ. P. 26(b)(1)).

Plaintiff agrees that Off-Facebook Activity for UFC is relevant and has already produced one document sufficient to show such activity. Patek Decl., ¶ 7. He has also searched for other documents reflecting his Off-Facebook Activity specifically for UFC and has found none. However, Off-Facebook Activity, as it relates to *other businesses*, has no bearing on this case.

Revealing all of Plaintiff's Off-Facebook Activity amounts to revealing much of his browsing history on the internet, with substantial volume and privacy considerations that outweigh the relevance in this case. As such, the request in RFP 24 is not proportional.

Similarly, requesting Plaintiff's Activity Log has no bearing on the case. Who Plaintiff is friends with, what posts he liked, and what events he attended, along with posts and photos revealing his day to day life, opinions, and relationships have absolutely no tendency to lead to admissible evidence as to whether Defendant sent data to Facebook without Plaintiff's consent. As such, the motion to compel this information should be denied.

### B. Plaintiff Has Sufficiently Responded to the Remaining Requests

#### ***1. Plaintiff Has Produced Account Identification Information, and Will Supplement it Further (Rog. No. 6, RFP Nos. 11, and 25)***

Zuffa admits that Mr. Bloom has provided his *personal* Facebook Username and User ID to Zuffa in response to Rog 6. See Mot. at 7 ("Although ***Plaintiff has already identified the username and Facebook ID for his personal Facebook account in response to Interrogatory No. 6***, he has refused to identify this information for his other 'nonpersonal" accounts'"). Mr. Bloom's allegations are that Zuffa caused the transmission of his Facebook User ID (which is personally identifiable because it links to his "Everett Bloom" web page) in conjunction with the titles of videos he watched, thereby violating his privacy rights under the VPPA and California law. He has produced the information necessary to support that allegation.

Plaintiff also agrees to identify the username and Facebook ID for his professional account, "Everett Bloom Photography." Accordingly, Plaintiff Bloom is supplementing his response to Interrogatory No. 6 with this information, with the understanding that, since Zuffa contends this information was likely disclosed, it also supports Mr. Bloom's claims.[2]

---

[2] To the extent Plaintiff had objected to disclosure of "Username" as involving a privacy right, that was based on the interpretation that "Username" sought Bloom's login/username for his account, not the understanding they sought the publicly displayed name on his account. To the extent Zuffa seeks the "Username" shown in Plaintiff's public profile, Plaintiffs are unclear why Zuffa did not simply examine the Facebook profile, where it is displayed in the URL.

Request for Production Nos. 11 and 25 seek documents sufficient to show the same information requested in Interrogatory No. 6. It is unclear what these documents would be, but Plaintiff believes such requests are duplicative and unnecessary in light of his response to Interrogatory No. 6. To the extent Zuffa's motion includes a request to produce logs of changes to Bloom's username(s), Plaintiff has searched and cannot locate any documents to produce. Patek Decl., ¶ 8.

### *2. Plaintiff Has Agreed to Produce Facebook Account Data Information (Interrogatory No. 7)*

Defendant seeks the dates Plaintiff's Facebook accounts were created, deleted, or deactivated. Based on subsequent meet and confer, Plaintiff agrees to produce this information. However, Plaintiff notes that this information is publicly available by viewing Bloom's public Facebook account, which shows his account has been active since 2016.

### *3. Plaintiff Has Confirmed There Are No Responsive Documents To Request Nos. 34 and 36*

Zuffa also moves to compel production of all agreements between Bloom and Facebook and all communications regarding those agreements (RFP No. 34, 36). But like most Facebook users, the only agreements Mr. Bloom entered into with Facebook are those associated with creating a Facebook account, and Mr. Bloom never saved any copies of those agreements for his personal records. As such, Mr. Bloom has no documents to produce. Patek Decl., ¶ 9. While Mr. Bloom could, in theory, go to Facebook.com and pull Facebook's *current* Terms of Use, such documents are publicly available and equally available to Zuffa. *See e.g., Downs v. River City Group, LLC*, 2014 U.S. Dist. LEXIS 152247, *24 (D. Nev. Oct. 27, 2014) (refusing to require production of publicly available documents).

