**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile: 702-843-6010

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (*pro hac vice*)
seth@gutridesafier.com
MARIE A. MCCRARY (*pro hac vice*)
marie@gutridesafier.com
HAYLEY REYNOLDS (*pro hac vice*)
hayley@gutridesafier.com
ANTHONY PATEK (*pro hac vice*)
anthony@gutridesafier.com
KALI BACKER (*pro hac vice*)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

EVERETT BLOOM, JACK GRAHAM, and DAVE LINDHOLM, on behalf of themselves, and those similarly situated,

Plaintiffs,

v.

ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC.,

Defendants

CASE NO. 2:22-cv-00412-RFB-BNW

**DECLARATION OF ANTHONY J. PATEK IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY**

I, Anthony Patek, declare:

1. I am an attorney licensed to practice law before this Court. I am an attorney with the law firm Gutride Safier LLP. I have personal knowledge of the facts contained in this declaration and, if I were called as a witness, I could and would competently testify to the same.

2. In December 2022, Plaintiff served a subpoena on Meta Platforms, Inc. ("Meta"), d/b/a Facebook, seeking production of data received by Meta from Zuffa's registered Meta Pixel. The Meta Pixel is software provided by Meta to its business customers to enable them to track customer activity and target ads. The Meta Pixel, in conjunction with Facebook's c_user cookie, enable the transfer of data that identifies UFC Fight Pass website visitors by their Facebook User ID. Each of Meta's business customers registers its own version of the Meta Pixel, thereby associating that pixel data with the business customer's account and website. Although Zuffa could use a "coded" text string to identify the web pages its customers are visiting (e.g., a number indexed to a particular video), it instead uses the title of the video the user is visiting, thereby intentionally introducing the video its user rented into the data transmitted to Facebook.

3. The data log Plaintiff seeks should include both the User IDs and video titles transmitted to Meta by Zuffa's pixel. Because this log contains data received by Meta, it should prove whether the alleged PII was transmitted to Meta irrespective of any individualized settings on the UFC Fight Pass user's computer. Meta originally refused to produce this information. But after Plaintiff moved to compel Meta's production of documents in response to Plaintiff's subpoena, Facebook eventually agreed to search for and produce pixel data it received on six dates for three Meta Pixels registered to Zuffa, cross-referenced with the Facebook User IDs for Bloom and the other plaintiffs in this action. Meta also offered to produce an anonymized sample of the data it received if the searches by Plaintiffs' User IDs did not produce any "hits" on those dates. (N.B., Zuffa objected to this agreement.)

4. Plaintiff believed the data received from Meta should moot Zuffa's need to obtain information from Plaintiff regarding device and Facebook settings that Zuffa contends would have blocked the alleged transfer of information. However, on June 8, 2023, Meta informed Plaintiff that its data retention only goes back two years, to June 19, 2021. Thus, though Meta's information should be highly probative evidence that Zuffa caused transmission of Facebook User IDs and URLs

containing video titles from June 19, 2021, to June 3, 2022, those records will not be direct evidence that these PII disclosures occurred prior to June 19, 2021. It will still, however, be indirect evidence that those disclosures occurred, since Zuffa's pixels worked identically at all times during the Class Period; whatever data Zuffa transmitted prior to June 19, 2021 would be identical to that it transmitted after that date.

5. In view of Meta's purportedly limited records, Plaintiff has reconsidered its position and is supplementing his responses to Zuffa discovery with documentation corroborating his interrogatory responses. Bloom has also requested and Off-Facebook Activity report, and will produce the portion relevant to the UFC Fight Pass Website, to the extent Facebook supplies a responsive document. (N.B., Because the Off-Facebook Activity Report is limited in time, it is unlikely to provide any information about data transmitted by Zuffa to Meta during the Class Period, and may not list any activity at all due to changes in Bloom's video viewing habits after 2020). This production should moot Zuffa's motion with respect to RFP No. 22.

6. A Facebook "Activity Log" is a comprehensive log of all of user's activity on Facebook. Facebook delivers the information as a hundreds of individual html files. To produce them, Plaintiff's counsel would need to open each individually, print them as a PDFs (some of which can be dozens or hundreds of pages long), and then upload them for production, which is quite burdensome. This information is not only burdensome in itself to produce, it is also hugely broad.

7. Plaintiff has already produced one document showing Off-Facebook Activity associated with UFC Fight Pass. That document is PLF00019, which is a screenshot from Bloom's Off-Facebook Activity log available via his Facebook account, listing UFC Fight Pass as an app or website for which Off-Facebook Activity had been logged.

8. While Zuffa cites a page from Facebook's Help Center as containing "username and login settings that would reveal whether Plaintiff has changed his usernames over time," (Mot. at 10, citing n. 11) nothing on that page indicates the existence or accessibility of such a log. Plaintiff's counsel has searched and cannot locate any such log. On the other hand, anyone can check a public Facebook profile to see if its owner has used alternate names (e.g., by navigating to the Facebook account page in question, then clicking the "about" tab, and then "details about [Name]" to show "other names" associated with the account. But this method (which shows "no other names" for

Bloom) is something Zuffa could access on facebook.com; there is no justification for compelling Bloom to produce this publicly-accessible document.

9. The only agreements Mr. Bloom entered into with Facebook are those associated with creating a Facebook account, and Mr. Bloom never saved any copies of those agreements for his personal records. As such, Mr. Bloom has no documents to produce.

10. I have investigated the Facebook "login and logout" record available via the facebook.com user account interface. Based on my investigation, it goes back only roughly a year, and thus does not cover the Class Period. Furthermore, Zuffa's records, which track not only viewing dates, but also the devices used to view videos, confirm that the last date Bloom watched a pre-recorded UFC video using his "browser" was March 21, 2020. Plaintiff's Mot. for Class Certification (Dkt. 53), Ex. 1. Zuffa asserts that Bloom should be able to produce a screenshot showing whether he has elected to "keep me logged in," but Plaintiff's counsel cannot locate any such setting on facebook.com for which to take a screenshot. Plaintiff will produce responsive documents if he can locate any.

11. Bloom is supplementing his production with screenshots of his current Facebook account settings. (Specifically, screenshots showing his Off-Facebook Activity was not turned off, that his Ad Preferences allow targeted ads, and of his Off-Facebook activity, to the extent available.)

12. Google's web site indicates that the default settings for Chrome browser, the primary browser that Plaintiff Bloom alleges would have allowed transmission of his personally-identifiable information, keep user browsing history for only 90 days. See, e.g., https://support.google.com/chrome/answer/95589?hl=en&co=GENIE.Platform%3DDesktop#:~:text=Your%20History%20shows%20the%20pages,deleted%20from%20your%20browsing%20history ("Your History shows the pages you've visited on Chrome in the last 90 days.").

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 17, 2023

_/s/Anthony J. Patek/_______________
Anthony J. Patek