**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS (Nev. Bar No. 5549)
jcw@cwlawlv.com
710 South 7th Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

**PAUL HASTINGS LLP**
SUSAN LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
STEPHANIE BALITZER (*admitted pro hac vice*)
stephaniebalitzer@paulhastings.com
1999 Avenue of The Stars
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

Attorneys for Defendant
Zuffa, LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EVERETT BLOOM, JACK GRAHAM, and DAVE LINDHOLM, on behalf of themselves, and those similarly situated,

Plaintiffs,

vs.

ZUFFA, LLC, ENDEAVOR STREAMING, LLC, and ENDEAVOR GROUP HOLDINGS, INC.,

Defendants.

CASE NO. 2:22-cv-00412-RFB-BNW

**REPLY IN SUPPORT OF DEFENDANT ZUFFA, LLC'S MOTION TO COMPEL PLAINTIFF EVERETT BLOOM TO PRODUCE ADDITIONAL DOCUMENTS AND INTERROGATORY RESPONSES**

**Hearing Date:** September 26, 2023
**Time:** 10:00 a.m.
**Courtroom:** LV Courtroom 3B
**Before:** Magistrate Judge Brenda Weksler

# TABLE OF CONTENTS

**Page**

**I. INTRODUCTION** .......... 1
**II. ARGUMENT** .......... 2
A. RFP Nos. 23 and 24 .......... 2
B. Interrogatory No. 6 and RFP Nos. 11 and 25 .......... 5
C. Interrogatory No. 7 .......... 6
D. RFP Nos. 34 and 36 .......... 6
E. RFP Nos. 14 and 24 .......... 6
F. RFP Nos. 39 and 40 .......... 7
G. Interrogatory Nos. 1 and 2 .......... 8
H. Interrogatory Nos. 3-5, 8 and RFP Nos. 6-10, 12-13, 15, 17, 22 .......... 9
**III. CONCLUSION** .......... 10

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*,
2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011) ........ 10

*Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*,
2011 WL 6754053 (W.D.N.Y. May 31, 2011) ........ 10

*F.D.I.C. v. Halpern*,
271 F.R.D. 191 (D. Nev. 2010) ........ 9

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
2019 WL 7801443 (N.D. Cal. Aug. 12, 2019) ........ 10

*In re Hulu Priv. Litig.*,
2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........ 3

*Mailhoit v. Home Depot U.S.A., Inc.*,
285 F.R.D. 566 (C.D. Cal. 2012) ........ 4

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007) ........ 2

*Shaw v. Davis*,
2021 WL 3889982 (D. Nev. Aug. 31, 2021) ........ 9

*SPH Am., LLC v. Rsch. in Motion, Ltd.*,
2016 WL 6305414 (S.D. Cal. Aug. 16, 2016) ........ 3

*SVI, Inc. v. Supreme Corp.*,
2018 WL 10456275 (D. Nev. Mar. 7, 2018) ........ 10

**Other Authorities**

Fed. R. Civ. P.
26(b)(1) ........ 3
37(a)(5)(A) ........ 1

Kate O'Flaherty, *Apple's Stunning iOS 14 Privacy Move: A Game-Changer For All iPhone Users*, FORBES (Jan. 21, 2021, 359 AM), https://www.forbes.com/sites/kateoflahertyuk/2021/01/31/apples-stunning-ios-14-privacy-move-a-game-changer-for-all-iphone-users/?sh=37fa01fb7e8d ........ 9

Meta Platforms, Inc., *Accessing & Downloading Your Information*, Facebook Help Center, https://www.facebook.com/help/1701730696756992/?helpref=related_articles (last visited July 25, 2023) ........ 6

Meta Platforms, Inc., *Account Settings*, Facebook Help Center, https://www.facebook.com/help/568317673256765 (last visited July 25, 2023) ........ 1

Meta Platforms, Inc, *Adjust Your Account Settings*, Facebook Help Center, https://www.facebook.com/help/1221288724572426/?helpref=hc_fnav (last visited July 28, 2023) ........ 8

Meta Platforms, Inc., *Download a copy of your information on Facebook*, Facebook Help Center, https://m.facebook.com/help/212802592074644/ (last visited July 28, 2023) ........ 3

Meta Platforms, Inc., *Introducing the New Access Your Information*, https://about.fb.com/news/2021/01/introducing-the-new-access-your-information/ (last visited July 28, 2023) ........ 7

