**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS (Nev. Bar No. 5549)
jcw@cwlawlv.com
710 South 7th Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

**PAUL HASTINGS LLP**
SUSAN LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
STEPHANIE BALITZER (*admitted pro hac vice*)
stephaniebalitzer@paulhastings.com
1999 Avenue of The Stars
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EVERETT BLOOM, JACK GRAHAM, and DAVE LINDHOLM, on behalf of themselves, and those similarly situated,

Plaintiffs,

vs.

ZUFFA, LLC, ENDEAVOR STREAMING, LLC, and ENDEAVOR GROUP HOLDINGS, INC.,

Defendants.

CASE NO. 2:22-cv-00412-RFB-BNW

**REPLY BRIEF IN SUPPORT OF THE ENDEAVOR DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs' Opposition fails to resolve the fundamental and incurable defects in the FAC that require dismissal of Plaintiffs' claims against the Endeavor Defendants. ***First***, as a threshold matter, Plaintiffs fail to meet their burden of establishing that this Court can exercise personal jurisdiction over the Endeavor Defendants. Not only do Plaintiffs concede that there is no basis for general jurisdiction over Endeavor Streaming, they also misconstrue the Supreme Court's decision in *Mallory* with respect to Endeavor Group Holdings. Likewise, even crediting Plaintiffs' distorted version of their allegations, Plaintiffs fail to demonstrate any basis for specific jurisdiction over either of the Endeavor Defendants. ***Second***, Plaintiffs fail to identify any well-pled allegations to support their VPPA claim against the Endeavor Defendants, and instead impermissibly rely on materials outside the FAC in an effort to save their claim. Even so, Plaintiffs have failed to plausibly allege that the Endeavor Defendants are "video tape service providers," that Plaintiffs are "consumers" of the Endeavor Defendants, and that the Endeavor Defendants "disclosed" Plaintiffs' PII. ***Third***, Plaintiff Bloom fails to salvage his state law claims under California Civil Code § 1799.3, the California Constitution, and California's Unfair Competition law. Accordingly, the Court should dismiss Plaintiffs' claims against the Endeavor Defendants with prejudice.

## I. PLAINTIFFS' OPPOSITION FAILS TO SHOW HOW JURISDICTION CAN BE EXERCISED OVER THE ENDEAVOR DEFENDANTS

### A. Plaintiffs Have Not Met Their Burden of Demonstrating General Jurisdiction.

Plaintiffs do not argue that that there is any basis for general jurisdiction over Endeavor Streaming. Opp. at 5-8. Their sole argument is that Endeavor Group Holdings "consented" to general jurisdiction in Nevada by registering to do business in the state. *Id.* Plaintiffs are wrong.

First, Plaintiffs misconstrue the Supreme Court's holding in *Mallory*. *Id.* Contrary to Plaintiffs' argument, *Mallory* does not stand for the proposition that out-of-state corporations "consent" to general jurisdiction by merely registering to do business in that state. *Id.* at 6-7. If that were true, *Mallory* would overrule decades of personal jurisdiction jurisprudence. That is not the case. Rather, as Plaintiffs themselves acknowledge, the Supreme Court expressly limited its holding to the specific Pennsylvania statute and facts at issue in *Mallory*, declining to "speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit."

*Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2038 (2023). Indeed, far from adopting a rule of "consent by registration," the Court emphasized Norfolk Southern's substantial connections to Pennsylvania. *Id.* at 2043. Plaintiffs also wrongly suggest that *Mallory* "identified the Nevada law (among others) as an example of an 'all-purpose jurisdiction rule.'" Opp. at 8. In reality the Court, in dicta, referred to a Nevada statute from 1889, not the current statute.[1]

Second, unlike the Pennsylvania statute at issue in *Mallory*, Nevada's statute says *nothing* about consent to personal jurisdiction. Instead, it simply states that a foreign corporation should "appoint and keep . . . a registered agent who resides or is located in this State, upon whom all legal process and any demand or notice authorized by law to be served upon." N.R.S. 14.020. Contrary to Plaintiffs' suggestion, appointing a registered agent to accept legal process is not the same as consenting to personal jurisdiction. Indeed, Plaintiffs' reading of the Nevada statute would "improperly 'amend the statute by adding words that are not there' and would impermissibly 'read into a statute a provision which the legislature did not see fit to enact.'" *Aybar v. Aybar*, 37 N.Y.3d 274, 283 (2021) (internal citations omitted) (holding that "a foreign corporation's registration to do business and designation of an agent for service of process in New York does not constitute consent to general jurisdiction under the Business Corporation Law's plain terms").[2] In *Mallory*, by contrast, the Pennsylvania statute "is explicit that 'qualification as a foreign corporation' shall permit state courts to 'exercise general personal jurisdiction' over a registered foreign corporation,

