**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile: 702-843-6010

**GUTRIDE SAFIER LLP**
Seth A. Safier (*pro hac vice*)
seth@gutridesafier.com
Marie A. McCrary (*pro hac vice*)
marie@gutridesafier.com
Anthony Patek (*pro hac vice*)
anthony@gutridesafier.com
Kali Backer (*pro hac vice*)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE

# DISTRICT OF NEVADA

| | |
|---|---|
| EVERETT BLOOM, JACK GRAHAM, and DAVE LINDHOLM on behalf of themselves, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC.<br><br>Defendants. | No.: 2:22-cv-00412-RFB-BNW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM ZUFFA, LLC**<br><br>Date: September 26, 2023<br>Time: 10:00 a.m.<br>Location: Las Vegas Courtroom 3B<br><br>Mag. Judge Brenda Weksler |

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .................................................................................................. 2

III. LEGAL STANDARD ........................................................................................... 4

IV. ARGUMENT ........................................................................................................ 4

    A. Zuffa Should Produce Jordan Brown Documents ................................... 5

    B. Zuffa Should Produce Its Document Retention Policies ........................ 5

    C. Zuffa Should Produce Its Facebook Agreements, Business Account, and Events Manager Settings ............................................................................... 8

    D. Zuffa Should Produce Evidence of Its Privacy Law Compliance Efforts ......... 10

    E. Zuffa Should Identify Subscriber Data Transmitted to Meta (Rogs Nos. 2 & 3), and Inaccuracies in Plaintiff's Allegations (Rog No. 5) ................................... 12

    F. Zuffa Should Respond to "Contention" Interrogatory No. 5 .............................. 14

V. CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITY

**Cases**

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. C -10-04387 PJH (EDL), 2013 U.S. Dist. LEXIS 177058 (N.D. Cal. Dec. 17, 2013) .................................................................................. 11

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) ........................................................ 4

*City of Spokane v. Monsanto Co.*, No. 2:15-CV-0201-SMJ, 2017 U.S. Dist. LEXIS 193932 (E.D. Wash. Feb. 21, 2017) ............................................................................................. 13

*Lawman v. City & Cty. of S.F.*, 159 F. Supp. 3d 1130 (N.D. Cal. 2016)..................................... 15

*Montgomery v. Wal-Mart Stores, Inc.*, No. 12CV3057-JLS (DHB), 2015 WL 11233390 (S.D. Cal. Sept. 4, 2015) ............................................................................................................. 7

*Nat'l Acad. of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678 (C.D. Cal. 2009) ...................................................................................................................... 15

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992) ...................... 4

*Scripps Health v. Nautilus Ins. Co.*, No. 21-CV-1634-AJB(WVG), 2022 U.S. Dist. LEXIS 238890 (S.D. Cal. Dec. 13, 2022) .................................................................................. 11

*Sharma v. BMW of N. Am. LLC*, 2016 WL 1019668 (N.D. Cal. Mar. 15, 2016) .......................... 6

*Tsatas v. Airborne Wireless Network, Inc.*, No. 2:20-cv-02045-RFB-BNW, 2022 U.S. Dist. LEXIS 3396 (D. Nev. Jan. 7, 2022) .................................................................................. 4

*United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900 (9th Cir. 2003) ..................... 11

*V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297 (D. Nev. 2019) ........................................................ 15

**Rules**

F. R. Civ. P. 45(d)(2)(B)(i) ........................................................................................................... 1

Fed. R. Civ. P. 26(b) ..................................................................................................................... 4

Fed. R. Civ. P. 26(b)(1) ................................................................................................................ 4

Fed. R. Civ. P. 37(a)(3) ................................................................................................................. 4

Fed. R. Civ. Proc. 33(a)(2) .......................................................................................................... 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      INTRODUCTION

Plaintiffs Everett Bloom, Jack Graham, and Dave Lindholm ("Plaintiffs") move pursuant to Federal Rules of Civil Procedure 33, 34, and 37 to compel Defendant Zuffa, LLC ("Zuffa") to produce documents and interrogatory responses responsive to discovery requests served over a year ago. Despite acknowledging that it has, at minimum, hundreds of thousands of documents in its possession, Zuffa has produced a mere 432 documents after a year of discovery, limited almost entirely to two custodians. Other than Plaintiff Bloom, the custodians were the only two individuals who Zuffa identified as having any knowledge relevant to the case in its initial disclosures,. Patek Decl., Ex. 1. But in subsequent depositions, both of those custodians testified they were largely ignorant of key issues in this case, such as what data Zuffa transmitted to Meta Platforms, Inc. ("Meta") through Zuffa's use of Meta pixels and cookies and whether Zuffa used Meta's pixel to track UFC Fight Pass users and advertise to them. *Id*., ¶ 8, Ex. 17 at 73:16-74:6 (Banks, limiting her knowledge of pixel use to UFC.com, a pay-per-view service, as distinct from ufcfightpass.com, the subscription service at issue in this case). And, both witnesses identified Jordan Brown as a relevant witness. *Id.,* ¶ 8; Ex. 16 at 103:2-13. Plaintiffs noticed Mr. Brown's deposition and specifically requested production of documents in his possession. *Id*., Ex. 2. Four months later, Zuffa still has not produced any documents for Mr. Brown, thereby preventing Plaintiffs from deposing him. Patek Decl., ¶ 11.

