**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS (Nev. Bar No. 5549)
jcw@cwlawlv.com
710 South 7th Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

**PAUL HASTINGS LLP**
SUSAN LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
STEPHANIE BALITZER (*admitted pro hac vice*)
stephaniebalitzer@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of The Stars
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

*Attorneys for Defendant, Zuffa, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EVERETT BLOOM, JACK GRAHAM, and DAVE LINDHOLM, on behalf of themselves, and those similarly situated,

Plaintiffs,

vs.

ZUFFA, LLC, ENDEAVOR STREAMING, LLC, and ENDEAVOR GROUP HOLDINGS, INC.,

Defendants.

CASE NO. 2:22-cv-00412-RFB-BNW

**DEFENDANT ZUFFA, LLC'S MOTION TO COMPEL PLAINTIFFS DAVE LINDHOLM AND JACK GRAHAM TO PRODUCE ADDITIONAL DOCUMENTS AND INTERROGATORY RESPONSES**

**ORAL ARGUMENT REQUESTED**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Zuffa, LLC ("Zuffa") hereby moves the Court, pursuant to Federal Rule of Civil Procedure 37(a)(3)(B) and Local Rule 26-6, to compel Plaintiffs Dave Lindholm and Jack Graham ("Plaintiffs") to produce additional documents in response to Zuffa's First Set of Requests for Production of Documents ("Requests for Production") and supplement their responses to Zuffa's First Set of Interrogatories ("Interrogatories"). Counsel for Zuffa has met and conferred with Plaintiffs' counsel regarding the deficiencies in Plaintiffs' discovery responses, which in large part mirror those at issue in the pending Motion to Compel Plaintiff Everett Bloom ("Bloom") to Produce Additional Documents and Interrogatory Responses ("Motion to Compel (Bloom)") (ECF No. 57). Zuffa respectfully requests that the Court set this Motion for hearing on the same date and time as the Motion to Compel (Bloom)—i.e., September 26, 2023 at 10:00 a.m. ECF No. 67.

Specifically, Zuffa moves to compel Plaintiffs to provide complete responses to Interrogatories 1-2, 4-5, and 7-8, and to produce documents pursuant to Requests for Production 6-15 and 23-24. The sought-after information and documents relate to Plaintiffs' use of the UFC Fight Pass website, Facebook, and their browser and device settings. All of this information is relevant to Plaintiffs' claims and Zuffa's defenses regarding whether there was any disclosure of Plaintiffs' personally identifiable information ("PII") as alleged in the First Amended Complaint.

Under Local Rule 26-6(c) and Local Rule IA 1-3(f), Zuffa's counsel, Stephanie Balitzer, certifies that counsel for Zuffa has conferred with counsel for Plaintiffs, Anthony J. Patek by email and telephone regarding Plaintiffs' deficient productions and interrogatory responses. *See* Declaration of Stephanie Balitzer ("Balitzer Decl."). On July 21, 2023, counsel conferred telephonically regarding these issues. Plaintiffs' counsel indicated that they intended to supplement at least Plaintiff Graham's production. *Id.* at ¶ 8. On July 28, 2023, following the parties' meet and confer, Zuffa's counsel again indicated that Plaintiffs' responses were deficient, and that Zuffa would be forced to file a motion to compel if the deficiencies were not resolved. *Id.* at ¶ 9, Ex. F. On August 3, 2023, Plaintiffs' counsel indicated that they would only agree to supplement Plaintiff

Graham's production. *Id.* at ¶ 10, Ex. G. However, no supplemental production has been made and no timeline for the supplemental production has been provided.

This motion is based upon this Memorandum of Points and Authorities below, the Balitzer Declaration, all pleadings, records, and papers on file in this action, and such other further evidence and arguments as may be presented at the time of the hearing on this matter.

Dated: August 22, 2023

PAUL HASTINGS LLP

By: *_/s/ Susan K. Leader_*
Susan K. Leader
Ali R. Rabbani
Stephanie V. Balitzer

*Attorneys for Defendant Zuffa, LLC*

# TABLE OF CONTENTS


| | Page |
|---|---|
| I. BACKGROUND | 4 |
| II. LEGAL STANDARD | 5 |
| III. ARGUMENT | 6 |
| A. Plaintiffs Should Be Ordered to Produce Additional Documents and Other Information Relating to Their Facebook Account Activity and Settings. | 6 |
| 1. RFP Nos. 11 and 24 | 6 |
| 2. Interrogatory No. 7 | 8 |
| 3. Interrogatory No. 8 and RFP Nos. 12-15 and 23 | 9 |
| B. The Court Should Order Plaintiffs to Produce Information Relating to Their Web Browser and Device Settings. | 11 |
| 1. Interrogatory Nos. 1 and 2 | 11 |
| 2. Interrogatory Nos. 4 and 5 and RFP Nos. 6, 7, 8, 9, and 10 | 12 |
| IV. CONCLUSION | 15 |

