1

**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS (Nev. Bar No. 5549)

2

jcw@cwlawlv.com
710 South 7th Street

3

Las Vegas, Nevada 89101
Telephone: (702) 382-5222

4

Facsimile: (702) 382-0540

5

**PAUL HASTINGS LLP**
SUSAN LEADER (*admitted pro hac vice*)

6

susanleader@paulhastings.com
ALI RABBANI (*admitted pro hac vice*)

7

alirabbani@paulhastings.com
STEPHANIE BALITZER (*admitted pro hac vice*)

8

stephaniebalitzer@paulhastings.com
PAUL HASTINGS LLP

9

1999 Avenue of The Stars
Los Angeles, California  90067

10

Telephone:  1(310) 620-5700
Facsimile:  1(310) 620-5899

11

Attorneys for Defendants

12

13

14

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

15

16

17

EVERETT BLOOM, JACK GRAHAM,
and DAVE LINDHOLM, on behalf of
themselves, and those similarly situated,

18

19

Plaintiffs,

20

vs.

21

ZUFFA, LLC, ENDEAVOR
STREAMING, LLC, and ENDEAVOR
GROUP HOLDINGS, INC.,

22

23

Defendants.

|  |
|---|
| CASE NO. 2:22-cv-00412-RFB-BNW |
| **DEFENDANT ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |
| Date:  October 3, 2023 |
| Time:  1:00 p.m. |
| Location:  LV Courtroom 3B |
| Magistrate Judge Brenda Weksler |

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 1

   A.   Plaintiffs' First Set of RFPs and Interrogatories to Zuffa. ............................... 1

   B.   Zuffa's Document Productions and Depositions. .............................................. 2

   C.   Plaintiffs' Failure to Adequately Meet and Confer With Zuffa. ....................... 3

III.  ARGUMENT .......................................................................................................... 4

   A.   Plaintiffs' Motion to Compel Production of Mr. Brown's Documents Is Moot. ................. 4

   B.   Plaintiffs' Motion to Compel Production of Zuffa's Document Retention Policies Is
   Inaccurate, Misleading, and Moot. ................................................................................... 6

   C.   Plaintiffs' Motion to Compel Production of Facebook Documents Is Moot. ....................... 7

   D.   Plaintiffs' Motion to Compel Production of All Documents Relating to Zuffa's
   Compliance with Any Federal or California Law, Regulation, or Rule Relating to Privacy or
   Confidentiality Should be Denied. ................................................................................... 10

   E.   Zuffa Already Provided Complete Responses to Interrogatory Nos. 2 and 3 ................... 12

   F.   Plaintiffs' Motion to Compel Regarding Interrogatory No. 5 Is Premature. ..................... 14

IV.  CONCLUSION ..................................................................................................... 15

DEFENDANT ZUFFA, LLC'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL

1

## TABLE OF AUTHORITIES

2

*Page(s)*

3

**Cases**

4

*Ashcraft v. Experian Info. Sols., Inc.*,

5
    2018 WL 6171772 (D. Nev. Nov. 26, 2018) ............................................................... 6

6

*Beckner v. El Cajon Police Dep't*,
    2008 WL 2033708 (S.D. Cal. May 9, 2008) .............................................................. 9

7

*Bowell v. Montoya*,

8
    2020 WL 3893583 (E.D. Cal. July 10, 2020) ........................................................... 8

9

*Cardoza v. Bloomin' Brands, Inc.*,

10
    2015 WL 3875916 (D. Nev. June 22, 2015) ........................................................... 15

11

*In re Convergent Techs. Sec. Litig.*,
    108 F.R.D. 328 (N.D. Cal. 1985) ........................................................................... 15

12

*El Deeb v. Univ. of Minn.*,

13
    60 F.3d 423 (8th Cir. 1995) .................................................................................... 13

14

*Shenwick v. Twitter, Inc.*,

15
    2018 WL 833085 (N.D. Cal. Feb. 7, 2018) .............................................................. 7

16

*St. John v. Napolitano*,
    274 F.R.D. 12 (D.D.C. 2011) ................................................................................. 11

17

*In re Subpoena to Meta Platform, Inc.*,

18
    No. 23-mc-81027, ECF No. 1-1 (N.D. Cal. Apr. 25, 2023) .................................... 12

19

*United States v. Baisden*,

20
    881 F. Supp. 2d 1203 (E.D. Cal. 2012) .................................................................. 11

21

**Other Authorities**

22

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 11

23

LA IA
    1-3(f)(2) .............................................................................................................. 1, 10

24
    1-3(f)(4) ............................................................................................................ 10, 14

25

LR 26-6(c) .............................................................................................................. *passim*

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs' motion to compel inexplicably seeks the production of several categories of documents and other information that Zuffa has either already produced, agreed to produce, or confirmed does not exist in its records.  In fact, this motion could have been avoided altogether if Plaintiffs had complied with this Court's meet and confer requirements and made a "sincere effort to resolve or narrow the dispute . . . without court intervention." LR IA 1-3(f)(2).  Instead, Plaintiffs cut Zuffa's meet and confer efforts short and chose to file a premature motion to compel knowing full well that Zuffa would be producing the bulk of the documents at issue less than two weeks later, imposing an unnecessary and costly burden on Zuffa (not to mention a waste of judicial resources). The only documents Zuffa did not agree to produce concern Plaintiffs' improper and overly broad request for all documents relating to Zuffa's compliance with any and all "privacy and confidentiality" laws, rules, and regulations.  For these reasons, as discussed in greater detail below, Plaintiffs' motion to compel should be denied in full.

