**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile: 702-843-6010

**GUTRIDE SAFIER LLP**
Seth A. Safier (*pro hac vice*)
seth@gutridesafier.com
Marie A. McCrary (*pro hac vice*)
marie@gutridesafier.com
Anthony Patek (*pro hac vice*)
anthony@gutridesafier.com
Kali Backer (*pro hac vice*)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EVERETT BLOOM, JACK GRAHAM, AND DAVE LINDHOLM on behalf of themselves, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC.<br><br>Defendants. | No.: 2:22-CV-00412-RFB-BNW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PLAINTIFFS DAVE LINDHOLM AND JACK GRAHAM TO PRODUCE ADDITIONAL DOCUMENTS AND INTERROGATORY RESPONSES**<br><br>Date: October 3, 2023<br>Time: 10:00 a.m.<br>Location: Videoconference<br><br>Mag. Judge Brenda Weksler |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Plaintiffs' Allegations and Claims .......... 2

B. Plaintiffs Responded to Zuffa's Discovery Requests .......... 2

C. Meta Produced Documents that Moot Zuffa's Discovery Requests .......... 3

III. ARGUMENT .......... 4

A. Zuffa's Request for Plaintiffs' *Entire* Facebook Activity Logs (RFP No. 23) Is Overly Broad and Not Proportional to the Needs of the Case. .......... 4

B. Plaintiff Has Sufficiently Responded to the Remaining Requests .......... 5

1. Plaintiffs Have No Documents to Produce Related to RFPs 11 and 24 .......... 5

2. Plaintiff Have Identified that They Had Facebook Accounts During the Class Period (Interrogatory No. 7) .......... 6

3. Plaintiffs Responded to Rog No. 8 as Written .......... 7

4. Plaintiffs Produced Documents Responsive to RFP Nos. 12-15 .......... 8

5. Plaintiffs Have Produced Information Sufficient to Identify their Devices .......... 9

6. Rogs 4 & 5 and RFP 6, 7, 8, 9, 10 .......... 10

IV. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

### Cases

*Lopez v. Florez*, No. 1:08-cv-01975-LJO-JLT, 2013 U.S. Dist. LEXIS 38099 (E.D. Cal. Mar. 19, 2013) ........ 8

*Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566 (C.D. Cal. 2012) ........ 4

*Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594 (D. Nev. 2016) ........ 5

*Strohmeyer v. Belanger*, No. 3:14-cv-00661-RCJ-WGC, 2019 U.S. Dist. LEXIS 147104 (D. Nev. Aug. 28, 2019) ........ 5

*Tompkins v. Detroit Metropolitan Airport*, 278 F.R.D. 387 (E.D. Mich. 2012) ........ 4

### Rules

Fed. R. Civ. P. 26(b)(1) ........ 1

## I. INTRODUCTION

Defendant Zuffa's motion to compel discovery is meritless. The bulk of Zuffa's motion seeks to compel discovery that Plaintiff has either produced or is redundant with materials already produced. Specifically, with respect to Interrogatory Nos. 3-5 and 8 Plaintiffs responded fully to the interrogatories *as written*. With respect to Interrogatories Nos. 6-7, Plaintiffs have provided all *relevant* information. Likewise, Plaintiffs have produced documents in response to RFPs Nos. 6-11 and 24. To the extent Zuffa complains about Plaintiffs' response to RFP 10 (refusing to produce documents), it omits the RFP 10 (ALL DOCUMENTS relating to privacy and cookie settings) is largely redundant with RFPs 6-9 (DOCUMENTS sufficient to show privacy and cookie settings). Similarly, with respect to RFP 23 (seeking ALL DOCUMENTS relating to Plaintiffs' Facebook accounts), Zuffa omits the fact that Plaintiffs produced relevant portions of their Off-Facebook Activity Reports and cookie and ad settings.

Zuffa's motion seeks to compel discovery that, like Defendants' motion to compel discovery from Plaintiff Bloom, is grossly overbroad, would not lead to the discovery of relevant evidence, or is in disproportional to the needs of the case. While the central question in this case is whether Defendants sent personally identifiable information to Facebook (which they did), much of the discovery Zuffa seeks through its motion relates to Plaintiffs' activity and privacy settings on Facebook and other platforms owned by Meta (*e.g.* Instagram and WhatsApp). The bar for measuring whether this information is discoverable is whether that information is "relevant to any party's claim or defense and proportional to the needs of the case" and requires considering, among other things, "the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). Here, where much of the information Zuffa seeks is irrelevant or redundant, it is not proportional to the needs of the case.

