**MARKMAN LAW**
DAVID MARKMAN (Nevada Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile: 702-843-6010

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (*admitted pro hac vice*)
seth@gutridesafier.com
MARIE A. MCCRARY (*admitted pro hac vice*)
marie@gutridesafier.com
HAYLEY REYNOLDS (*admitted pro hac vice*)
hayley@gutridesafier.com
ANTHONY J. PATEK (*admitted pro hac vice*)
anthony@gutridesafier.com
KALI BACKER (*admitted pro hac vice*)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| EVERETT BLOOM, JACK GRAHAM, AND DAVE LINDHOLM on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC; ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC.<br>Defendant. | Case No. 2:22-cv-00412-RFB-BNW<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL** |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  ARGUMENT .................................................................................................... 2

    A.   REDACTED ........................................................................... 2

    B.   Zuffa's "Class Definition" Argument Is Meritless. .................................... 3

    C.   Plaintiffs Satisfy Numerosity. ..................................................................... 4

    D.   Plaintiffs Satisfy Commonality and Predominance. ................................... 5

        i.   It is Undisputed That Common Questions Predominate Everything But The Sharing of Facebook IDs. ..................................... 5

        ii.  Common Evidence Also Predominates on Sharing Facebook IDs. 6

    E.   Class Treatment is Superior to Numerous Individual Suits ...................... 10

III. The Proposed California Class Should Be Certified............................................ 11

    A.   Plaintiff Bloom Has Standing. .................................................................. 11

    B.   Zuffa Does Not Raise Any Arguments as to the Cal. Civ. Code § 1799.3 Claim. ......................................................................................................... 11

    C.   Zuffa's Invasion of Privacy and UCL Arguments are Meritless. ............. 12

        i.   *Common Questions Predominate Over Individualized Issues*...... 12

        ii.  *Classwide Damages Are Available for the Invasion of Privacy Claim*............................................................................................. 13

    D.   Plaintiffs Have Standing for an Injunction Under Rule 23(b)(2). ............ 13

    E.   Plaintiffs May Reply Using All Evidence. ............................................... 14

IV.  Zuffa's Waiver Arguments Are Baseless. ........................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) .......................................... 4

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................................ 4

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................................. 3, 8, 10, 11

*Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833 (9th Cir. 2017) ............................. 13

*Carmen Pena v. Taylor Farms Pac.*, No. 2:13-cv-01282, 2015 U.S. Dist. LEXIS 181380 (E.D. Cal. Mar. 30, 2015) .......................................................................................... 15

*Castillo v. Bank of Am., NA*, 980 F.3d 723 (9th Cir. 2020) ........................................................... 5

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) .............................................. 13

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) .................................................... 11, 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................ 5

*Hill v. Natl. Collegiate Athletic Assn.*, 7 Cal.4th 1 (1994) .......................................................... 12

*In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .............................. 12

*In re Facebook Privacy Litig.*, No. 10-cv-02389-RMW, 2016 U.S. Dist. LEXIS 119293 (N.D. Cal. June 28, 2016) .......................................................................................... 7, 8

*In re HiEnergy Techs., Inc. Sec. Litig.*, No. 8:04-CV-01226 DOC (JTLx), 2006 U.S. Dist. LEXIS 99265 (C.D. Cal. Sept. 25, 2006) .................................................................. 5

*In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 U.S. Dist. LEXIS 83661 (N.D. Cal. June 16, 2014) .................................................................................................. 7, 8, 9

*In re Pfa Ins. Mktg. Litig.*, 2021 U.S. Dist. LEXIS 244526 (N.D. Cal. 2021) ............................ 13

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) .................................................. 12

*Melgar v. CSK Auto, Inc.*, 681 F. App'x 605 (9th Cir. 2017) ....................................................... 4

*Miles v. Kirkland's Stores Inc.*, No. 22-55522, 2024 U.S. App. LEXIS 463 (9th Cir. Jan. 8, 2024) ............................................................................................................... 9

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ..................................................................................................... 4, 5, 10

*Opperman v. Path, Inc.*, 2016 U.S. Dist. LEXIS 92403 (N.D. Cal. July 15, 2016) .................... 13

*Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996) ....................................................................... 14

*Raffin v. Medicredit, Inc.*, 2017 U.S. Dist. LEXIS 5311 (C.D. Cal. 2017) ................................. 14

*Rodriguez, et al. v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS

1290 (N.D. Cal. Jan. 3, 2024) .......................................................................................... 12, 13

