**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS (Nev. Bar No. 5549)
jcw@cwlawlv.com
710 South 7th Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

**PAUL HASTINGS LLP**
SUSAN LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI R. RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
STEPHANIE BALITZER (*admitted pro hac vice*)
stephaniebalitzer@paulhastings.com
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

EVERETT BLOOM; JACK GRAHAM; and DAVE LINDHOLM, on behalf of themselves, and those similarly situated,

Plaintiffs,

v.

ZUFFA, LLC; ENDEAVOR STREAMING, LLC; and ENDEAVOR GROUP HOLDINGS, INC.,

Defendants.

CASE NO. 2:22-cv-00412-RFB-BNW

**DEFENDANT ZUFFA, LLC'S MOTION FOR LEAVE TO FILE SUR-REPLY, OR IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND THE REPLY EXPERT REPORT OF REBECCA HEROLD**

## TABLE OF CONTENTS

**Page**

I. Introduction ........ 1
II. Background ........ 3
III. Legal Standard ........ 4
IV. Argument ........ 5
A. Zuffa Should Be Permitted to File a Sur-Reply to Respond to New Matters Raised For the First Time in Plaintiffs' Reply Brief........ 5
B. In the Alternative, the Court Should Strike Plaintiffs' New Arguments, Evidence, and Expert Opinions........ 8
V. Conclusion ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Basu v. Massachusetts Mut. Life Ins. Co.*,
2022 WL 5237268 (D. Nev. Sept. 21, 2022) .......... 9

*Beckett v. Brinx Res., Ltd.*,
2013 WL 6058487 (D. Nev. Nov. 14, 2013) .......... 4, 6

*Columbia Grain, Inc. v. Hinrichs Trading, LLC*,
2015 WL 6675538 (D. Idaho Oct. 30, 2015) .......... 8

*Concerned Citizens for a Safe Cmty. v. Off. of Fed. Det. Tr.*,
2011 WL 5041195 (D. Nev. Oct. 24, 2011) .......... 6

*Docusign, Inc. v. Sertifi, Inc.*,
468 F. Supp. 2d 1305 (W.D. Wash. 2006) .......... 8, 9

*FNBN-RESCON I LLC v. Ritter*,
2014 WL 979930 (D. Nev. Mar. 12, 2014) .......... 4

*Forrest v. Costco Wholesale Corp.*,
2016 WL 5402200 (D. Nev. Sept. 26, 2016) .......... 2, 8

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008) .......... 7

*Graves v. Arpaio*,
623 F.3d 1043 (9th Cir. 2010) .......... 4

*Gutierrez v. 78th Judicial Dist. Court*,
2009 WL 1507415 (W.D. Mich. May 29, 2009) .......... 9

*Ioane v. Comm'r*,
2010 WL 2600689 (D. Nev. Mar. 11, 2010) .......... 6

*Oracle Am., Inc. v. Google Inc.*,
2011 WL 5572835 (N.D. Cal. Nov. 15, 2011) .......... 8

*Oracle USA, Inc. v. Rimini Street, Inc.*,
2016 WL 6208254 (D. Nev. Oct. 24, 2016) .......... 4

*Pacquiao v. Mayweather*,
2010 WL 3271961 (D. Nev. Aug. 13, 2010) .......... 8

*Roth v. BASF Corp.*,
2008 WL 2148803 (W.D. Wash. May 21, 2008) .......... 7

*Salazar v. Driver Provider Phoenix LLC*,
2022 WL 17824287 (D. Ariz. Dec. 8, 2022) .................... 8

*Townsend v. Monster Beverage Corp.*,
303 F. Supp. 3d 1010 (C.D. Cal. 2018) .................... 9

*United States v. Patterson*,
230 F.3d 1168 (9th Cir. 2000).................... 8

*US Bank, NA v. Recovery Servs. Nw., Inc.*,
2014 WL 1347376 (D. Nev. Apr. 4, 2014) .................... 6

*In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*,
2008 WL 3179315 (D. Nev. June 20, 2008) .................... 8

*Westenberger v. Albertson's LLC*,
2019 WL 5578484 (D. Nev. Oct. 29, 2019) .................... 2

