## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Everett Bloom, et al., | Case No. 2:22-cv-00412-RFB-BNW |
| Plaintiffs, | |
| v. | **ORDER** |
| Zuffa, LLC, et al., | |
| Defendants. | |

Before the Court is non-party Meta Platforms, Inc.'s Motion to Seal (ECF No. 155) seeking to redact the following information[1]:

(1) Defendant Zuffa's Sur-Reply Motion, (ECF No. 130):

- Page 5, Lines 21-27
- Page 9, Lines 19-21

(2) Defendant Zuffa's Sur-Reply, (ECF No. 130-2):

- Page 1, Lines 3-4
- Page 2, Lines 4-7, 12-21, 23-24, n.3
- Page 3, Lines 7-10, 19, n.4

(3) Wooldridge Deposition Excerpts, (ECF No. 130-3):

- All excerpted testimony

(4) Defendant Zuffa's Expert Report, (ECF No. 130-4):

- Paragraphs 6, 8, 10, 11, 12, 13, 14, 16, 18

(5) Plaintiff's Response to Defendant Zuffa's Sur-Reply Motion, (ECF No. 135):

- Page 10, Lines 1-6

---

[1] Meta has not correctly identified the docket numbers associated with each of the relevant documents sought to be redacted. The Court has identified the correct docket numbers and will incorporate them below.

   (6) Defendant Zuffa's Reply in Support of Sur-Reply Motion (ECF No. 137).

- Page 2, Lines 8-12

Plaintiff opposed and Meta replied. ECF Nos. 156 and 157. As explained below, Meta has only partially met its standard to show good cause to redact the requested information. As a result, the Court denies Meta's motion in part and grants Meta's motion in part.

### I. Standard for Sealing Docket Entries

  Generally, the public has a right to inspect and copy judicial records. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Such records are presumptively publicly accessible. *Id.* Consequently, a party seeking to seal a judicial record bears the burden of overcoming this strong presumption. *Id*. In the case of dispositive motions, the party seeking to seal the record must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process. *Id.* at 1178-79 (alteration and internal quotation marks and citations omitted). The Ninth Circuit has further held that the full presumption of public access applies to technically non-dispositive motions and attached documents as well if the motion is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

  "[A] different standard applies to 'private materials unearthed during discovery,' as such documents are not part of the judicial record." *Pintos v, Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citing *Kamakana*, 447 F.3d at 1180). Under Rule 26(c), a court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "The relevant standard for purposes of Rule 26(c) is whether good cause exists to protect the information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Id.* Given the "weaker public interest in nondispositive materials," the court applies the good cause standard in evaluating whether to seal documents attached to a nondispositive motion. *Id.* "Nondispositive motions 'are often unrelated, or only tangentially related, to the underlying cause of action,' and, as a result, the public's

interest in accessing dispositive materials does 'not apply with equal force' to non-dispositive materials." *Id.* (citing *Kamakana*, 447 F.3d at 1179). It is within the court's discretion whether to seal documents. *Id.* at 679.

While an open question in the Ninth Circuit, courts generally hold that the standard for filing documents under seal in relation to a class-certification motion is a showing of "good cause." *Kamakana*, 447 F.3d at 1179-80 (9th Cir. 2006) (a particularized showing of 'good cause' is required to seal documents related to non-dispositive motions); *Duga v. Lloyds TSB Bank, PLC*, 2013 WL 1435223, at *1 (N.D. Cal. Apr. 9, 2013) ("[T]he vast majority of courts within this circuit treat motions for class certification as non-dispositive motions to which the 'good cause' sealing standard applies.") (internal quotations and citations omitted); *Bridge v. Credit One Bank, N.A.*, 2016 WL 11670192, at *1 (D. Nev. Apr. 18, 2016) (applying the good-cause standard to the defendant's motion to seal an unredacted version of its response to the plaintiff's motion for class certification as well various exhibits to declarations in support of that filing). Under the good cause standard, motions to seal have been granted "where they contain 'confidential, business-sensitive marketing strategies and technical product information,' that poses 'competitive harm' to the moving party." *Sessa v. Ancestry.com Operations Inc.*, 2023 WL 1795856, at *2 (D. Nev. Feb. 6, 2023) (citing *Orthopaedic Hosp. v. DJO Glob., Inc.*, 2021 WL 3015413, at *2 (S.D. Cal. Feb. 22, 2021)). Each document that Meta moves to redact stems from Plaintiff's motion for class certification. Therefore, the Court will apply the good cause standard.

The discretionary nature of this standard requires movants to fully explain how the specific information in question constitutes harm sufficiently credible to overcome the public-access presumption. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986). Without sufficient and credible explanation detailing likely harm, courts cannot justify restricting public access to the judicial record. Thus, determining good cause requires

courts to carefully analyze the information the movant seeks to seal as well as weigh the credibility of the purported harm based on the reasoning provided by the movant.

