# Exhibit 1

Defendant Zuffa, LLC's Sur-Reply in Opposition to Plaintiffs'
Motion for Class Certification

## Filed Under Seal

**CAMPBELL & WILLIAMS**
J. COLBY WILLIAMS, ESQ. (Nev. Bar No. 5549)
jcw@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (602) 382-0540

**PAUL HASTINGS LLP**
SUSAN K. LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI R. RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
STEPHANIE BALITZER (*admitted pro hac vice*)
stephaniebalitzer@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EVERETT BLOOM, JACK GRAHAM, AND DAVE LINDHOLM, on behalf of themselves, and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ZUFFA, LLC, ENDEAVOR STREAMING, LLC and ENDEAVOR GROUP HOLDINGS, INC.<br><br>Defendants. | CASE NO. 2:22-CV-00412-RFB-BNW<br><br>**DEFENDANT ZUFFA, LLC'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |



This was already clear from the fact that Meta's Pixel Data does not reference a single Facebook ID, nor the c_user and m_page_voice cookies that Plaintiffs allege contain Facebook IDs—as Plaintiffs themselves now concede (Reply at 7).

These facts alone are fatal to Plaintiffs' Motion.[1]

## I.    ARGUMENT

### A.

Contrary to Plaintiffs' suggestion that these individualized issues are "overblown" (Reply at 1, 2, 6-10),

*Id.* at 34:6-37:20.

*Id.*; *see also id.* at 32:8-34:3

[2]

---

[1] While Zuffa disputes all of the arguments set forth in Plaintiffs' Reply, this Sur-Reply is limited to addressing Plaintiffs' new arguments and evidence regarding Meta's Pixel Data and deposition testimony, as explained in Zuffa's Motion Requesting Leave to File a Sur-Reply.

[2] Plaintiffs' alternative class definition, which they submit for the first time on Reply, does nothing to resolve the numerous individualized issues raised in Zuffa's Opposition. *See* Reply at 1.  Nor,

1    Plaintiffs are also wrong that ████████████████████████████████████

2    ████████████████████████████████████████████████████████████████████████

3    ██████  Reply at 10; *see also* Reply at 1, 2, 6, 8.  To the contrary, there is not a **single** entry in

4    Meta's Pixel Data that shows **any** third-party cookie was transmitted to Meta with a video URL

5    from the Fight Pass website for **any** of the Plaintiffs.  Ex. 3 ¶ 12.  Moreover, as Plaintiffs themselves

6    concede, Meta's Pixel Data also does not include any references to the third-party cookies that

7    Plaintiffs rely upon here—i.e., the c_user and m_page_voice_cookies—let alone Facebook IDs.

8    Reply at 7; *see also* Ex. 3 ¶ 6, 11.

9    Plaintiffs' vague suggestion that ██████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████

11   (Reply at 1, 2, 7) also lacks merit.  Plaintiffs' only support for this argument is their contention that

12   Meta purportedly "converted any Facebook IDs received via the c_user cookie to 'separable IDs'

13   for storage, and then hashed those IDs before producing them."  Reply at 7; *see also* Reply at 2.

14   But the Meta deposition made clear that the c_user cookie is **not** part of Meta's Pixel Data, nor is

15   it used to create a "separable ID" as Plaintiffs suggest.  Ex. 2 at 93:17-25 ("I don't know if I would

16   characterize the c_user cookie as part of the Pixel event data necessarily"); *see also id.* at 100:21-

17   102:21 (explaining that the "separable ID" does not come from the c_user cookie), 114:12-19,

18   184:19-22 ("The fr cookie does not necessarily include a Facebook user ID."); Ex. 3 ¶¶ 8, 10, 13.[3]

19   In fact, ██████████████████████████████████████████████████████████████

20   █████████████████████████████████████████ *Id.* at 188:13-24; *see also id.* at 187: 21-188:4 ████

21   ██████████████████████████████████████████████████████████████████████).

22   Moreover, Plaintiffs' assertion that ████████████████████████████████████

23   ████████████████  (Reply at 2, 6) is irrelevant.  The mere fact that ████████████████

24   ████████████████████████████████████████████████████  has no bearing on whether the

25   _____

26   for these same reasons, would it be possible for a claims administrator to "use Pixel data and Zuffa's
     records to corroborate valid claims and weed out baseless ones," as Plaintiffs suggest.  Reply at 3.

27   [3] ███████████████████████████████████████████████████████████████████████████

28   ███████████████████████████████████████████████████████████████████

1  individualized issues identified in Zuffa's Opposition (Opp. at 10-17) prevented the third-party

2  cookies at issue from ever being transmitted to Meta.  As explained at length in Zuffa's Opposition

3  ████████████████████████████, that issue cannot be determined on a class-wide

4  basis without evaluating each and every proposed class member's Facebook and web browser

5  settings and practices.  ████████████████████████████████████

6  ██.[4]  *See* Ex. 2 at 188:13-24; *see also* Ex. 3 ¶¶ 9, 14.

7  Lastly, while Plaintiffs' Reply fails to address Zuffa's argument that the first-party "fbp"

8  cookie is not common proof that Zuffa disclosed Facebook IDs to Meta (Opp. at 17-18), the Meta

9  deposition confirmed that the fbp cookie does ***not*** include a Facebook ID. Ex. 2 at 185:22-186:11,

10  192:8-15 (the fbp cookie is "a dice roll"; "It's just a very large number that comes from a dice.").[5]

11  **B.**  ████████████████████████████████████

12  In their Reply, Plaintiffs' claim that Plaintiff Everett Bloom has standing because ████

13  ████████████████████████████████████████

14  ████████████████████████  Reply at 11.  Not only is Plaintiffs'

15  assertion that ufc.com runs on the "same computer system" as the Fight Pass website unsupported,

16  it is nonsensical—the Fight Pass website is the *only* website at issue in this case.  To that end, ██

17  ████████████████████████████████████████

18  Ex. 2 at 195:13-196:9.  And contrary to Plaintiffs' claim that ████████████████

19  for Bloom (Reply at 8), Meta's Pixel Data does not show ***any*** third-party cookies at all for Bloom,

20  further demonstrating that he lacks standing.  Ex. 3 ¶ 7.

21  **II.**   **CONCLUSION**

22  For the foregoing reasons, Zuffa respectfully asks the Court to deny Plaintiffs' Motion for

23  Class Certification with prejudice.

24

25  [4] To the extent Plaintiffs suggest that video URLs from the Fight Pass website are "third party
cookie data" (Reply at 6), Plaintiffs are wrong.  As noted above, there is not a single entry in Meta's
26  Pixel Data that shows any third-party cookie was transmitted to Meta with a video URL from the
Fight Pass website for any of the Plaintiffs.  Ex. 3 ¶ 12.
27  [5] For the same reasons discussed herein, Plaintiffs' responses based on Meta's Pixel Data and
deposition testimony to Zuffa's arguments regarding definiteness, numerosity, and superiority also
28  fail.  *See* Reply at 3-5, 10-11; *see also* Opp. at 8-10, 18-21.

DATED:  November 4, 2024                **PAUL HASTINGS LLP**


By: */s/ Susan Leader*
    Susan Leader
    Ali R. Rabbani
    Stephanie Balitzer

    Attorneys for Defendants