**CAMPBELL & WILLIAMS**
SAMUEL R. MIRKOVICH (Nev. Bar No. 11662)
srm@cwlawlv.com
710 South 7th Street
Las Vegas, NV 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

**PAUL HASTINGS LLP**
SUSAN K. LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI R. RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
1999 Avenue of the Stars
Century City, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

*Attorneys for Defendant*
*Zuffa, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EVERETT BLOOM, JACK GRAHAM, and DAVE LINDHOLM, on behalf of themselves, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZUFFA, LLC,<br><br>Defendant. | Case No.: 2:22-CV-00412-RFB-BNW<br><br>**DEFENDANT ZUFFA, LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE PLAN (ECF No. 260)**<br><br>(HEARING REQUESTED)<br><br>Judge: Hon. Richard F. Boulware, II |

## TABLE OF CONTENTS

Page(s)

I. BACKGROUND ..... 3

A. Plaintiffs' Claims ..... 3

B. Class Certification ..... 3

C. The Rule 23(f) Petition ..... 5

D. The Meet-and-Confer Process ..... 5

E. The Proposed Notice Plan ..... 6

II. ARGUMENT ..... 7

A. LEGAL STANDARD ..... 7

B. THE COURT SHOULD DEFER APPROVAL UNTIL THE NINTH CIRCUIT RULES ON ZUFFA'S RULE 23(F) PETITION ..... 8

C. THE NOTICE MUST DESCRIBE THE META PIXEL NEUTRALLY ..... 9

D. ZUFFA'S REMAINING OBJECTIONS SHOULD BE SUSTAINED ..... 10

1. The Sealed Certification Order Should Not Be Posted on the Case Website (Notice Plan ¶ 2) ..... 10

2. A Single Email Notice to Only Class Members Is Sufficient (Notice Plan ¶ 3) ..... 11

3. The Subscriber Data File Should Await the Ninth Circuit's Ruling and Be Limited to What Notice Requires (Notice Plan ¶ 6) ..... 13

4. Zuffa Should Not Be Compelled to Post a Link on ufcfightpass.com (Notice Plan ¶ 7) ..... 15

5. The Notice Website URL Should Not Mimic Zuffa's Subscriber Domain (Notice Plan ¶ 2) ..... 17

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bloom v. Zuffa, LLC*, No. 26-6807, Dkt. Nos. 2, 8, 11 (9th Cir.) .......... 5

*Brantmeier v. National Collegiate Athletic Ass'n*, No. 1:24-cv-238, ECF No. 105 (M.D.N.C. Oct. 27, 2025) .......... 15, 16, 17

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .......... 7, 14, 15

*Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092 (9th Cir. 2016) .......... 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .......... 7, 16, 18

*First 100 LLC v. Omni Fin., LLC*, No. 2:16-cv-00099-RFB-CWH, 2016 WL 5661916 (D. Nev. Sept. 29, 2016) (Boulware, J.) .......... 11

*Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026) .......... 7, 15

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) .......... 8, 10, 12

*Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006) .......... 10

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) .......... 8

*Le v. Zuffa, LLC*, No. 2:15-cv-01045-RFB-BNW, ECF No. 921 (D. Nev. Nov. 17, 2023) .......... 1, 8, 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) .......... 7, 12, 14

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978) .......... 11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......... 12

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......... *passim*

*Risinger v. SOC LLC*,
No. 2:12-cv-00063-MMD-PAL, 2015 WL 7573191 (D. Nev. Nov. 24, 2015) ........ 8

*Zeisel v. Diamond Foods, Inc.*,
No. C 10-01192 JSW, ECF No. 191 (N.D. Cal. Oct. 3, 2011) ........ 8, 9, 10

**RULES**

Fed. R. Civ. P. 23(b)(3) ........ 7

Fed. R. Civ. P. 23(c)(2)(B) ........ *passim*

Fed. R. Civ. P. 23(d)(1)(B) ........ 7, 12, 16, 18

Fed. R. Civ. P. 23(f) ........ *passim*

Fed. R. Civ. P. 26(b)(1) ........ 15

## INTRODUCTION

Plaintiffs Everett Bloom, Jack Graham, and Dave Lindholm ("Plaintiffs") ask the Court prematurely to approve a plan for class notice (the "Notice Plan") that no one can yet carry out. The parties agree on the most important point: no class notice will be distributed while Defendant Zuffa, LLC's ("Zuffa") petition for permission to appeal under Federal Rule of Civil Procedure 23(f) (the "Petition") and any resulting appeal remain pending. Pls.' Mot. for Approval of Class Notice Plan, ECF No. 260 (the "Motion" or "Mot.") at 1–2. Plaintiffs also agree that the parties' ongoing discussions have already "resolve[d] most disputes." Declaration of Seth A. Safier, ECF No. 260-1 ("Safier Decl.") ¶ 5. Plaintiffs nonetheless filed the Motion ten days before their deadline, seeking approval of an incomplete notice program before Plaintiffs had retained a notice administrator, obtained a declaration explaining how notice would be delivered or what reach it would achieve, built a notice website, or reduced their "revised" Notice Plan to a document the Court could approve. *See* Declaration of Ali R. Rabbani ("Rabbani Decl.") ¶¶ 2–4, 9, Ex. 1.