Furthermore, contrary to Zuffa's bald assertion that these "contracts" go to "the heart of this case," Mr. Bloom's user agreement with Facebook cannot lead to admissible evidence relevant to his VPPA claims. The VPPA requires Zuffa—not Facebook—to obtain its users consent to disclosure of their video rental information in a form entirely separate from other agreements such as terms of use and purchase agreements, and to provide them with the opportunity to opt out of those disclosures. See 18 U.S.C. 2710(b)(2)(B) (describing procedures

for procuring consent). Simply put, any agreement between Plaintiff Bloom and Facebook is, as a matter of law, irrelevant to Mr. Bloom's VPPA claims. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) ("[I]n order to plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) ***the disclosure was not authorized by section 2710(b)(2)***"); *see also* 8 U.S.C. 2710(b)(2)(B)(iii) (authorizing disclosure to "any person" when, among other things, "***the video tape service provider*** ***has provided an opportunity***, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election") (emphasis added).

And since his California claims (e.g., UCL, invasion of privacy, Cal. Civ. Code §1799.3) mirror the VPPA, the Facebook agreements are irrelevant to those as well. *See Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (Cal. Ct. App. 2012) (Section 17200's "unlawful" prong "borrows violations of other laws and makes those unlawful practices actionable under the UCL"); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (holding that the VPPA "codifies a context-specific extension of the *substantive* right to privacy"); *Cappello v. Walmart Inc.*, 2019 U.S. Dist. LEXIS 237326, *7 (N.D. Cal. April 5, 2019) ("Section 1799.3 of the California Civil Code prohibits persons providing video recording sales or rentals from disclosing any personal information connected with such sales or rentals to a third party without the consumer's 'written consent'").

#### *4. Plaintiff Has Confirmed There Are No Responsive "Login" Documents for the Relevant Time Period (Request No. 14)*

Zuffa also moves to compel production of Bloom's "login" settings (RFP 14) and the relevant portion of his "Activity Log" (RFP 24), which Zuffa erroneously asserts are easily obtainable. But Facebook's "login and logout" records available to users are limited to roughly the past year, and thus do not include the Class Period. Patek Decl., ¶ 10. Nor has Plaintiff been able to locate any screen showing a "keep me logged in" setting. *Id.* If Plaintiff locates any

responsive documents, he will produce them. In the interim, Plaintiff has no responsive documents to produce.

### *5. Plaintiff Has Produced Documentation of His Current Privacy Settings to Confirm He Did Not Block Cookies, Ads, or Tracking (Request Nos. 39, 40)*

Defendant seeks production of communications related to opting out of targeted advertising (RFP 39), and communications related to opting out of pixel tracking (RFP 40).

As noted above, Bloom (and Plaintiffs Graham and Lindholm) subpoenaed Meta Platforms (d/b/a Facebook) for records of data Zuffa transmitted to Facebook via Zuffa's Meta Pixels. Specifically, Plaintiff has obtained Meta's agreement to produce a sample of pixel log data showing the data transmitted by three Meta Pixels registered to Zuffa, cross-referenced with Facebook User IDs for Plaintiffs Bloom, Graham, and Lindholm. If these records show that Zuffa transmitted to Facebook its user's identities along with video titles they watched, the documents Zuffa seeks will be moot, because the Meta records will show conclusively that the alleged data transfers occurred. Plaintiffs have thus believed that production of Plaintiff Bloom's settings would be unnecessary.

Unfortunately, Meta contends that its pixel data logs only go back to June 2021, and thus do not cover the entire class period.

Accordingly, since Zuffa concedes that Bloom's current settings are relevant evidence of data transmissions prior to June 2021, Bloom is supplementing his production with screenshots of his current Facebook account settings. (Specifically, screenshots showing his Off-Facebook Activity was not turned off, that his Ad Preferences allow targeted ads, and of his Off-Facebook activity, to the extent available; see Patek Decl., ¶ 11). Plaintiff is also producing screenshots of his browser cookie settings and extension lists, which show that he did not block cookies or tracking. This moots Zuffa's motion with respect to compelling responses to RFPs Nos. 6, 7, 9, and 10 (directed to device settings) and RFPs Nos. 12 (cookie and ad settings), 22 & 23 (Off-Facebook Activity), and 40 (documents relating to efforts to opt-out of Facebook pixels, ad targeting, or tracking).