Meta Platforms, Inc., *Login Alerts and Two-Factor Authentication,* Facebook Help Center, https://www.facebook.com/help/909243165853369/?helpref=hc_fnav (last visited July 28, 2023) ........ 1

Meta Platforms, Inc., *Removing saved login information from your Facebook account*, Facebook Help Center, https://www.facebook.com/help/1706513649379207 (last visited July 28, 2023) ........ 1

Meta Platforms, Inc., *Review your Off-Facebook activity*, Facebook Help Center, https://www.facebook.com/help/2207256696182627 (last visited July 28, 2023) ........ 4

Meta Platforms, Inc., *Use Manage Activity in your Activity Log to archive or delete content*, Facebook Help Center, https://www.facebook.com/help/3094200253964092?helpref=faq_content (last visited July 25, 2023) ........ 7

Meta Platforms, Inc., *View Your Information on Facebook*, Facebook Help Center, https://www.facebook.com/help/1700142396915814?helpref=faq_content (last visited July 26, 2023) ........ 5

## I. INTRODUCTION

Plaintiff Everett Bloom's Opposition to Defendant Zuffa, LLC's ("Zuffa") Motion to Compel is yet another example of his efforts to evade the discovery obligations he assumed when he filed this putative nationwide class action lawsuit.

First, Bloom claims that—after *six months* of resistance to Zuffa's discovery requests, numerous meet and confers, and only after Zuffa was forced to file a motion to compel—he will now agree to supplement his responses to Interrogatory Nos. 3, 6, 7, and 8.[1] Yet, to date, Zuffa still has not received supplemental responses to the subject Interrogatories. Bloom also claims at the eleventh hour that he somehow does not have any documents responsive to RFP Nos. 13, 14, 23, 34, 39, and 40. Again, Bloom never shared this with Zuffa at any point during the many meet and confer conferences, letters, and emails exchanged over the course of the last six months. For that reason alone, the Court should order Bloom to cooperate with Zuffa regarding the methodology of his searches (or, at minimum, permit Zuffa to inspect Bloom's devices regarding the claims made for the first time in his Opposition). But it is also difficult to conceive how it is that Bloom does not have any documents related to the standard settings for his Facebook account, such as log-in settings.[2] Even more puzzling, is Bloom's argument that he does not have any documents related to his Off-Facebook Activity (RFP No. 23), when he has produced documents indicating that he does, in fact, have Off-Facebook Activity for at least one of his Facebook accounts.

Second, Bloom presents straw man arguments regarding the scope of Zuffa's requests. Specifically, Bloom's claim that Zuffa's RFPs are "grossly overbroad and disproportional" mischaracterizes Zuffa's requests. Opp. at 1. For instance, Zuffa has repeatedly made clear (including in its Motion) that it is currently only seeking information related to Bloom's Facebook accounts (and not other Meta accounts). Similarly, Bloom can easily filter his Facebook Activity

---

[1] In such cases, it is appropriate for the Court to grant the moving party's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A).

[2] *See generally* Facebook Help Center, *Account Settings*, https://www.facebook.com/help/568317673256765 (last visited July 25, 2023); *see also id.*, *Removing saved login information from your Facebook account*, https://www.facebook.com/help/1706513649379207 (last visited July 28, 2023); *see also id.*, *Login Alerts and Two-Factor Authentication*, https://www.facebook.com/help/909243165853369/?helpref=hc_fnav (last visited July 28, 2023).

Log to include his logged actions (i.e., devices and logins), which is all that Zuffa has requested in RFP No. 24. Even absent these carve-outs, snapping quick screenshots and exporting a few auto-prepared logs is hardly burdensome or disproportionate when Bloom is the named plaintiff in a putative nationwide class action seeking hundreds of millions of dollars in damages.

Third, Bloom misleadingly contends that he previously produced documents that purportedly show interactions between Facebook and UFC Fight Pass. Opp. at 1. But instead (and as Zuffa explained in its Motion) Bloom had only produced a single screenshot, for an unspecified Facebook account, without any corresponding Off-Facebook Activity log (which is readily accessible to Bloom). It was only after Zuffa filed its Motion that Bloom provided additional Off-Facebook Activity information for *one* of his accounts. Bloom has still failed to produce Off-Facebook Activity information for his other account.