[1] Plaintiffs' reliance on *Pennsylvania Fire* is also misplaced. There, the Court found that "the defendant insurance company had obtained a license to do business in Missouri, and to that end . . . had filed . . . a power of attorney consenting that service of process upon the superintendent ***should be deemed personal service upon the company*** . . . ." *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co.*, 243 U.S. 93, 94 (1917) (emphasis added); *cf. Freeman v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 116 Nev. 550, 554, 1 P.3d 963, 968 (2000) (analyzing the Nevada equivalent of the statute in *Pennsylvania Fire* and holding it "does not in itself subject a non-resident insurance company to the personal jurisdiction of Nevada Courts."). Thus, jurisdiction was deemed proper based on the express consent filed with the state, not the mere fact that the defendant was registered to do business in Missouri.

[2] Plaintiffs also fail to point to any Nevada cases that support their interpretation of the Nevada statute. *See King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 575 (9th Cir. 2011) ("[F]ederal courts should look first and foremost to a state's construction of its own statute to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation."). The closest analog is *Freeman*, which held that a similar statute "does not in itself subject a non-resident insurance company to the personal jurisdiction of Nevada Courts." 116 Nev. at 554.

just as they can over domestic corporations." *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2030 (2023) (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)).

Thus, Plaintiffs' argument that Endeavor Group Holdings is subject to general jurisdiction in Nevada under *Mallory* should be rejected.

**B. Plaintiffs Have Not Met Their Burden of Establishing Specific Jurisdiction.**

Plaintiffs also fall far short of establishing a basis for specific personal jurisdiction.

***Purposeful direction.*** Plaintiffs fail to demonstrate that they have satisfied the "purposeful direction" test, which "applies most readily to suits sounding in tort" such as the instant action. *Carroll v. J.M. Smucker Co.*, 2023 WL 4053796, at *2 (N.D. Cal. June 15, 2023) (finding that specific jurisdiction could not be exercised over an out-of-state defendant that purportedly installed the Facebook Pixel). As Plaintiffs themselves acknowledge, "maintenance of a passive website alone cannot satisfy" the purposeful direction test. Opp. at 11 (citation omitted). Rather, Plaintiffs must demonstrate that the Endeavor Defendants have done "something more"—i.e., "conduct directly targeting the forum." *Smucker*, 2023 WL 4053796, at *2-3. Plaintiffs have not done so.

First, Plaintiffs' argument that the UFC Fight Pass website is interactive "because subscribers input their personal information when they sign up" is insufficient. Opp. at 11; *see Smucker*, 2023 WL 4053796, at *3 (noting that courts have found allegations that "users had to register to fully access" a website was not enough to "indicate interactivity sufficiently directed at [a state] to give rise to specific personal jurisdiction") (citation omitted); *see also* Opp. at 9 (conceding that "Zuffa [and not the Endeavor Defendants] signs up customers for UFC Fight Pass"). Second, Plaintiffs' assertions that "a significant portion of its subscribers are from Nevada" and "Defendants shared this information with Facebook specifically to *target* subscribers . . . in Nevada" are wholly unsupported, absent from the FAC, and make little sense given, as Plaintiffs acknowledge, "UFC Fight Pass operates on a national scale." *Id.* at 11. Third, while Plaintiffs contend that "Defendants" collectively created a significant portion of their Fight Pass content in Las Vegas, Plaintiffs provide no support for the suggestion that the Endeavor Defendants—rather than Zuffa—created any content for the UFC Fight Pass website, other than the mere fact that Endeavor Group Holdings indirectly owns the UFC Apex facility in Las Vegas through Zuffa. *See*

*id* at 11-12. Moreover, even if Plaintiffs could substantiate this claim, it is irrelevant because only "the defendant's *suit-related conduct* must create a substantial connection with the forum State." *Smucker*, 2023 WL 4053796, at *4 (emphasis in original; citation omitted). Lastly, Plaintiffs' suggestion that Endeavor Streaming "remits payment to [] Zuffa in Nevada" does not to show that Endeavor Streaming engaged in conduct directly targeting Nevada or its residents. Opp. at 12.