This is just one of many examples where Zuffa has refused to cooperate in discovery. Zuffa refused to produce documents pertaining to its document retention practices, despite Ms. Banks' testimony that Zuffa routinely deletes as much as 90% of its employee emails after 90 days by default. While Zuffa has moved to compel Plaintiff Bloom's production of documentation of his consumer Facebook accounts (e.g., agreements and account histories; see ECF 57 at 15-17), it has failed to produce parallel evidence for its Facebook business accounts. And while Zuffa has argued that Plaintiffs have a duty to investigate their own computer systems to corroborate what data those systems transmitted to Meta (*id.*), Zuffa has taken the position that it is exempt from doing the same, while claiming total ignorance of what data its system

transmits to Meta. Zuffa also refuses to provide the factual basis for its denial of Plaintiffs' allegation that Zuffa never obtained Plaintiffs' consent to share their personally identifiable information, making it impossible for Plaintiffs to determine which agreements and terms Zuffa intends to assert as evidence of this purported consent.

In many instances, Plaintiffs' Requests directly parallel to categories of information Plaintiffs have produced in response to Zuffa's discovery requests, and which Zuffa has moved Plaintiff to supplement further. Zuffa cannot apply a double standard, demanding that Plaintiffs endlessly supplement their responses to its discovery requests while saying it has no duty to provide the same types of information. Plaintiffs' interrogatories go to the heart of this case: what data Zuffa transmitted to Meta, what Zuffa knew about what it was transmitting, and whether Zuffa obtained consent to transmit the users' video rental requests in compliance with federal and state law. Zuffa cannot simply say that it has no idea what data was transmitted, particularly given that, in Zuffa's motion to compel, it has argued parties have a duty to investigate facts and report them in response to discovery requests. Nor can it deny the allegations of the Complaint without identifying its basis for doing. Accordingly, Plaintiffs hereby move to compel Zuffa's production of documents and response to interrogatories.

## II. BACKGROUND

Plaintiff Everett Bloom sued Defendant Zuffa LLC for violation of the federal Video Protection Privacy Act and related California privacy laws.[1] *See* ECF 1. The alleged privacy violations stem from Zuffa's use of software tracking devices called pixels, developed by Meta Platforms, Inc. (d/b/a Facebook) ("Meta"). *Id.* Plaintiffs allege that, as a result of Zuffa's use of a Facebook pixel (i.e., the tracking device offered by Facebook to its business clients) on Zuffa's web site, Zuffa transmits personally identifiable information about Defendant's consumers, including Plaintiffs, to Meta. *Id.* Plaintiffs allege that, when subscribers accessed videos on the Fight Pass video streaming platform, Zuffa transmitted their Facebook User IDs and URLs that contained the title of the video to Meta using the pixel. Plaintiffs are, and have been, seeking

---

[1] Plaintiffs Lindholm and Graham subsequently joined the case when Plaintiffs filed their Amended Complaint on May 29, 2023. *See* ECF 47.

- 2 -
PLF'S MOT. COMPEL DISCOVERY

discovery from Zuffa detailing, *inter alia*, how its system works, what data it transmits, and what Zuffa knew (or was on notice of) about the data it transmits to Meta. *Id.*

Plaintiff Bloom served requests for production on Zuffa LLC over a year ago, on May 15, 2022. Patek Decl., Exs. 3-5. These included requests for Zuffa documents pertaining to: (1) data transferred to Meta when users accessed videos, (2) its Facebook account Events Manager, (3) its agreements with Meta, and (4) records of its efforts to comply with the VPPA and California privacy laws asserted in the Complaint. *Id.*, Ex. 4. Zuffa has not produced a single document responsive to these Requests. Plaintiffs also served interrogatories asking Zuffa to identify (5) all categories of data it transmitted to Meta when Zuffa subscribers accessed videos, (6) the time periods over which it sent such data, and (7) any factual inaccuracies in the allegations of the Complaint. *Id.*, Ex. 5. Zuffa failed to respond to Plaintiffs' interrogatories meaningfully, stating that it is unaware of what data it transmits to Meta, while simultaneously refusing to report the findings of any investigation until expert discovery (*i.e., after the close of fact discovery*). *Id.*, Exs. 6-10. Zuffa also refuses to identify the factual basis for its denial of Plaintiffs' allegation that Zuffa failed to obtain informed consent to share video rental information in compliance with the VPPA and federal law. Although the parties met and conferred on these issues several times and Zuffa served supplemental responses to interrogatories 2, 3, and 5, those responses are still deficient. Patek Decl., ¶ 12; Exs. 9, 11-15; see also ECF .