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Aevoe Corp. v. AE Tech Co.*, 2013 U.S. Dist. LEXIS 121813 (D. Nev. Aug. 27, 2013) .......... 7

*In re Application of O'Keeffe*, No. 214CV01518RFBCWH, 2016 WL 2771697 (D. Nev. Apr. 4, 2016) .......... 8

*Blankenship v. Hearst Corp.*, 519 F.2d 418 (9th Cir. 1975) .......... 7

*Caballero v. Bodega Latina Corp.*, No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931 (D. Nev. July 25, 2017) .......... 5

*Daisy Tr. v. JP Morgan Chase Bank., N.A.*, No. 2:13–cv–00966–RCJ–VCF, 2017 WL 3037427 (D. Nev. July 18, 2017) .......... 7

*F.D.I.C. v. Halpern*, 271 F.R.D. 191 (D. Nev. 2010) .......... 5

*Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 WL 54202 (D. Nev. Jan. 5, 2016) .......... 10

*In re Google RTB Consumer Priv. Litig.*, 2022 U.S. Dist. LEXIS 74791 (N.D. Cal. Apr. 25, 2022) .......... 14

*In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) .......... 6

*In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) .......... *passim*

*Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678 (C.D. Cal. 2009) .......... 10

*Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007) .......... 6

*Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-cv-225-GMN-VCF, 2016 WL 1171504 (D. Nev. Mar. 24, 2016) .......... 7

*Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 2:14-cv-2119-RFB-VCF, 2015 WL 3649623 (D. Nev. June 10, 2015) .......... 4

*Sweeney v. UNLV Rsch. Found.*, No. 2:09–cv–01167–JCM–GWF, 2010 WL 1756875 (D. Nev. Apr. 30, 2010) .......... 8

*Teller v. Dogge*,
2013 WL 1501445 (D. Nev. Apr. 10, 2013) ........ 7

**Statutes**

Video Privacy Protection Act........ 1, 3

**Other Authorities**

California Constitution........ 1

8B Fed. Prac. & Proc. Civ. § 2206 (3d ed.) ........ 5

Federal Rule of Civil Procedure
26(b)(1) ........ 4, 5
33........ 5
33(b)(3) ........ 5
34........ 5
34(b)(2) ........ 5
37(a) ........ 5
37(a)(1)........ 5

Federal Rules of Civil Procedure, Rules and Commentary Rule 33........ 13, 14

LR 26-6(b)........ 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Jack Graham and Dave Lindholm ("Plaintiffs") (along with Plaintiff Everett Bloom) brought this putative nationwide class action alleging that Defendant Zuffa, LLC (d/b/a Ultimate Fighting Championship and UFC) ("Zuffa") violated the Video Privacy Protection Act ("VPPA"), the California Constitution, and related California statutes by purportedly disclosing their Facebook IDs and the URLs of video pages they accessed on the UFC Fight Pass website to Meta Platforms, Inc. ("Meta" or "Facebook").[1] While Zuffa adamantly denies these allegations, determining whether Plaintiffs' information was ever disclosed to Meta depends on records in their sole possession. Just as Plaintiff Everett Bloom ("Bloom") has refused or otherwise failed to produce documents and other information directly relevant to this inquiry—which is the subject of the pending Motion to Compel Plaintiff Everett Bloom to Produce Additional Documents and Interrogatory Responses ("Motion to Compel (Bloom)") (ECF No. 57)—so too have Plaintiffs Lindholm and Graham. To date, Lindholm has produced ***only 5 documents***, and Graham has produced ***only 1 document***. Plaintiffs' counsel suggested that they intended to supplement Graham's production, but no timeline for such supplemental production has been provided. Ultimately, it is clear that Plaintiffs will not produce documents in response to the overwhelming majority of Zuffa's First Set of Requests for Production ("Requests for Production" or "RFP"). Plaintiffs have also provided incomplete and unresponsive answers to many of Zuffa's First Sets of Interrogatories to Plaintiffs ("Interrogatories"). Accordingly, Zuffa moves to compel Plaintiffs to produce additional documents and information responsive to Zuffa's discovery in advance of Plaintiffs' depositions and Zuffa's deadline to oppose class certification.

Specifically, Zuffa seeks two categories of information that go to the heart of this case:

1. Records of Plaintiffs' Facebook account activity and settings; and

---

[1] Meta, formerly known as Facebook, Inc., owns Facebook, Instagram, and WhatsApp, among other products and services.