## II.    BACKGROUND

### A.    Plaintiffs' First Set of RFPs and Interrogatories to Zuffa.

On May 31, 2022, Plaintiffs served their First Set of Requests for Production ("RFPs") and Interrogatories on Zuffa, seeking over 50 categories of documents and other information. Declaration of Ali Rabbani ("Rabbani Decl.") ¶ 2, Exs. A, B.[1]  On July 14, 2022, Zuffa served its written objections and responses to Plaintiffs' RFPs and Interrogatories.  *Id.* ¶ 3, Exs. C, D.

On August 11, 2022, Plaintiffs' counsel sent a letter to Zuffa's counsel requesting a meet and confer regarding Zuffa's objections and responses to Plaintiffs' RFPs and Interrogatories.  *Id.* ¶ 4, Ex. E.  Shortly thereafter, on August 25, counsel for the parties met and conferred to discuss, among other things, Zuffa's discovery responses.  *Id.* ¶ 5.  In relevant part, Plaintiffs agreed to limit the scope of their Interrogatories and postpone discussions regarding their RFPs as follows:

---

[1] Although the discovery at issue was served by Plaintiff Bloom, Plaintiffs Lindholm and Graham subsequently joined the case on May 29, 2023.  ECF No. 47.  To avoid confusion, Zuffa therefore refers to "Plaintiffs" collectively herein.

- <u>Interrogatory Nos. 2-4</u>:  Plaintiffs agreed to limit these Interrogatories to information in Zuffa's possession, custody, or control and pertaining to Zuffa's use of the Facebook Pixel on UFC Fight Pass webpages with video content;

- <u>Interrogatory No. 5</u>:  Plaintiffs agreed to limit this Interrogatory to the general factual basis underlying Zuffa's denial of Plaintiffs' claims, with the understanding that Zuffa's investigation into these matters is ongoing and its response would be provided based on its knowledge at the time; and

- <u>RFPs</u>:  Plaintiffs agreed that the issues raised in their August 11 letter would not need to be addressed (if at all) until Zuffa began producing documents on a rolling basis, and thus the parties agreed to postpone any meet and confers regarding those issues until a later date.[2]

*Id*.  Zuffa memorialized these agreements in a letter dated September 2, 2022, and two weeks later Zuffa served supplemental responses to Plaintiffs' Interrogatories based on these agreements.  *Id.* ¶ 6, Ex. F.  Plaintiffs did not raise any disputes regarding Zuffa's supplemental responses until (at least) July 25, 2023.[3]  *Id.* ¶ 7.

### B.    Zuffa's Document Productions and Depositions.

In accordance with the Stipulated Order re: Discovery of Electronically Stored Information ("ESI Order"), the parties met and conferred beginning in August 2022 regarding "the methodology to be used to search for ESI in response to Fed. R. Civ. P. 34 requests."  *See* ECF No. 37 at 2. Pursuant to these discussions, the parties expressly agreed that Zuffa would perform targeted collections of certain narrow categories of documents (e.g., the Facebook Pixel code used on the Fight Pass website) in addition to running an agreed-upon set of search terms on ESI collected from two custodians: Travis Santypal (Zuffa's Technical Operations Director) and Kristen Banks (Zuffa's former Vice President of Marketing, Digital Products).  *Id.* ¶ 8, Ex. H.  Over the next few

---

[2] Although not at issue in Plaintiffs' motion, Plaintiffs also agreed during this meet and confer that Zuffa's response to Interrogatory No. 6 was sufficient.  *Id.* ¶ 5.

[3] As discussed below, Plaintiffs' counsel later revealed that the disputes raised in Plaintiffs' July 25 letter were inadvertently based on Zuffa's original Interrogatory responses, not its supplemental responses.  *Id.* ¶ 24.  Therefore, Plaintiffs did not actually raise any disputes regarding Zuffa's *supplemental* responses until August 3, 2023.

DEFENDANT ZUFFA, LLC'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL

1   months, the parties negotiated and agreed on a set of search terms that resulted in over 11,000

2   documents for Zuffa to review for responsiveness. *Id.* ¶ 10. As discussed below, Zuffa later applied

3   these same search terms to a third custodian, Jordan Brown (Zuffa's Director of Content Marketing),

4   which resulted in over 2,500 additional documents for Zuffa to review for responsiveness. *Id.* ¶ 17.

5          Zuffa began producing documents on a rolling basis in September 2022. To date, Zuffa has

6   produced 642 documents consisting of 2,563 pages. *Id.* ¶ 29.

7          In addition, on March 15, 2023, Plaintiffs, through their counsel, took Zuffa's 30(b)(6)

8   deposition regarding Zuffa's use of the Facebook Pixel on the Fight Pass website, Zuffa's Terms

9   of Use, Privacy Policy, and Cookie Policy relating to the Fight Pass website, and the number of

10  Fight Pass subscribers that accessed video webpages on the Fight Pass website during the proposed

11  Nationwide and California class periods. *Id.* ¶ 13. On the same date, Plaintiffs also deposed Mr.

12  Santypal in his individual capacity. About two months later, on May 31, Plaintiffs also deposed

13  Ms. Banks in her individual capacity. *Id.* ¶ 18.[4]

14         **C.     Plaintiffs' Failure to Adequately Meet and Confer With Zuffa.**

15         On April 14, 2023, Plaintiffs served Zuffa with a deposition notice for Jordan Brown, noting

16  that "[w]e are open to negotiating dates." *Id.* ¶ 14, Ex. J. The following week, on April 20,