Plaintiffs have provided the core information that Zuffa requests, including identifying Plaintiffs' Facebook User IDs and confirming that Plaintiffs utilized devices that do not block cookies, and producing documents to corroborate those facts. Plaintiffs note that most of the documents they produced either did not exist or were not in their possession when requested; they went out to their way to download Facebook records and take screenshots of computer,

browser, and account settings in an attempt to placate Zuffa. Further, Plaintiffs obtained (via subpoena) and produced the data transmitted by Defendants to Meta Platforms, Inc. (a.k.a. Facebook), thereby establishing that—despite Defendants' *theory* that Plaintiffs computer and account settings might have blocked Defendants' activities (despite Plaintiffs' clear indication that they were not set to do so)—they did not. In view of this evidence, which moots Plaintiffs' individualized privacy settings, Zuffa's focus on further collection of Plaintiffs' documents is a waste of time. Thus, its motion to compel should be denied.

## II. BACKGROUND

### A. Plaintiffs' Allegations and Claims

Plaintiffs have sued Zuffa, Endeavor Steaming, LLC, and Endeavor Group Holdings, Inc. ("Defendants") for violations of the VPPA and California privacy laws. Defendants collectively run the Fight Pass streaming platform, which provides pre-recorded mixed martial arts video content through the ufcfightpass.com website. Unbeknownst to subscribers, Defendants embedded the Fight Pass Website with code from Meta that sent to Meta the subscribers' Facebook ID, a URL with the name of the video watched. The VPPA requires Defendants to obtain users consent to disclosure of their video rental information in a form entirely separate from other agreements such as terms of use and purchase agreements, and to provide them with the opportunity to opt out of those disclosures. Defendants disclose subscribers' video rental requests to Meta Platforms, Inc. (d/b/a Facebook) without subscribers' consent.

### B. Plaintiffs Responded to Zuffa's Discovery Requests

Zuffa served its first sets of requests for production and interrogatories on Plaintiffs Graham and Lindholm on June 2, 2023. ECF 77 at 4. After a brief extension (to which Defendants agreed), Plaintiffs responded to Zuffa's interrogatories and RFPs on July 17, 2023. Patek Decl., ¶ 2. The next day, Plaintiffs requested to meet and confer regarding Plaintiffs' responses. *Id.* With respect to interrogatories, Plaintiffs informed Zuffa that their responses were adequate, and that they would produce responsive documents shortly thereafter, including additional documents requested in Zuffa's already-pending motion to compel discovery from Plaintiff Bloom. *Id.*

At the July 18, 2023 meet and confer, Zuffa counsel indicated that they would move to compel production of further documents regardless of Lindholm and Graham's production, on the expectation that it would be deficient for the same reasons as Plaintiff Bloom's prior production. *Id.*, ¶ 3.

On July 20, 2023—two days prior to Zuffa's motion to compel—Plaintiffs produced documents responsive to Zuffa's RFPs. *Id*., ¶ 4. Included within Plaintiffs' July 20th production were the following:

- Off-Facebook Activity Reports for UFC Fight Pass (Lindholm and Graham),
- Off-Facebook Activity logs showing activity for UFC Fight Pass (Lindholm)
- browser extension settings (Lindholm)
- browser cookie settings (Lindholm)

See Patek Decl., Exs. PLAINTIFF 0037-0040 (Lindholm), PLAINTIFF 0068-78 (Graham).

Plaintiff Graham produced the last three categories of documents produced by Lindholm (i.e., Off-Facebook Activity logs showing activity for UFC Fight Pass; browser extension settings; and browser cookie settings) later, on August 30, 2023. *Id*., ¶ 5.

On July 21, 2023, the Parties met and conferred again. Zuffa indicated that Plaintiff Graham's and Lindholm's interrogatory responses were deficient, for the same reasons as those of Plaintiff Bloom. *Id*., ¶ 6. Plaintiffs stated that they had produced all responsive documents for Plaintiff Lindholm, as well as Graham's Off-Facebook activity report, and were in the process of completing production of other documents for Graham. *Id*. Despite this, Zuffa not only reiterated it would be filing a motion to compel, but also that it would seek fees associated with the motion. *Id*.

Zuffa then filed this motion on July 22, 2023.