*Romero v. Securus Techs.*, 331 F.R.D. 391 (S.D. Cal. 2018) ...................................................... 14

*Saling v. Royal*, No. 2:13-cv-1039-TLN-EFB PS, 2015 U.S. Dist. LEXIS 120087
   (E.D. Cal. Sep. 9, 2015) ........................................................................................................ 4

*Smith v. Microsoft Corp.*, No. 11-CV-1958, 2013 U.S. Dist. LEXIS 173204 (S.D.
   Cal. 2013) ........................................................................................................................... 14

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ...................................... 5

*Terrell v. Contra Costa County*, 232 Fed. App'x. 626 (9th Cir. 2017) ....................................... 14

*Tyus v. Wendy's of Las Vegas, Inc.*, No. 2:14-cv-00729-GMN-VCF, 2017 U.S.
   Dist. LEXIS 110385 (D. Nev. July 17, 2017) ....................................................................... 4

*Van v. LLR, Inc.*, 61 F.4th 1053 (9th Cir. 2023) ....................................................................... 5, 8

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ............................... 10

**STATUTES**

18 U.S.C. § 2710(b)(2)(B) ........................................................................................................ 5, 6

Cal. Civ. Code § 1799.3 ........................................................................................................ 12, 13

**I.   INTRODUCTION**

Zuffa does not dispute that common evidence will decide almost all factual and legal questions in this case. These include (i) whether Zuffa used a Pixel distributed by Meta Platforms, Inc. ("Meta") for all UFC Fight Pass video pages during the relevant time period, (ii) whether the Pixels registered to Zuffa were configured to transmit Facebook IDs and video URLs to Meta if possible, (iii) whether those data constitute personally identifiable information under the VPPA, (iv) whether Meta actually received video URLs via Zuffa's Pixels, (v) whether Zuffa complied with the VPPA's consent and notice requirements, and (vi) statutory damages for class members' VPPA and Cal. Civil Code ¶ 1799.3 claims. These common questions predominate because they will resolve most elements of the class's claims for REDACTED Fight Pass subscribers, making class treatment a far more efficient and cost-effective method than thousands of individual trials. For that reason alone, the Court should certify a class.

Zuffa's Opposition hinges primarily on one objection: that determining whether subscriber's Facebook IDs were transmitted depends on "evidence of each and every proposed class member's Facebook and web browser settings," as well as other individualized computer settings, making class treatment impossible. Zuffa's contentions are overblown. REDACTED, *despite* all the theoretical hurdles Zuffa raised. In other words, the evidence establishes that those methods are ineffective at overcoming Zuffa's default rule of sharing with Meta. This, in combination with other evidence, also shows that REDACTED This common evidence moots and predominates over all individual issues, making class certification proper. Accordingly, the Court should grant Plaintiff's motion for class certification with the proposed definitions. Alternatively, if the Court wishes to narrow the proposed class, it can limit the class to Zuffa subscribers (with Facebook accounts, as currently proposed) who watched UFC Fight Pass videos using the same web browser they used to visit Facebook. This would resolve almost all of Zuffa's objections regarding overbreadth of the class, and all claims could then be verified using Pixel data.

## II. ARGUMENT

### A. REDACTED.

Plaintiffs received Pixel data from Meta after filing their Motion for Class Certification. Contrary to Zuffa's mischaracterization, REDACTED For Graham and Lindholm, REDACTED Patek Decl., ¶ 3 and Ex. 25. For Bloom, REDACTED *Id.* While UFC.com is a distinct website from ufcfightpass.com, REDACTED. *Id.*, Ex. 31, ¶ 61; Herold Decl., ¶¶ 5-12 & 47-61. Thus, the evidence that REDACTED is proof that ufcfightpass.com also did so. Patek Decl., ¶ 3. Because REDACTED

REDACTED A reasonable juror could conclude that Zuffa disclosed Bloom's ufcfightpass.com video Page Views prior to August 2021. Zuffa's contrary assertions are specious. Common evidence REDACTED establishes REDACTED

REDACTED This moots the bulk of Zuffa's putative individualized issues. REDACTED

### B. Zuffa's "Class Definition" Argument Is Meritless.

In *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126-32 (9th Cir. 2017), the Ninth Circuit held that "Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." Zuffa admits this (Opp. at 20), yet presents the same argument camouflaged as a "definiteness" requirement. *Id*. at 8 (arguing Plaintiffs failed to identify a "definite" class because, "there is no way to determine on a class-wide basis whether any putative class member's Facebook ID was 'actually sent' to Meta"). Zuffa fails to cite a single case applying its fictitious "definiteness" requirement.