## I. INTRODUCTION

Since the inception of this litigation nearly two years ago, Plaintiffs have contended that Zuffa's use of the Meta Pixel on the Fight Pass website caused the disclosure of Facebook IDs and video titles to Meta, by way of a specific "cookie" called the "c_user" cookie. Plaintiffs' Motion for Class Certification largely mirrors those contentions, and seeks to certify a class of Fight Pass subscribers whose Facebook IDs and video URLs were "actually sent" to Meta through the Meta Pixel on the Fight Pass Website. Mot. at 2, 14. But even though Plaintiffs' moving papers claimed that "Meta has records of the data transfers" that would confirm those proposed class members whose data was actually sent to Meta, Plaintiffs' Motion did not offer any actual evidence of those records. Instead, Plaintiffs waited until they filed their Reply Brief to introduce *for the first time* Meta's Pixel Data, deposition testimony from Meta's corporate representative, an expert report opining on Meta's Pixel Data and deposition testimony, and a brand-new, flawed theory of how this new evidence supports their Motion. Since Plaintiffs' conduct has deprived Zuffa of a full and fair opportunity to respond, Zuffa requests leave to file a sur-reply.

Plaintiffs' failure to raise these new arguments and evidence in their moving papers (or a supplement to their moving papers) was strategic in nature. Plaintiffs could have (and should have) sought an extension of time to move for class certification until after Meta produced its records, which Plaintiffs had already subpoenaed and moved to compel months ahead of time. Or, when Meta produced its records two months later, Plaintiffs could have (and should have) sought leave to supplement their moving papers before Zuffa filed its Opposition. Plaintiffs did neither.

Instead, in a textbook example of gamesmanship, Plaintiffs pretended that this new evidence was irrelevant to the subject of class certification. In fact, when Zuffa timely sought to depose Plaintiffs' expert, Rebecca Herold, on the subject of Meta's Pixel Data, Plaintiffs' counsel refused and stated that Zuffa's "need to examine her on [Meta's Pixel Data] at this juncture is ***nearly nonexistent***" because "she would presumably deal with it in a report on the merits ***after class certification***, at which point [Zuffa] would be free to cross her on an actual opinion." Declaration of Stephanie Balitzer ("Balitzer Decl.") ¶ 2, Ex. 1 (emphasis added). But at the same time Plaintiffs were pushing back on Zuffa's efforts to depose their expert on Meta's Pixel Data, Plaintiffs were

surreptitiously working with Meta's counsel to schedule a deposition of Meta to take place after Zuffa's deadline to file an opposition and before their Reply was due, presumably so only Plaintiffs could use that testimony.

Zuffa learned of this plan a mere two weeks after filing its Opposition—when Plaintiffs sought an extension for their Reply Brief in order to allow time for Meta's deposition. After Zuffa agreed to a three-week extension,[1] Plaintiffs completed the deposition of Meta's corporate representative and advanced for the first time new arguments and opinions regarding the Meta Pixel Data based on a ***37-page report*** Plaintiffs attached to their Reply from their expert, Ms. Herold (the "Reply Report"). In light of these circumstances, Plaintiffs have unsurprisingly conceded that they would "not oppose a sur-reply of reasonable length and appropriate scope" and would "stipulate to allowing a sur-reply if necessary." ECF No. 119 at 2, 6.[2]

In the alternative, the Court should strike Plaintiffs' new arguments, evidence, and expert opinions regarding the Meta Pixel Data. Plaintiffs have no excuse, much less good cause, for failing to raise these matters in their moving papers (as is their burden), and there can be no dispute that Plaintiffs' conduct has prejudiced Zuffa. *See, e.g.*, *Forrest v. Costco Wholesale Corp.*, 2016 WL 5402200, at *1-2 (D. Nev. Sept. 26, 2016) ("In the Ninth Circuit, 'a district court need not consider arguments raised for the first time in a reply brief.'") (citation omitted). Likewise, the Court should strike Ms. Herold's improper (and extensive) legal conclusions about ultimate issues in the case. *Westenberger v. Albertson's LLC*, 2019 WL 5578484, at *3 (D. Nev. Oct. 29, 2019) (legal conclusions are "properly the province of the court, not an expert").