**II. Analysis**

    A. Where "Good Cause" Was Not Shown

Essentially, Meta requests each of these redactions because the information contains either "detailed discussions of Meta's proprietary processes for transmitting and storing data" or of "techniques one might use to circumvent Meta's integrity systems." ECF No. 155. Except for the approved redactions noted below in section B, the information Meta requests to redact simply contains generalized statements about the ability of Meta's Pixel code as opposed to the code's technical processes.

The distinction between process and ability, both of which may be considered technical information, is an important one. While it is easy to recognize how disclosure of technical processes may conceivably place a party at a competitive disadvantage, generalized disclosures regarding technical ability do not do so in any immediately apparent way. This is especially true when the technical ability itself—in this case, Meta's ability to obtain Facebook users' information via third-party sites—has already been widely reported on. *See* David Nield, *All the Ways Facebook Tracks You—And How to Limit It*, WIRED (Jan. 12, 2020, 7:00 AM), https://www.wired.com/story/ways-facebook-tracks-you-limit-it/; *see also* Don Marti et al., Consumer Reports, *Who Shares Your Information with Facebook? Sampling the Surveillance Economy in 2023* (2024)).

Moreover, to the extent that there is specificity present here, it is most often specificity regarding what cookies are *not* utilized by Meta's Pixel Code. For example, the presence of "a nameless 'third party cookie'" rather than some of the cookies that Plaintiffs originally believed to be part of the code. ECF No. 130 at 5.

The Court does not see how the confirmation that a line of code does not contain specific cookies serves to divulge—or even meaningfully threatens to divulge—anything to do with the code's actual processes, such that Meta's competitive standing or its integrity systems are

threatened. Nor has Meta attempted to explain how or why this may be the case. Rather, Meta argues that knowing specific cookies are not included in the Pixel code does provide meaningful insight into the code's processes. They say that to argue otherwise is a "misunderstanding of the commercially sensitive nature of this information." ECF No. 157. If it is a misunderstanding, it is not one properly dispelled by an appeal to this Court to take Meta's claims at face value. Thus, while such discussions may be considered to literally address the substance of the code, they do not warrant redaction.

As stated in a previous order by this Court wherein a motion to seal from Meta was denied for similar reasons (ECF No. 152), just because Meta does not advertise its use of the Pixel code does not mean that any reference to it or to its capabilities automatically satisfies the "good cause" standard. Indeed, the standard is not satisfied unless Meta can highlight the potential harm which may befall them if the information remains or becomes publicly available; a movant must provide "specific examples or articulated reasoning" to establish that potential harm. *Beckman*, 966 F.2d at 476. Except for in the instances mentioned below, Meta has failed to sufficiently do so here.

### B.  Where "Good Cause" Was Shown

Meta has met the "good cause" standard in the instances wherein it identified technical information regarding the actual process of Meta's code or of the cookies involved. As discussed above, while a general explanation of ability—particularly *inability*—will not alone satisfy the good cause standard, descriptions of a non-public, technical process usually will. The following include such descriptions, satisfy the good cause standard, and thus will be redacted.

- **ECF No. 130**: Page 9, lines 19-21
- **ECF No. 130-1**: Page 2, lines 19-21, 23-24, n. 3
- **ECF No. 130-2**: All requested redactions except for page 14, lines 17-25, and page 25, lines 13-24
- **ECF No. 130-3**: ¶¶ 10, 13, 14, 18
- **ECF No. 135**: Page 10, lines 4-6

Redacting this information is appropriate because it offers the sort of information the good cause standard demands, and because it does nothing to meaningfully contribute to the public's understanding of this case.

### III. Conclusion

IT IS THEREFORE ORDERED that non-party Meta's motion to seal is DENIED in part and GRANTED in part, consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of Court is directed to maintain the following under seal: ECF Nos. 130, 135, and 137 under seal.

Defendants are to re-file the exhibits at:

- **ECF No. 130**: Page 5, Lines 21-27
- **ECF No. 130-1**: Page 1, Lines 3-4; Page 2, Lines 4-7, 12-18; Page 3, Lines 7-10, 19, n.4
- **ECF No. 130-2**: Page 14, Lines 17-25; Page 25, Lines 13-24
- **ECF No. 130-3**: ¶¶ 6, 8, 11, 12, 16
- **ECF No. 135**: Page 10, Lines 1-3
- **ECF No. 137**: Page 2, Lines 8-12

DATED this 18th day of October, 2024.

BRENDA WEKSLER
UNITED STATES DISTRICT JUDGE