Zuffa asks the Court to deny the Motion without prejudice to renewal within 21 days after the Ninth Circuit resolves the Petition and any appeal. This approach would neither prejudice Plaintiffs nor delay notice, and it would follow the procedure used in *Le v. Zuffa, LLC*, where this Court approved a notice plan, supported by a named administrator and that administrator's declaration, sixteen days after the Ninth Circuit denied Zuffa's Rule 23(f) petition. No. 2:15-cv-01045-RFB-BNW, ECF No. 921 at 1–2 & n.1 (D. Nev. Nov. 17, 2023). There is no reason to depart from that sensible approach here, particularly where additional discussions could resolve or substantially narrow the parties' remaining disagreements.

The Motion in its current form should also be denied because it would compel overbroad disclosure of subscriber data well beyond the certified class definitions—ironically the very harm that Plaintiffs allege. Plaintiffs ask the Court to compel Zuffa, within five days, to produce the names, email addresses, mailing addresses, and telephone numbers of every UFC Fight Pass ("Fight Pass") subscriber who watched on-demand video during class periods covering more than three years—a task that serves no purpose until notice can be sent. Mot. at 3–4, 12. In a footnote,

Plaintiffs add that the same data should go to their own counsel, while conceding that the request requires a separate motion. *Id.* at 10 n.3. The irony should not be lost. This is a privacy case, and Plaintiffs' entire theory is that subscribers were harmed when information allegedly linking them to their Fight Pass video viewing history was disclosed to a third party without their consent. Yet Plaintiffs' first proposed step is to compel the disclosure of the subscribers' personal information—including individuals who are not class members—to a third party, despite no exigency and before anyone knows whether notice will ever issue.

Nor do Plaintiffs' remaining proposals withstand scrutiny. Plaintiffs characterize Zuffa's objections as sharing a "single premise" and amounting to "an attack on the class definitions." Mot. at 2. They are the opposite. Zuffa's objections take the class definitions seriously. Plaintiffs proposed, and the Court certified, a Nationwide Class and a California Class (together, the "Classes") limited to Fight Pass subscribers "with respect to whom [Meta Platforms, Inc. ("Meta")] received their Meta ID [also called a Facebook ID] and the URL of the webpage hosting video content." Order Granting Class Certification, ECF No. 256 (the "Certification Order") at 1–2. Plaintiffs proposed that limitation to preempt Zuffa's predominance arguments. Having obtained certification on that basis, they cannot now disregard it when designing notice. Rule 23 requires "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), not the broadest possible communication to anyone who ever used Fight Pass.

Each of Plaintiffs' disputed proposals moves the notice program further from that requirement. Plaintiffs seek repeated emails to an admittedly overinclusive subscriber list, contact information for periods for which Meta has no data, a notice website whose address mimics Zuffa's own subscriber domain, a compelled link on Zuffa's home page, publication of a sealed order that contains references to Zuffa's highly confidential information, and a one-sided description of the Meta Pixel (the "Pixel"), the tool at the center of the case. These measures are neither necessary to reach the Classes nor justified by the record Plaintiffs have presented. They instead threaten to confuse non-members, needlessly expand the disclosure of personal information, and transform a

neutral notice program into something Rule 23 does not contemplate. The Court should reject each of them.

# I. BACKGROUND

## A. Plaintiffs' Claims

Plaintiffs filed this action on March 4, 2022. Compl., ECF No. 1. Their operative pleading, the First Amended Complaint filed May 29, 2023, added Plaintiffs Graham and Lindholm. First Am. Compl., ECF No. 47 ("FAC"); Pls.' Mot. for Class Cert., ECF No. 53 ("Class Cert. Mot.") at 5 n.5. All three Plaintiffs assert claims under the federal Video Privacy Protection Act, and Plaintiff Bloom also asserts claims under California law. FAC ¶¶ 89–128.

The theory of Plaintiffs' case is that the Pixel, a marketing tool on the Fight Pass website, improperly caused subscribers' browsers to send Meta two pieces of information: a Facebook ID, which Plaintiffs say was carried in Facebook's "c_user" cookie, and the URL of the video page, which included the video's title. FAC ¶ 35; Certification Order at 3–4. Zuffa uses the Pixel to measure the performance of its Facebook advertising, such as the number of Fight Pass subscriptions purchased through its Facebook ads, and to focus its advertisements on potential new subscribers. Zuffa's Opp. to Mot. for Class Cert., ECF No. 106 ("Class Cert. Opp.") at 4.

## B. Class Certification

Plaintiffs moved for class certification on June 9, 2023. Class Cert. Mot. at 2, 24. They did not seek to certify a class of all Fight Pass subscribers. Instead, they proposed a Nationwide Class and a California Class limited to persons who "subscribed to the UFC Fight Pass for personal use and, [during the class periods], requested or obtained on-demand video content on the UFC Fight Pass Website and with respect to whom Meta received their Meta ID and the URL of the webpage hosting video content." *Id.* at 2. Plaintiffs also excluded subscribers who watched through the Fight Pass apps or on smart televisions. *Id.* at 2 n.1.

Plaintiffs drew that limitation to answer the objection they anticipated from Zuffa. As they explained, "the Classes are limited to subscribers whose data was actually sent to Meta. If any of these variations block the Meta Pixel, no data would be sent to Meta, and those individuals would

not be part of the Classes." *Id.* at 14. Meta's records, Plaintiffs said, "will allow confirmation of whose data was transferred." *Id.* Plaintiffs also estimated that "perhaps 30% of total tracking was lost due to cookie blockers." *Id.* at 15.