### *6. Plaintiff Has Produced Information Sufficient to Identify the Devices Used*

Plaintiff has responded in good faith to Defendant's interrogatories Nos. 1 & 2, identifying the devices he used to access the UFC Fight Pass Website. Despite this, Defendant moves to compel based on imagined deficiencies.

Rog 1 asks Bloom to "IDENTIFY AND describe, by manufacturer, model number, operating system, Internet browsing system, AND current LOCATION all Devices that [he] used to access UFC Fight Pass at any time from March 4, 2018 to the present." Bloom objected to this as a compound interrogatory, yet responded, identifying the four devices he used by Manufacturer and browser (e.g., "an Apple MacBook Pro using Brave, Firefox, and Chrome.") Zuffa admits that Mr. Bloom identified the devices, but argues that his responses are deficient because they fail to identify the exact operating system used. To be clear, Mr. Bloom responded that he used one "custom-made" personal computer using Windows (which Bloom stated explicitly) and two Apple devices (which any reasonable person would recognize implicitly use Apple operating systems, particularly given that Mr. Bloom identified only the PC as using Windows operating system). Plaintiff also acknowledged that the exact versions of each (e.g., Apple OS 11.0 vs. 11.1) will not change whether the operating systems blocked the alleged tracking. *See* Mot., Ex. E. Despite this, Defendant insists that Plaintiff amend his response to say explicitly that the two Apple devices use the Apple operating systems, and to identify the exact version of each. This is a waste of time, and totally unnecessary; the type of operating system in use is facially obvious from the context of Mr. Bloom's response, and Zuffa provides no evidence that the exact versions used will affect the outcome of this case.

Rog 2 asks Bloom to identify whether each device was "used to visit OR load ANY web page on the UFC Fight Pass with video content" during the relevant time period. Mr. Bloom responded that "[t]o the best of his memory, Plaintiff accessed content available through the UFC Fight Pass platform during the specified time period with each of the devices identified in response to Interrogatory No. 1" (i.e., that he accessed Fight Pass videos using all four devices). For reasons that are still unclear, Zuffa fixates on Bloom's use of the word "platform" rather than "website" to argue that Mr. Bloom has not identified whether he accessed videos on the

UFC Fight Pass website. But as Ex. E to Zuffa's motion shows, Plaintiff already informed Zuffa that "the platform includes the fightpass.com website." In other words, Plaintiffs have already informed Zuffa that Bloom's response was intended to convey the information they seek. Again, a motion to compel an amended response to change "platform" to "website" is unjustified.[3]

### *7. Bloom Does Not Possess Documents that Show the Browsers Used to View UFC Fight Pass During the Class Period*

The Court should also deny Zuffa's motion to compel RFP Nos. 15 and 17, which seek documents sufficient to show the browsers used to access the UFC Fight Pass and Facebook. Plaintiff currently has no documents that conclusively show what devices or browsers he used during the Class Period. For example, to the extent Zuffa seeks production of Bloom's Chrome browser history (which is the primary browser Plaintiff contends would have been used during the alleged disclosures), the problem is that Chrome, by default, deletes any browsing data after 90 days. Patek Decl., ¶ 12. Thus, well before Bloom was even aware of his claims, the Chrome browser had automatically deleted the relevant browsing history from during the Class Period. Accordingly, despite having searched, Plaintiff has been unable to locate any responsive documents.

Plaintiff further notes that Zuffa collects data that appears to track the device and browser used to access Fight Pass videos, thus making this document request cumulative with documents in Zuffa's possession.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to compel supplementation of Mr. Bloom's discovery responses should be denied.

[3] Plaintiff concedes that he agreed to supplement his response to Rog 3 (seeking identification of which devices he used to access Facebook), but inadvertently failed to do so. Plaintiff will do so.

Dated: Jul 17, 2023

**GUTRIDE SAFIER LLP**

*s/ Anthony J. Patek/*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*