Fourth, Bloom points to his subpoena to Meta as the cure-all for the deficiencies in his discovery responses. It is not. For one, it is well established that a plaintiff should not substitute a third-party subpoena for his own discovery obligations. *See generally Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007). Moreover, Bloom's argument is sheer conjecture; he has no idea what Meta's data will show. Meta has only agreed to produce data for the last year of the four-year proposed class period (as it does not have data before June 19, 2021). Therefore, even if Meta's production includes what Bloom predicts, it will not encompass the information Zuffa seeks from Bloom.

For all of these reasons, the Court should grant Zuffa's Motion to Compel.

## II. ARGUMENT

### A. RFP Nos. 23 and 24

Bloom argues that RFP Nos. 23 and 24, which seek information from Bloom's Off-Facebook Activity and Activity Log, are "burdensome" and "hugely broad." Opp. at 4. Bloom mischaracterizes what Zuffa has requested in its Motion (and in the preceding meet and confers between the parties). Contrary to Bloom's contention, Zuffa is not seeking the entirety of Bloom's Activity Log or Off-Facebook Activity history. With respect to Bloom's Activity Log, Zuffa has not asked for Bloom's Facebook posts and photos. Rather, Zuffa seeks only limited and relevant

information from the Activity Log to show the devices and times associated with Bloom's Facebook log-ins on both of his Facebook accounts. Mot. at 11; *see* https://www.facebook.com/help/212802592074644 (explaining that Facebook users can download their profile information and "add or remove categories of data from your request"); *see also* Figure 1, *infra*. Similarly, Zuffa only seeks Off-Facebook Activity related to the Fight Pass website from both of Bloom's Facebook accounts, not other unrelated websites. In light of Facebook's filtering and exporting tools, Bloom cannot explain how producing this information is even remotely burdensome.

**<u>Figure 1</u>**[3]


Can I pick and choose which information I would like to download?

Yes. When you download a copy of your profile data on Facebook, you'll have control over which categories of data you want to include in the download, as well as which date range of data you want to include of the data you want to receive. These choices are available when you make the request for your information. Learn more about what's included.

Zuffa's requests are not only narrowly tailored, but as Zuffa explained in its Motion, the information sought is highly relevant. If Bloom never watched a video on the Fight Pass website, while also logged into Facebook on that same device and browser, then Facebook could not have received Bloom's information, as he contends. *See generally In re Hulu Priv. Litig.*, 2014 WL 1724344, at *4 (N.D. Cal. Apr. 28, 2014). Thus, the devices (and web browsers) that Bloom used to log in to Facebook (and the dates of those log-ins) are relevant to Zuffa's defenses, as Bloom himself acknowledges in his class certification motion. *See* Pltf.'s Class Cert. Mot. at 14. Bloom has therefore failed to demonstrate how RFP Nos. 23 and 24 are not relevant to the issues in this case. *SPH Am., LLC v. Rsch. in Motion, Ltd.*, 2016 WL 6305414, at *1 (S.D. Cal. Aug. 16, 2016) ("The party resisting discovery generally bears the burden of showing that the discovery requested is irrelevant to the issues in the case or is overly broad, unduly burdensome, unreasonable, or oppressive."); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged

[3] Facebook Help Center, *Download a copy of your information on Facebook*, https://m.facebook.com/help/212802592074644/ (last visited July 28, 2023).

matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .").

Bloom's authorities enunciate a standard that *supports* Zuffa's Motion. *See* Opp. at 4. For instance, *Mailhoit v. Home Depot U.S.A., Inc.* explains that discovery of social media content is generally permissible so long as the responding party is "on notice of the materials to be produced," and the requests are "reasonably calculated to lead to the discovery of admissible evidence," "technically feasible," and not "overly burdensome." 285 F.R.D. 566, 570, 572 (C.D. Cal. 2012). *Mailhoit* is a wrongful termination case—having nothing to do with the plaintiff's Facebook account; but even so, the court there found that the defendant could obtain certain Facebook communications related to her testimony that defendant's alleged wrongdoing caused post-traumatic stress disorder. *Id.* This case, on the other hand, centers around Bloom's Facebook account. *See* Pltf.'s Class Cert. Mot. at 1, 3.

Finally, Bloom argues that he has already produced his Off-Facebook Activity. Opp. at 4. Bloom's argument is misleading. At the time Bloom filed his opposition, the only document produced was the below screenshot (Figure 2). Bloom could not credibly contend that this represents all the Off-Facebook Activity information[4] he has had in his possession.