Moreover, Plaintiffs' sole authority—*Mavrix Photo*—is distinguishable. In *Mavrix*, the Ninth Circuit determined that the defendant "expressly aimed" its website at California because the copyrighted photos specifically targeted the California market. *Mavrix*, 647 F.3d 1218, 1229 (9th Cir. 2011). Not only did the website in *Mavrix* focus on a California subject matter (i.e., Hollywood celebrities) but the "website had advertisements directed to Californians," and the website's "substantial" California viewer base was "an integral component" of the website's business model and profitability." *Id.* at 1230. Not so here. Plaintiffs allege that the Endeavor Defendants engaged in a "systematic nationwide practice," and not that the Fight Pass website's content, the Meta Pixel, or any marketing efforts were specifically designed to target Nevada residents. Opp. at 10.

***Purposeful availment.*** Plaintiffs also fail to establish that the Endeavor Defendants purposefully availed themselves of the benefits and protections of Nevada. The crux of Plaintiffs' argument is that the Endeavor Defendants entered into "contracts centered on performance [in Nevada] and exploiting the Nevada market." Opp. at 9. But Plaintiffs' own cited authority, *Davis v. Cranfield Aerospace*, makes clear that these allegations are insufficient. Opp. at 8 n.4. In *Davis*, the Ninth Circuit explained that "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." 71 F.4th 1154, 1165 (9th Cir. 2023) ("remote actions taken to service a contract in the forum state seldom lead to purposeful availment by themselves"). Thus, the purported contractual relationships between Zuffa and the Endeavor Defendants are not sufficient to satisfy the purposeful availment test.

Plaintiffs' remaining arguments regarding Endeavor Group Holdings fare no better. Opp. at 10. Neither corporate ties nor email exchanges are sufficient to show purposeful availment. *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985) (citation omitted) ("ordinarily 'use of the

mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2009 WL 10692801, at *5 (D. Nev. Mar. 9, 2009) (holding that a defendant was "not subject to personal jurisdiction in Wisconsin based on the forum acts of its subsidiary").

Finally, Plaintiffs make little effort to show that their purported injuries arise out of or relate to the Endeavor Defendants' forum contacts, and certainly do not demonstrate that there is "but for" causation. *See Brandon v. Wright Med. Techs., Inc.*, 2021 WL 3134658, at *4 (D. Nev. July 23, 2021) ("Jurisdiction is lacking without an affiliation between the specific controversy and the forum."). For instance, Plaintiffs do not allege that the Endeavor Defendants' purported forum contacts have anything to do with the use of the Meta Pixel on the UFC Fight Pass website—which is the alleged conduct underlying all of Plaintiffs' claims. For this reason alone, Plaintiffs have failed to meet their burden.

Plaintiffs' claims against the Endeavor Defendants should therefore be dismissed for lack of specific personal jurisdiction.

### C. Jurisdictional Discovery is Not Warranted.

Jurisdictional discovery should not be granted based on a mere "hunch that [discovery] might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008), or "bare allegations in the face of specific denials." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted). Here, Plaintiffs' reasons for requesting jurisdictional discovery are overbroad and based solely on Plaintiffs' belief that it will "reveal the agreements between the Endeavor Defendants and Zuffa defining their business relationship" (which have already been set forth in their pleading and are legally insufficient). Opp. at 12-13. Given the issues addressed above, it is unclear what Plaintiffs will achieve through jurisdictional discovery, particularly given that Plaintiffs have already engaged in extensive discovery with Zuffa for well over a year. Plaintiffs' request should therefore be denied.[3] *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864–65 (9th Cir. 2022); *see also Smucker*, 2023 WL 4053796, at *5 (declining

[3] Plaintiffs recently served over 170 broad discovery requests on the Endeavor Defendants. The Endeavor Defendants intend to seek a stay of such discovery until after the resolution of this Motion.