More recently, on April 14, 2023, Plaintiffs noticed the deposition of Zuffa employee Jordan Brown and specifically requested that Zuffa produce responsive documents in Mr. Brown's possession prior to that deposition. *See id.*, Exs. 2 & 13-14. Plaintiffs noticed Mr. Brown's deposition because, among other things, Zuffa identified him as a person involved in Zuffa's use of the pixel data in supplemental discovery responses served on September 15, 2022, and both Zuffa witnesses that Plaintiffs have deposed pointed to Mr. Brown has having knowledge pertinent to the issues at stake in this case. *See id.*, ¶ 8, Exs. 9 & 16. Despite Mr. Brown's prominent role in this case, over four months after Plaintiffs served the notice of deposition and about a year after Zuffa identified him in supplemental discovery responses, *Zuffa*

*still has not produced Mr. Brown's documents*, thereby effectively preventing his deposition.

The Parties have met and conferred on these topics multiple times over the past year, including multiple phone calls and at least two face-to-face meet and confers (via videoconference) on April 26, 2023, and August 2, 2023, without a resolution.[2] Patek Decl., ¶ 2, Exs. 14, 18-19. While Zuffa objected to Plaintiffs' current motion as premature, Zuffa has not produced the documents or information requested. *Id.*, ¶ 3; Ex. 20.

### III. LEGAL STANDARD

A party may bring a motion to compel discovery when another party has failed to respond or respond adequately to a discovery request. Fed. R. Civ. P. 37(a)(3). A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). But "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id*. The party seeking to compel discovery responses must make "a threshold showing that the discovery sought is relevant." *Tsatas v. Airborne Wireless Network, Inc.*, No. 2:20-cv-02045-RFB-BNW, 2022 U.S. Dist. LEXIS 3396, at *5 (D. Nev. Jan. 7, 2022) (J. Weksler), citing *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992). The party resisting discovery has the "heavy burden" of demonstrating why the requested discovery is not justified. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

### IV. ARGUMENT

The Court should compel Zuffa to produce responsive documents—including those in Jordan Brown's custody—and supplement its responses to Plaintiffs' Interrogatories 2, 3, & 5. These are nonprivileged matters highly relevant to Plaintiff's claims and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). To the extent that any documents may be privileged, Zuffa has a duty to produce a privilege log identifying privileged documents and identifying the basis for the privilege claims.

---

[2] While Plaintiffs have met and conferred in good faith on all topics raised in this motion, not every topic was included in every one of these meet and confers.

### A. Zuffa Should Produce Jordan Brown Documents

As noted above, Plaintiffs served a deposition notice for Jordan Brown, Zuffa's Director of Content Marketing, on April 14, 2023. Patek Decl., Ex. 2. Zuffa identified Mr. Brown as a witness with knowledge of Zuffa's use of Meta pixels in response to Plaintiffs' Interrogatory No. 4. *Id.*, Ex. 9. Zuffa's 30(b)(6) witness, Travis Santypal, testified that Mr. Brown is responsible for Zuffa's Facebook Business Account and its use in marketing to Fight Pass subscribers. Patek Decl., Ex. 16 at 97:21-99:2. In meet and confers conducted to assist scheduling of various depositions, Zuffa agreed to collect and produce documents in Mr. Brown's custody in advance of his deposition. *See, e.g.,* Patek Decl., Ex. 21 (May 2023 Balitzer email indicating Zuffa would collect and produce documents for Jordan Brown). Four months later, Defendant still has not produced documents, effectively preventing Mr. Brown's deposition. As the person identified as most knowledgeable about Zuffa's Business Account (and thus the Facebook Event Manager) and advertising with Facebook, Mr. Brown's documents and testimony are likely to lead to admissible evidence in this case. Accordingly, the Court should compel Zuffa to produce documents in Mr. Brown's custodial file immediately, so his deposition may be taken.

### B. Zuffa Should Produce Its Document Retention Policies

Plaintiffs' RFP No. 37 calls for production of "DOCUMENTS sufficient to establish DEFENDANT'S policies, procedures, or practices for the preservation of DOCUMENTS." Patek Decl., Ex. 4. In its July 14, 2022 response to Plaintiffs' RFPs, Zuffa refused to produce documents responsive to this Request. *Id.*, Ex. 7.