2. Documents and other information regarding the web browsers and devices Plaintiffs used to access their Facebook accounts and videos on the UFC Fight Pass website.

Zuffa seeks this information because Plaintiffs' claims—and class certification arguments—turn on whether Zuffa disclosed their personally identifiable information ("PII") to Meta, including the Facebook "c_user" cookie (which allegedly contains Plaintiffs' unique Facebook ID). But determining whether this information was actually disclosed to Meta during the duration of the proposed class period requires evidence of Plaintiffs' Facebook, web browser, and device settings.

For example, Facebook allows users to choose whether it can receive information from other websites by enabling or disabling the "Off-Facebook Activity" setting. Moreover, Facebook only temporarily places the c_user cookie on a user's web browser when that user logs into the Facebook website, and the lifetime of the cookie depends on whether the user activates the "keep me logged in" setting. Thus, to determine whether Plaintiffs' activity on the UFC Fight Pass website caused the transmission of Facebook cookies to Meta, Plaintiffs must (a) produce their "Off-Facebook Activity" settings, and (b) show that they accessed a video on the UFC Fight Pass website while logged into Facebook or shortly thereafter if they activated "keep me logged in."

In addition, many web browsers block cookies by default, while others give users the option to block and clear cookies. Web browsers also allow users to install third-party extensions that block cookies. Similarly, some devices limit the number of days that cookies can be stored and give users the option to opt out of third-party tracking. In fact, ***Plaintiffs admit that "certain browsers and add-on software may block third-party cookies" and speculate that "perhaps 30% of total tracking was lost due to cookie blockers."*** Mot. for Class Cert. at 14-15.[2] Therefore,

[2] On June 9, 2023, Plaintiffs' counsel e-mailed Zuffa's counsel copies of Plaintiffs' Motion for Class Certification and the corresponding Motion to Seal. *See* ECF No. 55 (Plaintiffs' Proof of Service). However, since Plaintiffs' Motions do not appear on the docket in this action, Zuffa refers herein to the copy of Plaintiffs' Motion for Class Certification that it received by e-mail. To the

Plaintiffs will also need to show that their web browser and device settings did not block or clear the Facebook cookies at issue.

There can be no dispute that this information is highly relevant. ***Plaintiffs acknowledge in their Motion for Class Certification that "Zuffa will argue that individualized questions exist as to whether 'personally-identifiable information' was disclosed due to discrepancies in subscribers' browsers, devices, privacy settings, and the possible use of cookie-blocking add-on software."*** Mot. for Class Cert. at 14. Yet, despite recognizing that this information is critical to Zuffa's defenses, Plaintiffs have continued to refuse to produce significant categories of documents and information relating to their web browser and device settings.

The reason for Plaintiffs' evasive discovery tactics is clear: courts have ruled that these types of individualized issues preclude class certification under the VPPA. *See, e.g.*, *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 2758598, at *22 (N.D. Cal. June 17, 2014) (denying class certification where "substantial issues about remaining logged into Facebook and clearing and blocking cookies mean that the court cannot conclude on this record that the common issues predominate over the individual ones"). But Plaintiffs' boilerplate objections to document requests do not (and cannot) justify their refusal and/or failure to provide the very information that could support the existence of individualized issues here. Moreover, the burden on Plaintiffs to produce this information is minimal. Such information is easily accessible to Plaintiffs and their counsel on the Facebook website and by reviewing the settings on Plaintiffs' devices and web browsers, and Plaintiffs have already admitted to using only four (Graham) or five (Lindholm) devices, one web browser each, and one Facebook account each.

For these reasons, as discussed in greater detail below, the Court should order Plaintiffs to produce additional documents and information in response to Zuffa's Requests for Production and Interrogatories in advance of Plaintiffs' depositions and Zuffa's deadline to oppose class certification.

---

extent Plaintiffs' Motions were not properly filed with the Court, Zuffa reserves the right to challenge them on those grounds.