17  Plaintiffs also requested, among other things, the production of "documents corresponding to the

18  previously agreed search terms" for Mr. Brown and copies of certain pages from Zuffa's Meta

19  Business Manager account for the Facebook Pixel. *Id.* ¶ 15, Ex. K. When counsel for the parties

20  met and conferred the following week, on April 27, Plaintiffs agreed to postpone the deposition of

21  Mr. Brown "given the practicalities surrounding the need to collect, review, and produce [his]

22  documents," and Zuffa agreed to investigate whether it could produce the requested pages from the

23  Meta Business Manager. *Id.* ¶ 16, Ex. L.

24         Shortly thereafter, Zuffa began the process of collecting, searching, and reviewing

25  documents responsive to these additional document requests. *Id.* ¶ 17. Throughout this process,

---

26  [4] Plaintiffs' assertion that Mr. Santypal and Ms. Banks "were largely ignorant of key issues in this
27  case" lacks merit. Mot. at 1. For example, contrary to Plaintiffs' argument that Ms. Banks did not
    know "whether Zuffa used Meta's pixel to track UFC Fight Pass users," the testimony cited states
28  the opposite: "I can only speak from my experience, which is to track purchases or subscriptions
    from pay-per-view *or Fight Pass*." *Id.* (citing Patek Decl., Ex. 17 at 73:16-74:6) (emphasis added).

DEFENDANT ZUFFA, LLC'S OPPOSITION
                                                            TO PLAINTIFFS' MOTION TO COMPEL

1    Zuffa gave Plaintiffs numerous updates regarding the status of the production, and on July 21, 2023,

2    Zuffa informed Plaintiffs that it would be in a position to produce these documents by the end of

3    August 2023. *Id.* ¶ 21, 23, Ex. N.

4         Despite Zuffa's estimated production timeline, Plaintiffs sent Zuffa a letter several days

5    later demanding that Zuffa accelerate its production timeline to August 8 or "Plaintiff will be forced

6    to move to compel this production." *Id.* ¶ 22, Ex. M. The letter also memorialized Plaintiffs'

7    request from a few days earlier for Zuffa's document retention policies in response to RFP No.

8    37. In addition, the letter raised a host of new discovery issues, including Plaintiffs' requests for

9    other Facebook-related documents (RFP Nos. 9, 11, 27, 32), Plaintiffs' request for all documents

10   relating to Zuffa's compliance with unspecified laws, regulations, and rules relating to privacy and

11   confidentiality (RFP No. 20), and Interrogatory Nos. 2-5. *Id.*

12        The following week, on August 2, counsel for the parties met and conferred over the phone.

13   *Id.* ¶ 24. Although Zuffa reiterated that it would produce Mr. Brown's documents and documents

14   from the Meta Business Manager by the end of the month, and agreed to discuss working with

15   Plaintiffs' counsel in good faith to limit the scope of any other discovery disputes, Plaintiffs sent

16   an email the following day stating that they would be filing the instant motion to compel. *Id.* ¶ 25,

17   Ex. O. As discussed below, Plaintiffs failed to comply with this Court's meet and confer

18   requirements.

19   **III.    ARGUMENT**

20        **A.    Plaintiffs' Motion to Compel Production of Mr. Brown's Documents Is Moot.**

21        As Plaintiffs knew prior to filing their motion, Zuffa had ***already*** agreed to produce

22   responsive documents from Mr. Brown before the end of August 2023. Rabbani Decl. ¶ 21, 23,

23   Ex. N. True to its word, Zuffa produced those documents on August 29, 2023. *Id.* ¶ 28. Therefore,

24   Plaintiffs' motion to compel production of Mr. Brown's documents should be denied as moot.

25        Nonetheless, Plaintiffs' complaints about the timing of Zuffa's production are baseless.

26   Contrary to Plaintiffs' suggestion that Zuffa has "effectively prevent[ed] Mr. Brown's deposition"

27   (Mot. at 5), Plaintiffs ***themselves*** chose not to proceed with Mr. Brown's deposition until Zuffa

28   completed its production of his documents. *Id.* ¶ 16, Ex. L. Significantly, Plaintiffs did not even

1    request the subject documents from Mr. Brown until the end of April 2023—*after* noticing his

2    deposition.[5]  *Id.* ¶¶ 15-16, Ex. K.  Shortly thereafter, Zuffa collected documents from Mr. Brown's

3    files, engaged an e-discovery vendor to process and search Mr. Brown's documents pursuant to the

4    parties' agreed-upon search terms, and reviewed the resulting 2,547 documents for responsiveness.

5    *Id.* ¶ 17.  Throughout this process, Zuffa provided Plaintiffs with numerous updates regarding the

6    status of the production and made clear that Zuffa planned to produce Mr. Brown's documents by

7    the end of August 2023.  *Id.* ¶ 21, 23, Ex. N.  But rather than wait eleven more days, Plaintiffs

8    instead chose to file the instant motion to compel in violation of this Court's meet and confer

9    requirements.  *See* LR 26-6(c); LR IA 1-3(f).