**C. Meta Produced Documents that Moot Zuffa's Discovery Requests**

In December 2022, Plaintiff served a subpoena on Meta Platforms, Inc. ("Meta"), d/b/a Facebook, seeking data received by Meta from Defendants' registered Meta Pixel, a type of tracking software Zuffa integrates into the UFC Fight Pass website. Patek Decl., ¶ 7.

On August 21, 2023, following a motion to compel by Plaintiffs in the Northern District of California, Meta produced data it received via Zuffa's use of its Meta pixel(s). *Id.*, ¶ 8. The pixel data registered to Zuffa corroborates Plaintiffs' allegations, confirming that Zuffa disclosed titles for hundreds of videos the Plaintiffs viewed in a manner that personally identified Plaintiffs to Meta during the period from June 19, 2021 to present. *Id.* Meta's data confirms that Zuffa transmitted this personally identifiable video rental information to Meta irrespective of any individualized settings on the UFC Fight Pass user's computer. *Id.* Furthermore, since it turns out that Plaintiff Graham's Chrome browser had two ad blocker extensions installed, yet Meta received data involving his viewing habits from Zuffa, Zuffa's assertion that ad and cookie blockers will necessarily stop the transmission of personally-identifiable information was wishful thinking. *Id.* As a result, most of the information that Zuffa seeks to compel Plaintiffs to provide is redundant and/or irrelevant.

## III. ARGUMENT

### A. Zuffa's Request for Plaintiffs' *Entire* Facebook Activity Logs (RFP No. 23) Is Overly Broad and Not Proportional to the Needs of the Case.

Zuffa seeks Plaintiffs Graham and Lindholm's complete Activity Logs for their "Facebook, Instagram, WhatsApp, and other Meta or Facebook-related account(s)." An "activity log" includes the entire history of a user's activity on a given platform, including posts, photos, videos, text and status updates, activity the user is tagged in, likes, reactions, comments, groups, and events created and attended. Much of this information would be wholly unrelated to Plaintiffs Graham and Lindholm's use of UFC Fight Pass and burdensome to obtain and produce.

In its motion, Zuffa inexplicably refuses to narrow its request to information relevant to this case. Plaintiffs produced a limited set of activity relevant to this case (e.g., Plaintiffs' Off-Facebook Activity Reports limited to UFC Fight Pass). Yet Zuffa still demands Plaintiffs *entire* Activity Log. Zuffa is not entitled to "'a generalized right to rummage at will through information that [the responding party] has limited from public view.'' *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570–71 (C.D. Cal. 2012) (quoting *Tompkins v. Detroit Metropolitan Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012)). Indeed, "[t]he 2015 amendments

to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality. *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (quotation marks omitted). This means "that lawyers must size and shape their discovery requests to the requisites of a case." *Id*; *see also Strohmeyer v. Belanger*, No. 3:14-cv-00661-RCJ-WGC, 2019 U.S. Dist. LEXIS 147104, at *14 (D. Nev. Aug. 28, 2019) (concluding that requests for a list of Facebook messages, timelines, and friends list was "precisely the kind of disproportionate and irrelevant discovery that Rule 26 is intended to preclude.").

The overwhelming majority of Plaintiffs' Activity Logs have no bearing on the case. What posts Plaintiffs liked and what events they attended, along with posts and photos revealing their day-to-day life, opinions, and relationships, are irrelevant to whether Defendants sent Plaintiffs' video rental and viewing data to Facebook without Plaintiffs' consent. Nor are the unproduced portions of Plaintiffs' Facebook Activity Logs likely to lead to admissible evidence. As such, the Court should deny Zuffa's motion to compel production of these documents.

**B. Plaintiff Has Sufficiently Responded to the Remaining Requests**

***1. Plaintiffs Have No Documents to Produce Related to RFPs 11 and 24***

Request for Production No. 11 seeks documents sufficient to identify Plaintiffs' Facebook and Instagram accounts. RFP No. 24 asks for documents sufficient to show Plaintiffs' "Profile Information" for those accounts. For RFP No. 11, Plaintiffs referred Zuffa to their publicly available accounts, identified in response to Interrogatory No. 6. For RFP 24, Plaintiffs stated they would not produce documents.

The Court should deny Zuffa's motion to compel production of documents in response to these RFPs. With respect to RFP 11, the documents are redundant with the account information provided in response to Interrogatory No. 6 and are publicly available. As for the "Profile Information" requested by RFP No. 24, Zuffa has not articulated what those documents could be, and Plaintiffs have no idea what this RFP calls for beyond Plaintiffs' publicly available profiles and the other documents Plaintiffs have already produced documents corroborating their Facebook accounts and settings. (In the form of Off-Facebook Activity for both Plaintiffs, plus

screenshots of Graham's current Facebook ad personalization and Off-Facebook Activity settings.)