Although Zuffa is wrong on the merits of the "definiteness" issue, Plaintiffs concede that that providing notice to class members identified by reference to Meta's Pixel data requires access to Meta's entire database for Zuffa's Pixel IDs, which Plaintiffs have not yet obtained. This is not a reason to deny class certification, however, since providing notice to all Fight Pass subscribers for the class period will provide notice to all class members. If the Court wishes to address Zuffa's overbreadth objection by excluding devices unlikely to have a c_user cookie, it can do so (e.g., Fight Pass subscribers who "requested or obtained on demand video content *using a computer or smartphone*," or "*using a Chrome browser also used to access Facebook*"). This information is accessible enough for putative class members to self-identify, and the claims administrator can later use Pixel data and Zuffa's records to corroborate valid claims and weed out baseless ones.

However, Zuffa's objection that the definition is overbroad because it includes subscribers "who do not have Facebook accounts" is baseless. The definition is already limited to Fight Pass subscribers who viewed videos "with respect to whom Meta received **their [Facebook] ID** and the URL of the webpage hosting video content." The proposed definition expressly limits the Class to people with Facebook IDs (i.e., those who have a Facebook ID for Meta to receive). Even if users cannot tell whether Meta actually received their Facebook IDs, they certainly know whether they had a Facebook account, and will thus be able refrain from submitting claims if they did not.

Zuffa invites the Court to rule on the merits by contending that REDACTED But the Ninth Circuit prohibits

resolving such merits issues at certification. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 667 (9th Cir. 2022) (en banc); *Tyus v. Wendy's of Las Vegas, Inc.*, No. 2:14-cv-00729-GMN-VCF, 2017 U.S. Dist. LEXIS 110385, at *15 (D. Nev. July 17, 2017) ("The inquiry is not whether the class will prevail on the merits of their claims.") (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 464–66 (2013)). Besides, Zuffa's only support for its position REDACTED is the self-serving testimony of its expert, who has never worked for Meta and REDACTED Patek Decl., Ex. 27 (Schnell Tr.) at 30:17-31:18. Furthermore, even if the Pixel data *disproved* disclosure of user's Facebook IDs—as Zuffa incorrectly argues—it would still be common, evidence supporting certification. *See Olean Wholesale*, 31 F.4th at 666-67 (evidence common to the class supports certification whether it supports or rebuts merits of claim).

Zuffa also asserts incorrectly that Plaintiffs propose an improper fail-safe class.[1] "A fail-safe class is commonly defined as limiting membership to plaintiffs described by their theory of liability in the class definition such that the definition presupposes success on the merits." *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017). The Classes here do "not presuppose [their] success, because the liability standard… require[s] class members to prove more facts . . . than are referenced in the class definition." *Id*. Mere receipt of Pixel data by Meta fails to prove other elements required to prevail on Plaintiffs' VPPA claims, such as scienter and failure to obtain consent in compliance with 18 U.S.C. § 2710(b)(2)(B).[2] In short, being within the proposed class does not establish success on the merits.

### C. Plaintiffs Satisfy Numerosity.

"Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *In re HiEnergy Techs.,*

---

[1] If necessary, the Court has discretion to modify the class definition. *Armstrong v. Davis*, 275 F.3d 849, 872 (9th Cir. 2001) ("Where appropriate, the district court may redefine the class").

[2] Zuffa incorrectly asserts the California claims (excluding UCL) are subject to a one year statute of limitations; the limitations period for invasion of privacy and Cal. Civ. Code § 1799.3 claims is two years. *See Saling v. Royal*, No. 2:13-cv-1039-TLN-EFB PS, 2015 U.S. Dist. LEXIS 120087, at *7 (E.D. Cal. Sep. 9, 2015). Subclasses can address any differences in timespan.

1  *Inc. Sec. Litig.*, No. 8:04-CV-01226 DOC (JTLx), 2006 U.S. Dist. LEXIS 99265, at *7 (C.D. Cal. Sept. 25, 2006). REDACTED REDACTED. *See* Patek Decl. (ECF 54), Ex. 3 at 8, Exs. 18-19, Ex. 10 at 162:19–163:21, 165:19–166:12; Ex. 19. Even if 90% of them blocked all cookies—which is doubtful—there still would be REDACTED which is more than sufficient to establish numerosity. *See Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) (a class of "at least forty members presumptively satisfies the numerosity requirement").