For all of these reasons, Zuffa respectfully requests leave to file a sur-reply, or in the alternative, that the Court strike the new arguments and evidence at issue from Plaintiffs' Reply.

---

[1] Zuffa agreed to an 18-day extension of Plaintiffs' Reply deadline, which was equal to the extension received on Zuffa's Opposition at the October 5, 2023 hearing on Zuffa's Motion to Compel (which Plaintiffs unsuccessfully opposed as being unnecessary). See ECF No. 117.

[2] When Zuffa's counsel sought confirmation from Plaintiffs' counsel that they would not oppose this motion for leave to file a sur-reply, however, Plaintiffs would only agree not to oppose a sur-reply limited to three pages "to reply to our characterization of the Meta deposition." Balitzer Decl. ¶ 3, Ex. 2.

## II. <u>BACKGROUND</u>

Plaintiff Bloom filed his complaint on March 4, 2022, in tandem with a flurry of similar suits based on websites' use of the Meta Pixel tool. Bloom's theory was that by using the Meta Pixel on UFC's Fight Pass website, Zuffa "knowingly disclose[d]" Fight Pass subscribers' PII to Meta in the form of Facebook's c_user cookie (purportedly containing a Facebook ID) and video titles separately embedded in URLs on the website. ECF No. 1.

Later that year, in December 2022, Bloom served a subpoena on Meta seeking, among other things, data "regarding PLAINTIFF . . . including data acquired by [Meta] from ZUFFA." Balitzer Decl. ¶ 4, Ex. 3 at 5. In April 2023, Bloom filed a motion to compel Meta to comply with the subpoena. *Bloom v. Meta Platforms, Inc.*, No. 23-mc-80319 (N.D. Cal. Apr. 25, 2023). On June 5, 2023, Bloom and Meta filed a joint stipulation noting that they were "actively discussing resolution" of the motion to compel and subpoena. *Id.*, ECF No. 8. Yet, despite making several prior requests for extensions of their class certification deadline (ECF Nos. 40, 45), Plaintiffs chose to file their Motion for Class Certification in this case on June 9, 2023.

One week after filing the class certification motion, Bloom and Meta reached an agreement to resolve Plaintiffs' motion to compel and subpoena. *Bloom v. Meta Platforms, Inc.*, No. 23-mc-80319, ECF No. 10 (N.D. Cal. June 16, 2023). On July 5, 2023, Plaintiffs served Zuffa with notice of an amended subpoena to Meta, solely requesting the production of documents. *Id.* ¶ 5, Ex. 4. That same day, Zuffa sought an extension of its deadline to file an opposition to Plaintiffs' class certification motion to allow sufficient time for "Meta to complete its production" and for Zuffa to depose Plaintiffs' experts "after receiving . . . Meta's productions." ECF No. 63. Meta produced data pursuant to that subpoena on August 21, 2023 (the "Meta Pixel Data").

Several months after Meta's production—on November 7, 2023—Zuffa took the deposition of Plaintiffs' expert, Rebecca Herold. In advance of that deposition, Zuffa noted that it needed to examine Ms. Herold regarding Meta's production. *Id.* ¶ 2, Ex. 1. Zuffa added that "[a]s you know, one of the reasons we did not take Ms. Herold's deposition earlier was that we were waiting for Meta's production . . . so it is important that we have the opportunity to do so" and offered to reschedule Herold's deposition so it could examine her about Meta's data. *Id.* Plaintiffs refused,

responding that "We are not rescheduling. Given that Ms. Herold has not issued any opinion on or any analysis of the Meta data, your need to examine her on it at this juncture is essentially nonexistent. I also note that she would presumably deal with it in a report on the merits after class certification, at which point you would be free to cross her on an actual opinion." *Id.* During Ms. Herold's deposition, she testified not only that Meta's data would not "impact" her opinion but insinuated that it would not be reliable. *Id.* ¶ 6, Ex. 5 (Herold Depo. Tr. 116:3-122:21).