Zuffa opposed certification on the ground that whether any subscriber's Facebook ID reached Meta turns on individual browser settings, cookie blockers, Facebook log-in status, and device use. Class Cert. Opp. at 1, 11–17. Zuffa also argued that Meta's records did not bear out Plaintiffs' prediction; Meta's production covered only data "transmitted to Meta on or after June 19, 2021," and it did not reference Facebook IDs or the c_user cookie. *Id.* at 5.

Plaintiffs learned of that time limitation at the outset of class certification briefing. On June 16, 2023, one week after Plaintiffs moved for certification, Plaintiffs' counsel sent Zuffa excerpts from an email they had received from Meta's attorney, which stated that "the earliest date for which Meta has potentially responsive Pixel event data in its possession, custody, or control . . . is June 19, 2021." Rabbani Decl. ¶ 10, Ex. 2. Meta's counsel also stated that she had mentioned this date restriction to Plaintiffs' counsel in a June 8, 2023 email—one day before Plaintiffs moved for certification. *Id.* In that June 8 email, Meta's counsel told Plaintiffs' counsel that, "[b]ecause of data retention periods applied in the ordinary course of business, Meta does not have potentially responsive Pixel event data prior to June 19, 2021 in its possession, custody, or control," and that "June 19, 2021 is the earliest date for which Meta can restore and search for Pixel event data." *Id.* ¶ 11, Ex. 3 at PLAINTIFF_0389.

In reply, Plaintiffs conceded that "providing notice to class members identified by reference to Meta's Pixel data requires access to Meta's entire database for Zuffa's Pixel IDs, which Plaintiffs have not yet obtained." Pls.' Reply ISO Mot. for Class Cert., ECF No. 124 ("Class Cert. Reply") at 3. They also offered narrower alternative definitions if the Court wished to address overbreadth. *Id.* at 1, 3. The Court heard argument on November 19, 2024, ECF No. 165, and held a two-day evidentiary hearing with the parties' experts in May 2025, ECF Nos. 179, 180.

On September 30, 2026, the Court certified both Classes as Plaintiffs defined them, except that it declined to certify the California Class on the fraudulent prong of California's Unfair

Competition Law. Certification Order at 1–2, 19–21. The Nationwide Class covers "persons in the United States" from October 1, 2020 to June 3, 2022. *Id.* at 1–2. The California Class covers "persons in California" during that period and from March 3, 2018 to December 5, 2019. *Id.* at 2. The Court treated whether Zuffa disclosed a subscriber's Facebook ID and video URL as a threshold question to determine class membership. *Id.* at 15. It found that the Pixel data produced by Meta is common evidence that can be used to establish class membership, and that a class action administrator should be able to use the Pixel data to verify claims. *Id.* at 16.

**C. The Rule 23(f) Petition**

Zuffa filed the Petition on October 14, 2026, Plaintiffs opposed it on October 26, and Zuffa filed its reply on November 2, 2026. *Bloom v. Zuffa, LLC*, No. 26-6807, Dkt. Nos. 2, 8, 11 (9th Cir.). The Petition challenges the Certification Order's finding that Meta's data is common evidence that can effectively be used to show whether Zuffa made any disclosure in violation of the VPPA, the Certification Order's treatment of disclosure to Meta as a class-membership question to be resolved later through Meta's data, and the adequacy and typicality of Plaintiff Bloom, the only representative of the California Class. *Id.*, Dkt. No. 2 at 3, 8–22.

**D. The Meet-and-Confer Process**

On October 5, 2026, Plaintiffs proposed a nine-paragraph Notice Plan by letter. Mot. at 1. The parties met and conferred on October 15, during which Plaintiffs agreed not to distribute notice while the Petition and any appeal remain pending. Safier Decl. Ex. F at 1. Later that day, Plaintiffs sent their proposed notice forms. Rabbani Decl. ¶ 2, Ex. 1 at 14. Zuffa responded in writing to the Notice Plan on October 23, Safier Decl. Ex. F, and on October 29 sent edits to every notice form, objected to the proposed URL, and asked for a mock-up of the notice website and for any revised Notice Plan before filing. Rabbani Decl. ¶ 3, Ex. 1 at 8–9. On October 30, Plaintiffs declined to provide a mock-up "before we have even engaged a claims admin to build it," *id.* ¶ 4, Ex. 1 at 7–8, and they never sent a revised Notice Plan, *id.* ¶ 9.

On November 6, at 1:28 p.m., Zuffa accepted most of Plaintiffs' latest edits to the notice forms and offered a compromise on the two remaining issues: it would accept Plaintiffs' newly

added phrase "software tracking tool," and drop its URL objection, if Plaintiffs would add that Zuffa used the tool "to optimize Zuffa's advertising on Facebook." Safier Decl. ¶ 6; Rabbani Decl. ¶ 6, Ex. 1 at 3. Six minutes later, Plaintiffs' counsel rejected the addition and asked whether Zuffa still wished to dispute the URL. Rabbani Decl. ¶ 7, Ex. 1 at 3. At 2:14 p.m., he gave Zuffa "20 minutes or so" to respond. *Id.* at 2–3. At 2:22 p.m., Zuffa's counsel said he would respond by 4:00 p.m. *Id.* at 2. Three minutes later, Plaintiffs' counsel replied, "I am just going to file," and filed at 2:59 p.m. *Id.*; Rabbani Decl. ¶ 8. Plaintiffs' deadline under the Scheduling Order was not until November 16, 2026. ECF No. 32.