**Figure 2**




Indeed, Bloom finally produced a more detailed Off-Facebook Activity report for *one* of his Facebook accounts last week (only after Zuffa was forced to file this Motion). But Bloom still needs to produce his Off-Facebook Activity report for his *other* Facebook account. And, contrary to Bloom's baseless assertion, Zuffa's mere request for an Off-Facebook Activity report does not

---

[4] Facebook explains that an Off-Facebook Activity report shows more information – and more specifically, "a summary of your activity that we receive from businesses," including the types of interactions with an app or website. *See* Facebook Help Center, *Review your Off-Facebook activity*, https://www.facebook.com/help/2207256696182627 (last visited July 28, 2023).

concede that it might reflect the transmission of PII as defined under the VPPA. Opp. at 8. Bloom's response to RFP No. 23 therefore remains incomplete.

B. Interrogatory No. 6 and RFP Nos. 11 and 25

In his Opposition, Bloom agreed to identify the username and Facebook ID for his professional Facebook account, as requested by Interrogatory No. 6. This is not surprising as the very authorities that Bloom cites make clear that he does not have a privacy right to his social media profiles. *See, e.g.*, Opp. at 4 (citing *Mailhoit v. Home Depot U.S.A* ["[g]enerally, [social media site] content is neither privileged nor protected by any right of privacy,"].). Notably, however, Bloom has still failed to identify the Facebook ID for his professional account.

And while Bloom has agreed to supplement his responses to Interrogatory No. 6, he still argues that information regarding his professional Facebook account is somehow not relevant to Zuffa's defenses, and that the profile information connected to his accounts, as requested by RFP Nos. 11 and 25, would be "duplicative." Opp. at 6. He is wrong.[5] For instance, Bloom mischaracterizes what RFP No. 25 is seeking. The "Profile Information" requested shows "account preferences," "security and login information," and "personal information," such as account creation dates and the name associated with an account, among other information.[6] *See also* Figure 3, *infra*. This is not duplicative of Zuffa's request for Bloom's Facebook IDs. Accordingly, Bloom should be compelled to produce documents in response to RFPs 11 and 25.

**Figure 3[7]**

These tools and resources are available in the **Your Facebook Information** section of your profile settings.

- Access Profile Information: A summary of your Facebook information that you can access at any time and in a single place. We've categorized this information by type so you can find what you're looking for.

---

[5] Plaintiff's bare assertion that "Zuffa contends this information was likely disclosed" is without support and clearly contested by Zuffa. *See* Opp. at 5.

[6] Facebook Help Center, *View Your Information on Facebook*, https://www.facebook.com/help/1700142396915814?helpref=faq_content (last visited July 26, 2023).

[7] *Id.*

C. Interrogatory No. 7

Bloom contends that his Facebook account creation, deletion, or deactivation dates are all public information. Opp. at 6. Not so. Tellingly, Bloom has failed to point out where on his account Zuffa would be able to decipher when (if at all) he deactivated his Facebook accounts. On the other hand, Facebook makes quite clear that users can access their account information at the touch of a button. There is no burden for Bloom to produce this information. Indeed, Facebook's "Access Your Information tool" offers a host of such information that can be easily downloaded.[8]

Further, information about when Bloom's Facebook accounts were active is relevant because Zuffa could not have disclosed Bloom's Facebook ID if his Facebook account was deactivated. Bloom then concedes (as he must) that he will supplement his response to this Interrogatory. *See* Opp. at 6. However, as of the date of this Reply, he has not done so.

D. RFP Nos. 34 and 36

After months of meet and confer efforts, and only after Zuffa filed a motion to compel, Bloom has now decided to "confirm" that he does not have any documents related to Facebook's terms and conditions or other agreements with Facebook. *See* Opp. at 6. Although Bloom argues otherwise, these agreements are relevant to (at a minimum) Bloom's state law claims (for instance, his invasion of privacy claim) that rely on purported sharing of Bloom's data without his knowledge and consent. *See* First Amend. Compl., ECF No. 47. Therefore, if Bloom never had these agreements in his possession, he should have confirmed this months ago, without forcing Zuffa to incur the cost of filing this Motion.