"to wait for jurisdictional discovery as plaintiffs request, because it "would not rescue plaintiffs' jurisdictional deficiencies").

## II. PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE A VPPA CLAIM AGAINST THE ENDEAVOR DEFENDANTS

### A. Plaintiffs' Opposition Fails to Identify Any Plausible Allegations That the Endeavor Defendants are Video Tape Service Providers.

There is no dispute that to be a "video tape service provider," a defendant must be "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4). As Plaintiffs recognize, this means that a defendant's product or service must be "substantially involved in the conveyance of video content to consumers" and "significantly tailored to serve that purpose." Opp. at 13 (citing *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017)). Yet Plaintiffs do not (and cannot) point to any well-pled allegations regarding the Endeavor Defendants that meet this standard. *See* Opp. at 13-15.

***Endeavor Group Holdings.*** Plaintiffs point to three allegations from the FAC that are cherry-picked from the April 2021 Prospectus of Endeavor Group Holdings. But when viewed in context, these statements fail to support Plaintiffs' assertion that Endeavor Group Holdings is a video tape service provider. *See Lloyd v. CVB Fin. Corp.*, 2012 WL 12883522, at *11 (C.D. Cal. Jan. 12, 2012) (Courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

First, Plaintiffs allege that Endeavor Group Holdings "touts itself as 'one of the largest independent global distributors of sports video programming and data.'" FAC ¶ 13. But Plaintiffs conveniently omit the next sentence from the Prospectus, which clarifies that "[w]e sell media rights globally on behalf of more than 150 clients . . . as well as for our owned assets and channels." Prospectus at 105.[4] Selling "media rights" is a far cry from delivering "prerecorded video cassette tapes or similar audio visual materials" for purposes of the VPPA.[5]

---

[4] *See* ECF No. 60 at 2 n.2 (requesting judicial notice of the Prospectus).

[5] Plaintiffs argue—without citation—that Endeavor Group Holdings "concedes" that "*distribution* necessarily encompasses the *delivery* of video content." Opp. at 14. Not so. The

Second, Plaintiffs allege that Endeavor Group Holdings "tells investors that [] it 'deliver[s] live streaming video and data feeds for more than 45,000 sports events annually, as well as for on-demand virtual sports products including our own UFC.'" FAC ¶ 26. But Plaintiffs again omit key portions of this sentence, which reads in full: "***Through IMG ARENA***, we work with more than 470 leading sportsbook brands worldwide to deliver live streaming video and data feeds for more than 45,000 sports events annually, as well as for on-demand virtual sports products including our own UFC Event Centre." Prospectus at 105 (emphasis added). Indirect ownership of IMG ARENA, a sports betting company, does not make Endeavor Group Holdings a video tape service provider.

Third, Plaintiffs allege that Endeavor Group Holdings "states that it 'provide[s] streaming video solutions . . . via Endeavor Streaming.'" FAC ¶ 13. Again, Plaintiffs leave out key portions of the quote, which reads: "We also leverage the technology derived from IMG ARENA to provide streaming video solutions to our clients and our owned assets via Endeavor Streaming." Prospectus at 105. Again, indirect ownership of Endeavor Streaming does not transform Endeavor Group Holdings into a video tape service provider. *See, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *8 (D.N.J. July 2, 2014) (holding that "Google's ownership of YouTube does not bring Google within the [VPPA's] ambit" where the "specific video materials or services" had been requested from another entity).[6]

**Endeavor Streaming.** Plaintiffs argue that "Endeavor Streaming's entire business model is built on providing video streaming services" (Opp. at 13-14), but the allegations they cite merely allege that Endeavor Streaming "writes the code" for the Fight Pass Website and "addresses technological problems that arise on the Fight Pass Website." FAC ¶¶ 2, 12, 13, 26; *see also id.* ¶ 18. *At most*, these allegations suggest that Endeavor Streaming is "peripherally or passively"

---

plain language of the VPPA refers to "delivery" of prerecorded video cassette tapes or similar audio visual materials, ***not*** the "distribution" of media rights.