Subsequently, Zuffa's Vice President Kristin Banks testified that, since 2018, Zuffa's email system has been configured to delete emails automatically after 90 days, unless the employee designates the email as one that should be retained. *Id.*, Ex. 17 at 141:24-144:23. Ms. Banks further testified that the only mechanism for preventing the automatic deletion was for the Zuffa employee to place the email in a folder where it could be maintained for up to six months. *Id.*, at 144:24-145:8. When asked how to keep an email "longer than six months," she testified that "[y]ou have to save the email as a PDF and add it to the network drive." *Id.* at 145:9-12. Ms. Banks further estimated that, during her eight year tenure at Zuffa, she archived

20-30% of her emails in a six-month folder, and archived "[m]aybe . . . 10 or 15 percent" of those on the network drive. *Id*. at 151:22-153:9.

Overall, Ms. Banks' testimony indicates she archived 2-5% of her emails, which suggests Zuffa deleted 95-98% of her emails from the class period as part of a company policy of document destruction. Thus, from at least 2018 until the filing of his lawsuit, it appears Zuffa destroyed most email documents after 3-6 months as a routine policy. Plaintiffs sent Zuffa a document preservation notice on March 24, 2022. *See* Patek Decl., Ex. 22. It is unclear what steps Zuffa has taken toward document preservation since that preservation notice. In correspondence and meet and confers, Zuffa's counsel has represented that a document preservation hold has been put into effect. Patek Decl., ¶ 4. Despite this, Ms. Banks testified that she was unaware of any changes in Zuffa's document retention practices during the period from March 2022 to present. *Id*., Ex. 17 at 146:8-21.

Ms. Banks' testimony about Zuffa's routine document destruction policy is concerning since it may have deprived Plaintiffs of probative evidence. Even if Zuffa as implemented an effective preservation hold in 2022, Ms. Banks's testimony suggests that 95% or more of Zuffa emails created and received during the period of 2018-2022 were deleted as a matter of routine practice. *Id*. at 152:10-153:9. Zuffa has only produced documents for two custodians (Ms. Banks and Mr. Santypal). Ms. Banks's testimony about Zuffa's document destruction policy means it is highly likely that Zuffa has destroyed most responsive emails not only in her possession, but in other custodian's files as well. If true, Zuffa should be collecting and producing documents from far more than only two custodians (because even if one custodian failed to archive a responsive document, another custodian may have). Plaintiffs may also need to seek document collection from sources that are less accessible (e.g., older archives or backups, to the extent they exist). Plaintiffs are entitled to discovery into Zuffa's document retention policies and practices, as well as an accounting of what steps it has taken to preserve documents since 2022. *See, e.g., Sharma v. BMW of N. Am. LLC*, 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) (compelling production of document retention policies and holding that it was relevant to "assess the company's document production, determine whether any relevant documents are lacking, and

evaluate whether additional discovery is necessary in this case"); *Montgomery v. Wal-Mart Stores, Inc.*, No. 12CV3057-JLS (DHB), 2015 WL 11233390, at *3 (S.D. Cal. Sept. 4, 2015) (same; holding that document retention policies assist in the "investigation into the existence of potentially relevant information"). As part of that discovery, the Court should compel Zuffa to produce documents sufficient to establish what records it possesses, if any, that would contain emails deleted from its employees accounts, and whether those sources were searched when collecting the paltry 432 documents it has produced to date.[3]

During the meet and confer process, Zuffa took the position that Plaintiffs had not raised this issue or met and conferred adequately on it. Patek Decl., ¶ 5; Ex. 20. This position borders on absurd. Plaintiffs served their Request for Zuffa's document retention policies over a year ago. *Id.*, Ex. 4. Plaintiffs' identified Zuffa's document retention practices and policies as a 30(b)(6) topic in *two* 30(b)(6) deposition notices. *Id.*, Ex. 23 at 6 (2022 correspondence noticing deposition on topic of "ZUFFA's DOCUMENT retention policies, including ANY DOCUMENT hold or preservation policy it has implemented in response to THIS ACTION"); Ex. 24 (amended April 14, 2023 notice re: same); *see also* Ex. 13 (April 2023 email noting Plaintiffs' intent to seek additional 30(b)(6) deposition(s) on topics not addressed by Travis Santypal). Zuffa then refused to provide additional 30(b)(6) testimony. *Id.*, Ex. 21. Zuffa's Vice President Kristen Banks then raised the issue *sua sponte* at her May 31, 2022 deposition when *she* testified that Zuffa deleted most emails as a matter of routine practice. Patek Decl., Ex. 17 at 142:22-146:23. Plaintiffs' counsel raised this issue in subsequent phone calls with Zuffa's counsel over June and July regarding discovery matters, a formal letter on July 25, 2023, and then in a formal meet and confer on this specific RFP on August 2, 2023. Patek Decl., ¶ 5; Exs. 15 & 19. Up until August 3, 2023, Zuffa took the position that it has no duty to produce these documents, and that Plaintiff has no right to them. *Id*. While Zuffa belatedly represents now that it will produce Zuffa's document retention policy at some point in the future (*id.*, Ex. 21), it still