## I. BACKGROUND

On May 29, 2023, Plaintiffs filed their First Amended Class Action Complaint ("FAC") against Zuffa, adding Jack Graham and Dave Lindholm as plaintiffs. ECF No. 47. On June 2, 2023, Zuffa served nearly identical Interrogatories and Requests for Production on Plaintiffs as it had on Plaintiff Bloom. Balitzer Decl. ¶ 2. On July 17, 2023, Plaintiffs served Objections and Responses to the Interrogatories and Requests for Production. *See id.* ¶¶ 4-5, Exs. A-D. Plaintiffs' responses were substantially similar to Plaintiff Bloom's. On July 18, 2023, Zuffa's counsel requested to meet and confer with Plaintiffs' counsel, explaining that the discovery responses were deficient for many of the same reasons that were identified in connection with Bloom's discovery (which were addressed in Zuffa's prior Motion to Compel and discussed beginning in March 2023). *Id.* ¶ 6, Ex. E. The parties met and conferred on July 21, 2023, and discussed the deficiencies in Plaintiffs discovery responses. Plaintiffs' counsel indicated that they intended to supplement Plaintiff Graham's document production. On July 28, 2023, following the parties' meet and confer, Zuffa's counsel again indicated that the responses were deficient, and Zuffa would be required to file a motion to compel as to Plaintiffs Lindholm and Graham if the deficiencies were not resolved. *Id.* ¶ 9, Ex. F. On August 3, 2023, Plaintiffs' counsel indicated that they would only supplement Plaintiff Graham's production. *Id.* ¶ 10, Ex. G. No supplemental production has been made and no timeline for such production has been provided. *Id.* at ¶ 11.

Plaintiff's counsel has also taken the position that the discovery at issue in this Motion is "irrelevant" in light of Plaintiffs' subpoena to Meta. However, according to Meta's counsel, the earliest date for which Meta has potentially responsive records is June 19, 2021. *Id.* ¶ 3. The fact that Meta only has records for a fraction of the proposed class period undermines any argument that Plaintiffs do not need to produce their own Facebook records.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows discovery of any non-privileged information that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action[.]" Fed. R. Civ. P. 26(b)(1); *see also Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 2:14-cv-2119-RFB-VCF, 2015 WL 3649623, at *3-4 (D. Nev. June 10, 2015). Relevancy is defined broadly—it means any evidence that appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Next, whether the information is proportional to the needs of the case depends on (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.*; *see also Caballero v. Bodega Latina Corp.*, No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931, at *2 (D. Nev. July 25, 2017).

Interrogatories must be answered separately, fully, and in writing. Fed. R. Civ. P. 33(b)(3). The responding party must conduct a search for relevant information and must answer interrogatories after a diligent search. *See F.D.I.C. v. Halpern*, 271 F.R.D. 191, 193-94 (D. Nev. 2010). Thus, a responding party "cannot limit its interrogatory answers to matters within its own knowledge and ignore information immediately available to it or under its control." *Id.* at 193.

"Any document or thing that is relevant to the claim or defense of any party may be inspected pursuant to Rule 34 unless it is privileged, or it has been prepared in anticipation of litigation or for trial, or it reveals facts known and opinions held by experts, or there are special reasons why inspection would cause annoyance, embarrassment, oppression, or an undue expense burden." 8B Fed. Prac. & Proc. Civ. § 2206 (3d ed.). If a party intends to withhold documents, it should specify the materials withheld on the basis of an objection. *See* Fed. R. Civ. P. 34(b)(2). Where—as here—a party fails to adequately respond to an interrogatory (under Rule 33) or a document request (under Rule 34), Federal Rule of Civil Procedure 37(a) permits a party, "[o]n

notice to other parties and all affected persons" to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

## III. ARGUMENT

### A. Plaintiffs Should Be Ordered to Produce Additional Documents and Other Information Relating to Their Facebook Account Activity and Settings.

Zuffa moves to compel Plaintiffs to produce additional documents and other information relating to their Facebook account activity and settings in response to Interrogatory Nos. 7 and 8 and RFP Nos. 11-15 and 23-24.[3] These requests seek highly relevant information and documents regarding whether Plaintiffs' data could have been transmitted to Meta throughout the duration of the proposed class period, as they contend.[4] *See generally In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1094 (N.D. Cal. 2015). Yet, although this information is within Plaintiffs' sole possession and readily available, Plaintiffs have failed to produce such information, instead offering only boilerplate objections, improper cross-referencing to other responses (which in turn require even further cross-referencing), or woefully deficient productions and responses. Accordingly, Plaintiffs should be ordered to produce all responsive documents and other information in response to Zuffa's Interrogatories and Requests for Production.

1. <u>RFP Nos. 11 and 24</u>

RFP No. 11 asks Plaintiffs to produce documents sufficient to identify the usernames and Facebook IDs for all of their Facebook accounts, and RFP No. 24 seeks documents sufficient to show the Facebook profiles for each of those accounts. According to Facebook, a username is the "website address for your profile or page," and a "User ID is a string of numbers that doesn't

---

[3] In accordance with LR 26-6(b), the full text of the discovery Zuffa originally sought and Plaintiffs' responses are set forth in the attached Appendix.