10         In the meantime, Plaintiffs have not explained to Zuffa (or the Court) why they could not

11   wait less than two weeks for Zuffa's production.  Nor could they given that Plaintiffs' reply brief

12   in support of class certification is not due until early next year, allowing Plaintiffs over four months

13   to review Zuffa's production and schedule Mr. Brown's deposition.  Indeed, it is telling that

14   Plaintiffs have not so much as inquired about scheduling Mr. Brown's deposition since April 2023,

15   despite Zuffa's repeated representations that it would be producing Mr. Brown's documents by the

16   end of August 2023.  *Id.* ¶ 30.  Therefore, Plaintiffs' motion to compel production of Mr. Brown's

17   documents should be rejected as nothing more than gamesmanship.[6]

18

19

20

21

---

22   [5] Contrary to Plaintiffs' suggestion that Zuffa should have volunteered to produce Mr. Brown's
23   emails, the parties had agreed to limit Zuffa's ESI search methodology to Mr. Santypal and Ms.
     Banks pursuant to the ESI Order in this action.  *Id.* ¶¶ 8-10, Exs. H, I.  At the time of those
24   discussions, which took place through October 2022, Zuffa had already disclosed Mr. Brown in its
     supplemental Interrogatory responses as having involvement in Zuffa's use of the Facebook Pixel.
25   *Id.* ¶ 7, Ex. G.
26   [6] Plaintiffs' assertion that Zuffa's 30(b)(6) witness testified that "Mr. Brown is responsible for
     Zuffa's Facebook Business Account" is also inaccurate.  As the cited testimony makes clear, Mr.
27   Santypal testified in his *individual* capacity that Mr. Brown has responsibility for *Facebook
     advertising* at Zuffa.  Mot. at 5 (citing Patek Decl., Ex. 16 at 97:21-99:2).  Nor do Plaintiffs cite
28   any support for their suggestion that Mr. Brown is "the person identified as most knowledgeable
     about Zuffa's Business Account (and thus the Facebook Event Manager)."  *Id.*

DEFENDANT ZUFFA, LLC'S OPPOSITION
                                                                        TO PLAINTIFFS' MOTION TO COMPEL

**B.    Plaintiffs' Motion to Compel Production of Zuffa's Document Retention Policies Is Inaccurate, Misleading, and Moot.**

Once again, Plaintiffs move to compel the production of documents that Zuffa had ***already*** agreed to produce. As Plaintiffs were well-aware prior to filing their motion to compel, Zuffa agreed to produce a copy of its Records and Information Management Policy, which reflects Zuffa's general retention and legal hold requirements, in response to RFP No. 37. Rabbani Decl. ¶ 25, Ex. O. Zuffa has since produced this document to Plaintiffs. *Id.* ¶ 28. Thus, Plaintiffs' motion to compel production of Zuffa's document retention policies is moot.

Regardless, Plaintiffs' suggestion that Zuffa destroyed "most email documents after 3-6 months" is both inaccurate and misleading. Mot. at 6. Plaintiffs' argument is premised entirely on deposition testimony from Kristen Banks—Zuffa's former Vice President of Marketing, Digital Products—who was not designated as a 30(b)(6) witness and had no responsibility for Zuffa's document retention policy. But as Zuffa explained on meet and confer calls, Plaintiffs' reliance on Ms. Banks's testimony is misplaced because Zuffa collected and produced emails from Ms. Banks and the other Zuffa custodians from the entire proposed class period—***not*** just from the past three to six months. *Id.* ¶ 19. This should be obvious to Plaintiffs based on the face of Zuffa's productions. Nonetheless, although Ms. Banks testified to her understanding of Zuffa's retention policy, many Zuffa employees are subject to an extended retention policy, including at various times the three Zuffa custodians in this action. Declaration of David Singer ("Singer Decl.") ¶¶ 2-3. In fact, Zuffa has collected over 600,000 files from these three custodians alone (and even more if you separately count emails and attachments). *Id.* ¶ 5. Therefore, Plaintiffs' speculation about a "routine document destruction policy" should be rejected.

Plaintiffs' request for "an accounting of what steps [Zuffa] has taken to preserve documents since 2022" should also be rejected. *See, e.g.*, *Ashcraft v. Experian Info. Sols., Inc.*, 2018 WL 6171772, at *2 n.2 (D. Nev. Nov. 26, 2018) ("Discovery into another party's discovery process is disfavored. . . . [R]equests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.") (internal quotations and citations omitted). As an initial matter, Plaintiffs' request is improper as it

1   was raised for the first time in Plaintiffs' motion.  *See* LR 26-6(c); Rabbani Decl. ¶ 27.  But even if

2   Plaintiffs' request was proper, Plaintiffs acknowledge that Zuffa issued a litigation hold notice to

3   preserve documents in connection with this action.  Mot. at 6; Singer Decl. ¶ 4.  Plaintiffs know

4   that because, in accordance with the ESI Order, the parties have already "discussed their

5   preservation obligations and needs" and met and conferred regarding "the types of ESI they believe

6   should be preserved" and "the number and identity of custodians . . . for whom they believe ESI

7   should be preserved."  ECF No. 37 at 1-2; Rabbani Decl. ¶ 8.  Plaintiffs have not explained to Zuffa

8   (or the Court) what additional information, if any, they are requesting.[7]

9        Finally, Plaintiffs' assertion that they adequately met and conferred with Zuffa is clearly

10  contradicted by the record.  Mot. at 7-8.  After Plaintiffs agreed in August 2022 to postpone any

11  meet and confers regarding their RFPs, Plaintiffs did not revisit their request for documents

12  sufficient to establish Zuffa's document retention policies (i.e., RFP No. 37) until nearly ***a year***

13  ***later*** during a meet and confer call on July 21, 2023.  Rabbani Decl. ¶ 21.  Less than two weeks

14  later, Zuffa agreed to produce Records and Information Management Policy.  But yet again, rather

15  than waiting for Zuffa's document production and completing meet and confer discussions,

16  Plaintiffs filed the instant motion.  Therefore, Plaintiffs' motion to compel production of Zuffa's

17  document retention policies should be rejected.  *See* LR 26-6(c); LR IA 1-3(f)(2).