In support of its motion to compel Plaintiffs to produce the entirety of their Facebook Profiles, Zuffa also argues that it cannot conceive what privacy interest Plaintiffs have in their Facebook Profiles. (Mot. at 7.) But those portions of the Profiles that are not private must be in the public domain, which begs the question of why Zuffa cannot just go to the Facebook website to view them. It is also unclear how these documents are in Plaintiffs' "sole possession" as Zuffa argues (*id.* at 7-8), given that Facebook profiles are public.

More importantly, Zuffa fails to identify why it needs Plaintiffs' Facebook Profiles. Plaintiffs have already supplied their Facebook IDs, usernames, and Off-Facebook Activity Reports for UFC Fight Pass. Further, Plaintiffs obtained and produced the pixel data sent to Meta by Zuffa associated with the Plaintiffs' User IDs. Given this corroboration, the IDs and usernames Plaintiffs provided in their discovery responses are genuine, and Zuffa has identified no specific reason why more documents are necessary to corroborate information already provided. Accordingly, such requests are duplicative and unnecessary, or no such documents exist for production.

***2. Plaintiff Have Identified that They Had Facebook Accounts During the Class Period (Interrogatory No. 7)***

Zuffa's Interrogatory No. 7 seeks the dates Plaintiffs' Facebook accounts were created, deleted, or deactivated. This interrogatory is putatively aimed at identifying whether there were times during the proposed class period where Plaintiffs did not have Facebook accounts, which Zuffa argues would undermine Plaintiffs' theory of liability by identifying periods where they did not have Facebook User IDs, such that Zuffa could not have violated the Plaintiffs' privacy by transmitting those User IDs. Both plaintiffs responded that they had Facebook accounts prior to purchasing their Fight Pass subscriptions. They did not identify dates of deletion or deactivation because there are none. Plaintiffs' responses thus establish that they had active

Facebook accounts at all times relevant to their claims, which moots Defendants' arguments that they might not have had active Facebook User IDs at some point during the class period.

Zuffa's insistence on moving to compel a further response to their interrogatory is a waste of time and not proportional to the needs of this case, because all relevant information has already been provided. The *exact* date of creation of Plaintiffs' Facebook accounts is irrelevant, so long as it is prior to their UFC Fight Pass subscription; Defendants provide no explanation why it would matter if Plaintiffs' accounts were created in 2010 or 2017, so long as those Facebook accounts existed during the class period (which they did). Furthermore, Zuffa could confirm how long each Plaintiff's account has existed without Plaintiffs, because publicly-available Facebook posts confirm each Plaintiff was on Facebook during the class period.

This interrogatory is also mooted by Meta's production. The data in Meta's production confirms that Plaintiffs' had Facebook accounts during the proposed class period.

### ***3. Plaintiffs Responded to Rog No. 8 as Written***

Zuffa's motion to compel asks the Court to rewrite Zuffa's Interrogatory No. 8. That interrogatory asks each Plaintiff to "IDENTIFY and describe ANY action by ANY PERSON to change, modify, OR disable ANY account settings or account behavior relating to COOKIES, advertising, advertisement personalization, advertisement retargeting, cross-site tracking, tracking pixels, OR Off-Facebook Activity, AND the DATE such action was taken." Like Plaintiff Bloom, Plaintiffs Lindholm and Graham responded that they have no memory of taking any such actions, nor of anyone else taking any such actions. Despite this, Defendants demand that Plaintiffs not only do an investigation to make sure that no such changes occurred without their knowledge, but also that they respond to Interrogatory No. 8 with a detailed description of what that investigation uncovers.

Defendants' motion to compel further response to Interrogatory No. 8 is baseless. To the extent that Zuffa argues Plaintiff should have responded with their actual settings, see Mot. at 10 (arguing "Plaintiffs' response does not make clear whether Plaintiffs have the "Off-Facebook Activity" setting enabled or disabled"), Zuffa is trying to compel a response to an interrogatory it never served. Zuffa did not serve any interrogatory asking any Plaintiff to identify what their

current "Off-Facebook Activity" or Ad Personalization settings are, nor what those settings were in the past. ECF 77-3. Zuffa cannot compel discovery it did not ask for. See, e.g., *Lopez v. Florez*, No. 1:08-cv-01975-LJO-JLT, 2013 U.S. Dist. LEXIS 38099, at *7 (E.D. Cal. Mar. 19, 2013) (denying motion to compel requesting "expansion" of discovery request, noting that a party "cannot utilize [a] motion to compel to modify his original request for production").