### D. Plaintiffs Satisfy Commonality and Predominance.

#### i. It is Undisputed That Common Questions Predominate Everything But The Sharing of Facebook IDs.

Class certification is appropriate for this case because multiple questions of law and fact "can be determined in one stroke." *Olean Wholesale*, 31 F.4th at 664; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (class treatment appropriate where "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication"). Indeed, predominance does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to classwide proof, so long as one or more common questions predominate." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020); *see Van v. LLR, Inc.*, 61 F.4th 1053, 1066-67 (9th Cir. 2023) (plaintiff need not rebut every individualized issue); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (Predominance requires only that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication"). Here, it is undisputed that many significant aspects of the case are entirely common, including whether: (1) Zuffa is a "video tape service provider" under the VPPA, (2) Fight Pass subscribers are "consumers" under the VPPA, (3) the Facebook ID qualifies as personally identifiable information under the VPPA, (4) Zuffa's disclosures were knowing, and (5) Zuffa obtained consent under 18 U.S.C. 2710(b)(2)(B). Zuffa does not submit a single piece of evidence to rebut predominance as to any of these questions. This multitude of common, case-driving questions is sufficient to certify the class in and of itself.

### ii. Common Evidence Also Predominates on Sharing Facebook IDs.

Although Zuffa recites a "laundry list" of putative individual facts that it claims would have prevented the transmission of data—such as the use of ad-blockers, non-Chrome browsers, cookie clearing, and browser and Facebook settings—REDACTED and even the question of transmission can thus be determined through common evidence.

REDACTED

Thus, despite multiple individualized factors that Zuffa claims should have blocked all third party cookies, REDACTED. If the common evidence proves or corroborates at least one disclosure, it predominates on that fact. And the larger the number of videos viewed, the higher the likelihood that Zuffa transmitted at least one to Meta. Even if an anti-tracking measure blocks 90% of cookie transmissions, by the time a user watches 100 videos, the likelihood that at

least one cookie will be transmitted is over 99%. Patek Reply Decl. at ¶ 7. None of the measures that Zuffa identified approach an adoption rate that blocks 90% of cookies. *See, e.g.*, Rabbani Decl., Ex. ZZ (noting use of Firefox with Mozilla Facebook Container add-on to block tracking resulted in "much less Off-Facebook Activity", not "no activity.")

And since REDACTED

That REDACTED

is immaterial. Plaintiffs can supply other common evidence REDACTED

.REDACTED  If that common evidence establishes a high likelihood of Facebook ID transmission, reasonable jurors—many of whom are familiar with Facebook and the likelihood of using non-default settings, logging out, or clearing cookies—could conclude Zuffa transmitted Facebook IDs and find in Plaintiffs' favor.

Zuffa points to two decisions—*In re Hulu* and *In re Facebook*—and argues that their denials of class certification mandate the same outcome here. Opp. at 16-17. Zuffa is wrong. In *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 U.S. Dist. LEXIS 83661, at *74-75 (N.D. Cal. June 16, 2014), the Court denied certification because it "could not conclude on th[e] record" before it whether common evidence would predominate over individual questions regarding "remaining logged into Facebook and clearing and blocking cookies." Here, in contrast, REDACTED, which establishes predominance on this question. *In re Facebook Privacy Litig.*, No. 10-cv-02389-RMW, 2016 U.S. Dist. LEXIS 119293, at *33 (N.D. Cal. June 28, 2016), is even more inapposite.  In that case, the plaintiffs were trying to prove disclosure of PII *by* Facebook using data disclosed *to* Facebook. Since Facebook altered the data before sending it to third parties, the data Facebook received could not predominate the issue what

Facebook sent. This case presents no similar issue.[3]

Zuffa also assumes incorrectly that anyone who engaged in any cookie blocking even once prevented the transmission of data to Meta for the *entirety* of the class period. But this is mere speculation, and the Ninth Circuit does "not permit a defendant to support its invocation of individualized issues with mere speculation." *Van*, 61 F.4th at 1068. As anyone who has used the internet knows, behaviors can change over time. A user may use Safari one day and Chrome the next, like Mr. Bloom; a user also may turn an ad-blocker on and off, as did Mr. Graham; or browse in Incognito mode rarely, as did all the Plaintiffs. But it does not follow that engaging in any of these behaviors once (or even multiple times) bars recovery. REDACTED.