Just days before Plaintiffs pushed back on Zuffa's efforts to examine Plaintiffs' expert regarding Meta's production, Plaintiffs were surreptitiously in contact with Meta's counsel regarding scheduling the deposition of Meta's corporate representative. In a November 2, 2023 email sent solely to Meta's counsel, Plaintiffs told Meta that it would be "ideal" to schedule the deposition in late November or December (i.e., ***after*** Zuffa's November 17 opposition deadline and ***before*** Plaintiffs' January reply brief deadline). *Id.* ¶ 7, Ex. 6. Later that month, Plaintiffs emphasized to Meta's counsel that "[Plaintiffs'] class cert reply deadline in the Bloom v. Zuffa case is roughly 7 weeks away. Please advise." *Id*. Plaintiffs waited until December, *after* Zuffa filed its class certification opposition, to inform Zuffa for the first time about the deposition and request an extension of their reply deadline to accommodate it. ECF No. 116-1 (Patek Decl.) ¶ 4 & Ex. 1.

## III. <u>LEGAL STANDARD</u>

A moving party is not permitted to raise new arguments or evidence for the first time in a reply brief because it deprives the opposing party of the opportunity to respond. *See, e.g.*, *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived."); *Oracle USA, Inc. v. Rimini Street, Inc.*, 2016 WL 6208254, at *2 (D. Nev. Oct. 24, 2016) ("to the extent that a party raises a new argument or proffers new evidence and information in a reply brief, that argument or evidence is improper because the opposing party is deprived of an opportunity to respond"); *Beckett v. Brinx Res., Ltd.*, 2013 WL 6058487, at *1 (D. Nev. Nov. 14, 2013) ("[I]t is improper for a party to raise a new argument in a reply brief because the opposing party is not afforded an opportunity to respond.").

However, where a moving party, in spite of this rule, presents new matters for the first time on reply, a court "may either refuse to consider the new matters or allow the opposing party an

opportunity to respond." *Id.*; *see also FNBN-RESCON I LLC v. Ritter*, 2014 WL 979930, at *6 (D. Nev. Mar. 12, 2014) (where a reply raises new arguments, "[t]he Court may either discard these arguments or provide Defendants with an opportunity to respond to them"); Local Rule 7-2(b) (a party may be permitted to file a sur-reply with leave of court). Sur-replies are particularly appropriate where a moving party "shift[s] gears" in its reply brief or addresses new matters that were foreseeable at the time the motion was filed. *Beckett*, 2013 WL 6058487, at *2.

## IV. ARGUMENT

### A. Zuffa Should Be Permitted to File a Sur-Reply to Respond to New Matters Raised For the First Time in Plaintiffs' Reply Brief.

Plaintiffs seek to certify a class of Fight Pass subscribers whose Facebook IDs and video URLs were "actually sent" to Meta. Mot. at 14. In their moving papers, Plaintiffs asserted that "Meta has records of the data transfers," which "will allow confirmation of whose data was transferred." *Id*. But despite Plaintiffs' apparent reliance on Meta's records and the burden of proving that their proposed classes satisfy the requirements of Rule 23 by a preponderance of the evidence, Plaintiffs' motion did not offer any actual evidence of Meta's records. That is because Plaintiffs decided to file their motion for class certification *before* Meta had produced any records.

Instead, Plaintiffs chose to wait until they filed their reply brief to introduce *for the first time* Meta's Pixel Data, deposition testimony from Meta's corporate representative, an expert report regarding Meta's Pixel Data and deposition testimony, and new, flawed arguments purporting to explain how Meta's Pixel Data and deposition testimony support class certification. [redacted]

[redacted] This has left Zuffa without an opportunity to respond.