**E. The Proposed Notice Plan**

With the Motion, Plaintiffs ask the Court to approve "the Notice Plan, as revised." Mot. at 12. But no revised Notice Plan is in the record. The only plan before the Court is the October 5 letter, which Plaintiffs have since changed in at least six respects. *Id.* at 3–4. The administrator is "[TBD]." Mot. at 12. Plaintiffs say only that they have "requested proposals from five reputable claims administrators and will select one." *Id.* at 2. No administrator declaration addresses delivery, email validation, or reach. The Notice Plan calls for first-class mail, *id.* at 3, but Plaintiffs attach no form of mailed notice. Every deadline runs from a "Trigger Date" that the Motion never defines. *Id.* at 4, 12. And the forms are unfinished. The Long-Form Notice requires a "telephone number" on mailed opt-out requests, but neither opt-out form has a telephone field. *Compare* Safier Decl. Ex. A at 8, *with id.* Exs. C, D. The forms still leave the administrator's address and telephone number and every deadline blank. *Id.* Ex. A at 8–9; *id.* Ex. D.[1]

Plaintiffs have withdrawn Paragraphs 4 and 8 of the Notice Plan, conformed Paragraph 5 to Zuffa's objection, and agreed to bear the costs of notice under Paragraph 9. Mot. at 4. Six disputes remain: (1) whether the sealed Certification Order may be posted on the case website (Notice Plan ¶ 2); (2) whether email notice should be sent once or twice (Notice Plan ¶ 3); (3) the scope and timing of the subscriber data file (Notice Plan ¶ 6); (4) the notice website URL (Notice

[1]The exhibits' internal labels also do not match their exhibit letters. Exhibit B is labeled "Exhibit C – Draft Email Notice," and Exhibits C and D are labeled "Exhibit D" and "Exhibit E." *See* ECF No. 260-1 at 14–19. The Motion also attributes the supporting declaration to Anthony Patek, but Seth Safier signed it. Mot. at 1; Safier Decl. at 2.

Plan ¶ 2); (5) whether Zuffa must post a link on the UFC Fight Pass website (ufcfightpass.com) (Notice Plan ¶ 7); and (6) how the notices describe the Pixel. *Id.* at 1 & n.1, 3–4. The headings below identify each dispute by the paragraph of the Notice Plan it concerns.

## II. ARGUMENT

### A. LEGAL STANDARD

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be given by "United States mail, electronic means, or other appropriate means," and it must state, "in plain, easily understood language," among other things, "the class claims, issues, or defenses." *Id.* The touchstone is practicability, not maximum reach: due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Individual notice is required for members who can be identified through reasonable effort, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77 (1974), but Rule 23 does not demand actual notice to every member, and other forms of notice may suffice for members who cannot reasonably be identified, *see Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128–29 (9th Cir. 2017), *abrogated in part on other grounds as recognized in Healy v. Milliman, Inc.*, 164 F.4th 701 (9th Cir. 2026); *Mullane*, 339 U.S. at 317.

The Court may also issue orders that, "to protect class members and fairly conduct the action," require appropriate notice of any step in the action. Fed. R. Civ. P. 23(d)(1)(B)(i). An order directing a defendant to help identify class members rests on Rule 23(d), not the discovery rules, and the plaintiff ordinarily must perform the tasks necessary to send notice and bear their cost. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350, 354–56 (1978); *Eisen*, 417 U.S. at 178–79. A court may direct the defendant to perform a notice task only where the defendant can do so "with less difficulty or expense than could the representative plaintiff," and even then the court "should be considerably more ready to place the cost of the defendant's performing an

ordered task on the representative plaintiff," asking whether the expense is "substantial." *Oppenheimer*, 437 U.S. at 356, 358–59.

Because court-authorized notice carries the Court's imprimatur, it must be "timely, accurate, and informative," and courts must "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172, 174 (1989) (collective action under the Age Discrimination in Employment Act). Finally, Rule 23(f) review "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). The Court therefore has authority to defer notice-related obligations pending that review, consistent with its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

### B. THE COURT SHOULD DEFER APPROVAL UNTIL THE NINTH CIRCUIT RULES ON ZUFFA'S RULE 23(F) PETITION

The Ninth Circuit's decision may change what the notice must say and to whom it must go. If Zuffa's Petition is granted, the class definitions, the class periods, and even the existence of the California Class could change—and every dispute here would have to be revisited. Plaintiffs agreed to defer notice "to avoid the possibility of class member confusion." Mot. at 2. The same logic applies to approving the Notice Plan. In *Risinger v. SOC LLC*, Judge Du stayed proceedings pending a Rule 23(f) petition, finding that a stay "will prevent the possibility of confusion among class members." No. 2:12-cv-00063-MMD-PAL, 2015 WL 7573191, at *2 (D. Nev. Nov. 24, 2015). And in *Le*, this Court deferred ruling on class certification while related appellate litigation in the Ninth Circuit was pending. *See Le*, ECF No. 839 at 4 (D. Nev. Aug. 9, 2023).