E. RFP Nos. 14 and 24

Bloom argues that he does not have login settings (i.e., any "remember password" or "keep me logged in" checkbox) or relevant log-in history from his Activity Log for his Facebook accounts during the class period. Opp. at 7. Even if Bloom were correct that Facebook only makes these records available for "roughly the past year" (he is not), Zuffa served these discovery requests in December 2022 and the class period extends through March 2022. *See* Opp. at 7. Thus, even

---

[8] Facebook Help Center, *Accessing & Downloading Your Information*, https://www.facebook.com/help/1701730696756992/?helpref=related_articles (last visited July 25, 2023).

assuming the accuracy of the one-year retention period, Bloom should have produced, or at the very least preserved, these records.

Furthermore, Facebook makes clear it maintains such information beyond the "roughly" one-year period that Bloom relies upon. In fact, Facebook details how it *archives* historical user records.[9] It is unclear then why Bloom assumes (and argues) that this information is only available for one year.

Finally, there are a host of different categories of relevant settings information that Bloom could readily provide, and which he has not produced to date. For instance, Plaintiff could also separately download the security and login information for his account.[10]

F. <u>RFP Nos. 39 and 40</u>

Bloom now agrees (again, only after Zuffa was forced to file a motion to compel) that he will produce documents related to any efforts he has made to opt-out of targeted advertising from Facebook or Facebook tracking. Opp. at 8. Zuffa agrees that any such documents should be produced. To be clear, however, at no point has Zuffa "conceded" that "Bloom's current settings are relevant evidence of data transmissions prior to June 2021." *Id.* To the contrary, since Bloom claims that he has "no memory" of ever changing his settings during the proposed class period, he has therefore put his current settings at issue. ECF No. 57-3, Pltf.'s Resp. to Interrogatory No. 4. Zuffa is therefore entitled to records related to Bloom's current settings.

Despite Bloom's representations that he would produce all of his Off-Facebook Activity settings and his Ad Activity page, Bloom only produced Off-Facebook Activity settings, for one but not both of his accounts, and an incomplete copy of the Ad Activity page (again for one account). *See* Opp. at 8. Bloom still needs to supplement this production, as it is incomplete.

---

[9] Facebook Help Center, *Use Manage Activity in your Activity Log to archive or delete content* https://www.facebook.com/help/3094200253964092?helpref=faq_content (last visited July 25, 2023).

[10] *See* Meta, *Introducing the New Access Your Information*, https://about.fb.com/news/2021/01/introducing-the-new-access-your-information/ (last visited July 28, 2023).

Further, there are a host of other Facebook settings that Bloom still has not produced, and that are relevant, as shown in Figure 4. Bloom must supplement his production to include all relevant privacy settings on his Facebook accounts.

**Figure 4[11]**

Your Facebook settings

### To find your settings

1. Click your profile picture in the top right of Facebook.
2. Select **Settings & privacy**, then click **Settings**.
3. Click on the setting you'd like to update from the options in the left sidebar.

### Settings include things like

- **General:** Edit the basics like your name, username, or email.
- **Security and Login:** Change your password, and turn on alerts and approvals to keep your account secure.
- **Privacy:** Adjust who can see things like who can see your future posts and who can look you up.
- **Profile and Tagging:** Set who can see things on your timeline and who can see things you're tagged in.
- **Blocking:** Manage who and what you block.
- **Language and Region:** Select things like the language and date format that you want to use for Facebook.

G. Interrogatory Nos. 1 and 2

There is nothing "imagined" about the deficiencies in Bloom's responses to Interrogatories 1 and 2. *See* Opp. at 9. In Interrogatory No. 1, Zuffa requested the operating systems of the devices Bloom used to access the Fight Pass website—and Bloom has not provided that information. *See* Dkt. No. 57-3 at 5-6. While Bloom argues his use of Apple devices means they "implicitly use Apple operating systems," Opp. at 9, what is still not clear is what version(s) of those operating systems he has on those devices. Further, although Bloom states that "the exact versions of each (e.g., Apple OS 11.0 vs. 11.1) will not change whether the operating systems blocked the alleged

[11] Facebook Help Center, *Adjust Your Account Settings*, https://www.facebook.com/help/1221288724572426/?helpref=hc_fnav (last visited July 28, 2023).

tracking" (Opp. at 9), that is incorrect. Different versions of Apple's operating systems include different privacy features and cookie blocking capabilities.[12] Bloom also fails to explain why this request to identify the operating systems on a handful of devices (which would likely take only a few minutes) is burdensome. *See* Opp. at 9; *cf. Shaw v. Davis*, 2021 WL 3889982, at *3 (D. Nev. Aug. 31, 2021).