[6] Plaintiffs also quote portions of the Prospectus that are not referenced in the FAC. *See, e.g.*, Opp. at 14 (asserting that Endeavor Group Holdings "describes itself in SEC filings as 'a full-service content production and distribution platform'"). Plaintiffs' attempt to rely on materials outside the FAC is not only improper, it underscores the deficiencies in the FAC. *See, e.g.*, *Slichter v. Siemens Prod. Lifecycle Mgmt. Software, Inc.*, 2019 WL 8108744, at *4 (C.D. Cal. Aug. 29, 2019) ("'New' allegations raised in an opposition 'are irrelevant for Rule 12(b)(6) purposes.") (quoting *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998)).

involved in the delivery of video content. This is not enough to garner liability under the VPPA. *See, e.g.*, *Cantu v. Tapestry, Inc.*, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) ("Even if it is true that Defendant's business model monetizes the occasions its customers watch videos, Plaintiff has not alleged facts supporting an inference that [the defendant's] enterprise is 'significantly tailored' to achieving such a purpose. The VPPA's standard is a higher bar, which Plaintiff's allegations fail to reach.").

**B. Plaintiffs' Opposition Fails to Identify Any Consumer Relationship Between Plaintiffs and the Endeavor Defendants.**

Plaintiffs fail to identify a single allegation in the FAC that establishes they are "consumers" of the Endeavor Defendants. Opp. at 15-17. Instead, Plaintiffs improperly rely on documents outside the FAC to argue that they "pay for and subscribe to" content and streaming services from the Endeavor Defendants. *Id.* at 15 (citing Endeavor Group Holdings' SEC filings); *see also Slichter*, 2019 WL 8108744, at *4 ("New" allegations raised in an opposition "are irrelevant for Rule 12(b)(6) purposes.") (citation omitted). For this reason alone, Plaintiffs' VPPA claim against the Endeavor Defendants should be dismissed.

Again, *even if* Plaintiffs had included these allegations in the FAC, they would still fail. Plaintiffs' assertion that Endeavor Group Holdings "considers subscribers to UFC Fight Pass its 'own' subscribers" misquotes the Prospectus, which only states that Endeavor Group Holdings indirectly owns UFC (i.e., Zuffa) and that the number of Fight Pass subscribers is growing. *See* Opp. at 15 (citing Prospectus at 104). And Plaintiffs' claims that "subscribers could not watch *any* videos on UFC Fight Pass without the technology Endeavor Streaming provides" and that Endeavor Streaming "collects revenue paid by the end-user" merely suggest that Endeavor Streaming provides backend infrastructure for UFC Fight Pass. Opp. at 15. Such allegations do not plausibly allege a "consumer" relationship between Plaintiffs and the Endeavor Defendants, particularly given that the FAC makes clear that Plaintiffs subscribed to UFC Fight Pass directly from Zuffa, not the Endeavor Defendants. *See* ECF No. 60 at 11-12.

Plaintiffs' interpretation of the VPPA is also wrong. Contrary to Plaintiffs' assertion that the VPPA does not require privity between a "consumer" and a "video tape service provider," the

plain language of the VPPA is clear that a "consumer" must rent, purchase, or subscribe for goods or services "***from*** a video tape service provider." 18 U.S.C. § 2710(a)(1) (emphasis added). For this reason, courts around the country have held that some "ongoing commitment or relationship between the user and the entity" is required to show a consumer relationship. *See, e.g.*, *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015) (a plaintiff must show that they have undertaken an "ongoing commitment or relationship" with the video tape service provider that "owns and operates" the service); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017) (same); *Hunthausen v. Spine Media, LLC*, 2023 WL 4307163, at *3 (S.D. Cal. June 21, 2023) (reasoning that "the scope of a 'consumer' . . . is cabined by the definition of 'video tape service provider,' with its focus on the rental, sale or delivery of audio-visual materials" and granting defendants' motion to dismiss without leave to amend); *Gardener v. MeTV*, 2023 WL 4365901, at *5 (N.D. Ill. July 6, 2023) ("[B]ecause Plaintiffs receive nothing 'in return' for a MeTV login, they are not 'subscribers' under the Act."). Therefore, even if Plaintiffs could plausibly allege that the Endeavor Defendants are video tape service providers (as discussed above, they cannot), their VPPA claims fail for the independent reason that Plaintiffs do not allege any ongoing commitment or relationship with the Endeavor Defendants. *See* ECF No. 60 at 12.