---

[3] Although not yet ripe for this motion, Plaintiffs also note that caselaw supports compelling Zuffa to produce a 30(b)(6) deponent on this topic as well. See *Thomas v. Cricket Wireless, LLC*, No. 19-cv-07270-WHA (AGT), 2020 U.S. Dist. LEXIS 234644, at *5-6 (N.D. Cal. Dec. 14, 2020) (document retention policies are appropriate topic for 30(b)(6) deposition).

has not done so. Patek Decl., ¶ 5. Zuffa's self-serving protests that the meet and confer process should be continued are disingenuous; it has had over a year to produce this information in response to multiple discovery requests, yet has not done so. An order compelling production of its document retention policies (and, eventually, a 30(b)(6) deposition on this topic) is warranted, and it makes sense to resolve this issue in a single motion with other discovery matters.

### C. Zuffa Should Produce Its Facebook Agreements, Business Account, and Events Manager Settings

Plaintiffs' RFP No. 9 sought "ALL agreements and contracts with FACEBOOK, INCLUDING ALL such DOCUMENTS that RELATE TO the FACEBOOK CODE, its use in targeted advertising, AND/OR the monetization of SUBSCRIBER DATA." Patek Decl., Ex. 4. Zuffa's Facebook agreements are likely to lead to discovery of admissible evidence because they may include notices of the types of data Zuffa would transmit to Facebook, as well as notices regarding risks of privacy violations when using the Meta pixel. Zuffa responded in July 2022 that it would search for and produce responsive documents, but a year later it still has not done so. Patek Decl., ¶ 6; Ex. 7. This is particularly hypocritical given that Facebook has moved to compel Plaintiff Bloom to produce his agreements with Facebook, despite the fact that consumer terms of service are publicly available. *See* ECF 57 at 12; ECF 70 at 6. If the Court believes it appropriate to order Bloom to produce his agreements with Facebook, it should order Zuffa to do the same.

Defendant has also failed to produce documents responsive to Request No. 13, which seeks "ALL DOCUMENTS RELATED TO FACEBOOK'S Events Manager website, referenced in paragraph 33 of the Complaint (Dkt. #1) in THIS ACTION." Patek Decl., Ex. 4. The Facebook (now Meta) Events Manager is a "a tool that enables [Facebook/Meta business customers] to view and manage [their] event data." *Id.*, Ex. 10. Along with the Facebook Business Manager, Ads Manager, and Ads Reporting tools, the Events Manager acts as a web portal to Facebook information related to Zuffa advertising. *Id*. The Events Manager contains a record of Events and data transmission to Facebook involving Zuffa's pixels. *Id*.

The Events are particularly relevant to this case because one of the Events transmitted to

Facebook included a "Page View" event that sent URLs with the video titles to Meta when subscribers accessed video content on the Fight Pass website. Because Zuffa transmitted subscribers' Facebook User IDs simultaneously with the "Page View" event using the Meta pixel, that data is personally identifiable information under the VPPA and California law. *See* ECF 53. The Events Manager can provide reports on the pixel's activity, settings, and history, among other things.

The Events Manager is also relevant because it includes a history of Zuffa's changes to its use of Meta Conversions API. *Id.*, Ex. 10. This data is directly analogous to, and no more onerous to collect and produce than, the user account data Zuffa has moved to compel Plaintiff Bloom to produce (and which Bloom *has* produced). *See* ECF 57 at 6. Thus, Zuffa can obtain historical data from Meta that parallels the data that Zuffa has asked Plaintiff to produce and that is every bit as relevant.

Despite this, Zuffa has not produced its Events Manager records, and responded to Request No. 13 by saying only that it would produce "nonprivileged documents sufficient to show Zuffa's use of the Facebook Code on the Fight Pass Website." Patek Decl., Ex. 7. But records sufficient to show Zuffa's use of Facebook code (e.g., copies of the Meta pixel code, Zuffa's Google Tag Manager settings) are not fully responsive to Plaintiff's Request, since the Events Manager documents may show additional information regarding the types of data transmitted by Zuffa using the Meta Pixel, and reflect both Meta's communications of data back to Zuffa and what actions Zuffa took directly to track its users (both of which are relevant to Zuffa's notice and knowledge of data transmission to Meta). While Zuffa indicated in a recent meet and confer that it would look into producing Events Manager records, it still has not produced these documents. Patek Decl., ¶ 7. *These documents should have been produced a year ago*. The Court should order Zuffa to produce its Events Manager records, including all datasets, custom events (i.e., custom tracking created by Zuffa or its agents), and history information.