[4] Plaintiffs contend that their Facebook IDs were disclosed to Meta by virtue of a Facebook "c_user" cookie when they navigate to the Fight Pass website. ECF No. 47 ¶ 35 (alleging Defendants "disclose simultaneously to Facebook . . . (1) the consumer's identity (through a Facebook ID); (2) the complete URL that the user visited").

personally identify you."[5] This information is plainly relevant because Plaintiffs' use of Facebook is central to their claim that Zuffa allegedly caused the transmission of their Facebook ID to Meta, and that third parties can purportedly utilize this information to identify sensitive information about them. *See, e.g.*, First Amended Complaint, ECF No. 47 ¶ 35 (alleging that Zuffa disclosed Plaintiffs' Facebook ID to Meta), ¶ 37 (alleging that Facebook IDs permit third parties to "identify particular consumers and to obtain other sensitive information on their Facebook profiles").

Plaintiffs have failed to produce any documents sufficient to show their Facebook accounts and profiles in response to RFP Nos. 11 and 24. For RFP 11, Plaintiffs have merely referred Zuffa to their responses to Interrogatory No. 6, and noted that the profiles are "visible to the public" without offering to produce any documents. For RFP 24, Plaintiffs have outright refused to produce any documents. Plaintiffs' boilerplate relevance, burden, and privacy objections are without merit. *See Daisy Tr. v. JP Morgan Chase Bank., N.A.*, No. 2:13–cv–00966–RCJ–VCF, 2017 WL 3037427, at *2 (D. Nev. July 18, 2017) ("Boilerplate, generalized objections are inadequate and tantamount to making no objection at all."). As noted, these requests are highly relevant to both Plaintiffs' claims and Zuffa's defenses. There is also no burden on Plaintiffs given the small number of Facebook accounts at issue and the fact that this information is within their sole possession. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (parties resisting discovery carry the heavy burden of showing why discovery should be denied); *Teller v. Dogge*, 2013 WL 1501445, at *1 (D. Nev. Apr. 10, 2013) ("The party opposing discovery has the burden of showing that the discovery is irrelevant, overly broad, or unduly burdensome.").

It is also not clear what privacy interest Plaintiffs have in their Facebook profile pages, and Plaintiffs also have not explained how providing this information infringes upon their privacy

---

[5] *See How Usernames and user IDs are used on Facebook Profiles*, Facebook Help Center, https://m.facebook.com/help/211813265517027/?_rdr (last visited June 23, 2023).

rights. *Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-cv-225-GMN-VCF, 2016 WL 1171504, at *3 (D. Nev. Mar. 24, 2016) (rejecting privacy interest as reason for withholding discovery "particularly where the objecting party fails to state why or how the document is confidential nor cite any relevant federal discovery authority which upholds such an assertion of confidentiality and that discovery or review of such a document is precluded"); *Aevoe Corp. v. AE Tech Co.*, 2013 U.S. Dist. LEXIS 121813, *6 (D. Nev. Aug. 27, 2013) ("The relatively remote potential for inadvertent disclosure of confidential documents does not justify the withholding of discovery altogether."). Not only have Plaintiffs failed to provide any detail or authority to support their privacy claims, but ultimately they cannot block discovery on matters they put into dispute. *In re Application of O'Keeffe*, No. 214CV01518RFBCWH, 2016 WL 2771697, at *5 (D. Nev. Apr. 4, 2016) (no privacy or confidentiality privilege where discovery concerns "matters that a party places in controversy"). To the extent any of Plaintiffs' documents are indeed private, they will be adequately protected by the parties' protective order or redactions. *See Sweeney v. UNLV Rsch. Found.*, No. 2:09–cv–01167–JCM–GWF, 2010 WL 1756875, at *4 (D. Nev. Apr. 30, 2010).

Accordingly, Plaintiffs' objections should be overruled and they should be ordered to produce documents responsive to Requests for Production Nos. 11 and 24.

2. <u>Interrogatory No. 7</u>

Interrogatory No. 7 asks Plaintiffs to identify the dates they created, deactivated, or deleted their Facebook accounts. Plaintiffs have failed to identify the dates they created their Facebook accounts and whether they have ever been deactivated. They have only stated that the accounts were created prior to subscribing to UFC Fight Pass. But this information is directly relevant to the core question in this case: whether Zuffa disclosed Plaintiffs' purported PII to Meta. Therefore, Zuffa is entitled to know when Plaintiffs created their Facebook accounts, and whether Plaintiffs have ever deactivated those accounts during the proposed class period. After all, Zuffa could not have disclosed Plaintiffs' Facebook IDs if their Facebook accounts were

deactivated at the time. Thus, Plaintiffs should be ordered to identify the dates they created, deactivated, or deleted all of their Facebook accounts.