18      **C.    Plaintiffs' Motion to Compel Production of Facebook Documents Is Moot.**

19       Plaintiffs' motion to compel production of Facebook-related documents should also be

20  denied as moot because Zuffa has either already produced those documents or confirmed that it has

21  found no such documents in its possession.

22

23

---

24  [7] Since it is unclear what information Plaintiffs are seeking in addition to Zuffa's document
25  retention policy, Zuffa preserves its objections to RFP No. 37, including to the extent Plaintiffs are
    seeking information protected from disclosure by the attorney-client privilege or the attorney work
26  product doctrine.  For example, to the extent Plaintiffs are seeking a copy of Zuffa's litigation hold
    in this action, which was prepared by Zuffa's counsel, or other related attorney-client
27  communication and work product, Plaintiffs' request should be denied.  *See, e.g.*, *Shenwick v.*
    *Twitter, Inc.*, 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018) ("preservation notices, if prepared
28  by counsel and directed to the client, are protected by the attorney-client privilege"); *see also*
    Rabbani Decl. ¶ __.

***Facebook Agreements.***  Despite Plaintiffs' assertion that Zuffa has not searched for documents responsive to RFP No. 9 (Mot. at 8), Zuffa confirmed in writing—***before*** Plaintiffs filed the instant motion—that it has not found any such agreements with Facebook in its records. Rabbani Decl. ¶ 23, Ex. N.  To the extent Facebook's current terms and conditions relating to the Facebook Pixel are publicly available, they are equally available to Plaintiffs.  As Plaintiffs have acknowledged, the parties have no obligation to produce such documents.  ECF No. 170 at 6.[8]

***Facebook Events Manager.***  Yet again, Plaintiffs move to compel the production of documents that Zuffa had ***already*** agreed to produce.  As Plaintiffs knew prior to filing their motion to compel, Zuffa agreed to produce documents from the Facebook Events Manager in response to RFP No. 13 before the end of August 2023.  Rabbani Decl. ¶ 24.  As anticipated, Zuffa has now produced those documents.  *Id.* ¶ 28.  Therefore, once again, Plaintiffs' motion is moot.[9]

***Facebook Communications.***  Plaintiffs' motion to compel production of documents responsive to RFP Nos. 11, 27, and 32 is similarly unwarranted.  First, Zuffa's response to RFP No. 27 already makes clear that "following a reasonably diligent search, Zuffa believes no documents responsive to this Request exist in its possession, custody, or control."  *Id.*, ¶ 3, Ex. C.  Second, with respect to RFP Nos. 11 and 32, Plaintiffs are well-aware that Zuffa has already produced responsive communications with Facebook relating to Zuffa's use of the Facebook Pixel.  *Id.* ¶ 12. Plaintiffs have not explained to Zuffa (or the Court) why they believe Zuffa's production in response to these RFPs is inadequate.  To the contrary, Plaintiffs argue that these RFPs are relevant because "they encompass Zuffa's use of the Meta Pixels, cookies, and ad campaigns."  Mot. at 9-10.  But those are precisely the types of communications Zuffa has already produced.

In addition, Plaintiffs fail to address any of Zuffa's written objections to these RFPs and therefore have waived any argument that those objections are improper.  *Bowell v. Montoya*, 2020

---

[8] Contrary to Plaintiffs' suggestion that Zuffa is being "hypocritical" because it moved to compel Plaintiff Bloom to produce his agreements with Facebook, Zuffa is not holding Plaintiffs to a higher standard.  *See* Mot. at 8.  Unlike Bloom, who only decided to confirm that he does not have any agreements with Facebook ***after*** Zuffa filed a motion to compel, Zuffa did the opposite here.  ECF No. 72 (noting that Bloom "should have confirmed this months ago, without forcing Zuffa to incur the cost of filing" its motion to compel).

[9] Plaintiffs' suggestion that the Facebook Events Manager shows that "Zuffa transmitted subscriber's Facebook User IDs" to Meta is without merit.  Mot. at 9.

DEFENDANT ZUFFA, LLC'S OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL

1    WL 3893583, at *2 (E.D. Cal. July 10, 2020) ("As the moving party, Plaintiff bears the burden of

2    informing the court which discovery requests are the subject of his motion to compel and, for each

3    disputed response, why Defendants' objection is not justified").  For example, Zuffa objected to

4    RFP Nos. 11 and 27 as overly broad, unduly burdensome, and not relevant to the extent they seek

5    information about "FACEBOOK CODE, SUBSCRIBER DATA, AND/OR DATA TRANSFERS"

6    that are entirely unrelated to the Facebook Pixel code or alleged PII at issue in this action.[10]  The

7    term "SUBSCRIBER DATA" is broadly defined to effectively mean "ALL" data relating to a Fight

8    Pass subscriber, even if that data has nothing to do with the VPPA or the California claims asserted

9    by Plaintiffs in this lawsuit.  Likewise, the term "DATA TRANSFER" is broadly defined to mean

10   the transfer of any such data to any third party, whether or not related to the alleged disclosures of

11   PII at issue.  And Plaintiffs provide no definition at all for the term "monetization," which in the

12   context of RFP No. 32 could be read to include, for example, all communications with third parties

13   relating to the subscription payments Zuffa receives from its Fight Pass subscribers, which is far

14   outside the scope of Plaintiffs' claims.  Yet Plaintiffs have not provided any justification for seeking

15   such information, falling far short of their burden under Rule 26.  *Beckner v. El Cajon Police Dep't*,

16   2008 WL 2033708, at *4 (S.D. Cal. May 9, 2008) ("[P]er rule 26(b)(1), all discovery must be

17   'relevant,' and the party seeking to compel discovery has the burden of establishing that its request

18   satisfies the relevancy requirements of Rule 26.").