In any event, as discussed below, Plaintiffs' document productions moot the need to supplement their responses to this Interrogatory.

### ***4. Plaintiffs Produced Documents Responsive to RFP Nos. 12-15***

Requests for Production Nos. 12-15 (and 23) seek records of Plaintiffs' Facebook accounts. RFP No. 12 seeks documents sufficient to establish Plaintiffs' privacy settings from "March 4, 2018 to the present." Requests 13 and 14 seek the same for "username settings" (No. 13) and "login settings" (No. 14), while No. 15 seeks "all Documents and COMMUNICATIONS RELATING TO PLAINTIFFS'DATA PRIVACY SOFTWARE OR AD SETTINGS, username settings, OR login settings" for their Facebook, Instagram, Whatsapp, or other Meta accounts. As with Interrogatory No. 8, Defendants' putative basis for seeking this information is the hypothetical possibility that Plaintiffs blocked Facebook's tracking of their viewing habits by (1) turning off "Off-Facebook tracking" or Facebook ad personalization, (2) logging out of their Facebook accounts, or (3) installing third party privacy software.

Even though Plaintiffs had no responsive documents in their possession, they went out of their way to obtain *from Facebook* their Off-Facebook Activity Logs and produced those documents to Zuffa. Those *Facebook* documents corroborate that Plaintiffs' Off-Facebook Activity was tracked by Zuffa and Meta. While Plaintiffs could produce screenshots of additional pages showing their *current* Off-Facebook and Ad Personalization settings (but not the past settings, as Plaintiffs simply do not possess such documents), those documents would be redundant with the evidence already produced.

Simply put, the burden of collecting and producing additional screenshots of current Facebook settings outweighs their utility in view of data produced by Meta. Meta produced data

transmitted to it by Zuffa (via the Meta pixels registered to Zuffa). That data contains video titles viewed or requested by each Plaintiff, associated with the User ID for each Plaintiff. This is true even for Plaintiff Graham, whose *current* computer has two Ad Blocker extensions installed in Chrome (although not turned on). Patek Decl., ¶ 8. Thus, irrespective of what each Plaintiff's individual Facebook account settings were, there is conclusive evidence that Zuffa transmitted their personally identifiable video rental information to Meta. Forcing Plaintiffs to search for documents corroborating their testimony they never blocked Facebook from tracking them is a waste of time and effort in view of Meta's records establishing that Facebook did track their video rentals using the data Zuffa sent to Meta.

### *5. Plaintiffs Have Produced Information Sufficient to Identify their Devices*

Plaintiffs have responded in good faith to Interrogatories Nos. 1 & 2, identifying the devices each used to access the UFC Fight Pass Website. Despite this, Defendant moves to compel based on imagined deficiencies.

Interrogatory No. 1 instructed Plaintiffs Graham and Lindholm to "IDENTIFY AND describe, by manufacturer, model number, operating system, Internet browsing system, AND current LOCATION all Devices that [] used to access UFC Fight Pass at any time from March 4, 2018 to the present." Plaintiffs Graham and Lindholm responded, identifying the devices each used by Manufacturer and browser. Zuffa admits that Plaintiffs Graham and Lindholm identified the devices, but argues that they failed to identify the exact operating system used. To be clear, the type of operating system (*e.g.,* Apple vs. Windows) used by Plaintiffs' devices is apparent from the type of device used, and, despite multiple meet and confers on these issues, Zuffa has provided Plaintiffs with *no* explanation as to why or how the exact operating system versions used will affect the outcome of this case.

Zuffa argues that Plaintiffs must concede the relevance of this evidence simply because Plaintiffs acknowledged that Zuffa argues it is relevant. That is circular reasoning. While Plaintiffs are certainly aware of Zuffa's focus on this issue, that does not establish that Zuffa is correct about the importance of operating system, much less the exact version of a given

operating system. (Further, Plaintiffs produced operating system information; the Meta pixel data produced to Zuffa includes both the OS involved and its exact version. Patek Decl., ¶ 9.)