The limited evidence Zuffa submits is patently deficient. For example:

- **Types of Web Browsers** – The articles Zuffa attaches about the general market share of Safari and Firefox say nothing about the percentage of subscribers who *exclusively* used those browsers *for the entirety of the class period*. Further, as noted above, REDACTED, proving browser protections are not 100% reliable.

- **Browser Settings and Extensions** – Zuffa cites a Pew Research Center article (Ex. AA) to claim that "70% of social media users said they turned off cookies or website tracking"; but the survey included cookie banner pop-ups that the Fight Pass Website never had. A large 2020 survey showed 7% of people use cookie blockers, with a mere 0.5% doing so on mobile devices. Patek Decl., Ex. 31, ¶ 42.

- **Cookie Clearing** – Zuffa cites double hearsay claiming that 36% of web users "regularly" delete cookies to surmise that some subscribers may have cleared cookies on Facebook before visiting Fight Pass. But "regular" could be as little as once per year, and another study reports 70% of people "never" or "occasionally" delete cookies. *Id.* Only subscribers who cleared cookies *every* time before they accessed Fight Pass would be fully protected. The Plaintiffs' experiences bear this out; REDACTED *Compare* Patek Reply

---

[3] Both cases are also suspect because they denied certification on the administrative feasibility grounds that the Ninth Circuit later rejected in *Briseno*. *Compare In re Hulu*, 2014 U.S. Dist. LEXIS 83661, at *50 and *75 (lack of ascertainability precluded a finding of predominance ); *In re Facebook*, 2016 U.S. Dist. LEXIS 119293, at *33 (denying certification because "Plaintiffs do not even suggest that class members could self-identify with respect to Facebook's internal mechanisms."), with *Briseno*, 844 F.3d at 1123 (holding the 9th Circuit "never interpreted Rule 23 to require such a showing.").

Decl., ¶ 3, with *id.*, Ex. 28 (Bloom Tr.) at 170:14-16; Ex. 29 (Lindholm Tr.) at 156:4–7; Ex. 30 (Graham Tr.) at 156:8–11.

- ***Disabling "Off-Facebook Activity" and Targeted Ads*** – Zuffa misrepresents these settings as third party cookie blockers. But Zuffa's "evidence" states that Meta still receives pixel data. *See* Rabbani Decl., Ex. XX at 569; Ex. YY at 575. REDACTED This contradicts Schnell's testimony that REDACTED *See* Patek Decl., Ex. 27 at 91:20-92:9 & 96:18-97:3. REDACTED

- ***Shared Web Browsers*** – Available data suggests that most people have their own computing devices. Patek Decl., ¶ 8 (average household in 2020-2022 had 10 to 25 computing devices). *In re Hulu* rejected an essentially identical argument, holding that "allowing someone else to use one's [account] does not mean that a [] user cannot complain about [the defendant's] disclosure of the user's PII. *In re Hulu*, 2014 U.S. Dist. LEXIS 83661, at *72.

Zuffa's argument suffers from the dearth of supporting evidence (and much contradictory data, see Ex. 31 at ¶¶ 30-43 (expert Herold, citing evidence that the issues Zuffa raises range from uncommon to rare). Zuffa offers a single paragraph in the Schnell report that simply lists all the individualized questions without any evidence or knowledge of their frequency. Rabbani Decl., Ex. A, ¶ 45; Patek Decl., Ex. 27 (Schnell Tr.) at 73:14-77:2, 81:9-82:3, 90:18-91:18. Then Zuffa's brief separately identifies various internet articles that Schnell did not consider. (Opp. at 22.) None of the documents even attempt to establish that each of these measures were in effect for the entirety of the class period. Indeed, some documents cited are printouts of settings in 2023. *See* Rabbani Decl., Ex. PP, QQ, RR, VV, WW. This alone defeats Zuffa's claims of individualized issues. *See Miles v. Kirkland's Stores Inc.*, No. 22-55522, 2024 U.S. App. LEXIS 463, at *10-12 (9th Cir. Jan. 8, 2024) (rejecting evidence that failed to cover "the entire class period").

In contrast, Ms. Herold presents ample evidence that the individual issues Mr. Schnell identifies infrequently at best. Patek Decl., Ex. 31, ¶¶ 30-43, 78. Specifically, she testifies that deleting cookies, using incognito mode, hitting the "logout" button on Facebook, and consistent use of cookie blockers are all infrequent practices. *Id.*. Indeed, many people complain about having to logout and then log back into their accounts, choosing instead to "opt in" to cookies to access content even if they do have a cookie blocker. *Id.* at ¶ 42 (noting 2020 study that reported "To

many [internet users], the only reasonable option is to provide consent while opting in for an ad-blocker extension or any other tracking blocker in their browser. Since cookie consent prompts always stand in the way of the content, they are often dismissed almost instinctively").