Worse yet, Plaintiffs' decision to introduce these new matters for the first time on reply was not only foreseeable, but strategic. Plaintiffs chose to file their motion for class certification before Meta had produced any records in response to their subpoena, and Plaintiffs chose not to supplement their moving papers *after* receiving Meta's Pixel Data, even though Zuffa's deadline to file an opposition was still months away. Likewise, a few months after Meta's production, when Zuffa's counsel requested to depose Plaintiffs' expert on Meta's Pixel Data in advance of Zuffa's opposition, Plaintiffs' counsel refused and claimed that Zuffa's "need to examine her on [Meta's records] at this juncture is nearly nonexistent." Plaintiffs claimed that Ms. Herold would not offer an opinion on this topic until ***after*** class certification and that Zuffa could cross her on this subject then. Balitzer Decl. ¶ 2, Ex. 1.[3] And yet, just days before Plaintiffs pushed back on Zuffa's efforts to question Plaintiffs' expert on Meta's Pixel Data, Plaintiffs were surreptitiously working with Meta's counsel to schedule a deposition of Meta's corporate representative to take place *after* Zuffa's deadline to file an opposition, presumably so Plaintiffs could use that testimony in their reply while ensuring Zuffa could not do the same. *Id.* ¶ 7, Ex. 6.

Under these circumstances, unless the new evidence and arguments in question are stricken, Zuffa should be permitted to file a sur-reply. It is well-established that a moving party cannot introduce new matters for the first time on reply, and where they nonetheless do so (as here) there is good cause for leave to file a sur-reply. *See, e.g.*, *US Bank, NA v. Recovery Servs. Nw., Inc.*, 2014 WL 1347376, at *2 (D. Nev. Apr. 4, 2014) (granting leave to file sur-reply where reply included a new argument); *Ioane v. Comm'r*, 2010 WL 2600689, at *3 (D. Nev. Mar. 11, 2010) (because "Plaintiff's reply raised issues not in his initial motion, the Court grants Defendant leave to file a surreply and will consider Defendant's arguments raised in its surreply"); *Concerned Citizens for a Safe Cmty. v. Off. of Fed. Det. Tr.*, 2011 WL 5041195, at *1 (D. Nev. Oct. 24, 2011)

---

[3] As discussed below, despite these representations, a significant portion of Ms. Herold's Reply Report is devoted to Meta's Pixel Data and deposition testimony.

(finding good cause for leave to file a sur-reply in light of new arguments and exhibits introduced in Plaintiff's reply).

This is particularly true where, as here, the moving party engages in gamesmanship and raises new matters on reply that were entirely foreseeable at the time their motion was filed. *See, e.g.*, *Beckett*, 2013 WL 6058487, at *2 (granting leave to file sur-reply where new matters raised in reply were not "unforeseeable" when the moving papers were filed). As noted above, Plaintiffs' moving papers made clear that their motion for class certification was dependent on Meta's records (Mot. at 14), yet Plaintiffs chose to file their motion before Meta had produced any records. Likewise, Plaintiffs had the Meta Pixel Data in their possession for nearly *three months* before Zuffa filed its Opposition, and yet chose not to supplement their moving papers or expert report. Plaintiffs also had months to provide their expert, Ms. Herold, with Meta's Pixel Data so Zuffa could depose her on those records in advance of filing its opposition, but Plaintiffs instead represented that would not be necessary because she would "deal with it in a report on the merits *after* class certification." Balitzer Decl. ¶ 2, Ex. 1 (emphasis added). And Plaintiffs chose to schedule Meta's deposition *after* Zuffa's deadline to file an opposition, without even informing Zuffa that they were doing so. This record demonstrates that a sur-reply could have and should have been avoided, but Plaintiffs strategically chose to blindside Zuffa and introduce these new matters on reply.

The interests of fairness also weigh in favor of permitting Zuffa leave to file a sur-reply and against rewarding Plaintiffs' decision to introduce new arguments, evidence, and expert opinions for the first time on reply. This is especially true given Plaintiffs' failure to supplement their moving papers to discuss Meta's records before Zuffa filed its opposition, Plaintiffs' attempts prevent Zuffa from deposing their expert on Meta's records, and Plaintiffs' efforts to surreptitiously schedule Meta's deposition after Zuffa's opposition deadline. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 501 (N.D. Cal. 2008) (holding that "[s]lipping these new arguments into a rebuttal report was a clear cut form of sandbagging and was simply unfair[]"); *Roth v. BASF Corp.*, 2008 WL 2148803, at *2 (W.D. Wash. May 21, 2008) (admonishing plaintiff's counsel for raising issues for the first time in reply that counsel originally identified as "not an issue