The record is also not ready. Plaintiffs cite authority that notice plans should reach at least 70 percent of class members, Mot. at 5, but offer no estimate of reach because they have no administrator to provide one. The Court cannot assess the qualifications, delivery methods, or data-security practices of an unnamed administrator, or approve a website that does not exist even in mock-up. In *Le*, by contrast, the Court approved a plan that named the administrator and was

supported by its declaration. *Le*, ECF No. 921 at 2 & n.1. Courts routinely withhold approval on fuller records than this one. In *Zeisel v. Diamond Foods, Inc.*, for instance, the defendant argued that the plaintiff had "not provided sufficient evidence to show that this plan is the best notice practicable under the circumstances." No. C 10-01192 JSW, ECF No. 191 at 4 (N.D. Cal. Oct. 3, 2011). The court found the proposed plan insufficient and ordered further conferral, even though the plaintiff had retained an administrator and submitted supporting declarations on reply. *Id.* at 4–5, 7. Plaintiffs here have supplied less, and Zuffa is entitled to respond to an actual plan and an administrator's declaration rather than new material on reply. *See* Safier Decl. Ex. F at 2.

Importantly, deferral would cost Plaintiffs nothing, as everyone agrees that no notice can issue until the Ninth Circuit rules. Mot. at 2. Plaintiffs say approval now avoids "kicking the issue . . . down the road." *Id.* But the remaining disputes are narrow and can be resolved quickly once the scope of the Classes is settled; deciding them now risks wasting judicial resources in potentially needing to decide the issue twice. In *Le*, the Court approved the notice plan sixteen days after the Ninth Circuit denied the petition, with notice to issue within 21 days after that. *Le*, ECF No. 921 at 1, 3. A renewed motion filed within 21 days of the Ninth Circuit's ruling, with a written Notice Plan, a named administrator and supporting declaration, and final forms, would permit the same sequence here. If the Court prefers to resolve the disputes now, it should do so as set out below and should define the Trigger Date as the date the Ninth Circuit denies the Petition or, if the Petition is granted, the date its mandate issues.

### C. THE NOTICE MUST DESCRIBE THE META PIXEL NEUTRALLY

The parties' dispute about how the notices describe the Pixel appears only in a footnote of the Motion. Mot. at 1 n.1. But that description is the first substantive statement every recipient will read. Safier Decl. Ex. A at 1; *id.* Ex. B at 1. The parties' prior drafts described "a tool called the Meta Pixel." Rabbani Decl. ¶ 12, Ex. 4 at 1. Plaintiffs' November 3 edits added "software tracking" to that phrase. *Id.* Zuffa agreed to that phrase if the notices also said what the tool was for: "to optimize Zuffa's advertising on Facebook." Safier Decl. ¶ 6. Plaintiffs refused, calling the addition not "appropriate, relevant or even true." Mot. at 1 n.1.

The record shows otherwise. Zuffa uses the Pixel "[t]o understand the performance of its Facebook ads." Class Cert. Opp. at 4. Plaintiffs themselves told the Court that "advertisers like Zuffa control the Pixel." Class Cert. Reply at 2. The phrase "software tracking tool," standing alone, tells a reader that Zuffa installed software for the purpose of tracking its subscribers. Whether Zuffa used the Pixel to track or share video-viewing history is the central merits question, and the Long-Form Notice itself states Zuffa's contention that it does not. Safier Decl. Ex. A at 6. Rule 23(c)(2)(B)(iii) requires the notice to state the "class claims, issues, or defenses," and a notice that adopts one side's characterization of the disputed conduct does not do so neutrally. A Court-authorized notice that leads with Plaintiffs' characterization risks "the appearance of judicial endorsement of the merits." *Hoffmann-La Roche*, 493 U.S. at 174. And Plaintiffs' objection that Zuffa's addition is not "true" is a merits argument that applies equally to their own phrase.

Courts resolve such disputes by choosing the less loaded term. *See Zeisel*, ECF No. 191 at 6–7 (indicating the court would use "misbranded," the complaint's term, rather than the plaintiff's proposed "unlawful"). The Court should adopt Zuffa's proposed language or, alternatively, return to the wording of the parties' prior drafts, "a tool called the Meta Pixel."

## D. ZUFFA'S REMAINING OBJECTIONS SHOULD BE SUSTAINED

### 1. The Sealed Certification Order Should Not Be Posted on the Case Website (Notice Plan ¶ 2)

The Certification Order was filed under seal because it refers to information Zuffa designated Highly Confidential under the Stipulated Protective Order, ECF No. 36, including subscriber figures for the class periods. Safier Decl. Ex. F at 1–2 (citing, *e.g.*, Certification Order at 9). Zuffa has consistently sought to keep that information confidential throughout this action, and the Court has granted its requests to seal it. *See, e.g.*, ECF No. 255. Plaintiffs ask the Court to file a public version and post it on the case website. Mot. at 6–7, 12.