In Interrogatory No. 2, Zuffa asked whether Bloom's devices were used to access the Fight Pass website during the proposed class period. Bloom said that "to the best of his memory" he "accessed video content available through the UFC Fight Pass platform . . . with each of the devices identified in response to Interrogatory No. 1." *See* Dkt. No. 57-3 at 6. Bloom is required to actually consult records when responding to written discovery. That is well-established Ninth Circuit law—and Bloom does not argue otherwise. *See* Mot. at 12; Opp. at 9-10. His response, which relies on the "best of his memory," is therefore inadequate. *See F.D.I.C. v. Halpern*, 271 F.R.D. 191, 193-94 (D. Nev. 2010) (a responding party "cannot limit its interrogatory answers to matters within its own knowledge and ignore information immediately available to it or under its control".); *Shaw*, 2021 WL 3889980, at *7 (response of "no recollection" in response to an interrogatory was inadequate where defendant did nothing "to locate any documents or records that may be in her possession that could assist her in providing complete answers").

Moreover, as Zuffa previously explained, it is entitled to know the devices that Bloom used to access Fight Pass website, as opposed to what devices were used to access the Fight Pass application available on a Smart TV, for instance. Bloom makes this distinction out to be arbitrary but Bloom's lawsuit is limited to his use of the Fight Pass website.

Bloom must therefore supplement his responses to Interrogatory Nos. 1 and 2.

H. <u>Interrogatory Nos. 3-5, 8 and RFP Nos. 6-10, 12-13, 15, 17, 22</u>

Bloom fails to substantively oppose any of Zuffa's arguments with respect to Interrogatory Nos. 3-5 and 8, or RFP Nos. 6-10, 12-13, 15, 17, and 22. Instead, Bloom summarily contends in

[12] *See* Kate O'Flaherty, *Apple's Stunning iOS 14 Privacy Move: A Game-Changer For All iPhone Users*, FORBES (Jan. 21, 2021, 359 AM), https://www.forbes.com/sites/kateoflahertyuk/2021/01/31/apples-stunning-ios-14-privacy-move-a-game-changer-for-all-iphone-users/?sh=37fa01fb7e8d.

one sentence that many of these requests are mooted. Opp. at 8. Bloom's sole contention is that he has produced cookie settings (which are incomplete) and browser extensions for one (not all) of his browsers. *Id*. Not only is this an incomplete production, but it certainly does not "moot" all of the remaining requests as Bloom contends. *See* Declaration of Stephanie Balitzer, ¶¶ 2, 4. Therefore, the Court should compel Bloom to produce information in response to those requests for the reasons stated in its opening motion. *See SVI, Inc. v. Supreme Corp.*, 2018 WL 10456275, at *1 (D. Nev. Mar. 7, 2018) ("The party seeking to avoid discovery bears the burden of explaining why discovery should be denied").

## III. CONCLUSION

For the reasons stated herein and Zuffa's opening brief, Zuffa's Motion to Compel should be granted in full.[13]

DATED: July 28, 2023

**PAUL HASTINGS LLP**

By: /s/ ***Susan Leader***

Susan Leader
Ali Rabbani
Stephanie Balitzer

Attorneys for Defendant
Zuffa, LLC

---

[13] Zuffa further notes that the Declaration of Anthony Patek submitted in support of Plaintiff's opposition is improper. The declaration includes impermissible legal argument and unsubstantiated characterizations regarding the functionality of the Meta/Facebook Pixel without any foundation. These statements should be disregarded. *See, e.g.*, *Finjan, Inc. v. Check Point Software Techs., Inc.*, 2019 WL 7801443, at *10 (N.D. Cal. Aug. 12, 2019) (An attorney declaration made without personal knowledge is entitled to no weight); *Degelman Indus., Ltd. v. Pro-Tech Welding & Fabrication, Inc.*, 2011 WL 6754053, at *4 (W.D.N.Y. May 31, 2011), *report and recommendation adopted*, 2011 WL 6752565 (W.D.N.Y. Dec. 23, 2011) (striking portions of attorney declaration as "argumentative," "conjecture," and because they improperly reached legal conclusions based on the attorney's weight of the evidence).

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on July 28, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Susan K. Leader

SUSAN K. LEADER

# INDEX

| EXHIBIT NO. | DOCUMENT | NO. OF PAGES | PAGE RANGE |
|---|---|---|---|
| N/A | DECLARATION OF STEPHANIE BALITZER IN SUPPORT OF DEFENDANT ZUFFA, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL | 2 | N/A |