Finally, Plaintiffs' assertion that the cases cited by the Endeavor Defendants are "inapposite" is wrong. Opp. at 16-17. Those cases show that courts routinely dismiss VPPA claims where, as here, a plaintiff fails to plausibly allege that he or she is a "subscriber of goods or services" from a defendant. *See* ECF No. 60 at 12-13. Notably, Plaintiffs do not cite to any cases of their own to support their theory that they are "consumers" of the Endeavor Defendants. Accordingly, Plaintiffs' VPPA claim against the Endeavor Defendants should be dismissed.

### C. Plaintiffs' Opposition Fails to Identify Allegations That the Endeavor Defendants Disclosed Their PII.

Plaintiffs do not dispute that their allegations regarding disclosure of PII relies on group pleading—i.e., referring collectively to "Defendants" rather than specifying which individual defendant or defendants were responsible for the alleged disclosures. Opp. at 18 n.12. Instead, Plaintiffs double-down on this pleading deficiency, arguing that "Defendants acted collectively to

unlawfully transmit Plaintiffs' information to a third party" and "jointly operated the Fight Pass Website." *Id.* at 18 & n.12. But Plaintiffs fail to explain how the Endeavor Defendants could plausibly be held responsible for disclosing Plaintiffs' PII, given that the FAC concedes Endeavor Group Holdings does not have access to the code for the UFC Fight Pass website (FAC ¶ 36), and that Facebook—not Endeavor Streaming—"designs the Facebook JavaScript code" at issue. *Id.* ¶ 50.[7] These allegations, coupled with Plaintiffs' impermissible group pleading, make clear that Plaintiffs have not and cannot plausibly allege the Endeavor Defendants disclosed Plaintiffs' PII.

## III. PLAINTIFF BLOOM'S STATE LAW CLAIMS SHOULD ALSO BE DISMISSED

### A. The Opposition Fails to Identify Any Allegations That the Endeavor Defendants Provided "Video Recording Sales or Rental Services" to Plaintiff.

Contrary to Plaintiff Bloom's position, California Civil Code § 1799.3 is unquestionably narrower than the VPPA because it is limited to "video recording sales or rental services." Yet Plaintiff does not identify any allegations in the FAC that suggest the Endeavor Defendants provide video recording sales or rental services. Nor does Plaintiff pinpoint any allegations that the Endeavor Defendants provided video materials to him "in exchange for money." Rather, Plaintiff cites to allegations in the FAC that make clear he subscribed to UFC Fight Pass directly ***from Zuffa***. Opp. at 19-20 (citing FAC ¶¶ 29-30 ("To sign up for a UFC Fight Pass subscription, Zuffa presents consumers with a webpage that requires the consumer to select his or her desired UFC Fight Pass Plan on the [UFC] Fight Pass Website") (emphasis added)). Accordingly, Plaintiff Bloom's claim against the Endeavor Defendants under California Civil Code § 1799.3 should be dismissed.

### B. The Opposition Fails to Establish an Invasion of Privacy Claim.

Plaintiff Bloom does not dispute that his invasion of privacy claim under the California Constitution is premised on alleged violations of the VPPA and § 1799.3. Opp. at 20. As such, this claim fails for the same reasons discussed above. But to the extent Plaintiff contends that he has an informational privacy interest *independent* of the VPPA and § 1799.3, he also fails to explain

[7] This is not, as Plaintiffs contend, a "throwaway argument." Opp. at 18 n.13. Despite Plaintiffs allegations that Endeavor Streaming "writes the code" for the UFC Fight Pass website, the FAC is clear that Facebook—not Endeavor Streaming—provided the Pixel code at issue in this action. Therefore, Plaintiffs' assertion that Endeavor Streaming somehow made "technical decisions regarding how [the] code interacts with Facebook pixels" makes little sense.

how his Facebook ID and UFC Fight Pass URLs on their own are "sensitive and confidential." Rather, the FAC concedes that Plaintiff's Facebook ID and Facebook profile are publicly available. And the FAC does not allege why disclosure of the titles of Fight Pass videos Plaintiff accessed would cause "unjustified embarrassment or indignity." *See Pioneer Elecs. (USA), Inc. v. Super. Ct.*, 40 Cal. 4th 360, 370 (2007). Thus, the FAC does not meet the "high bar" for establishing an invasion of privacy claim. *See In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1038 (N.D. Cal. 2014).