Requests No. 11 and 27 seek documents and communication relating to the transfers of subscriber data between Zuffa and Facebook. Request No. 32 seeks documents and communications with any third party, which include Meta, relating to "use, disclosure, or

monetization" of subscriber data. Documents within these three Requests are relevant, as they encompass Zuffa's use of the Meta Pixels, cookies, and ad campaigns, as well as Zuffa's more recent communications with Facebook regarding its use of these in the past. Both Travis Santypal and Kristen Banks testified that Zuffa has access to a Business Account portal that allows Zuffa to access relevant information, including information about custom audiences, Ads Manager reports, insights about advertisement reporting, and reports about advertisement performance. Patek Decl., Ex. 16 at 101:8-102:4; ¶ 8. Like Zuffa's Facebook Events Manager pages, Zuffa's Business Manager pages and/or reports should be produced.

Zuffa has also produced no communications with Facebook that post-date the filing of the Complaint. In its initial response to these Requests, Zuffa stated it would only produce documents dated prior to March 4, 2022, which would exclude any post-filing communications with Meta aimed at determining what data Zuffa caused transmission of through its use of the Meta pixel. Patek Decl., Ex. 7. All such communications Zuffa's personnel had with Facebook are probative evidence of the effect of Zuffa's use of Facebook's pixels and Conversions API, as well as evidence of Zuffa's knowledge of the effects of its past actions. Defendant served a parallel request for production of Plaintiff's communications with Meta on Plaintiff, to which Plaintiff has produced responsive communications. Although Zuffa's counsel has indicated in correspondence that outside counsel have no such post-filing communications with Meta counsel, that does not preclude the existence of responsive communications between Zuffa personnel and Meta for which Zuffa has not searched. In the recent meet and confers on this topic, Zuffa indicated it would search for and produce documents, but it has not yet done so. *Id.*, Ex. 21. Accordingly, Zuffa should be compelled to search for responsive documents and produce them to the extent they exist.

### D. Zuffa Should Produce Evidence of Its Privacy Law Compliance Efforts

Request No. 20 seeks "ALL DOCUMENTS RELATING TO YOUR compliance with ANY federal or California law, regulation, or rule RELATING TO SUBSCRIBER privacy or confidentiality of SUBSCRIBER DATA." Zuffa has refused to produce any documents, citing the lack of a protective order, privilege, and lack of relevance. Each of these objections is

meritless.

This case's protective order (ECF 36) moots Zuffa's confidentiality objection. *See Scripps Health v. Nautilus Ins. Co.*, No. 21-CV-1634-AJB(WVG), 2022 U.S. Dist. LEXIS 238890, at *18 (S.D. Cal. Dec. 13, 2022) (holding that courts "routinely" rule protective orders address confidentiality objections; collecting cases).

Similarly, Zuffa's blanket assertion of privilege finds no support in the law. Only communications to and from attorneys are protected as privileged attorney-client communications. Accordingly, any documents exchanged between non-attorneys or created by non-attorneys outside of an attorney communication are outside the scope of the attorney-client communication privilege. And while documents created at the behest of an attorney may warrant protection as privileged work product, the Ninth Circuit extends that protection only if the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation," *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 908 (9th Cir. 2003), or the "litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated." *Id*. at 910. Under this standard, regulatory and compliance documents created "in the ordinary course of business" are not attorney work product. *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C -10-04387 PJH (EDL), 2013 U.S. Dist. LEXIS 177058, at *10 (N.D. Cal. Dec. 17, 2013). Accordingly, to the extent Zuffa employees created documents reflecting Zuffa's compliance with privacy laws such as the VPPA in the ordinary course of business, Zuffa must produce those documents. And even where Zuffa does have a valid privilege claim, it must identify the relevant documents in its privilege log, which it has not done. *See* ECF 37, ¶ 8(b). (In fact, Zuffa has not produced any privilege log to date.)

In the Parties' meet and confer on this Request, Zuffa also objected that this Request was overly broad and burdensome, since the privacy concerns raised in this lawsuit are limited to Plaintiffs' claims under the VPPA and California law, not generic privacy or confidentiality concerns. Even accepting that objection at face value, it still means that Zuffa must produce responsive documents related to the VPPA and California law. Yet Zuffa still has failed to do so,

and, in fact, still has not committed one way or another whether it will produce any responsive documents, despite having had weeks to do so. *See* Patek Decl., Ex. 21 (Zuffa counsel indicating "we agreed to discuss consider [sic] your newly-narrowed request and respond with our position"). Zuffa's self-serving assertion that the meet and confer process needs more time is just a delay tactic, as the discovery requests were served over a year ago. The Court should order Zuffa to produce such documents, list them on its privilege log, or certify that it has searched for and found no responsive documents.