3. Interrogatory No. 8 and RFP Nos. 12-15 and 23

RFP Nos. 12-15 and 23 seek information and documents regarding Plaintiffs' Facebook account activity and settings. For one, Zuffa seeks records of Plaintiffs' privacy settings. One such preference called "Off-Facebook Activity" allows Facebook users to prevent Facebook from collecting information from their interactions with other websites.[6] Zuffa also seeks username and log-in settings that would reveal whether Plaintiffs have changed their username(s) over time,[7] and whether they activated the "keep me logged in" setting. Further, Zuffa has requested Plaintiffs' "Activity Log"—which is a readily-downloadable report of the device(s) and time(s) a Facebook user logged into their account, among other activity information.[8]

This information is highly relevant. As noted above, to determine whether Plaintiffs' activity on the Fight Pass website potentially caused the transmission of Facebook cookies to Meta, Plaintiffs must show (among other things) that (1) they did not disable the "Off-Facebook Activity" setting during the time frame that they accessed a video on the UFC Fight Pass website, and (2) they accessed a video on the UFC Fight Pass website either while logged into Facebook on the same web browser or shortly thereafter if they activated the "keep me logged in" setting. *See In re Hulu Priv. Litig.*, 2014 WL 2758598, at *5 ("according to Hulu's expert . . ., the c_user cookie would be cleared if the 'keep me logged in' box were not checked," among other reasons). But despite the clear relevance of these requests and minimal burden, Plaintiffs have failed to produce the Activity Logs in response to RFP No. 23 that would show when and how they accessed their respective Facebook accounts. While Plaintiffs agreed to produce "Facebook

---

[6] *See Review your Off-Facebook activity,* Facebook Help Center, https://m.facebook.com/help/2207256696182627?helpref=faq_content&_rdr (last visited June 23, 2023).

[7] *Your Username*, Facebook Help Center, https://m.facebook.com/help/1740158369563165/?helpref=hc_fnav&_rdr (last visited June 23, 2023).

[8] *Find your Facebook activity log*, Facebook Help Center, https://m.facebook.com/help/289066827791446?_rdr (last visited June 23, 2023).

privacy settings" in response to RFP No. 12, they have not done so, even after Zuffa pointed out the deficiencies in their production. Plaintiffs also agreed to meet and confer regarding the "scope" of RFP Nos. 13 and 14, but following meet and confer efforts Plaintiffs have not agreed to supplement their responses to these requests. Plaintiffs improperly cross-reference these aforementioned requests when asked to produce documents relating to their Facebook ad, login, or username settings in response to RFP No. 15. Once again, Plaintiffs' objections should be overruled, and they should be ordered to produce *all* documents responsive to these requests. *See Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (the party opposing discovery bears the burden of showing "that discovery is irrelevant, overly broad, or unduly burdensome").

Plaintiffs' response to Interrogatory No. 8 fares no better. Although information about Plaintiffs' Facebook settings could potentially moot Plaintiffs' claims, they object that the request is irrelevant and unduly burdensome. They argue that Zuffa should rely on the testimony they provide from memory at their depositions. And the response Plaintiffs *do* provide is inadequate: they both claim that they have "no memory of changing any privacy setting on any Meta-owned account relating to cookies and the UFC Fight Pass platform" and "no memory of asking or permitting anyone else to change any such privacy setting." Balitzer Decl., ¶¶ 4-5 Exs. B, D. This response is deficient for several reasons. *First*, Plaintiffs' response is improperly limited to privacy settings "relating to cookies and the UFC Fight Pass Platform" on Plaintiffs' devices. But Zuffa seeks information regarding *any* Facebook privacy settings that could impact the transmission of their purported PII to Meta. For instance, Plaintiffs' response does not make clear whether Plaintiffs have the "Off-Facebook Activity" setting enabled or disabled *Second*, Plaintiffs' response is improperly based on their "memory" alone. Plaintiffs have an affirmative duty to check the settings for their Facebook accounts—which are readily available to them and their counsel—in responding to Zuffa's requests. *See, e.g.*, *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009) ("A party has an obligation to conduct a reasonable inquiry into the factual basis of its discovery responses.").