19          Lastly, as Zuffa told Plaintiffs before they filed the instant motion, Zuffa was "investigating

20   whether there are any post-filing communications between Zuffa's custodians and Meta."  Rabbani

21   Decl. ¶ 24.  Since then, Zuffa has produced responsive communications with Facebook from March

22   3, 2022 (i.e., the date this action was filed) through June 3, 2022 (i.e., the end of Plaintiffs' proposed

23   class period).  *Id.* ¶ 28.

24

25

26

27   ───────────────
     [10] For this same reason, Zuffa objected to these defined terms and reasonably interpreted them in

28   its responses.  Zuffa's objections to these terms was discussed during the parties' August 25, 2022
     meet and confer and have not been raised again since.

**D.    Plaintiffs' Motion to Compel Production of All Documents Relating to Zuffa's Compliance with Any Federal or California Law, Regulation, or Rule Relating to Privacy or Confidentiality Should be Denied.**

As Plaintiffs' counsel acknowledged on a meet and confer call before filing the instant motion, RFP No. 20 is so broad that it is not clear what specific documents Plaintiffs are seeking. Rabbani Decl. ¶ 24.  As written, RPF No. 20 seeks "ALL DOCUMENTS RELATING TO YOUR compliance with ANY federal or California law, regulation, or rule RELATING TO SUBSCRIBER privacy or confidentiality of SUBSCRIBER DATA." *Id.* ¶ 2, Ex. A.  For that reason (and others), Zuffa objected to RFP No. 20 on numerous grounds and attempted to work with Plaintiffs in good faith in an attempt to narrow the scope of the request. *Id.* ¶¶ 23, 24.  But after just one meet and confer call, Plaintiffs' counsel concluded that "[i]t appears the parties are at an impasse" and subsequently proceeded to file their motion. *Id.* ¶ 25, Ex. O.

As an initial matter, Plaintiffs' motion to compel with respect to RFP No. 20 should be denied because Plaintiffs failed to comply with this Court's meet and confer requirements.  Nearly a year after the parties initially agreed to postpone any meet and confers regarding Zuffa's objections and responses to the RFPs, Plaintiffs' counsel sent a meet and confer letter on July 25, 2023 demanding that Zuffa search for documents responsive to RFP No. 20 and produce a privilege log just two weeks later. *Id.* ¶ 22, Ex. M.[11]  The following week, counsel for the parties met and conferred over Zoom. *Id.* ¶ 24.  After a discussion regarding Zuffa's objections to RFP No. 20, counsel for Zuffa offered to consider a narrowed request for documents relating to Zuffa's compliance with the claims asserted in Plaintiffs' complaint. *Id.*  Despite this offer, Plaintiffs' counsel responded the next day suggesting that "the parties are at an impasse" and threatening to file a motion to compel. *Id.* ¶ 25, Ex. O.  In response, Zuffa's counsel reiterated its offer to consider a narrowed request and noted that a motion to compel would be "premature and improper." *Id.*  Despite offering to meet and confer again the following week, Plaintiffs' counsel did not respond and instead filed the instant motion. *Id.* ¶¶ 25-26, Ex. O.  Based on this record, Plaintiffs have

---

[11] Notwithstanding and without waiving Zuffa's objections to RFP No. 20, Zuffa is preparing and will provide Plaintiffs with a privilege log in accordance with the ESI Order before the October 3, 2023 hearing on the instant motion.

1  fallen far short of "a sincere effort to resolve or narrow the dispute . . . without court intervention."

2  LA IA 1-3(f)(2).  Plaintiffs' motion regarding RFP No. 20 should be denied for this reason alone.

3  LR 26-6(c) ("Discovery motions will not be considered unless the movant . . . has made a good-

4  faith effort to meet and confer as defined in LR IA 1-3(f) before filing the motion . . . ."); LA IA 1-

5  3(f)(4) ("Failure to make a good-faith effort to meet and confer before filing any motion to which

6  the requirement applies may result in denial of the motion.").

7          In addition, Plaintiffs' motion should be denied on the independent grounds that RFP No.

8  20 is vague and ambiguous, overly broad and unduly burdensome, seeks information that is not

9  relevant or proportional to the needs of the case, and calls for information protected by the attorney-

10  client privilege and the attorney work product doctrine.  Rabbani Decl. ¶ 3, Ex. C.  First, there can

11  be no serious dispute that RFP No. 20 is vague and ambiguous with respect to the terms

12  "compliance," "law, regulation, or rule," "privacy," and "confidentiality."  These terms are not

13  defined in Plaintiffs' RFPs, nor have Plaintiffs explained in meet and confers precisely what these

14  terms refer to.  Indeed, Plaintiffs make no effort in their motion to even address this objection.

15          Second, RFP No. 20 is overly broad and burdensome because, as Plaintiffs recognize in

16  their motion, "the privacy concerns raised in this lawsuit are limited to Plaintiffs' claims under the

17  VPPA and California law, not generic privacy or confidentiality concerns."  Mot. at 11.  Indeed, as

18  written, RFP No. 20 effectively seeks "all" documents relating to Zuffa's compliance with any

19  number of unspecified laws, regulations, and rules, whether or not they relate to Plaintiffs' claims.