Interrogatory No. 2 asks Plaintiffs to identify whether the device was "used to visit OR load ANY web page on the UFC Fight Pass with video content" during the relevant time period. Both Graham and Lindholm responded that they "accessed video content available through the UFC Fight Pass platform with each of the devices identified in response to Interrogatory No. 1." For reasons that are still unclear, Zuffa fixates on the use of the word "platform" rather than "website" to argue that Plaintiffs Graham and Lindholm have not identified whether they accessed videos on the UFC Fight Pass website. But Plaintiffs informed Zuffa that "the platform includes the fightpass.com website." ECF 57-6. In other words, Plaintiffs have already informed Zuffa that the responses were intended to convey the information sought. Again, a motion to compel an amended response to change "platform" to "website" is unjustified.

***6. Rogs 4 & 5 and RFP 6, 7, 8, 9, 10***

Interrogatories Nos. 4 and 5 ask Plaintiffs to "IDENTIFY and describe ANY action by ANY PERSON to ***change***" the device and browser settings relating to "blocking of COOKIES" (Rog 4) and "advertisement personalization, advertisement retargeting, cross-site tracking, OR tracking pixels" (Rog 5), respectively. RFPs 6-9 ask Plaintiffs to produce documents "sufficient to show" Plaintiffs' privacy settings and software on the devices and browsers they used to access the Fight Pass website, as well as related documents and communications. RFP 10 then seeks "ALL DOCUMENTS AND COMMUNICATIONS" relating to those settings.

There is no need to compel Plaintiffs to supplement their responses to these discovery requests. As to Interrogatory Nos. 4 and 5, Zuffa admits that Plaintiffs responded to the interrogatories by stating that each had no memory of ***changing*** any privacy, cookie, or ad settings on their devices. Zuffa is dissatisfied with the phrasing of the answer, and demands that Plaintiffs provide additional information not requested by the interrogatories themselves. *See* Mot. at 13–14. But Plaintiffs' answers adequately provide the information requested—Plaintiffs' knowledge of changes to device and web browsers or their settings that would block, modify, or delete cookies or relate to personalization, advertisement retargeting, cross-site tracking, or

tracking pixels during the relevant time period. The interrogatories do not ask what the actual settings are, so Zuffa has no basis for compelling a written response with that information.

In any event, Plaintiffs produced screenshots of their computer and browser settings, thereby effectively responding to the interrogatories and responding to RFPs Nos. 6-10. Lindholm produced his browser cookie settings and extensions prior to Zuffa's motion. Patek Decl., ¶ 4-5. Graham produced screenshots of his browser settings and extensions several weeks later. *Id.*

With respect to Lindholm, and Zuffa's allegation that he produced only a "partial" screenshot of his settings, Plaintiffs simply have no idea what further information Zuffa wants. The screenshot produced is "sufficient to show" the relevant cookies settings, in that it is clear that Lindholm's computer is set to allow cookies (unless the user is in "incognito" mode). Lindholm produced a similar screenshot for his Chrome extensions, showing the absence of any ad blockers. Zuffa notably fails to identify in its motion in what specific way the produced screenshot is insufficient to show Lindholm's relevant cookie settings, or what further information was omitted that would miraculously prove Plaintiff Lindholm had blocked cookies and ad tracking during the class period.

In any event, much of this information is likely to be superfluous. Zuffa's primary basis for seeking these documents was its assertion that cookie and ad blocker software installed on user's computers would prevent transmission of data by Zuffa to Meta. But Meta produced records corroborating that it received titles of UFC Fight Pass videos that each Plaintiff accessed, despite wide variations in devices (Macs and PCs), operating system (Mac OS, Windows, Android Mobile) and browsers (Chrome desktop and mobile, Firefox desktop). Patek Decl., ¶ 10. At the same time, Graham's production shows that two ad blocker extensions (both set "off") are present in his Chrome browser on his computer. *Id.* Whether or not those ad blockers were ever "on," Meta received the titles of videos he watched on roughly a dozen occasions from April to September 2022. *Id.* Thus, despite Zuffa's assertions, ad blockers may not prevent the alleged data transmissions. This is unsurprising given that Meta's pixel and Conversion API were specifically designed to circumvent ad blocking. Thus, *irrespective of the specifics of each*

*Plaintiffs' device and software settings*, there is evidence that Zuffa transmitted Plaintiffs' information to Meta. Accordingly, further discovery from Plaintiffs on this issue is a waste of time and money, and not proportional to the needs of the case.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to compel supplementation of discovery responses from Plaintiffs Graham and Lindholm should be denied.

Dated: September 5, 2023


**GUTRIDE SAFIER LLP**

*s/ Anthony J. Patek*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*