To be clear, these are merit issues that should not be resolved in this motion.[4] But if the Court decides to address them, Zuffa suggests at most that some subscribers *may* have engaged in certain behaviors that *may* have prevented the transmission their data. In contrast, REDACTED

. And even if a few individuals were diligent enough to prevent some transmissions, the Ninth Circuit has already "reject[ed] the . . . argument that Rule 23 does not permit the certification of a class that potentially includes more than a *de minimis* number of uninjured class members." *Olean*, 31 F. 4th at 669. And here, since the default settings all but guarantee transmission of data, as discussed above, any potentially uninjured subscribers fall well below that level.

### E. Class Treatment is Superior to Numerous Individual Suits

Superiority "calls for a comparative assessment of the costs and benefits of class adjudication, including the availability of 'other methods' for resolving the controversy." *Briseno*, 844 F. 3d at 1128. Here, with minimum statutory damages of $2,500, each class member's "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).[5] Furthermore, class certification will allow classwide resolution of almost all elements of the claims, reducing

---

[4] The same is true of Zuffa's criticisms of Ms. Herold, which are distortions and lies; Zuffa accused Ms. Herold of taking positions she explicitly rejected, and took numerous statements out of context. *See* Ex. 31, ¶¶ 1-85. REDACTED . *Id*., ¶¶ 50-61, 67, 69, and 77.

[5] The Ninth Circuit rejected the notion that the existence of large damages defeats superiority when "neither the statutory language nor legislative history indicates that the legislature intended to place a cap on statutory damages." *Patel v. Facebook, Inc*., 932 F.3d 1264, 1276 (9th Cir. 2019). Zuffa does not point to anything such an intent. The case Zuffa cites, *Wakefield v. ViSalus, Inc*., 51 F.4th 1109 (9th Cir. 2022) reviewed a verdict and did not alter *Patel*'s holding.

burdens on all parties and the Courts. Despite this, Zuffa repeats the same administrative feasibility arguments it raised as to "definiteness" and predominance to argue Plaintiffs have failed to prove class resolution is superior. These arguments fail for the same reasons discussed above under those topics.

**III.    The Proposed California Class Should Be Certified.**

    **A.  Plaintiff Bloom Has Standing.**

Zuffa challenges Plaintiff Bloom's standing by contending that REDACTED Opp. at 21. As discussed above in Section II.A, this assertion is misleading, because REDACTED Zuffa also omits the highly relevant facts that REDACTED . Patek Decl., Ex. 1. Plaintiff Bloom, therefore, has standing and his claims are typical as to the California class members. *Briseno*, 844 F.3d at 1131. Holding otherwise would be an improper grant of summary judgment. See pp. 4-5, *supra*.

    **B.  Zuffa Does Not Raise Any Arguments as to the Cal. Civ. Code § 1799.3 Claim.**

Zuffa assumes its arguments as to the VPPA claim apply with equal force as to the Cal. Civ. Code § 1799.3 claim. Those contentions fail for the reasons described above. Additionally, Zuffa fails to address the statutes' different language. *Compare Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984-5 (9th Cir. 2017) (interpreting "personally identifiable information" within VPPA), *with* Cal. Civ. Code § 1799.3 (prohibiting disclosure of "any personal information *or* the contents of any record . . . prepared or maintained by" the video service"). Thus, Zuffa incorrectly assumes that § 1799.3 is limited to the c_user cookie. Given the absence of any analysis to support this assumption, and the common evidence REDACTED the Court must certify the

California class as to the Cal. Civ. Code § 1799.3 claim.