on this motion," stating that "[i]t is not acceptable legal practice to present new evidence or new argument in a reply brief, to say nothing of introducing issues in reply briefing which were declared 'not part of this motion' in the moving papers"). Indeed, it is presumably for these reasons that Plaintiffs, in seeking additional time to file their reply brief, stated they "would be not oppose a sur-reply of reasonable length and appropriate scope" and would "stipulate to allowing a sur-reply if necessary." ECF No. 119 at 6.

### B. In the Alternative, the Court Should Strike Plaintiffs' New Arguments, Evidence, and Expert Opinions.

In the alternative, Zuffa asks that the Court strike the newly introduced arguments, evidence, and expert opinions.

As an initial matter, Plaintiffs cannot show good cause for failing to raise these matters in their moving papers, as Plaintiffs knew their case would rely on Meta's records. Mot. at 14. But rather than seek an extension of time to file their motion or supplement, Plaintiffs simply chose to introduce these matters for the first time *after* Zuffa filed its opposition. Courts routinely reject such efforts to "sandbag" non-moving parties with new arguments and evidence that should (and could) have been included in the moving papers. *See, e.g.*, *Forrest*, 2016 WL 5402200, at *1 (granting motion to strike where the moving party raised a new argument for the first time on reply, and that the responding party "would be prejudiced as a result"); *Pacquiao v. Mayweather*, 2010 WL 3271961, at *1 (D. Nev. Aug. 13, 2010) (granting motion to strike where party failed to establish that certain evidence introduced on reply could have only been provided as a response to non-movant's opposition); *Salazar v. Driver Provider Phoenix LLC*, 2022 WL 17824287, at *1 (D. Ariz. Dec. 8, 2022) (granting motion to strike where new argument was raised by Defendants in their reply); *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in [r]eply are waived.").

Likewise, courts routinely strike new expert opinions that are introduced for the first time on reply. *See, e.g.*, *Oracle Am., Inc. v. Google Inc.*, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011) (granting motion to strike and noting expert disclosure schedule "was designed to forestall

'sandbagging' by a party with the burden of proof who wishes to save its best points for reply, when it will have the last word, a common litigation tactic"); *In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 2008 WL 3179315, at *11 (D. Nev. June 20, 2008) (granting motion to strike where expert's declaration "reflect[ed] a new analysis which was not part of his initial report"). Here, Ms. Herold's Reply Report does not merely address or rebut Zuffa's expert report, but instead is used "to provide new evidence that could have been provided in the original report." *Columbia Grain, Inc. v. Hinrichs Trading, LLC*, 2015 WL 6675538, at *3 (D. Idaho Oct. 30, 2015); *see also United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000) (striking supplemental declarations on reply that "address issues which should have been addressed in the opening brief").

Indeed, Ms. Herold's Reply Report *not only* introduces new technical opinion about Meta's records for the first time (although she previously testified unequivocally that the Meta data would not "impact" her opinion and insinuated it would not be reliable (Balitzer Decl. ¶ 6, Ex. 5)), but does a complete about-face and now relies on the same Meta records to offer improper legal conclusions. *See Docusign, Inc.,* 468 F. Supp. 2d at 1307 n.3 ("Technical experts are not qualified to make legal conclusions and arguments, and where a party elects to include legal arguments in a technical declaration, rather than in a brief, those arguments may appropriately be disregarded."). [redacted] In short, Herold's conclusions "read as a court's opinion, not an expert report," and thereby "usurp[s] the role of the court and the jury in making ultimate conclusions of law." *Basu v. Massachusetts Mut. Life Ins. Co.*, 2022 WL 5237268, at *5 (D. Nev. Sept. 21, 2022) (granting motion to strike an expert's report).