That request should not be resolved through a notice motion. Sealed papers may be unsealed only "after notice to all parties and an opportunity to be heard," Local Rules of Practice of the United States District Court for the District of Nevada ("LR") IA 10-5(b), and sealing

determinations turn on particularized findings about specific information, *see Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). No proposed redactions are before the Court, and Zuffa has had no opportunity to make that showing. Plaintiffs invoke the presumption of access and the "compelling reasons" standard. Mot. at 7 (citing *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096–99, 1101 (9th Cir. 2016)). Zuffa does not dispute that standard; it disputes that a notice motion is the vehicle for applying it. And under that standard, courts may seal records that could serve "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see First 100 LLC v. Omni Fin., LLC*, No. 2:16-cv-00099-RFB-CWH, 2016 WL 5661916, at *1 (D. Nev. Sept. 29, 2016) (Boulware, J.) ("[p]rotecting proprietary information from public knowledge is sufficient under the stricter 'compelling reasons' standard"). Zuffa's position rests on the nature of the information, not merely its designation under the Stipulated Protective Order: subscriber counts for a subscription streaming service are competitively sensitive, and they are not "almost a decade" old. Mot. at 7; Declaration of Travis Santypal ("Santypal Decl.") ¶¶ 3–4. The class periods run through June 3, 2022. Mot. at 2.

Nor is posting necessary. Rule 23(c)(2)(B) requires the notice itself to describe the Classes, claims, and defenses "in plain, easily understood language." The Long-Form Notice does exactly that. Safier Decl. Ex. A at 4–6. The Court's opinion on predominance and typicality, written for lawyers rather than class members, adds nothing to that description. If the Court is inclined to make a public version available, it should permit Zuffa to submit proposed redactions, with a supporting declaration, within 14 days after the Trigger Date, and no version should be posted until the Court so rules.

**2. A Single Email Notice to Only Class Members Is Sufficient (Notice Plan ¶ 3)**

If the Court directs notice after the Ninth Circuit rules, Zuffa does not object to the circulation of one direct email to each subscriber on the data file, with mailed notice to those without a valid email address. Zuffa instead objects to the second, "reminder" email, Mot. at 3,

and the broad recipient list encompassing non-class members. Plaintiffs propose to email every subscriber who watched on-demand video on the Fight Pass website during the class periods, not just class members. *Id.* at 3–4. That list would include subscribers who had no Facebook account, subscribers whose browsers blocked the Pixel, and the share of subscribers whose tracking Plaintiffs themselves estimated "was lost due to cookie blockers." Class Cert. Mot. at 15. None of those subscribers is a class member, because Meta never received their Meta ID and video URL. *See* Certification Order at 1–2. Each additional email to that list therefore sends another Court-authorized notice to people outside the Classes.

Plaintiffs say notice to non-members "causes no harm." Mot. at 8. Rule 23 does not treat breadth as costless. It requires "the best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B)—notice "reasonably calculated" to reach members, *Mullane*, 339 U.S. at 314—not the greatest number of communications to the greatest number of people. And because the notice carries the Court's name, it must be "accurate" and neutral. *Hoffmann-La Roche*, 493 U.S. at 172, 174; *see* Fed. R. Civ. P. 23(d)(1)(B) (notice orders serve "to protect class members and fairly conduct the action"). An email bearing the Court's name that tells a person Zuffa's records identify them as a subscriber, and that subscribers' Facebook IDs and video URLs "may have" been disclosed to Meta, is not a neutral event for someone to whom nothing of the kind happened. *See* Safier Decl. Ex. B. A reminder email doubles that effect. The Supreme Court has recognized that notice sent to persons outside the class "might harm" the defendant, and that a defendant should not be penalized for successfully opposing a plaintiff's notice proposals. *See Oppenheimer*, 437 U.S. at 360–61.

Plaintiffs' other justifications do not change the analysis. They offer no evidence that a reminder "materially increases" reach, Mot. at 8, and they have no administrator to supply any. A single email with mailed backup does not "systematically leave any group without notice," *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982); every subscriber on the list receives direct notice. That Plaintiffs will pay for the reminder, Mot. at 8, does not show

that it is needed. And in *Le*, a single email and a single mailing, without reminders, were "the best notice practicable under the circumstances." *Le*, ECF No. 921 at 2–3.

**3. The Subscriber Data File Should Await the Ninth Circuit's Ruling and Be Limited to What Notice Requires (Notice Plan ¶ 6)**

If the Motion is granted, Zuffa will have five days to hand a third party the available names, email addresses, mailing addresses, and telephone numbers of every person who watched on-demand video on the Fight Pass website during class periods covering more than three years—including subscribers outside the United States and subscribers who are not class members. Mot. at 3–4, 12. That is the only part of the Motion that would take effect before the Ninth Circuit rules, and it is unquestionably the part that could create irreversible harm depending on how the Ninth Circuit rules. This case is about whether information linking subscribers to the videos they watched was disclosed without their consent. Certification Order at 2. Plaintiffs' notice proposal would begin by moving a list that identifies those same subscribers, by name, as people who obtained video content from Fight Pass out of Zuffa's hands, by court order, before anyone knows whether (and in what form) notice will ever issue. That disclosure cannot be undone if the Classes are later narrowed or decertified. To avoid this, Zuffa requests that paragraph 6 be modified in four respects.

First, the data file should not be produced before the Trigger Date. Rule 23(f) permits the Court to defer proceedings pending review, Fed. R. Civ. P. 23(f), and *Oppenheimer* permits an order requiring a defendant's help only where that help is needed to send notice and the defendant can supply it more efficiently than the plaintiff, 437 U.S. at 354–57. There is no present need. Plaintiffs' only reason to produce the data now is so the administrator can "de-duplicate, validate, and update addresses in advance." Mot. at 10. But there is no administrator. Plaintiffs do not explain why that work cannot be done in the 28 days their own schedule builds in between the Trigger Date and the date notice issues (the "Notice Date"), *id.* at 4, and address updates done now would go stale before mailing, *see id.* at 3. Plaintiffs say the file "can simply be filtered" if the Classes change. *Id.* at 10. That concedes that the file would contain personal information about

people who are not class members, held by a third party for no present purpose. The burden, meanwhile, is real: compiling and securely transmitting contact data for class periods covering more than three years is not a five-day task. Santypal Decl. ¶¶ 6–7. The Court should order production within 30 days after the Trigger Date and set the Notice Date 45 days after the Trigger Date.