Plaintiff also fails to identify any allegations of specific conduct by the Endeavor Defendants that constitutes a serious invasion of privacy. Instead, Plaintiff argues that this element cannot be resolved on a motion to dismiss. Opp. at 21. But Plaintiff ignores that courts have consistently held on motions to dismiss that disclosure of a user's browser history to third parties does not amount to a serious invasion of privacy. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (dismissing invasion of privacy claim with prejudice where disclosure of "LinkedIn ID and the URL of the LinkedIn profile page that the user viewed (which in the aggregate discloses a user's browsing history among LinkedIn profiles)" did not amount to a serious invasion); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (collection and disclosure of users' browsing histories was not highly offensive).

Plaintiff is also wrong that the allegations in *In re Facebook Inc. Internet Tracking Litigation* are "nearly identical" to those at issue here. Opp. at 21. Unlike the allegations in *In re Facebook*, Plaintiff here does not allege that the Endeavor Defendants surreptitiously tracked "an enormous amount of individualized data" to compile a "vast repository of personal data," including "a comprehensive browsing history" of Plaintiff "no matter how sensitive the websites visited." 956 F.3d 589, 603 (9th Cir. 2020). Accordingly, Plaintiff Bloom's invasion of privacy claim under the California Constitution should be dismissed.

### C. The Opposition Fails to Remedy Plaintiff's UCL Claim.

***Unlawful Prong.*** Plaintiff acknowledges that his claim under the "unlawful" prong of the UCL is derivative of his claims under the VPPA, California Civil Code § 1799.3, and California Constitution. Opp. at 21-22. This claim should, therefore, be dismissed for the same reasons discussed above.

***Fraudulent Prong.*** Plaintiff does not (and cannot) dispute that the FAC fails to allege any affirmative representations by the Endeavor Defendants or actual reliance by Plaintiff. Accordingly, Plaintiff concedes that the FAC does not allege any material omission by the Endeavor Defendants and/or reliance by the Plaintiff on the same.

Plaintiff also fails to establish that the Endeavor Defendants had any duty to disclose. As an initial matter, Plaintiff glosses over the test for determining whether a duty to disclose exists, as set forth by the Ninth Circuit in *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018) (a duty to disclose only exists when the defect at issue is "central to the product's function"). Contrary to Plaintiff's assertion that this binding precedent is "not the law" (Opp. at 22 n.16), courts have held that this test applies in all fraudulent omission cases, not only those alleging a product defect. *See, e.g.*, *In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *7 (N.D. Cal. Mar. 28, 2023); *see also Hall v. SeaWorld Ent., Inc.*, 747 F. App'x 449, 451 (9th Cir. 2018) (unpublished). For this reason alone, Plaintiff's claim under the fraudulent prong of the UCL should be dismissed.

Even setting this deficiency aside, Plaintiff fails to pinpoint any allegations in the FAC that the Endeavor Defendants (as opposed to Zuffa) had "exclusive knowledge" of or "actively concealed" material facts. Opp. at 22-23. Indeed, the FAC does not allege any facts—let alone particularized facts—sufficient to support a claim that the Endeavor Defendants had exclusive knowledge regarding the use of the Facebook Pixel on the Fight Pass website, or that the Endeavor Defendants took affirmative acts to conceal the use of the Facebook Pixel. *See* ECF. No. 60 at 21.

***Unfair Prong.*** Once again, Plaintiff does not point to any allegations that the Endeavor Defendants specifically engaged in any unfair practice. Likewise, Plaintiff's claim that "the harm is not outweighed by any countervailing utility" (Opp. at 24) is contradicted by the numerous allegations in the FAC demonstrating the business justifications for using the Facebook Pixel. *See, e.g.*, FAC ¶¶ 3, 24, 39, 42-51 (alleging that Defendants "benefit from the sharing of data").

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against the Endeavor Defendants with prejudice.

DATED: August 16, 2023

**PAUL HASTINGS LLP**

By: */s/* ***Susan K. Leader***
Susan Leader, Esq.
Ali Rabbani, Esq.
Stephanie Balitzer, Esq.

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on August 16, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Susan K. Leader*
SUSAN K. LEADER