### E. Zuffa Should Identify Subscriber Data Transmitted to Meta (Rogs Nos. 2 & 3), and Inaccuracies in Plaintiff's Allegations (Rog No. 5)

Interrogatory No. 2 asks Zuffa to "IDENTIFY by name (e.g., field name, attribute name, or whatever terminology YOU use in the ordinary course of business) ALL categories of SUBSCRIBER DATA transmitted to FACEBOOK at ANY time during the CLASS PERIOD when a SUBSCRIBER views a video on the FIGHT PASS WEBSITE." Patek Decl., Ex. 5. In Interrogatory No. 3, Plaintiff Bloom asked Zuffa to identify the time periods during which specific categories of "SUBSCRIBER DATA" were transmitted to Facebook when users' viewed videos on the FIGHT PASS WEBSITE. At the same time, Interrogatory No. 5 asked Defendants to, "[f]or EACH allegation in the Complaint filed in THIS ACTION RELATING TO how the FIGHT PASS WEBSITE operates that YOU believe is factually inaccurate, state the factual basis for YOUR contention as to why that allegation is inaccurate. *Id*.

In response to Interrogatory 2, Zuffa stated: "None. Zuffa further responds that the Facebook Pixel 'Page View' event has at times been used on UFC Fight Pass web pages with video content. Zuffa is not aware, however, that any SUBSCRIBER DATA was transmitted to Facebook when a SUBSCRIBER viewed a video on the FIGHT PASS WEBSITE." *Id.* Zuffa relied on this response for Interrogatory No. 3 as well. Then, in response to Interrogatory 5, Zuffa refused to provide any response at all, objecting that "Zuffa is still investigating whether unintentional and unknown disclosures of such information could have happened as the Complaint alleges," and stating that it would address those findings "as discovery progresses."

The Court should compel Zuffa to supplement its response to Interrogatories Nos. 2 and

3, and provide a complete response to Interrogatory 5. *A*s explained above, the Complaint identifies at least two categories of subscriber data transmitted to Facebook when Fight Pass subscribers view videos: the users' Facebook ID and the URL of the video page they are visiting (which contains the video title). ECF 1, ¶ 29. Given Zuffa admits a "Page View" event was active on the Fight Pass website, it has a duty to investigate what data was transmitted to Facebook as a result. *See, e.g., City of Spokane v. Monsanto Co.*, No. 2:15-CV-0201-SMJ, 2017 U.S. Dist. LEXIS 193932, at *18 (E.D. Wash. Feb. 21, 2017) (compelling party to "make a good-faith effort to investigate and provide a responsive answer" because "[i]t is obligated to engage in a reasonable investigation of the records within its control"). Here, Zuffa has not made any showing that it has made any effort to investigate whatsoever. Indeed, when Plaintiffs deposed Zuffa's 30(b)(6) representative, Plaintiffs asked Zuffa about its investigation, and *Zuffa's lawyers instructed the witness not to answer*. Patek Decl., Ex. 16 at 41:12-43:6. Zuffa "cannot avoid its duty to investigate." *City of Spokane*, 2017 U.S. Dist. LEXIS 193932, at *18. It must either conduct an investigation and provide a complete response, or to the extent Zuffa has conducted an investigation, it cannot hide the results of that investigation from Plaintiffs.

*Finally*, Zuffa's responses to the interrogatories have inherent contradictions. For Zuffa to respond "none" to Interrogatories No. 2 and 3, it must have some basis for believing the Complaints' allegations are false. Yet in response to Interrogatory No. 5, Zuffa refuses to identify its basis for disputing Plaintiffs' allegations. To the extent Zuffa contends no subscriber data was transmitted to Meta by Zuffa's use of the Meta pixel, it must provide the factual basis for that position.

Ironically, Zuffa is refusing to respond to this interrogatory using the same response for which it attacks Plaintiff in Zuffa's motion to compel. When Plaintiff Bloom responded to Zuffa's Interrogatory No. 4 (which asked Bloom to identify "changes" he had made to his Facebook, browser, or computer settings), Zuffa not only objected to Bloom's response that he did not know of any such changes, it also moved to compel him to supplement his interrogatory responses with the actual settings for each item (even though that is not what Zuffa's interrogatory asked). *See* ECF 57 at 15-16 (Zuffa's motion to compel Bloom, arguing that

respondent has duty to investigate facts and respond with knowledge obtained after investigation). Yet Zuffa is responding to Plaintiff's Interrogatories Nos. 2 and 3 in the same manner (i.e., by stating Zuffa does not know of any data that was transmitted, while simultaneously refusing to disclose information obtained during any post-filing investigation).