**B. The Court Should Order Plaintiffs to Produce Information Relating to Their Web Browser and Device Settings.**

Zuffa also moves to compel Plaintiffs to produce additional documents and other information regarding the devices and browsers Plaintiffs used to access video web pages on the Fight Pass website, and their respective data privacy settings, data privacy software, and ad settings in response to Interrogatories Nos. 1, 2, 4, and 5 and RFP Nos. 6, 7, 8, 9, and 10. This information is plainly relevant. Simply put, if Plaintiffs installed certain software or implemented certain settings on their browsers or devices, then they might have blocked the transmission of Facebook cookies. *See In re Hulu Priv. Litig.*, 2014 WL 2758598, at *8 ("Browsers allow users to block and clear cookies (including by setting privacy settings to clear cookies automatically) and to install plugin browser enhancements to configure the browser in many ways, including blocking traffic to a specific web domain."). Thus, Plaintiffs' claims hinge on whether they utilized any of these tools.

In fact, Plaintiffs acknowledge in their Motion for Class Certification that "Zuffa will argue that individualized questions exist as to whether 'personally-identifiable information' was disclosed due to discrepancies in subscribers' browsers, devices, privacy settings, and the possible use of cookie-blocking add-on software." Mot. for Class Cert. at 14. Still, without any specific showing of burden, Plaintiffs have refused or otherwise failed to produce complete, reliable information regarding the browsers and devices they used to access videos on the Fight Pass website. Plaintiffs should be ordered to produce all responsive documents and other information in response to these Interrogatories and Requests for Production.

1. Interrogatory Nos. 1 and 2

Interrogatories 1 and 2 ask Plaintiffs to produce information regarding the devices they used to access the Fight Pass website and then identify whether they used those same devices to access videos on the Fight Pass website. This information is relevant because Plaintiffs claim that they accessed Fight Pass videos on a web browser that purportedly transmitted information via cookie(s) to Facebook. *See* ECF No. 47 ¶ 61 (alleging that "[a]fter Plaintiff Graham subscribed

to the UFC Fight Pass, he watched multiple videos of fights and other content offered through the UFC Fight Pass on his laptop computer and other devices, including through Chrome"); *id.* ¶ 68 (same as to Plaintiff Lindholm). And because certain devices and operating systems block web trackers, this information is also directly relevant to whether any disclosures took place.

Nonetheless, Plaintiffs provided incomplete responses to these requests. In response to Interrogatory 1, Plaintiffs listed browsers and devices that they used to access UFC Fight Pass. They did not provide any information about the operating systems of those devices. Although Zuffa previously provided information to Plaintiffs' counsel about how different operating systems could limit the functionality of third party cookies, Plaintiffs never supplemented or amended their objections. *See* ECF No. 57.1 ¶ 9, Ex. F. And in response to Interrogatory 2**,** which asked whether Plaintiffs used those devices to visit or load video pages on the Fight Pass website, Plaintiffs answered that they accessed video content on the "UFC Fight Pass platform." When this response was previously discussed with respect to Bloom, Plaintiffs' counsel did not dispute that the response includes more than just the Fight Pass website (and therefore lacks sufficient specificity). *See id.* ¶ 8, Ex. E. Plaintiffs should consult their device history to establish whether they actually accessed the Fight Pass video content from those devices.

2. <u>Interrogatory Nos. 4 and 5 and RFP Nos. 6, 7, 8, 9, and 10</u>

Interrogatory Nos. 4 and 5 and RFP Nos. 6, 7, 8, 9, and 10 ask Plaintiffs to produce documents and information regarding Plaintiffs' privacy settings and software on the devices and browsers they used to access the Fight Pass website, as well as related documents and communications. These requests go to the heart of Plaintiffs' claims and Zuffa's potential defenses. Specifically, this information is relevant to Plaintiffs' allegations that code on the Fight Pass website "causes" users' browsers to "communicate with Facebook when the user loads one of the webpages." *See* ECF No. 47 ¶ 5. That is because certain browsers, devices, as well as customizable settings and software for those devices and browsers can disable the transmission of cookies or tracking functionality which would interfere with the disclosure of Plaintiffs' Facebook ID as alleged in the complaint. Indeed, ***Plaintiffs admit that "certain browsers and***

***add-on software may block third-party cookies" and speculate that "perhaps 30% of total tracking was lost due to cookie blockers."*** Mot. for Class Cert. at 14-15. Such information was also essential in the *Hulu* court's resolution of class certification. *See In re Hulu Priv. Litig.*, 2014 WL 2758598, at *14 ("[C]lass members are those who actually had their PII transmitted to Facebook. That inquiry turns on whether the c_user cookie was sent to Facebook, which depends on a number of variables (including whether the user remained logged into Facebook, cleared cookies, or used ad-blocking software)."). Therefore, there can be no dispute that this information is highly relevant to the parties' claims and defenses—as well as class certification.