20          Third, despite acknowledging that Zuffa objected to RFP No. 20 on relevance grounds,

21  Plaintiffs fail to explain how their request is "relevant to any party's claim or defense and

22  proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Nor could they, given that Plaintiffs'

23  claims in this action are far narrower than Zuffa's compliance with *any* federal or California law,

24  regulation, or rule relating to "privacy or confidentiality."  Fed. R. Civ. P. 26(b)(1); *see also St.*

25  *John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. 2011) (the relevance standard is "not so liberal as

26  to allow a party to roam in shadow zones of relevancy and to explore matter which does not

27  presently appear germane on the theory that it might conceivably become so.") (citation omitted);

28  *see also United States v. Baisden*, 881 F. Supp. 2d 1203, 1207 (E.D. Cal. 2012) (raising "the specter

1    that somewhere within the information" that proponent seeks it "might find support" for one of its

2    claims or remedies "is one giant step removed from identifying an actual [claim]").

3        Finally, Plaintiffs' boilerplate arguments regarding Zuffa's privilege and work product

4    objections miss the mark.  The point is that RFP No. 20 is not limited to non-privileged documents,

5    despite seeking "all" documents relating to Zuffa's compliance with unspecified laws, regulations,

6    and rules.  Zuffa's objection is therefore intended to preserve Zuffa's rights, given that Plaintiffs'

7    request appears to be directly targeted at privileged communications and attorney work product.[12]

8        **E.    Zuffa Already Provided Complete Responses to Interrogatory Nos. 2 and 3.**

9        Contrary to Plaintiffs' argument, Zuffa has ***already*** conducted a reasonable investigation of

10   the records within its control and fully responded to Interrogatory Nos. 2 and 3.    These

11   Interrogatories ask Zuffa to identify the categories of "SUBSCRIBER DATA" transmitted to

12   FACEBOOK through Zuffa's use of the Facebook Pixel on UFC Fight Pass webpages with video

13   content.  Rabbani Decl., ¶ 2, Ex. A.  Zuffa initially responded "None," and, based on the agreements

14   reached with Plaintiffs on the August 25, 2022 meet and confer, subsequently supplemented its

15   response to further respond that "the Facebook Pixel 'Page View' event has at times been used on

16   UFC Fight Pass web pages with video content" but that "Zuffa is not aware . . . that any

17   SUBSCRIBER DATA was transmitted to Facebook when a SUBSCRIBER viewed a video on the

18   FIGHT PASS WEBSITE."  *Id.*  ¶ 7, Ex. G.  Zuffa does not have a further response.

19       Tellingly, Plaintiffs do not (and cannot) point to any documents produced in discovery or

20   deposition testimony to suggest that Zuffa has additional responsive information in its possession,

21   custody, or control.  To the contrary, Plaintiffs have argued in a related proceeding that they

22   ***exhausted*** discovery from Zuffa and thus were entitled to compel Meta's "records of Facebook

23   pixel tracking of Page View events triggered when Zuffa users view recorded videos on Zuffa

24   LLC's Fight Pass Website."  *In re Subpoena to Meta Platform, Inc.*, No. 23-mc-81027, ECF No.

25   1-1 at 2 (N.D. Cal. Apr. 25, 2023).  Likewise, Plaintiffs have acknowledged that Zuffa's responses

26   to Interrogatory Nos. 2 and 3 are ***consistent*** with testimony from Zuffa's 30(b)(6) witness regarding

27

28   _____

[12] To the extent the Court grants Plaintiffs' motion with respect to RFP 20, Zuffa will add any such
privileged communications and attorney work product to its privilege log (discussed above).

                                                        DEFENDANT ZUFFA, LLC'S OPPOSITION
                                                        TO PLAINTIFFS' MOTION TO COMPEL

1    Zuffa's use of the Facebook Pixel on Fight Pass web pages with video content. *Id.* at 3 (noting that

2    Zuffa's 30(b)(6) witness testified that "Zuffa does not know what data its subscriber's computers

3    send to Meta when use of Zuffa's website triggers the Facebook pixel").[13]  Plaintiffs' motion also

4    fails to address any of Zuffa's objections to Interrogatory Nos. 2 and 3, including Plaintiffs' defined

5    terms such as "SUBSCRIBER DATA" (as discussed further above).  Plaintiffs' motion to compel

6    regarding Interrogatory Nos. 2 and 3 should therefore be denied.

7         Plaintiffs' argument that Zuffa disingenuously claims "no data" at all was transmitted due

8    to the Facebook Pixel ignores the actual substance of Zuffa's supplemental response.  Mot. at 14.

9    Moreover, Plaintiffs' improper attempt to use an attorney declaration to show that Zuffa allegedly

10   transmitted PII to Zuffa should be rejected. *Id.* (citing Patek Decl. ¶ 9); *see also El Deeb v. Univ.*

11   *of Minn.,* 60 F.3d 423, 429–30 (8th Cir. 1995) (holding that the affidavit must evince that the affiant

12   is competent to testify as to the facts contained therein).