### C. Zuffa's Invasion of Privacy and UCL Arguments are Meritless.

#### i. *Common Questions Predominate Over Individualized Issues.*

Zuffa next argues that the invasion of privacy claim turns on individualized questions regarding each class member's expectation of privacy in UFC Fight Pass video titles. Opp. at 21. Zuffa misstates the law. "California law does not require Plaintiffs to prove subjective expectations." *Rodriguez, et al. v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *15 (N.D. Cal. Jan. 3, 2024) (citing *Hill v. Natl. Collegiate Athletic Assn.*, 7 Cal.4th 1, 37 (1994)). Plaintiff Bloom need only show that his expectation to privacy was objectively reasonable, which the VPPA and Cal. Civ. Code § 1799.3 establish. Indeed, "legislative history and statutory text [can] demonstrate that Congress and the California legislature intended to protect [] historical privacy rights." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020); *see also Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 125 (2006) (collecting California statutes that codify privacy rights, including § 1799.3). Here, the VPPA "codifies a context-specific extension of the *substantive* right to privacy." *Eichenberger*, 876 F.3d at 983.[6] Accordingly, Congress's enactment of the VPPA establishes a class-wide expectation of privacy. *Cf. Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *15–19 (certifying invasion of privacy class where statute established "offensiveness," despite individual questions whether users maintained expectation of privacy).

The fact that Bloom did not disable "Off-Facebook Activity" is irrelevant, since it would not have blocked the disclosures. (*Supra*, pp. 9-11.) Even if it did, Bloom's lack of knowledge and spoliation concerns explain that fact. Patek Decl., Ex. 28 at 130:12-15; 161:13-20 (Bloom, testifying he never looked at Off-Facebook Activity setting prior to lawsuit).

Finally, Zuffa's argument that Plaintiff Bloom failed to establish materiality is irrelevant because the UCL unlawful and unfair prongs do not require such a showing. *See Bruton v.*

---

[6] Zuffa's reliance on *Hart v. TWC Prod. & Tech. LLC* is misplaced because the VPPA and Cal. Civ. Code § 1799.3 explicitly require Zuffa to obtain user consent before disclosing their video watch histories. *See Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *15–17 (distinguishing *Hart* and certifying invasion of privacy claim).

*Gerber Prods. Co.,* 2017 U.S. App. LEXIS 12833, at *6 (9th Cir. 2017) (unpublished) (holding that for UCL unlawful prong claims there is "no requirement that the public be likely to experience deception" when the underlying regulations include no such requirement); *In re Pfa Ins. Mktg. Litig.*, 2021 U.S. Dist. LEXIS 244526, at *47–48 (N.D. Cal. 2021) ("Defendants have not shown that exposure and reliance are elements . . . under the unlawful prong of the UCL that must be considered in the context of class certification.").

### ii. *Classwide Damages Are Available for the Invasion of Privacy Claim.*

Zuffa claims that "Plaintiff Bloom has failed to provide any methodology—reliable or otherwise—for calculating damages for his California Invasion of Privacy and UCL claims." Opp. at 22–23. Plaintiff Bloom and California Class members, however, are entitled, at minimum, to nominal damages as a result of Zuffa's invasion of privacy, which amount to one dollar per class member and, thus, do not require expert testimony. *See Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *24–25 (certifying class for nominal damages based on invasion of privacy); *Opperman v. Path, Inc.*, 2016 U.S. Dist. LEXIS 92403, at *50–51 (N.D. Cal. July 15, 2016) (same). Because "nominal damages may . . . be awarded" "where the amount of damages is uncertain," Plaintiff Bloom has adequately set forth a classwide damages model for the California Class. *Opperman*, 2016 U.S. Dist. LEXIS 92403, at *50–51. For the UCL claims, Plaintiffs seek only injunctive relief. Mot. at 24 n.9.

### D. Plaintiffs Have Standing for an Injunction Under Rule 23(b)(2).

Zuffa contends that Plaintiffs "lack standing to certify a Rule 23(b)(2) class because they are not currently Fight Pass subscribers and have not shown that they will suffer future harm." Opp. at 23. Zuffa's argument lacks merit. The Ninth Circuit has made clear that "a previously deceived consumer may have standing to seek an injunction." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). Here, Plaintiffs are still UFC fans and would likely purchase UFC Fight Pass again if they can be assured that their video watch history will be kept private.[7] Nor does Zuffa's putative removal of the Pixel bar certification of a Rule 23(b)(2) class.

---

[7] Patek Reply Decl., Ex. 30 at 53:6–9; Ex. 29 at 42:11–24; Ex. 28 at 50:6–16.

*Raffin v. Medicredit, Inc.*, 2017 U.S. Dist. LEXIS 5311, at *27 (C.D. Cal. 2017) (certifying class where defendant failed to meet "heavy burden" of proving voluntary cessation). Zuffa has presented no evidence that the wrongful conduct would never recur, and REDACTED )[8]; Ex. 25. As such, Plaintiffs have standing to represent a Rule 23(b)(2) class. *Id.*; *Romero v. Securus Techs.*, 331 F.R.D. 391, 413 (S.D. Cal. 2018) (certifying class and rejecting unsupported voluntary cessation argument).