There can be little doubt that Zuffa has been prejudiced here. Although Zuffa was able to comment on Meta's Pixel Data in its class certification opposition, Zuffa was deprived of any opportunity to address Plaintiffs' new arguments based on Meta's Pixel Data and deposition testimony, and it was denied the opportunity to examine Ms. Herold regarding her analysis of Meta's records and formulate a response. Indeed, Zuffa flagged this very issue in its opposition papers. ECF No. 107 at 5-6, 23-24 (arguing that Plaintiffs should be prohibited from using Meta's records for the first time on reply). In such cases, a motion to strike is an appropriate remedy, as the delays and costs involved with a sur-reply could have been avoided. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1028 (C.D. Cal. 2018) (court declined to change the scheduling order to accommodate new evidence "where such delays could have easily been prevented by Plaintiffs' earlier disclosure of the new survey evidence"); *see also Gutierrez v. 78th Judicial Dist. Court*, 2009 WL 1507415, *1 (W.D. Mich. May 29, 2009) ("The opposing party should not have to incur the cost and effort of additional filings – a motion for leave to file a sur-reply, and the sur-reply itself – because the movants deliberately, or more likely inadvertently, held back part of their case").

Accordingly, Plaintiffs' newly introduced arguments and evidence—including (i) Meta's deposition testimony (Patek Decl., Ex. 26), (ii) portions of Ms. Herold's Reply Report opining on Meta's Pixel Data (Herold Rep. at ⁋⁋ 6, 8, 9, 9(a), 9(b), 9(c), 29, 40, 51, 62, 63), and Meta's deposition testimony (Herold Rep. at ⁋⁋ 52, 53, 54, 57, 63, 69, 71, 75, 78, 79, 83), (iii) any argument flowing from Meta's deposition testimony (Reply at Page 2, Lines 15-27; Page 7, Lines 9-12; Page 8, Lines 3-7; Page 10, n.4; Page 12, Lines 20-21); (iv) any argument flowing from Meta's Pixel Data (Reply at Page 1, Lines 16-18, 19-21; Page 2, Line 2, 4-14; Page 4, Lines 8-9; Page 6, Lines 2-9, 13-24; Page 7, Lines 5-9, 21-23; Page 8, Lines 9-11, 14-15, 22-24; Page 10, Lines 6-9; Page 11, Lines 9-13, 26-27; Page 14, Lines 3-6); and (v) portions of Ms. Herold's Reply Report advancing legal conclusions based on Meta's Pixel Data (Herold Rep. at ⁋⁋ 6, 8, 47, 85—should be stricken.

## V. CONCLUSION

For the foregoing reasons, Zuffa requests leave to file a sur-reply to address Plaintiffs' new arguments and evidence. In the alternative, Zuffa respectfully requests that the Court strike: (1) Meta's deposition testimony (Patek Decl., Ex. 26), (2) portions of Ms. Herold's Reply Report opining on Meta's Pixel Data (Herold Rep. at ⁋⁋ 6, 8, 9, 9(a), 9(b), 9(c), 29, 40, 51, 62, 63), and Meta's deposition testimony (Herold Rep. at ⁋⁋ 52, 53, 54, 57, 63, 69, 71, 75, 78, 79, 83), (3) any argument flowing from Meta's deposition testimony (Reply at Page 2, Lines 15-27; Page 7, Lines 9-12; Page 8, Lines 3-7; Page 10, n.4; Page 12, Lines 20-21); (4) any argument flowing from Meta's Pixel Data (Reply at Page 1, Lines 16-18, 19-21; Page 2, Line 2, 4-14; Page 4, Lines 8-9; Page 6, Lines 2-9, 13-24; Page 7, Lines 5-9, 21-23; Page 8, Lines 9-11, 14-15, 22-24; Page 10, Lines 6-9; Page 11, Lines 9-13, 26-27; Page 14, Lines 3-6); and (5) portions of Ms. Herold's Reply Report advancing legal conclusions based on Meta's Pixel Data (Herold Rep. at ⁋⁋ 6, 8, 47, 85).

DATED: February 9, 2024

**PAUL HASTINGS LLP**

By: /s/ *Susan Leader*
Susan Leader
Ali R. Rabbani
Stephanie Balitzer

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on February 9, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ *Susan K. Leader*
Susan K. Leader