Second, the file should be limited to what notice requires. *Oppenheimer* ties any order requiring a defendant's help to the information needed to send notice. *See* 437 U.S. at 350, 354–56. Revised Paragraph 6 goes further. It has no geographic limit, though the Nationwide Class is limited to "persons in the United States." Mot. at 3–4; Certification Order at 1. It also seeks telephone numbers, though the Notice Plan provides notice only by email and mail, Mot. at 3, and Zuffa does not maintain telephone numbers for any subscribers, Santypal Decl. ¶ 5. The file should be limited to the available names, last known email addresses, and mailing addresses of subscribers with United States addresses. It should go to the administrator only, be used only for notice, and be destroyed for anyone outside the Classes as finally defined. That is the minimum care owed to subscribers in a case about alleged privacy violations.

Third, the file should be limited to the *period* for which members can be identified through reasonable effort. Rule 23(c)(2)(B) requires individual notice to members "who can be identified through reasonable effort"; members who cannot be so identified may receive other notice. *Briseno*, 844 F.3d at 1128–29; *Mullane*, 339 U.S. at 317. The Court found that membership can be established through Meta's Pixel data, and that a class action administrator could use Meta's Pixel data to make quality assurance checks needed to verify claims. Certification Order at 16. But Meta has no Pixel data before June 19, 2021. Meta's counsel has stated that June 19, 2021 is the earliest date for which Meta has potentially responsive Pixel event data in its possession, custody, or control, and Plaintiffs' counsel relayed that statement to Zuffa in writing, in Meta's counsel's own words. Rabbani Decl. ¶¶ 10–11, Exs. 2–3. The subscriber data file should, therefore, be limited to the same time period, since neither the Court nor Plaintiffs have identified any other "common evidence" that can be used to establish class membership. Plaintiffs respond

that membership turns on whether Meta received the data, not whether Meta retained it, that discovery is ongoing, and that members can identify themselves. Mot. at 9 (citing Certification Order at 12 n.5; *Briseno*, 844 F.3d at 1131–32). The Ninth Circuit has since recognized that the cited pages of *Briseno* are abrogated to the extent they would permit unnamed class members to go without demonstrating standing in a later claims process. *See Healy*, 164 F.4th at 708–09. And importantly, Plaintiffs identify no source, other than Meta's data, from which members in the earlier period can be identified, and no subscriber can know whether Meta received their Meta ID with a video URL years ago. *See* Certification Order at 15–16. Therefore, Zuffa asks the Court to limit the data file to the period for which members can be identified or, at a minimum, to defer this question and permit Zuffa to move to modify the class definitions after the Ninth Circuit resolves the Petition.[2]

Fourth, Plaintiffs' footnoted request that "all the data" go to their counsel is not before the Court, as Plaintiffs concede. Mot. at 10 n.3. The request seeks discovery—Plaintiffs invoke Rule 26(b)(1), *id.*—and would require a separate motion. The footnote does show where Plaintiffs intend the file to go next, which is all the more reason to confine it now to the administrator and to notice.

#### 4. Zuffa Should Not Be Compelled to Post a Link on ufcfightpass.com (Notice Plan ¶ 7)

Plaintiffs describe their plan as "built around direct notice." Mot. at 2. If that plan is the best notice practicable, a link on the ufcfightpass.com home page adds nothing Rule 23 requires. The link is also poorly matched to the Classes. The class periods all ended in June 2022. Today's home-page visitors are mostly current and prospective subscribers and members of the public, while former subscribers with stale email addresses are the least likely to visit. Plaintiffs say the link matters "all the more" because they withdrew their social media campaign. *Id.* at 11. But

[2] The California Class includes an earlier period, March 3, 2018 to December 5, 2019, that the Nationwide Class does not. Any production for that period presents the same identification problem.

they withdrew that campaign after Zuffa objected that it would reach an even larger population of non-members than direct notice. Safier Decl. Ex. F at 2. The same objection applies here.

*Brantmeier v. National Collegiate Athletic Ass'n* rejected the same request. There, the plaintiffs proposed email notice with postcard backup and asked the court to require the defendant to post notice on its website. No. 1:24-cv-238, ECF No. 105 at 3–4, 6 (M.D.N.C. Oct. 27, 2025). The court refused, noting the absence of supporting case law or evidence of need, and explaining that "posting a notice about a settlement is different in kind from posting a notice about class certification where the [defendant] is contesting liability on an ongoing basis." *Id.* at 6–7. Plaintiffs likewise cite no case ordering a defendant to post a contested-certification notice on its own home page. They rely only on the general language of Rule 23(c)(2)(B) and 23(d)(1)(B). Mot. at 11. Those provisions let the Court choose among means of notice; they do not shift the plaintiff's burden of giving notice to the defendant. *Oppenheimer*, 437 U.S. at 356; *Eisen*, 417 U.S. at 178–79. And in *Le*, this Court approved a broad notice program without requiring Zuffa to post anything on its own websites. *Le*, ECF No. 921 at 3–4.