Zuffa's response to Interrogatory No. 5 is also not credible. The entire point of Zuffa's use of Meta's pixel and cookies was to track Fight Pass subscribers and their activities on UFC Fight Pass. Any reasonable person would realize that required transmitting *some* subscriber data to Meta. As such, Zuffa's response—which indicates *no* data regarding its users was transmitted to Facebook—is absurd. If no data was transmitted, Meta's pixel would have been completely useless. Moreover, Zuffa's own documents show that Zuffa tracked subscriber data via Facebook, with Zuffa's internal documents reporting age, gender, and devices for users converted by Facebook ads. *See* ECF 53 at 15; Patek Decl., ¶ 9. For Zuffa to state that no data was transmitted would require Zuffa to ignore the data in its own marketing reports. And, since Zuffa stated in its Privacy Policy that it shared *specific* data (e.g., usernames and unique identifiers) with third parties, it by its own admission had some knowledge of what data it was sharing. See ECF 53 (Mot. to Certify Class), Ex. 17 (Zuffa privacy policy). Zuffa cannot simultaneously claim *both* that it had no idea what data it shared *and* that it effectively notified users and obtained their consent to share that data. Thus, Zuffa's own documents contradict its interrogatory responses (and deposition testimony). The Court should order Zuffa to supplement its responses to Interrogatories No. 2 and 3 with data actually transmitted.

### F. Zuffa Should Respond to "Contention" Interrogatory No. 5

As noted above, Zuffa objected to Interrogatory No. 5 on the basis it seeks Zuffa's legal contentions. By refusing to identify its basis for disputing Plaintiffs' allegations, Zuffa frustrates the primary purpose of discovery, which is to identify disputed facts with specificity so each party can address the other's arguments. As Magistrate Judge Koppe noted:

> Adherence to these principles [i.e., that discovery responses must be complete] is especially critical with respect to contention interrogatories, which can be targeted at obtaining notice of an opponent's litigation position and the basis for that position. *See, e.g., Nat'l Acad. of Recording Arts & Sciences, Inc. v. On Point*

*Events, LP*, 256 F.R.D. 678, 682 n.5 (C.D. Cal. 2009) (addressing various types of contention interrogatories). Failure to provide a rule-compliant response to a contention interrogatory hinders the discovering party's ability to conduct follow-up discovery and to formulate a trial strategy. *See* [*Lawman v. City & Cty. of S.F.*, 159 F. Supp. 3d 1130, 1140-41 (N.D. Cal. 2016)] (excluding theory from summary judgment motion practice because it was not properly identified in response to contention interrogatory, which hindered the discovering party's ability to obtain follow-up discovery).

*V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 297, 305 (D. Nev. 2019) (ordering rog responses).

Zuffa's refusal to identify those allegations it contends are factually inaccurate is not limited to categories of data transmitted to Facebook through Zuffa's use of Meta's pixel on the Zuffa website; it extends to facts such as the allegation that Zuffa fails to comply with the VPPA because it does not provide a disclosure and consent form separate from the service's generic terms of service. In the parties' meet and confer, Zuffa indicated that it need not identify any such inaccuracies because they are legal arguments, and thus exempt from interrogatory discovery. Patek Decl., ¶ 10; Ex. 21. Zuffa's position is doubly incorrect. First, to the extent that any legal argument would be based on *factual disagreements*, Zuffa must identify those *facts*, such as specific forms, agreements, or language that Zuffa contends satisfy the VPPA's requirements. Second, contrary to Zuffa's assertion, legal arguments are not exempt from discovery. *See* Fed. R. Civ. Proc. 33(a)(2) ("An interrogatory is ***not objectionable merely because it asks for an opinion or contention*** that relates to fact ***or the application of law to fact*** . . . ."). In essence, Zuffa is objecting that Interrogatory 5 is a contention interrogatory, and thus needs no response. But the law is clear: a party may not refuse to respond to an interrogatory on the mere basis it seeks a party's legal contentions. See, e.g., *V5 Techs.*, 334 F.R.D. at 305 (ordering response to contention interrogatory). Zuffa has obtained no Court order stating that Zuffa need not answer Interrogatory No. 5. Nor is such an order warranted, as it would only frustrate the efficient resolution of this case by allowing Zuffa to hide the basis for its defense of this action until after fact discovery has closed. The Court should order Zuffa to respond to Interrogatory No. 5 fully or waive any defenses not identified. *See Lawman*, 159 F. Supp. 3d at 1140-41 (excluding theory not properly identified in response to contention interrogatory).

## V. CONCLUSION

For all the reasons above, the Court should grant Plaintiff's motion to compel Meta's production of documents responsive to Plaintiff's Subpoena and to appear at deposition.

Dated: August 18, 2023

**GUTRIDE SAFIER LLP**

*/s/Anthony J. Patek/s/*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*