Specifically, Interrogatory 4 asked Plaintiffs to identify any changes to device or web browsers or their settings that would block, modify, or delete cookies. As discussed in the *Hulu* case, users can activate certain web-privacy measures that limit the active lifespan of the cookies that lie at the heart of Plaintiffs' contentions. *Id.* at *9 ("Hulu users could take standard web-privacy measures to limit the active lifespan of cookies including (1) using their browsers in 'incognito' mode, where no existing cookies from any websites can be accessed, and all cookies set during browsing sessions are deleted when the browser is closed (leading to the resetting of the datr cookie), and (2) deleting cookies either manually or by browser configuration, which has the same effect as browsing incognito."). Here, Plaintiffs responded that they "ha[ve] no memory of changing any privacy settings relating to cookies relating to the UFC Fight Pass platform on the devices identified," and "ha[ve] no memory of asking or permitting anyone else to change any such privacy setting." Balitzer Decl. ¶¶ 4-5, Exs. B, D. This response is flawed. Plaintiffs should consult their settings, rather than relying on their memory. Further, Plaintiffs' response does not respond to the question asked. They limit their response to "any privacy setting relating to cookies relating to the UFC Fight Pass platform," which is narrower than Zuffa's request. *Id.* Moreover, it is simply not clear what Plaintiffs mean by "privacy" setting or cookies "relating to the UFC Fight Pass platform." *Id.*; *cf.* 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 33 ("Courts expect parties to give real answers to the questions asked.").

Plaintiffs' response to Interrogatory 5 is similarly problematic. That interrogatory asks Plaintiffs to identify and describe any action to change device settings that relate to advertisement personalization, advertisement retargeting, cross-site tracking, or tracking pixels. The importance of this information is indisputable. *See, e.g.*, *In re Hulu Priv. Litig.*, 2014 WL 2758598, at *8 ("Browsers allow users to block and clear cookies (including by setting privacy settings to clear cookies automatically) and to install plugin browser enhancements to configure the browser in many ways, including blocking traffic to a specific web domain".). This time, Plaintiffs responded even more vaguely that they have "no *specific memory* of changing any device settings relating to tracking of [their] activity on the UFC Fight Pass platform on the devices identified," and "ha[ve] no *specific memory* of asking or permitting anyone else to change any such device setting" (emphasis added). Balitzer Decl. at ¶¶ 4-5, Exs. B, D. Again, Plaintiffs should not just rely on whether they have a "specific memory," but should instead provide the requested information regarding their device settings. And, Plaintiffs' response is narrower than Zuffa's request, as it is simply not clear what Plaintiffs mean by "tracking of [their] activity on the UFC Fight Pass platform." *See* 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 33 ("The answering party must construe the question fairly and not in a hypertechnical manner designed to justify not providing information that any reasonable reader would know was being sought.").

Finally, Requests for Production 6, 7, 8, 9, and 10 seek documents related to any privacy, software, or ad settings on the devices and browsers Plaintiffs used to access the Fight Pass website during the relevant time period, and documents related to the specific web browsers Plaintiffs used to access the Fight Pass website.[9] Plaintiffs' production is deficient because (i) Plaintiffs only agreed to produce "documents available to [them] that show [their] cookie settings on Chrome and Chrome extensions settings" which is narrower than Zuffa's request; (ii) Graham has not produced *any* documents responsive to these requests; and (iii) Lindholm produced one incomplete screenshot of his Chrome cookie settings and his Chrome extensions. In addition to

---

[9] Plaintiff Graham has not produced any Chrome settings. Plaintiff Lindholm only produced partial a screenshot of what is presumably his current Chrome cookie settings.

lodging objections to these document requests on the general grounds that they are ambiguous, burdensome, infringing on their privacy rights, and because they are "publicly available or not in [their] possession," Plaintiffs also cite to *In re Google RTB Consumer Priv. Litig.*, 2022 U.S. Dist. LEXIS 74791 at *8 (N.D. Cal. Apr. 25, 2022), for the proposition that "discovery of documents and information related to Plaintiff's data privacy settings and other documents responsive to this request must be limited to the claims and defenses at issue in the case," (Balitzer Decl. ¶¶ 4-5, Exs. A, C) which supports Zuffa's argument that it needs adequate discovery responses. Thus, their objections should be overruled.

## IV. CONCLUSION

For the reasons discussed above, Zuffa respectfully requests that the Court order Plaintiffs to fully produce the documents and information in response to Zuffa's Requests for Production and Interrogatories.

DATED: August 22, 2023

**PAUL HASTINGS LLP**

By: /s/ *Susan K. Leader*
Susan Leader
Ali Rabbani
Stephanie Balitzer

*Attorneys for Defendant, Zuffa, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on August 22, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Susan K. Leader
Susan K. Leader