13        Lastly, Plaintiffs' motion should be denied because Plaintiffs ***again*** failed to comply with

14   this Court's meet and confer requirements.  Nearly a year after Plaintiffs agreed to limit the scope

15   of these Interrogatories and Zuffa supplemented its responses based on those limitations, Plaintiffs'

16   counsel sent a meet and confer letter demanding that Zuffa again supplement its Interrogatory

17   responses.  Rabbani Decl. ¶ 22, Ex. M.  But during a meet and confer call the following week, it

18   became clear that Plaintiffs' counsel had not even reviewed Zuffa's supplemental responses from

19   the year before, which he agreed to do after the call. *Id.* ¶ 24.  The next day, Plaintiffs' counsel

20   sent an email stating "I still believe supplementation is necessary" and claiming that "[t]his issue

21   also appears ripe for a motion." *Id.* ¶ 25, Ex. O.  Given that the parties had not yet had the

22   opportunity to meet and confer regarding Zuffa's ***supplemental*** responses, Zuffa's counsel

23   responded that it was inappropriate for Plaintiffs to file a motion "without giving us any opportunity

24   to respond" and offered to schedule a meet and confer call the next week.  Plaintiffs' counsel never

25   responded and instead filed the instant motion to compel. *Id.*  Thus, Plaintiffs have once again

26

---

27   [13] Plaintiffs' assertion that Zuffa's counsel instructed Mr. Santypal not to answer questions about
     Zuffa's "investigation" fails to mention that the instruction was "not to answer if the basis for his
28   answer would reveal attorney/client communications or work product."  Mot. at 13 (citing Patek
     Decl., Ex. 16 at 41:12-43:6).

fallen short of this Court's meet and confer requirements.  *See* LR IA 1-3(f) (requiring a "direct dialogue and discussion" by telephone or videoconference).  Plaintiffs' motion regarding Interrogatory Nos. 2 and 3 should be denied for this reason alone.  LR 26-6(c); LA IA 1-3(f)(4).

**F.     Plaintiffs' Motion to Compel Regarding Interrogatory No. 5 Is Premature.**

Plaintiffs conveniently omit from their motion that the parties met and conferred about Zuffa's response to Interrogatory No. 5 in late August 2022, and that ***they agreed*** to limit the scope of Interrogatory No. 5 to the general factual basis underlying Zuffa's denial of Plaintiff's claim based on its understanding at the time.  Rabbani Decl. ¶¶ 5-6, Ex. F.  Likewise, Plaintiffs fail to mention that they ***also agreed*** Zuffa could supplement its response to Interrogatory No. 5 as discovery progresses, so that Zuffa would have the opportunity to take Plaintiff and expert discovery.  *Id.*  Based on these agreements, Zuffa supplemented its response in September 2022 to state:

> While the Facebook Pixel 'Page View' event has at times been used on UFC Fight Pass web pages with video content, Zuffa does not know of any subscriber's personally identifiable information being sent to Facebook. Zuffa is still investigating whether unintentional and unknown disclosures of such information could have happened as the Complaint alleges.  These facts will be established through documents and the testimony of fact and expert witnesses as discovery progresses.

*Id.* ¶ 7, Ex. G.

In the meantime, however, Plaintiffs have refused to produce discovery that is directly relevant to their claims and Zuffa's defenses in this action.  These disputes are the subject of Zuffa's pending motions to compel against Plaintiffs to be heard by this Court on October 3, 2023.  *See* ECF Nos. 57, 79.  Plaintiffs' refusal to produce these highly relevant documents has also delayed Zuffa's ability to depose Plaintiffs and their expert witnesses.  As such, Plaintiffs have prevented Zuffa from discovering the information that it needs to further respond to Interrogatory No. 5—i.e., additional facts underlying Zuffa's defenses to Plaintiffs' VPPA claim.

1   In addition, the parties only recently received Meta's production in response to Plaintiffs'

2   subpoena, Plaintiffs recently amended their complaint (ECF No. 47), and now Plaintiffs have filed

3   a Motion to Intervene seeking leave to add yet another Plaintiff and to file yet another amended

4   complaint (ECF No. 73).

5   Therefore, while Zuffa intends to supplement its response to Interrogatory No. 5 pursuant

6   to Plaintiffs' prior agreement, it does not make sense to do so until Zuffa has had the opportunity

7   to obtain full discovery from Plaintiffs and their experts.  Therefore, to the extent the Court grants

8   Plaintiffs' motion with respect to Interrogatory No. 5, Zuffa respectfully requests the opportunity

9   supplement its response 30 days after Zuffa completes its depositions of Plaintiffs and their expert

10   witnesses, which it anticipates doing after resolution of its motions to compel and before filing its

11   opposition to Plaintiffs' motion for class certification.  *See generally Cardoza v. Bloomin' Brands,*

12   *Inc.*, 2015 WL 3875916, *2 (D. Nev. June 22, 2015) (finding that ordering a supplemental

13   discovery response was unnecessary "given the current stage of the case"); *see also In re*

14   *Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) ("substantive or contention

15   interrogatories [as distinguished from "identification interrogatories"] are better used, if at all, near

16   the completion of discovery and after utilization of other discovery devices.").

17   Finally, for the same reasons discussed above in connection with Interrogatory Nos. 2 and

18   3, Plaintiffs' motion should be denied for failure to comply with this Court's meet and confer

19   requirements.  Rabbani Decl. ¶ 25, Ex. O.

20   **IV.   CONCLUSION**

21   For the reasons discussed above, Plaintiffs' Motion to Compel should be denied in full.

22

23   DATED:        September 1, 2023                    **PAUL HASTINGS LLP**

24

25                                                     By:   */s/ Susan Leader*
                                                            Susan Leader
26                                                          Ali Rabbani
                                                            Stephanie Balitzer

27                                                     Attorneys for Defendants

28