### E. Plaintiffs May Reply Using All Evidence.

In an attempt to bar evidence contradicting it, Zuffa asserts that "Plaintiffs have waived any argument based on the contents of Meta's records and should be prohibited from attempting to do so for the first time on reply." Opp. at 23–24. A court may consider supplemental evidence submitted on reply if the evidence is not "new." *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Evidence is not "new" if it raises no new arguments or if it directly responds to arguments raised by the opposition. *See Terrell v. Contra Costa County*, 232 Fed. App'x. 626, 629 n. 2 (9th Cir. 2017). The Meta Pixel is thus not "new" evidence. The opening brief identified it as common evidence. Mot. at 15 ("Identifying Class members is a matter of simply cross-referencing Zuffa's documents with Meta's records showing the individuals from whom it received personally identifiable information."). Plaintiffs are allowed to reply to Zuffa's false assertions about what the evidence shows. Courts routinely consider evidence submitted in replies where appropriate. *See Smith v. Microsoft Corp.*, No. 11-CV-1958, 2013 U.S. Dist. LEXIS 173204, at *6 (S.D. Cal. 2013) ("Because Microsoft can respond to the new evidence during the class certification hearing . . . the Court may properly consider this evidence.").

### IV. Zuffa's Waiver Arguments Are Baseless.

Finally, Zuffa argues that "Plaintiffs have waived their right to certify a class against the Endeavor Defendants," despite there being an outstanding motion to dismiss pending before the

---

[8] Zuffa's continued transmission of Pixel data supports amending the class to include Zuffa subscribers past June 2022.

Court. Opp. at 24. Zuffa's own caselaw demonstrates this is not true. In *Carmen Pena v. Taylor Farms Pac.*, No. 2:13-cv-01282, 2015 U.S. Dist. LEXIS 181380, at *2–3 (E.D. Cal. Mar. 30, 2015), the court certified a class as to one defendant though pleadings against a second defendants were unsettled. *Id.* The court noted that "it did so without prejudice" to plaintiff certifying a class against the second defendant at a later date. *Id.* Here, the Court stayed discovery as to the Endeavor Defendants while it resolves their motion to dismiss, *see* ECF 93, and Plaintiffs have moved to certify a class against Zuffa pending that resolution. *See* ECF Nos. 60, 93. As such, Plaintiffs may move to certify a class against Endeavor Defendants at a later date. (N.B., Plaintiffs reserve the right to rebut the numerous spurious allegations in Zuffa's brief (e.g., Opp. at 6, alleging copyright violations) at a later date.)

Dated: January 29, 2024

**GUTRIDE SAFIER LLP**

*s/ Anthony J. Patek*
**GUTRIDE SAFIER LLP**
Seth Safier (admitted *pro hac vice*)
Marie A. McCrary (admitted *pro hac vice*)
Hayley Reynolds (admitted *pro hac vice*)
Anthony J. Patek (admitted *pro hac vice*)
Kali Backer (admitted *pro hac vice*)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

**MARKMAN LAW**
David Markman (Nevada Bar. No. 12440)
David@Markmanlawfirm.com
4484 S. Pecos Rd. Suite #130
Las Vegas NV 89121
Telephone: 702-843-5899
Facsimile: 702-843-6010

*Attorney for Plaintiffs*

# CERTIFICATE OF SERVICE

I, Anthony J. Patek, hereby certify that on the 29th day of January 2024, I caused to be served a true and correct copy of the following document(s), in redacted form, via ECF, the court's electronic filing system to the parties below:

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION;**

**DECLARATION OF ANTHONY J. PATEK IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, AND EXHIBITS 25-32 THERETO**

**CAMPBELL & WILLIAMS**
J. Colby Williams, Esq.
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
E-Mail: jcw@cwlawlv.com

**PAUL HASTINGS, LLP**
Susan K. Leader
Ali Rabbani
Stephanie V. Balitzer
1999 Avenue of the Stars, 27th Fl.
Century City, CA 90067
E-Mail: susanleader@paulhastings.com
E-Mail: alirabbani@paulhastings.com
E-Mail: stephaniebalitzer@paulhastings.com

I further certify that I served this document

I declare that the foregoing is true and correct and that this document was executed on January 29, 2024.

**GUTRIDE SAFIER LLP**

*/s/ Anthony Patek*
Anthony J. Patek, Esq.