Nor is the link cost-free. Plaintiffs' proposed order would make Zuffa pay for "putting the link on its website," Mot. at 12, contrary to Plaintiffs' agreement that Zuffa "will bear only the cost of producing the subscriber data file," *id.* at 4, and to the rule that plaintiffs bear the cost of notice, *Eisen*, 417 U.S. at 178–79; *see also Oppenheimer*, 437 U.S. at 362 (in a suit "in which the defendants deny all liability," imposing notice-related expense on them "hardly can be viewed as an insubstantial burden"). Placing a link on the home page would require Zuffa to work with an outside vendor to change the website's design and would occupy space Zuffa uses to promote content. Santypal Decl. ¶ 9. The larger cost is a months-long legal notice on the home page of a consumer product, aimed at an audience overwhelmingly outside the Classes, about claims Zuffa denies. If the Court concludes that some website notice is appropriate, it should be limited to a neutral, Court-approved link in the site's footer, at Plaintiffs' expense.

**5. The Notice Website URL Should Not Mimic Zuffa's Subscriber Domain (Notice Plan ¶ 2)**

Plaintiffs propose www.ufcfightpassclassaction.com. Mot. at 3. Zuffa proposed www.zuffaclassaction.com on October 29, and www.zuffavppaclassaction.com as a further alternative on October 30. Rabbani Decl. ¶ 3, Ex. 1 at 7–9. Plaintiffs' URL embeds Zuffa's subscriber domain, "ufcfightpass," and adds two words. The notice will come from an unfamiliar third-party sender and will direct recipients to a site that asks for their names, mailing addresses, and email addresses. Safier Decl. Exs. C, D. That is the classic pattern of a phishing email. Some subscribers will ignore the notice. Others will assume Zuffa sponsors the site.

Plaintiffs say the URL should "reference what the case is about." Mot. at 10. The notices already do. The Long-Form Notice's headline asks whether the recipient watched "on-demand videos on the UFC Fight Pass website (ufcfightpass.com)," and the email's subject line refers to the "UFC Fight Pass Website." Safier Decl. Ex. A at 1; *id*. Ex. B at 1. Plaintiffs' reference to the Federal Judicial Center's model notice, Mot. at 11, shows at most that a URL may name the party at issue, which Zuffa's proposed URLs do. Nothing in that model suggests a notice URL should replicate the domain on which subscribers log in to a paid account.[3]

## <u>CONCLUSION</u>

For these reasons, Zuffa respectfully requests that the Court deny the Motion without prejudice to renewal within 21 days after the Ninth Circuit resolves the Petition and any appeal. Any renewed motion should include the revised Notice Plan, the name and declaration of the proposed administrator, and final forms of notice on which the parties have met and conferred.

In the alternative, if the Court reaches the merits, Zuffa respectfully requests that the Court order that:

(1) no notice will be distributed, and no subscriber data will be produced, before the Trigger Date, defined as the date on which the Ninth Circuit denies the Petition or,

---

[3] In *Le*, the notice website used the URL www.UFCFighterClassAction.com, to which Zuffa did not object. *Le*, ECF No. 921 at 3. That class consisted of professional fighters, a small and sophisticated population, and the URL did not replicate a domain on which class members log in to a paid subscription account.

if the Petition is granted, the date on which the Ninth Circuit's mandate issues following resolution of the appeal;

(2) the notices describe the Pixel using Zuffa's proposed language or the wording of the parties' prior drafts, "a tool called the Meta Pixel";

(3) the Certification Order will not be posted on the case website, or, alternatively, Zuffa will submit proposed redactions and a supporting declaration within 14 days after the Trigger Date, and no version will be posted until the Court rules on them;

(4) the administrator will send email notice once, with mailed notice to those for whom no valid email address is available;

(5) within 30 days after the Trigger Date, Zuffa will produce to the administrator only, subject to the Stipulated Protective Order, available names, last known email addresses, and mailing addresses (but not telephone numbers) of subscribers with United States addresses who requested or obtained on-demand video content on the UFC Fight Pass website from June 19, 2021 to June 3, 2022, or, alternatively, production for any earlier period will be deferred until the Court resolves a motion by Zuffa to modify the class definitions, to be filed within [30] days after the Trigger Date; the administrator will use the data only for notice and will destroy the data for any person outside the Classes as finally defined; and the Notice Date will be 45 days after the Trigger Date;

(6) the notice website will use the URL www.zuffaclassaction.com or www.zuffavppaclassaction.com;

(7) Zuffa will not be required to post a link to the notice website on ufcfightpass.com; and

(8) Plaintiffs will bear all costs of notice, and Zuffa will bear only the cost of producing the subscriber data file.

Dated: November 20, 2026

Respectfully submitted,

By: /s/ Susan K. Leader

**PAUL HASTINGS LLP**
SUSAN K. LEADER (*admitted pro hac vice*)
susanleader@paulhastings.com
ALI R. RABBANI (*admitted pro hac vice*)
alirabbani@paulhastings.com
1999 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Telephone: (310) 620-5700
Facsimile: (310) 620-5899

**CAMPBELL & WILLIAMS**
SAMUEL R. MIRKOVICH (Nev. Bar No. 11662)
srm@cwlawlv.com
710 South 7th Street
Las Vegas, NV 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Defendant*
*Zuffa, LLC*